9/24/06

In The United States Court
For The Third Circuit

DETLEF F. HARTMANN, and as one
of classes,
Plaintiff, Appellant,

V.

Stanley Taylor, Commissioner, et al.,
Appellees below Defendants,

District Court Case Civ. No. 06340 - KAJ

FILED

OCT 30 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Notice/ Appeal Of Denial for timely and legal Appointment of Counsel by District Court

This Appeal is need from District Court Denial. ▬▬▬

From Civil Complaint, ▬▬▬▬▬ and Reconsideration denial, ▬▬▬▬

1. Order denying court appointed counsel to an indigent plaintiff is immediately appealable. See Ray v. Robinson, 640 F2d 474 (3d Cir 1981). District court had authority to appoint but abused its discretion. Timely assistance needed.

2. Indigent, a handicap, citizen lacks ability to present the case and uphold (Tabron prong one) the laws of the land in a legal manner as can be seen by District Courts dismissal of claims already which are/were causing harm to Mr. Hartmann; and as classes of one.

3. Other handicaps and disabilities per Complaint and claims obstructed to be brought in a legal manner, make it impossible to present (Tabron prong one) and defend the case.

4. Counsel should have been appointed for an inmate who lacked ready access to law library with specific job title tools, word processor and accessories, and who does NOT understand discovery, and as can be seen in His Complaint, could not legally bring all His claims and contemplated claims. See Rayes v. Johnson, (Tabron prong one) 969 F2d at 703-04. Civil Complaint shows emergency nature of case as best as possible.

5. Failure to appoint counsel in a timely manner has caused more damage due to delay, timeliness of all claims, preventing equal protection of the laws and legal access to the courts by Mr. Hartmann, and as classes of one. (Tabron prong one and two)

—1—

<u>Relief Request</u> this Honorable Court approve/recommend or alike to District Court to appoint counsel immediately for the following reasons, and ones already mentioned, due to abuse of discretion by District Court:

6. Some claims in Mr. Hartmann's Complaint were NOT frivolous. Those that were so declared by the District Court without equal assistance and equal protection of the laws, could NOT yet be properly presented due to Mr. Hartmann's inabilities, handicaps caused by state officials, and disabilities caused by state officials to (Talson prong one and two) Mr. Hartmann, and as class of one, and our families, as per record.

7. Timely, equal, effective, meaningful, capable, and adequate as described in Complaint so far continues to obstruct justice and forbids access to inmate law library in a legal manner, (Talson prong one and two) see <u>Rayes v. Johnson</u>, C.A. 8 (Neb) 1992 969 F2d 700. Since 1999, Defendants Johnson, Kobro, Little, Hudson, Snyder, Carroll, Howard, and Taylor continue to this under pretence of law, and work in harmony to attain that goal showing conspiracy and organized crime in our state government to provide citizens, Mr. Hartmann, and as class of one - inmates at Delaware Correctional Center.

8. Lack of timely appointment of counsel at pre-claim pleading stage to (Talson prong one and two) properly bring all claims in a legal manner, timely, equally, effectively, meaningfully, capably and adequately, obstructs justice and causes currently, to NOT allow illegal conditions to see the light of day denying equal footing protection of the laws when the Delaware Department of Justice and the courts have an experienced, lettered, and educated staff, without all the handicaps, obstruction, and disabilities, Mr. Hartmann, and as class of one have, to come against a citizen as Mr. Hartmann and the current position He is in. Expecting all citizens to be lawyers also is obviously out of control.

-2-

9. Denial of counsel so far continues to deny fundamental *fair proceedings* (Talron prong one and two) for equal protection of the laws under State and federal Constitution.

10. Mr. Hartmann, and classes of one - mentally ill subclass and inmates of the Delaware Correctional Center, is a legal disability which affect daily major life activities which effectively precludes presentation of this claim / and classes, and those contemplated, and him from framing his pleadings in a legal manner without obstructions so far disclosed and to be disclosed. (Talron prongs one and two)

11. Mr. Hartmann, and as class of one - mentally disabled inmate, continues to be denied legal entitlements *mandated* under the American Disabilities Act and Rehabilitation Act; (Talron prongs one and two) This deliberate indifference to these laws by prison officials Johnson, Kobus, Little, Hudson, Snyder, Carroll, Howard, and Taylor since Dec 1999, continues to obstruct justice, acting under pretense of law, acting as if above the law by knowingly avoiding it, hoping it will go away.

12. Members of classes have not been able to have their rights upheld (Talron prongs one and two) for years due to systemic and systematic management problems, and insidious discriminatory animus towards inmates at at least the Delaware Correctional Center and probably at the other facilities people are in custody in Delaware.

13. Indigent civil litigants should be appointed counsel now, overridden by by this Court from District Court's abuse of discretion, in this case because of difficulty of issues, (Talron prong one and two) relative to capabilities of litigant which would make it impossible for him to obtain, and the classes, any sort of justice without aid of lawyer, and that because he could not procure lawyer on his own. See Farmer v. Haas, C.A. 7 (Wis.) 1993, 990 F2d 319.

14. Case at preliminary stage of pleading requirements is factually and legally complex for Mr. Hartmann so as to warrant assistance of counsel. See, ie, Holt v Ford, C.A. 11 (Ga.) 1989, 862 F2d 850. Talron prong two.

-3-

15. A District court even abused its discretion in failing to appoint counsel for indigent state prisoner bringing civil rights action challenging a prison policy limiting the amount of mail a prisoner could take to or back from court appearances. See McKeever v. Israel, C.A. 7 (Wis.) 1982, 689 F2d 1315. Thus, Mr. Hartmann, and classes are not yet provided equal protection of the laws and due process.

16. Even if view of serious equal protection and due process issues, as in Mr. Hartmann's complaint as to constitutionality of many prison conditions in violation of state statutes, including Mental Health statute, district court should have appointed an attorney to represent petitioner as in Souder v. McGuire, C.A.3 (Pa.) 1975, 516 F2d 820. (Telran prong two)

17. Even when indigent prisoners' request appointment of counsel in civil proceedings against Tennessee Department of Correction would be Approved, where prisoners' allegations raised any constitutional issues. See McMath v. Alexander, D.C. Tenn. 1980, 486 F. Supp. 156. (Telran prong two)

18. Not appointing counsel in this case prior to service, obstructs justice for timely, equal, effective, meaningful, capable, and adequate access, all a part of 'legal' access, to the equal protection clause of this land and due process, doing harm to Mr. Hartmann and classes he represents which is abuse of discretion.

#. District court sayed facts are underdeveloped, (Telran prongs one and two) in its Orders; and Mr. Hartmann is also handicapped by indigency and incarceration and the gross mismanagement of this state facility and its failure to follow the laws of the land as if these Defendants, et. al. are excempt. Thus, since handicaps, obstructions and disabilities obviously deny due process in this case, appointment of attorney is required to avoid violation thereof. See, ie., Lassiter v. Dept of Social Services, 101 S. Ct. 2153 (1981).

~4~

Reply To District Court's Memorandum Order, pg 20, about Appointment
of Counsel, issue IV.

19. It does NOT make rational common sense that counsel in this case
is NOT yet appointed at the pre-claims stage with a Complaint with many
constitutional violations alone. A citizen can NOT be expected to, bring proper
claim even Constitutional violation by Defendants. The official oppression,
abuse of authority, abuse of process, and so many more violations of the 1st, 5th,
6th, 8th, and 14th Amendment of the United States Constitution since December
1999 at the Delaware Correctional Center in Complaint so far, is atrocious.

20. The specially arbitrary, capricious or discriminatory conduct by Defendants
causes substantial prejudice to Mr. Heitmann and classes. Thus, without
timely assistance as needed, already prejudiced and discriminated against
Mr. Heitmann, and class of one, because He is indigent, and for the other reasons
of obstruction and disabilities.

21. If an indigent plaintiff cannot bring a claim in an arguable merit in
fact and law in a legal manner, (Tabron prongs one and two) timely, equally, effectively, meaningfully, capably,
and adequately as the non-indigent or represented can because they have money
obviously shows that justice is for sale in violation of the Constitution.

22. Therefore, Tabron v. Grace, 6 F3d 147, 156, ruling must now be
improved, updated and corrected for choosing when appointment of counsel is
proper. 'After a finding that a plaintiff's claim has arguable merit in
fact and law,' discriminates and prejudices against those handicapped or
the disabled to bring a legally sufficient claim in a timely, equal, effective,
meaningful, capable and adequate manner for legally sufficient access
to the courts in that manner. Thus, a plaintiff must be legally able in a
legal manner to bring their claim to allow appointing counsel later.

-5-

23 . Thus, there are many legal precedence why counsel should have been appointed in this case. Failure to appoint earlier is a set-up to not be able to bring all claims and continue the atrocities at this facility and in this State. That prejudice and discrimination has caused damages to class members.

24 . Thus, denial of counsel so far has an appearance of prejudice and discrimination towards Mr. Hartmann, and the classes He is in.

Issue V - Motion for Relief from Service of copies on Defendants and others; was denied by District Court wrongfully. (Talron prong six relation).

26 . That ruling prejudices and discriminates, for equal protection of the law-atleast, against indigents like Mr. Hartmann, as further explained in Complaint.

26 . Ruling discriminates against indigent plaintiffs of the Delaware Department of Corrections, as Wards of the State, to have to choose between other necessities of life illegally, continually denied here by Snyder, Carroll, Howard, Taylor who should know the laws of the land for inmates, but continuously fail to uphold them with deliberate indifference to them and the harm they cause if NOT upheld, to provide necessities of life.

27 . One claim that is in Complaint needs uphold, somehow now for relief, maybe injunction, because of the irreparable damage caused by not being able to bring, mail, and supply copies as generally required under normal circumstances where laws are upheld, when state, for example, must provide free legal postage and supplies for indigents by law. Which is still NOT being done here at Delaware Correctional Center; a necessity of life as a Ward of the State.

28 . Mr. Hartmann, and as classes of one, who are unrepresented so far

-6-

are prejudiced and discriminated against because He is unable to bring a Complaint with all its claims in a legal manner, in a briefest possible manner without having a claim, causing harm, being dismissed, and then having sufficient money to mail and supply as needed, and also having to choose among necesities of life, as legally defined.

Mr. Hartmann had no choice to bring the Petition in less ~~than~~ pages to prevent dismissal of any claim, but several were still found so far to be insufficient. Thus, Mr. Hartmann and class members are discriminated against because of His inabilities, handicaps, ▓▓▓▓▓▓ (Telvon prong one and two). Legal conciseness is a skill and capability that Mr. Hartmann does not have, and should NOT be expected to have for equal access to the laws (Telvon prong one and two). Thus, He and His class members are discriminated ~~▓▓▓▓▓~~ against to have to mail such amount of pages to ▓▓ the court and other mail because of the handicaps and disabilities. (Telvon prong one and two).

Thus, financial status; in this case; obstructs justice, denys due process and equal protection of the laws of the land, which is surely not legal.

Thus, imminent obstruction of justice and oppression under color of law by Defendants Little, ~~Hartman~~, Carroll, Howard, Taylor by not providing legal postage and supplies as precedent law has already established, and necesities of life for its Wards of the State, as stated to be shown in Complaint. Or however this, and other claims, have to be legally stated. (Telvon prongs one and two).

Issue VI.—Motion for Injunctive Relief

29. Due to denial of any injunction for even irreparable damages to Plaintiff, and as classes of one, counsel should have been appointed for timely, equal, effective, meaningful, capable, and adequate injunctions, and equal protection of the laws to ~~stop the~~ damages being done.

30. Thus, due to Mr. Hartmann's inability to bring ~~a~~ proper, imminent

—7—

damage claim in a legal manner, He and as classes of one, are NOT receiving equal protection of the laws, and due process. (Talron prongs one and two)

<u>Reply to District Courts Denial of Reconsideration to Appointment of Counsel</u> dated October 13, 2006:

31. For clear error of law or fact and manifest injustice was caused by failures to appoint counsel so far, and by NOT ruling by law from Mr. Hartmann's motions:

    A. <u>Motion For Appointment of Counsel</u>

    B. <u>Civil Complaint</u>

    C. <u>Amendment To Motion For Appointment of Counsel</u>

<u>Legal reasons why counsel should have been appointed:</u>

32. Counsel appointment is needed for this case for clarification and refinement of claims [as seen and not yet seen by District Court] so as to allow court to fairly, [on equal footing] to evaluate claims, and [as one can see in Complaint], there is substantial uncertainty as to Petitioners ability to adequately present arguments before the court. See _____, 214 F. Supp 2d 53. (Talron prongs one, two)

33. Counsel should have been appointed in this case, the denial of which has already caused legal injuries and continues to add to mental and physical injuries caused by Defendants,

34. Appointment would have prevented further deprivation of physical liberties, and the private, personal, and family interests at stake of that protected class.

35. Counsel should have been appointed for inmates competency to try case and to untangle medical and legal questions. See 28 U.S.C, A §1915 (e)(1). (Talron prongs one and two).

-8-

36. Because of issues herein, denying counsel would further result in fundamental unfairness infringing on due process rights. 28 U.S.C.A § 1915(e). Due to handicaps, obstructions, and disabilities, anyone of them being legally sufficient for appointment. But since petitioner is unrepresented, has to jump more hoops for obvious prejudice and civil rights violation.

37. There is an absolute right to counsel for indigent civil defendants. See Pedram Ben-Cohen, Public Civil Defenders: A Right to Counsel for Indigent Civil Defendants, 10 Geo. J. on Poverty L. & Pol'y 1 (2003). Mr. Hartmann is being obstructed to this kind of information (above one and two) for obstruction of justice, due process and equal protection of the laws.

38. Indigent inmate asserting federal civil rights claim against Department of Corrections Officers was entitled to appointment of counsel, to cure flaws in complaint and shortfalls in evidentiary proof, inmate lacks ability to manage case effectively on his own, and complexity of legal issues is considerable. See Hendricks v. Coughlin, C.A.2 NY 1997, 114 F3d 390; (above one and two).

39. Appointment is necessitated by state's position on alleged case is NOT well settled. See Madron v, 650 F2d at 887.

40. Court states in United States v. Mac Donald, 98 S. Ct. at 1552. that, impairment of bringing claims is an important factor in judging whether a speedy trial violation has occurred, which includes timely appointment of counsel as needed, as a denial of a Motion to Dismiss on speedy trial grounds is NOT separable from the issues at trial. Thus, Mr. Hartmann and class members are prejudiced by NO counsel due to illegal conditions out of their control due to handicaps, obstructions, and disabilities to information and the courts with their claims and

-9-

contemplated claims to bring them in a timely, meritorious way. (Talron one and two)

41. When a petitioner is under mental disability, due process and equal protection clauses require that court make arrangements for timely, equal representation even when civil complaint application is NOT properly brought. USCA, CA14, (Talron one and two).

42. With the entry of counsel, all aspects of the underlying cause of action could be clarified. See Lopez V. Beto, 92 S. Ct. 1014 (1972), and the proper parties could be brought before the court. See Bivens V. Six Unknown Named Agents of the Federal Bureau of Narcotics, 91 S. Ct. 1999, n. 2 (1971). (Talron one and two).

43. The security problems in prisoner cases undoubtedly presents a problem which the appointment can help alleviate. See United States v. Madden, 352 F2d 792, 793 at n.1 (9th Cir 1965); also Ballard V Spradly, 557 F2d 476 (5th Cir. 1977). Alleged security problems created illegally to information and the courts access. And disabilities caused by Defendants named. (Talron prong one).

44. The McFarland Court emphasized that a petitioner's need for the assistance of counsel [in a timely manner] in avoiding the pitfalls of heightened pleading requirements, the doctrines of procedural default and waiver, or summary dismissal. Given these traps for the [ citizen ], the Court found that providing counsel prior to the filing of a motion was the only way to make the provision of counsel meaningful. See Calderon V. United States District Court, 98 F3d 1102, at 1108 (9th Cir 1992). As should have been done in Hartmann's and clases case, prior to filing amended Complaint.

-10-

45. Actual or constructive denial of assistance of counsel is legally presumced to result in prejudice. See Strickland v. Washington, 104 S.Ct. 2052.

46. District court had access to all these cases, and more, but yet chose to not follow them showing prior prejudice, discrimination intent to derail this case when so many violations, prove, are against the law by Defendants working under conspiracy and corruption as organized crime in state government to deprive the citizens equal protection of the laws and due process.

47. Thus, these relatively possible 'long' briefs that this citizen has to bring due to District Court's inability to do its legal research and thus prejudice, failures to appoint counsel in time, which a court knows, will cause accummulative legal errors to eventually obstruct justice. All these copying costs, mailing and supplies costs, people-hours, and unnecessary work would NOT be required if District Court ruled by law and ethics in the first place. This violates due process and equal protection of the laws, atleast, under the 14th Amendment. It caused this appeal and more work for this Circuit Court which would NOT have to be.

48. Since there is a discrepancy to appoint counsel for this case, counsel should have been appointed to represent a citizen and classes on this discrepancy among the courts. See _____, 357 F.3d 197. USCA, CA 1, 5, 6, 8, 14. Other Tabron prongs in Mr. Hartmann's motion.

Relief Requested on page 2.              Respectfully submitted,

Dated: October 24, 2006              _Detlef Hartmann_ , DETLEF F. HARTMANN

                                      SBI No. 229843

                                      D.C.C., 1181 PADDOCK RD, T2-10

                                      Smyrna, DE 19977-3474

                              —11—

- Mr. Hartmann does not have timely, equal, effective, meaningful, capable, and adequate access to necessary resources like typewriter, telephone, and computer as Defendants have. See Parham v. Johnson, 126 F3d 454, issue 6; 28 U.S.C.A. §1915; citing Rayes, 969 F2d at 703-04.

- This District courts newly, personally created hurdle is not required under §1915(e)(1). 'After service.' Nothing in the clear language of §1915 (e)(1) suggests that an appointment is permissible only in some limited set of circumstances.

- This District Court provided no rationale of its denial of counsel besides some general, conclusionary allegation unfounded and not described. An appearance of prejudice.

- Since unrepresented, District Court failed to uphold all rights, privileges, and immunities of Petitioners, which it took responsibility for when leaving a citizen timely, equally, effectively, meaningfully, capably, and adequately represented for due process and equal protection of the laws, under the Constitution.

- This District Courts standard procedure to wait for appointment till after service obstructs justice, and denies due process and equal protection of the laws to those, like Petitioner, handicapped, obstructed, and disabled.

- Counsel should be appointed when demonstrating likelihood of substantial prejudice, ie., without counsel to present facts and laws to court [pre-Amendment stage] in a complex but arguably meritorious case. See Smith-Bey v. Petsock, 741 F2d 22, 26 (3d Cir 1984). 28 U.S.C.A §1915(d). 42 U.S.C.A. § 1988. USCA, CA 6.

Dated: October 25, 2006

−10−

I/M Detlef Hartmann
SBI# 229843  UNIT: T-1-0
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977



Legal Mail

Office of the Clerk
United States District Court
844 N. KING Street, Lockbox 18
WILMINGTON, DE
19801-3570



**U.S. Department of Justice**
Office of Justice Programs
*Office for Victims of Crime*

# First Response to Victims of Crime Who Have a Disability

#### October 2002

A Handbook for Law Enforcement Officers
on How To Approach and Help Crime Victims

Who Have
Alzheimer's Disease
Mental Illness
Mental Retardation

Or Who Are
Blind or Visually Impaired
Deaf or Hard of Hearing

---

**U.S. Department of Justice**
**Office of Justice Programs**
810 Seventh Street NW.
Washington, DC 20531

**John Ashcroft**
*Attorney General*

**Deborah J. Daniels**
*Assistant Attorney General*

**John W. Gillis**
*Director, Office for Victims of Crime*

---

NCJ 195500

 Order this OVC publication using the
NCJRS Online Ordering System.

This handbook was prepared by the
National Sheriffs' Association under
grant number 97–VF–GX–0002,
awarded by the Office for Victims of
Crime, Office of Justice Programs,
U.S. Department of Justice. The
opinions, findings, and conclusions
expressed in this document are those
of the author and do not necessarily



PDF File

## Contents:

Message From the Director

Acknowledgements

I. Basic Guidelines on First Response to
Victims of Crime Who Have a Disability

II. Americans with Disabilities Act of 1990
and Section 504 of the Rehabilitation Act of
1973

III. Crime Victims Who Have Alzheimer's
Disease

IV. Crime Victims Who Have Mental Illness

V. Crime Victims Who Have Mental
Retardation

VI. Crime Victims Who Are Blind or
Visually Impaired

VII. Crime Victims Who Are Deaf or Hard
of Hearing

VIII. Directory of Service Providers

For More Information

Back to Publications

# I. Basic Guidelines on First Response to Victims of Crime Who Have a Disability

## Background

Anyone can be victimized by crime. But people who have a disability can be more vulnerable to victimization than others in society. People with a mental impairment can be less able to recognize and avoid danger, and people with a physical impairment can be less able to protect themselves or escape harm. Furthermore, victims of crime who have a disability can be less able to contact law enforcement and, without disability accommodations, help in the investigation of their victimization.

One out of five people in the United States has a mental or physical impairment, and the disability is severe for half of this population. These disabilities come in many forms but all affect either a person's mental functioning, such as the ability to reason and exercise good judgment, or a person's physical abilities, such as the ability to see and hear.

Numerous research studies indicate that the risk of criminal victimization for people with a disability is much higher than for people without disabilities. In addition, people who have a disability are often victimized repeatedly by the same perpetrators. Yet, most of the issues that confront victims who have a disability are issues that affect all crime victims.

The way victims cope depends largely on their experience following the crime. As a law enforcement officer, you are usually the first official to interact with victims. For this reason, you are in a unique position to help victims cope with the trauma of the crime and restore a sense of security and control over their lives.

The circumstances of a crime dictate when and how responding officers are able to first address victims and their needs. You may have to juggle many other tasks, such as securing the crime scene, determining and calling for emergency medical services, advising other public safety personnel on their arrival, collecting evidence, and interviewing witnesses at the scene. Apprehending offenders is the law enforcement officer's primary duty and, as a result, first responders may not be able to respond to victims as quickly as they would like.

As soon as the responding officer's most urgent tasks have been completed, however, attention can be directed to crime victims and their needs. At that point, how you approach victims, explain your competing law enforcement responsibilities, and work with victims is crucial to their recovery. Always remember that you are there for each victim. Crime victims are not just witnesses for you.

By responding to victims appropriately and compassionately, the law enforcement officer is also more likely to gain their trust and cooperation. As a consequence, victims are more willing to provide detailed information about the crime to the officer and later to investigators and prosecutors, which, in turn, leads to the conviction of more criminals.

Finally, although most issues that crime victims who have a disability confront are concerns that affect crime victims in general, there are still important differences in how to approach and help victims with a disability. The information presented in this handbook illustrates some of these differences and how to better serve all crime victims.

## General Tips on Responding to Crime Victims Who Have a Disability

A lack of personal familiarity with individuals who have a disability may cause you to feel

professionally awkward and uncertain in your response to victims of crime with disabilities. On the other hand, a person's impairment may not be obvious, so watch victims carefully for signs of any disability. You should also not be hesitant to ask victims if they have any individualized needs because of a mental or physical impairment. In short, as the first response officer, you can promote effective communication, reduce your anxieties, and best serve victims by observing these guidelines:

- Rethink your attitude about people who have a disability (the negative attitudes of others are sometimes their greatest impairment).

- Consider that a person with a substantial disability may be healthier than you.

- Be careful not to label or define people by their impairment. For example, referring to the victim as "a disabled woman" rather than saying the victim is "a woman with a disability" can convey the image of a person who is primarily disabled and secondarily a woman. Similarly, it is better to say "the victim has schizophrenia" or "the victim has a mental illness" rather than "the victim is a schizophrenic" and "the victim is a male with blindness" is better than "the victim is a blind man." In other words, the person *has* an impairing condition, not the person *is* that condition.

- Ask victims how they wish to be characterized and how you can communicate with them most effectively. Your respect and sensitivity will ensure that the words you use and accommodations you make are appropriate, not detrimental. The presence of someone familiar to victims or a person knowledgeable about their impairment may also be extremely important for victims and helpful during your interview. But recognize that family members, service providers, and others could be the offenders or could protect the offenders. The presence of these people, therefore, may inhibit victims from fully describing the crime to you for fear of retribution.

- Do not act on your curiosity about the victim's disability. Restrict your questions to those necessary to accommodate the victim's needs.

- Avoid expressing pity with phrases such as "suffering from" Alzheimer's disease and "a victim of" mental illness.

- Speak directly to victims, even when they are accompanied by another person. People who have a disability are sometimes assumed to be incapable of making decisions for themselves.

- Listen to your tone of voice and monitor your behavior to avoid talking down to victims, coming across in a condescending manner, or treating victims as children.

- Do not express admiration for the abilities or accomplishments of victims in light of their disability.

- Be mindful of the underlying painful message communicated to victims by comments such as "I can't believe they did this to someone like you"; "She's disabled and he raped her anyway"; or "To steal from a blind man. That's got to be the lowest." The message is that one considers people who have a disability as "less than" complete human beings.

- Document victims' disability in your incident report and their individualized (1) communication, (2) transportation, (3) medication, and (4) other accommodation needs.

- Ensure that victims are in a safe environment before leaving the scene. Again, recognize that family members, service providers, and others could be the offenders and that an

alternate caregiver or shelter may be needed for victims. Contact a victim advocate whenever possible for victim services and followup.

- Never assume that people with disabilities somehow suffer less emotional trauma and psychological injury than other crime victims.

- Remember that federal law (see section II) requires—with few exceptions—that law enforcement make reasonable modifications to policies, practices, and procedures where needed to accommodate crime victims who have a disability, unless doing so would fundamentally alter the service, program, or activity the agency provides.

Previous          Contents          Next

*First Response to Victims of Crime Who Have a Disability*          October 2002

This document was last updated on December 28, 2004

# II. Americans with Disabilities Act of 1990 and Section 504 of the Rehabilitation Act of 1973

Two federal laws—the Americans with Disabilities Act of 1990 (ADA) and Section 504 of the Rehabilitation Act of 1973—prohibit discrimination on the basis of a disability. Title II of ADA applies to state and local government entities, while Section 504 applies to recipients of federal financial assistance, including recipients of grants from the U.S. Department of Justice (DOJ).

An individual with a disability is defined by ADA and Section 504 as a person who (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment.

Both Title II of ADA and Section 504 require—with few exceptions—that first responders provide victims of crime who have a disability with an equal opportunity to benefit from and participate in all programs, services, and activities of the law enforcement agency. In addition, first responders must provide for equally effective communication to victims with a disability. Law enforcement, therefore, is required to make reasonable modifications to policies, practices, and procedures where needed to accommodate crime victims who have a disability, unless doing so would fundamentally alter the service, program, or activity the agency provides.

For more information about your responsibilities under ADA and Section 504, call DOJ's ADA Information Line at (800) 514–0301 or DOJ's Office of Justice Programs at (202) 307–0690.

Previous        Contents        Next

*First Response to Victims of Crime Who Have a Disability*                    October 2002

This document was last updated on December 28, 2004

# III. Crime Victims Who Have Alzheimer's Disease

## Background

Alzheimer's disease breaks down the connections between nerve cells in the brain. Outward signs of the disease may not be apparent in a person until the disease reaches its advanced stages. Initially, Alzheimer's causes one to forget recent events or familiar tasks. Eventually, people with the disease are unable to care for themselves.

First responders may observe the following common symptoms in people with Alzheimer's disease:

- Use of nonsensical words in speaking.

- Disoriented sense of time and place.

- Wandering or becoming lost and not knowing where one lives.

- Blank facial expression.

- Poor judgment. For example, wearing winter clothes in summer or a nightgown to go shopping.

- Rapid mood swings for no apparent reason.

- Walking manner characterized by slow, sliding movements without lifting the feet.

Although the disease can occur during a person's 30s, 40s, and 50s, most people with Alzheimer's disease are older than 65. Ten percent of people over age 65 and nearly 50 percent of those over 85 have the disease. The vast majority of these people live in the community, not a caregiving facility. Thus, as the elderly are the fastest growing U.S. age group, the number of people with Alzheimer's disease is increasing, as is the likelihood that you will encounter victims who have this disability.

## Tips on Responding to Crime Victims Who Have Alzheimer's Disease

Approach victims from the front and establish and maintain eye contact (when you know in advance that the victim has Alzheimer's disease). Introduce yourself as a law enforcement officer and explain that you have come to help. Due to their impaired short-term memory, victims may repeatedly ask who you are. Thus, you may need to reintroduce yourself several times.

- Ask for identification if you suspect that victims have Alzheimer's disease. In addition, observe for a *Safe Return* bracelet, necklace, lapel pin, key chain, or label inside their clothing collar. *Safe Return* identification provides the first name of a person bearing this ID, indicates that he or she has a memory impairment, and gives the 24-hour toll-free number for the Alzheimer's Association's *Safe Return Program*. The program includes a nationwide participant registry that contains the full name of the registrant, a photograph, identifying characteristics, medical information, and emergency contact information. When you call the program's crisis number at (800) 572–1122, a *Safe Return* clinician will contact the registrant's caregivers.

- Treat victims with dignity. The deterioration of their mental abilities does not mean victims are without feelings.

- Remove victims from crowds and other noisy environments as this can cause restlessness, pacing, agitation, and panic in people with Alzheimer's. Also, turn off your car's flashing lights and lower the volume on your radio.

- Establish one-on-one conversation. Talk in a low-pitched, reassuring tone, looking into the victim's eyes. Alzheimer's shortens attention span and increases suspicion. Your calm support can make victims less agitated and panicked. Speak slowly and clearly, using short, simple sentences with familiar words. Repeat yourself. Accompany your words with gestures when this can aid in communication, but avoid sudden movements.

- Include victims in all conversations, out of respect and so you will not arouse their suspicion.

- Explain your actions before proceeding. If victims are agitated or panicked, gently pat them or hold their hand, but avoid physical contact that could seem restraining.

- Expect difficulties making yourself understood. Do not assume victims understand you or are capable of answering your questions and complying with your instructions.

- Give simple, step-by-step instructions and, whenever possible, a single instruction. For example, "Please sit here. I'll take care of everything." Avoid multiple, complex, or wordy instructions, such as: "Please sit here, don't get up or go anywhere, and wait for me to come back." Also, substitute nonverbal communication by sitting down if you want victims to sit down.

- Ask one question at a time. "Yes" and "no" questions are better than questions that require victims to think or recall a sequence of events. Be prepared for answers that are confusing and keep changing. If victims' words are unintelligible, ask them to point, gesture, or otherwise physically communicate their answer.

- Never argue with victims or challenge their reasoning.

- Do not leave victims alone; they may wander away.

- When victims' caregivers are located, encourage them to contact the *Safe Return Program's* nonemergency number at (888) 572–8566 to register victims not already listed in the program's registry.

- Find emergency shelter for victims with the help of a local Alzheimer's Association chapter if no other caregivers can be found.

Previous          Contents          Next

---

*First Response to Victims of Crime Who Have a Disability*          October 2002

This document was last updated on December 28, 2004

# IV. Crime Victims Who Have Mental Illness

## Background

Mental illness encompasses a number of distinct brain disorders—such as manic-depressive illness, schizophrenia, major depression, and severe anxiety—that disrupt a person's mood balance, thought processes, memory, sensory input, feelings, and ability to reason and relate to others. More than 7 million adults and 5 million children in the United States have severe mental illness which diminishes their capacity to meet the ordinary demands of life.

Mental illness should not be confused with mental retardation. People with mental illness are usually of normal intelligence but may have difficulty functioning at normal levels due to their illness.

Symptoms of mental illness vary from individual to individual depending on the type and severity of the disorder. Many symptoms are not readily observable from outward appearances but are noticeable in conversation. Although the first responder cannot be expected to recognize specific types of mental illness, the following symptoms are indicative that a victim may have mental illness:

*My symptoms*

- Accelerated speaking or hyperactivity.

- Delusions and paranoia. For example, false beliefs that one is a famous person or that others are trying to harm one.

- Hallucinations, such as hearing voices or seeing, feeling, or smelling imaginary things.

- Depression.

- Inappropriate emotional response. For example, silliness or laughter at a serious moment.

- Unintelligible conversation.

- Loss of memory. Not ordinary forgetfulness, but rather an inability to remember the day, year, or where one is.

- Catatonia, which is characterized by a marked lack of movement, activity, or expression.

- Unfounded anxiety, panic, or fright, *just by hearing threats to anyone. Defensive mode taken for attempted prevention of brain freeze.*

- Confusion. *due to lack of memory.*

Anyone who is a crime victim may be traumatized and experience one's victimization as a crisis. For people with mental illness, this crisis may be experienced more profoundly. The following guidelines can help you respond to victims who have mental illness.

## Tips on Responding to Crime Victims Who Have Mental Illness

- Approach victims in a calm, nonthreatening, and reassuring manner. Victims may be overwhelmed by delusions, paranoia, or hallucinations and may feel threatened by you or afraid of you. Introduce yourself personably by name first, then your rank and agency. Make victims feel they are in control of the situation.

- Determine whether victims have a family member, guardian, or mental health service provider who helps them with daily living. Contact that person immediately.

- Contact the local mental health crisis center immediately if victims are extremely agitated, distracted, uncommunicative, or displaying inappropriate emotional responses. Victims may be experiencing a psychiatric crisis.

- Ask victims if they are taking any medications and, if so, the types prescribed. Make sure victims have access to water, food, and toilet facilities because side effects of the medications may include thirst, urinary frequency, nausea, constipation, and diarrhea.

- Conduct your interview in a setting free of people or distractions upsetting to victims. If possible, only one officer should interview victims.

- Keep your interview simple and brief. Be friendly and patient and offer encouragement when speaking to victims. Understand that rational discussion may not be possible on some or all topics.

- Be aware that victims experiencing delusions, paranoia, or hallucinations may still be able to accurately provide information outside their false system of thoughts, including details related to their victimization and informed consent to medical treatment and forensic exams.

- Avoid the following conduct in your actions and behavior with victims:

  o Circling, surrounding, closing in on, or standing too close.

  o Sudden movements or rapid instructions and questioning.

  o Whispering, joking, or laughing in their presence.

  o Direct continuous eye contact, forced conversation, or signs of impatience.

  o Any touching, *liked, but not the unexpected type.*

  o Challenges to or agreement with their delusions, paranoia, or hallucinations.

  o Inappropriate language, such as "crazy," "psycho," and "nuts."

- Back off and allow victims time to calm down before intervening if they are acting excitedly or dangerously and there is no immediate threat to anyone's safety. Outbursts are usually of short duration.

- Break the speech pattern of victims who talk nonstop by interrupting them with simple questions, such as their birth date or full name, to bring compulsive talking under control.

- Do not assume that victims who are unresponsive to your statements cannot hear you. Do not act as if they are not present. Be sensitive to all types of response, including a victim's body language. *Brain freeze.*

- Understand that hallucinations are frighteningly real to victims. Never try to convince victims that their hallucinations do not exist. Rather, reassure victims that the hallucinations will not harm them and may disappear as their stress lessens.

- Acknowledge paranoia and delusions by empathizing with victims' feelings but neither agree nor agitate victims by disagreeing with their statements. For example, if victims state that someone wants to harm them, reply with: "I can see that you're afraid. What can I do to make you feel safer?" Recognize also that victims who state that others are trying to harm them may be the victims of stalking or other crimes.

- Continually assess victims' emotional state for any indications that they may be a danger to themselves or others.

- Be honest with victims. Getting caught by victims in your well-intentioned deception will only increase their fear and suspicion of you.

- Provide for victims' care by a family member, guardian, or mental health service provider before leaving them.

Previous          Contents          Next

*First Response to Victims of Crime Who Have a Disability*                    October 2002

This document was last updated on December 28, 2004

# VIII. Directory of Service Providers

**The Office for Victims of Crime takes no responsibility for, and exercises no control over, the organizations, views, accuracy, copyright or trademark compliance, or legality of the material contained on the Web sites linked below.**

### Alzheimer's Disease

Alzheimer's Association
(800) 272–3900; (312) 335–8882, TTY
www.alz.org

Alzheimer's Association's *Safe Return Program*
Crisis Line: (800) 572–1122; (314) 647–5959, TTY
Nonemergency Line: (888) 572–8566; (888) 500–5759, TTY
www.alz.org/Services/SafeReturn.asp#how

### Americans with Disabilities Act of 1990 and Section 504 of the Rehabilitation Act of 1973

Americans with Disabilities Act Information Line
(800) 514–0301; (800) 514–0383, TTY
www.usdoj.gov/crt/ada/adahom1.htm

Office of Justice Programs
U.S. Department of Justice
(202) 307–0690; (202) 307–2027, TTY

### Blindness or Visual Impairment

American Council of the Blind
(800) 424–8666
www.acb.org

American Foundation for the Blind
(800) 232–5463; (212) 502–7662, TTY
www.afb.org

### Deafness or Hard of Hearing

National Association of the Deaf
(301) 587–1788; (301) 587–1789, TTY
www.nad.org

National Institute on Deafness and Other Communication Disorders
(800) 241–1044; (800) 241–1055, TTY
www.nidcd.nih.gov

Registry of Interpreters for the Deaf
(703) 838–0030; (703) 838–0459, TTY
www.rid.org

### Mental Illness

National Alliance for the Mentally Ill
(800) 950–6264; (703) 516–7227, TTY

www.nami.org

Depression and Bipolar Support Alliance
(formerly the National Depressive and Manic-Depressive Association )
(800) 826–3632
www.DBSAlliance.org

Treatment Advocacy Center
(703) 294–6001
www.psychlaws.org

## **Mental Retardation**

American Association on Mental Retardation
(800) 424–3688
www.aamr.org

National Down Syndrome Congress
(800) 232–6372
www.ndsccenter.org

The Arc of the United States
(800) 433–5255
www.thearc.org

## **Other National Victim Resources**

Battered Women's Justice Project
(800) 903–0111
www.bwjp.org

Childhelp USA/Forrester National Child Abuse Hotline
(800) 422–4453; (800) 222–4453, TTY
www.childhelpusa.org

Family Violence Department's Resource Center on Domestic Violence: Child Protection and
Custody
(800) 527–3223
http://nationalcouncilfvd.org

Family Violence Prevention Fund/Health Resource Center
(888) 792–2873; (800) 595–4889
www.endabuse.org

Mothers Against Drunk Driving
(800) 438–6233
www.madd.org

National Center for Missing and Exploited Children
(800) 843–5678; (800) 826–7653, TTY
www.ncmec.org

National Center for Victims of Crime
(800) 394–2255; (800) 211–7996, TTY
www.ncvc.org

National Children's Alliance

(800) 239–9950
www.nca-online.org

National Clearinghouse for Alcohol and Drug Information
(800) 729–6686; (800) 487–4889, TTY; (800) 735–2258, TTY Relay Service
www.health.org

National Clearinghouse on Child Abuse and Neglect Information
(800) 394–3366
http://nccanch.acf.hhs.gov/

National Coalition Against Domestic Violence
(800) 537–2238; (800) 553–2508, TTY
www.ncadv.org

National Criminal Justice Reference Service
(800) 851–3420; (877) 712–9279, TTY
www.ncjrs.org

National Domestic Violence Hotline
(800) 799–7233; (800) 787–3224, TTY
www.ndvh.org

National Fraud Information Center
(800) 876–7060
www.fraud.org

National Organization for Victim Assistance
(800) 879–6682
www.try-nova.org

Office for Victims of Crime Resource Center
(800) 627–6872; (877) 712–9279, TTY
www.ojp.usdoj.gov/ovc/ovcres

Parents of Murdered Children
(888) 818–7662
www.pomc.org

Rape, Abuse & Incest National Network
(800) 656–4673
www.rainn.org

Previous          Contents          Next

---

*First Response to Victims of Crime Who Have a Disability*          October 2002

This document was last updated on June 06, 2005