In The United States District Court
For The District of Delaware

Detlef F. Hartmann, and              Civ. No. 06-340-MPT
as one of classes, Plaintiff,
          vs.
Maybee-Freud, et.al.,
Defendants.

<u>Motion To Correct Case Caption</u>

Request this Honorable Court accept the corrected Caption as shown
on Following <u>Amendment to Complaint</u> coverpage.

                              Sincerely Yours,

Dated: May 25, 2007           [signature]

                              S.B.I. No. 229843
                              Delaware Correctional Center
  06CV340 ***                 1181 Paddock Rd, T2-10
  FILED                       Smyrna, DE 19977

  JUN - 7 2007
  RC SCAN
  U.S. DIST. OF COURT
  DISTRICT OF DELAWARE

In the United States District Court
For the District of Delaware

Detlef F. Hartmann,
    Plaintiff,

       V.

Jane Brady, Stanley Taylor, Paul Howard,
James Welch, Robert Snyder, Thomas Carroll,
Elizabeth Burris, David Pierce, Francine
Kobus, (Mike) Little, Edward Johnson, (John)
Melbourne, (Jane) Thompson, Michael McCreana,
Lise M. Merson, R. Vargas, Evelyn Stevenson,
Nikita Y. Robins, Janet Laban, (John) Maloney,
(Jane) Alie, Deborah Rodweller, Gail Eller,
Oshenka Gordon, Brenda Heddinger, Nancy (Doe),
R. W. (Doe IV), Thoma (Doe), Larry A. Linton,
Kimberly Weigner, Anthony R. Cannuli, (J. Doe I to XLV),
Joyce Talley, Carl Hazzard, (J.) Henry, Kent County Division
of Family Services, Delaware Secretary and Commissioner, Board and/or Council, for
American Disabilities Act and Rehabilitation Act Defendants:
Department of Corrections, Delaware Correctional Center,
State of Delaware, State Department of Public Libraries,
Delaware Department of Justice, Delaware Center For Justice,
Kent County Delaware,

    C.A. No. 06-340-MPT

    Civil Rights
    Complaint
    42 U.S.C. §1981,
    1983, and others
    to be determined,
    American Disabilities

    Act 42 U.S.C. p
    12101 et seq.,
    Bivens Actions,
    Rehabilitation Act

    Mental Health,
    Children and
    Their Families,
    Corrections,

Amendment To Civil Complaint
Dated June 5, 2007

Case Considerations Requests For This Court

Of course, legal counsel is needed if any claim needs to be restated in proper, legal manner, since citizens, can NOT be expected to be lawyers also. Preliminary dismissal of any claim ~~word~~ before consultation with counsel would be denying equal access to the laws of the land, and for laws to be equally upheld for all citizens by a neutral and objective professional without a conflict of interest, experienced and educated in this field of law.

Legal guidance needed on how to properly make these claims for due process and equal protection of the laws to accomplish the intentions for which the laws have not been upheld.

May this Honorable Court be reminded of pro se citizens papers be interpreted to make the strongest argument possible.

Need Court assistance until counsel is appointed in the interest of justice for All.

Legal assistance is need from this Court to properly, legally state any claim. For technicalities in wording obstruct Justice for classes involved, and Myself.

—3—

**Page    NO.    Topic**

**Start    Claim**

### TABLE OF CONTENTS

| | | |
|---|---|---|
| 1 | - | Caption |
| 2 | - | Case Considerations |
| 5 | - | Table of Contents |
| 7 | - | Jurisdiction, Venue, Plaintiff and as Member of Classes, Defendants |
| 19 | - | Defendants Employers, Place of Employment |
| 23 | - | Defendants Addresses |
| 25 | - | Reply to Judge Jordan's Memorandum Order Dated Aug 21, 2006 |
| 35 | - | Reply to Judge Thynge Memorandum Order Dated May 9, 2007 |
| 37 | - | Claims Elements for Each Defendant |
| 41 | - | Claims Elements for Each supervisor |
| 45 | 2,19 | Information, Medical and Health |
| 49 | 2,19 | Spinal Cord Injury |
| 53 | 2,19 | Throat Pain and Suffering, Severe |
| 57 | 2,19 | Medical Specialists |
| 59 | 2,4,19 | Allergies |
| 61 | 2,4,19 | Thyroid Disease |
| 67 | 2,19 | Co-pays, Medical |
| 73 | 2,19 | Foot Pain and Suffering, Severe |
| 75 | 2,19 | Medical Records and Vaccinations |
| 77 | 2,4,8,19 | Health Information Personal Privacy Act (HIPPA) |
| 79 | 3,19 | Dental |
| 85 | 2,4,19 | Medications |
| 103 | 2,4,19 | Pharmacist Statute, State |
| 105 | 6,19 | Optometrist |

107    2,4,6,8,19        Nursing Statute, State

111    6,19        Optometry Statute, State

113    8,19        Mental Health

117    8,19        Mental Health Professionals Statute, State

119    8,19        Psychologist Statute, State

121    2,3,6,8,17,19    Funds and Statistics, Government, 42 U.S.C. $ 1981

123    19        Necessities of Life for Indigent Wards of State

125    19        Public Library Services

127    19        Information

143    19        Honor Visits for Wards and Family

145    19        Family Rights and Privileges

153    8,19        Living Space for Wards

157    19        American Disabilities Act and Rehabilitation Act, federal statutes,

State Libraries, Disabilities Law Project, National Association for Protection and

Advocacy Systems

179    19        Classification for Wards

181    19        Copies Fee for Indigent Wards

183    19        Word Processor and Accessories – New Modern Precedence

189    19        Mail Postage and Supplies for Indigent Wards

195    19        State Mail for Wards

197    17,19    Mail Censorship

201    19        Grievance System for Dept of Corrections, Delaware Center for

Justice

207    19        Nutrition and Food

209    19        Dietician and Nutritionist Statute, State

211    8,19        Protective Custody in Delaware Correctional Center

215    19        Legal Materials, Access to Courts Rights, 42 U.S.C. $ 2068

217    19        Water Safety Act, Federal

219    8,19        Searches and Seizure, Cells

221    19        Claims Elements for Claims in 19

223    2,3,6,8,12,17,19        Standards for Prisons, Dept. of Justice, Federal

**242    2,3,6,8,12,17,19        Standards for Criminal Justice, American Bar Association, Legal Status of Prisoners**

**251    19    Business or Profession in Prison by Wards**

**253    19    Incompetence in Office by Defendants**

**255    19    Public Officers and Employees Statute, State**

**257    X    Temporary Restraining Order and/or Preliminary Injunctions**

**259    X    Relief Requested and Needed**

**273    X    Prayer for Relief and Closing**

**275    A    Appendix – Prison Mission Statement**

**277    B    Appendix – Retaliatory States of Mind in State Leadership Sample**

## I. Jurisdiction & Venue

1. This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of law, of rights secured by the Constitution of the United States, and federal "objectives" States must follow under United States Supreme Court Order. The Court has jurisdiction under 28 U.S.C. Section 1331 and 1343(a)(3). Mr. Hartmann seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Mr. Hartmann's claims for injunctive relief are authorized by 28 U.S.C. Section 2283 & 2284 and Rule 65 of the Federal Rules of civil Procedure. Relief for nominal, punitive, and compensatory damages are sought.

2. The District of Delaware is an appropriate venue under 28 U.S.C. Section 1391 (b)(2) because it is where the events giving rise to this claim occurred. This court has supplemental jurisdiction over plaintiffs State law claims under 28 USC § 1367.

## II. Plaintiff and Classes

3. Claintiff DETLEF F. HARTMANN, and as one member of classes below, is and was at all times mentioned herein an inmate of the State of Delaware in the custody of the Delaware Department of Corrections. He is currently confined in the Delaware Correctional Center, By Smyrna, Delaware.

## III. Defendents And Duties Upon Best Information and Belief

4. Defendant, Jane (Brady), was the Attorney General of the State of Delaware, she was legally responsible for upholding all the laws of the land for each inhabitant, and the operation of that office, and this Department of Corrections as all other state agencies, under its jurisdiction, including the Delaware Correctional Center.

5. Defendant, Thomas (Carroll), is the Warden of the Delaware Correctional Center. He is legally responsible for the operation of the Delaware Correctional Center and for the welfare of all inmates of that prison.

6. Defendant, Stanley (Taylor), is the Commissioner of the Delaware Department of Corrections. He is legally responsible for the overall operation of the Department and each institution under its jurisdiction including the Delaware Correctional Center.

7. Defendant, Robert (Snyder), was the Warden of the Delaware Correctional Center. He was legally responsible for the operation of the Delaware Correction Center, before Carroll took over, and for the welfare of all the inmates of that prison.

8. Defendant, Lise M. (Merson), Correctional Officer, Institutional Grievance Officer/Chairperson of the Delaware Department of Corrections who, at all times mentioned in this Complaint, and was assigned to the Delaware Correctional Center for administering all inmate grievances by law.

9. Defendant, Michael (Mc Creanor), Correctional officer, Institutional Grievance Officer/Chairperson and Captain, Head of Security for the Delaware Correctional Center of the Delaware Department of Corrections who, at all times mentioned in this complaint, and was assigned to the Delaware Correctional Center for administering all inmate grievances by law.

10. Defendant, Elizabeth (AKA. Betty) (Burris), is a Deputy Warden of the Delaware Correctional Center. She is legally responsible for the operation of the Delaware Correctional Center and for the welfare of all the inmates of that prison, including legally administering the Department of Correction Grievance Policy.

11. Defendant, David (Pierce), is same as 10. above.

12. Defendant, (J. DOE) (Malaney), Medical Health Services Contractor/Administrator for the Correctional Medical Services Company contracted by the Delaware Department of Corrections Commissioner Taylor for the Delaware Correctional Center Infirmary/Hospital to be operated by law and ethics, medical and government. He is responsible for all inmates receiving legal, proper medical services.

13. Defendants, (J. DOE, I), during different times did same as 12. above.

14. Defendant, Paul (Howard), is the Bureau Chief for the Delaware Department of Corrections. He is legally responsible for the overall operation of the Department, including Grievances, and each institution under its jurisdiction, including the Delaware Correctional Center.

15. Defendants, (J. Does II), during different times did same as 12. above except for working for First Correctional Medical Services Company.

8

16. Defendant, Nancy (DOE) (~~Wilson~~), was a nurse for the medical contractor for the Delaware Department of Corrections who, at all times mentioned in this Complaint, was assigned and working at the Delaware Correctional Center Infirmary, responsible for all medical services for all inmates be provided ethically and legally.

17. Defendant, (J.) (Alice), was a doctor for the medical contractor for the Delaware Department of Corrections who, at all times mentioned in this Complaint, was assigned and working at the Delaware Correctional Center Infirmary, responsible for all medical services for all inmates be provided ethically and legally.

18. Defendant, Deborah (Rodweller), is a nurse and medical grievances committee member for the medical contractor for the Delaware Department of Corrections who, at all times mentioned in this Complaint, was assigned and working at the Delaware Correctional Center Infirmary, responsible for all medical services for all inmates be provided ethically and legally.

19. Defendant, Gail (Eller), same as 18, above.

20. Defendant, Oshenka (Gordon), same as 18, above.

21. Defendant, Brenda (Heddinger), same as 18, above.

22. Defendant, (J. Doe III), "was a nurse delivering medications to D-East building in the Delaware Correctional Center on Dec. 27, 2005, 9 PM. She is/was a working for the medical contractor for the Delaware Department of Corrections, who at all times mentioned in this Complaint, was assigned and working at the Delaware Correctional Center Infirmary, responsible for all medical services for all inmates be provided ethically and legally. Much turn-over in staff causes many J. Doe.

23. Defendant(s), (R.W. Doe IV), is/was a medical scheduling person of inmate sick calls on duty Dec. 28 & 29, 2005. S/he is/was working for the medical contractor for the Delaware Department of Corrections, who at all times mentioned in this Complaint, was assigned and working at the Delaware Correctional Center Infirmary, responsible for scheduling all inmate sick calls legally and ethically.

24. Defendant, ( J. Doe V ), refering medical grievance on 1/19/2006, to medical grievance committee . S/he is/was responsible for referring all medically grievances in an ethical, legal, and timely manner to the committee . S/he is was assigned and working for the medical contractor for the Delaware Department of Corrections at all times mentioned in this Complaint, ~~and was~~ in the Delaware Correctional Center Infirmary.

25. Defendant, ( J. Doe VI ), is/was a _____ working for the medical contractor for the Department of Corrections who, at all times mentioned in this Complaint, working as a medical services administrator for all medical grievances for all inmates at the Delaware Correctional Center, responsible to uphold all laws and ~~all~~ ethics.

26. Defendant, ( J. Doe VII ), is/was a doctor working for the medical contractor for the Delaware Department of Corrections who, at all times mentioned in this Complaint, working in the Delaware Correctional Center Infirmary, responsible for all medical services for inmates legally and ethically applied. ~~(On 31 Aug 2000)~~

27. Defendant, Ihoma ( ~~Doe~~ (F DOE) CHUCKS ), is a doctor or alike working for the medical contractor for the Delaware Department of Corrections who, at all times mentioned in this [Complaint], working in the Delaware Correctional Center Infirmary, responsible for all legal and ethical medical services for those inmates.

28. Defendant, ( J. Doe VIII ), is/was a medical staff inmate sick calls scheduling person on duty at end of October 2006, working for the medical contractor for the Delaware Department of Corrections who, at all times mentioned in this Complaint, working in the Delaware Correctional Center Infirmary, responsible for all legal and ethical scheduling.

29. Defendant, Larry A. (Linton), was a grievances manager for correctional medical services contracted out by the Delaware Department of Corrections who, at all times mentioned in this Complaint, working in the Delaware Correctional Center Infirmary, was responsible for handling all grievances legally/ethically,

30. Defendant, (J. Doe IX), supervisor of Hinton, working for ~~medical~~ Correctional Medical Services contracted out by Delaware Department of Corrections, who all times mentioned in this Complaint, was supervisor assigned over Hinton.

31. Defendant, Kimberly (Weigner), is/was a nurse for Correctional Medical Services contractor used by Delaware Department of Corrections, who all times mentioned in this Complaint, is/was responsible for all inmate medical service legally and ethically, at the Delaware Correctional Center.

32. Defendant, (J. Doe X), is/was the scheduling secretary for all inmate medical services at the Delaware Correctional Center on and about 2/1/2002, for the medical services contractor used by the Delaware Department of Corrections.

33. Defendant, (J. Doe XI), is/was the supervisor of above secretary (32.) at the Delaware Correctional Center Infirmary, same time, for the medical services contractor used by the Delaware Department of Corrections.

34. Defendant, (J. Doe XII), pharmacist for inmates at the Delaware Correctional Center on and about 2/1/2002, responsible for all inmates medications, for the medical services contractor used by the Delaware Department of Corrections.

35. Defendant, (J. Doe XIII), supervisor of pharmacist above (34.), responsible for all inmate medical services, legally and ethically, for medical services contractor for Department of Corrections in Delaware, responsible for the Delaware Correctional Center medical services. (on and about 2/1/2002)

36. Defendant, (J. Doe XIV), medical services supervisor for inmates at the Delaware Correctional Center contracted by a medical services contractor for the Delaware Department of Corrections on and about 2/1/2002, responsible for same.

37. Defendants, (J. Does XV), medical grievance committee members responsible for resolving all inmate medical grievances by law and ethics. On duty 5/24/05 for medical grievance 13291. These Defendants are part of medical staff for medical services contractor hired by Department of Corrections for Delaware by Taylor, for serving

11

Delaware Correctional Center inmates.

38. Defendants, (J. Does XVI), medical grievance committee members after 11/08/05 were responsible for all legal and ethical medical services for all inmates at the Delaware Correctional Center. Worked for the medical services contractor hired by Delaware Department of Corrections.

39. Defendant, (J. Doe XVII), pharmacist responsible for all inmate medications at the Delaware Correctional Center. Worked for medical services contractor hired by Delaware Department of Corrections.

40. Defendants, (J. Does XVIII), medical grievance committee members on and about 11/24/06 responsible for resolving by law and ethics all inmate medical grievances at the Delaware Correctional Center Infirmary. They worked for the medical services contractor hired by the Delaware Department of Corrections.

41. Defendants, (J. Does XIX), medical grievance committee members on and about 11/22/05 responsible for resolving by law and ethics all inmate medical grievances at the Delaware Correctional Center Infirmary. They worked for the medical services contractor hired by the Delaware Department of Corrections.

42. Defendant, (J. Doe XX), Department of Corrections Health Services Administrator Director on and about 3/31/06 responsible for all legal and ethical medical services for inmates at the Delaware Correctional Center.

43. Defendant, (J. Doe XXI), pharmacist on duty 4/11/06 to 5/11/06 responsible for all inmate medications for the Delaware Correctional Center. They worked for the medical services contractor hired by Delaware Department of Corrections.

44. Defendant, (Jms) (Thompson), counselor at the Delaware Correctional Center for D building who, at times mentioned in this Complaint, was responsible for all inmate needs for programs, inmates residing in that building.

45. Defendant, (John) (Melbourne), head counselor at the Delaware Correctional Center who, at times mentioned in this Complaint, was responsible for all counsels

12

to do their duties by law and ethics.

46. Defendants, (J. Doe XXII), mental health staff and professionals for all Wards at the Delaware Correctional Center responsible for all legal and ethical mental health services since Dec.1, 1999 to present. Worked for medical services contractor hired by the Delaware Dept. of Corrections Commissioner Taylor.

47. Defendant Anthony R. Cannuli, et. al. to be named since Dec 1, 1999 (J. Does XXXVI), doctors, psychiatrists responsible for all mental health needs of all Wards at the Delaware Correctional Center. Employee of the medical services contractor at the time, hired by Delaware's Dept. of Corrections authorities Brady, Taylor, others to be named.

48. Defendants Francine Kobus, now Michael Little, legal services administrators at the Delaware Correctional Center responsible for all legal services by law and ethics for Wards of State.

49. Defendant (J. Doe XXIII), informal resolutions medical staff person responsible for legally and ethically resolving all Wards medical grievances properly on and about 10/19/2005 for medical grievance 16668 (Health Information Rights Claim 12). Employed by medical services contractor hired by Delaware Dept of Corrections working at the Delaware Correctional Center.

50. Defendant Nikita Y. Robins, case manager for Wards of State, adult offender services for the Delaware Center for Justice, responsible to insure grievance systems are properly followed for Wards, and to assist Wards to resolve their own grievances by law with custodians / Defendants, to be a neutral, independent, objective party, upon info and belief.

51. Defendant R. Vargas, correctional officer of the Delaware Dept. of Corrections who, at all times mentioned in this Complaint and Amendment also, was responsible for the duties of Institutional Grievance Chairperson and was

assigned to the Delaware Correctional Center.

52. Defendants (J. Does XXIV), mailroom staff responsible for all Wards mail at the Delaware Correctional Center, employed by the Delaware Dept of Corrections, are correctional officers who, at all times mentioned in this Complaint and Amendment, worked here.

53. Defendants (J. Does XXVI), correctional officers responsible for ensuring legally healthy and sufficient food is served from a certified/licensed dietician's order for the Dept of Corrections of Delaware.

54. Defendant (J. Doe XXVII), Dept of Corrections staff food service administrator responsible for ordering only legal, healthy, safe, non-degrading food to a body and mind of Wards.

55. Defendants (J. Does XXIX), Community Legal Aid Society, Inc. member's, responsible for providing legal services for mentally disabled covered under the American Disabilities Act and Rehabilitation Act, as a member of professional standards followed under the National Association of Protection and Advocacy System, and professional, and official standards receiving government funding requirements for the Delaware disabled.

56. Defendant (J. Doe XXX), member of the Delaware Mental Health Association and representative of professional standards responsible for upholding the laws of the land for All mentally ill, and assisting in our needs from any government funding Association or person within receives therefor.

57. Defendant Evelyn Stevenson, Wards classification administrator at the Delaware Correctional Center, at all times mentioned in this Complaint and Amendment, was responsible for upholding the laws and rules for Wards housing to cause no legal harm, and to be providing a State required organized and harmonious' environment on tiers and buildings used for housing inmates.

14

58. Defendant (J. Doe XXVII), bureau grievance officer, that is the Delaware Dept. of Corrections, for regular, non-medical grievances, responsible for upholding all laws of all involved for Dept, which includes the Delaware Correctional Center and Any grievances appeals by wards.

59. Defendant James Weld, Bureau of Prisons Medical Services Administrator for the Delaware Dept. of Corrections, is responsible for ensuring that all proper medical services and procedures be provided to each Ward in Delaware including overseeing medical grievances.

60. Defendant Edward Johnson, former law library paralegal state employee, was responsible for supervising the main law library at the Delaware Correctional Center, and support satellite libraries, to ensure the State provides all proper services and resources are available legally to All Wards.

61. Defendant (J. Doe XXXI), Dept of Corrections Dietician is responsible for the State to ensure Wards Menu is GOOD, and NOT degenerative or harmful in anyway to life, liberty, or happiness interests, within professional standards.

62. Defendants (J. Does XXXII) Correctional Medical Services Contractor supervisors responsible for ensuring all medical services are properly provided for each Ward for the Dept of Corrections since Dec 1, 1999.

63. Defendant(s) (J. Does XXXIII), President, Owner(s) of Correctional Medical Services since Dec 1, 1999 contracted for Delaware Correctional Center.

64. Defendants (J. Doe XXXIV), First Correctional Medical Services contractor supervisors of all services for inmates for the Dept of Corrections since Dec 1, 1999,

65. Defendant(s) (J. Does XXXV), President/owner(s) of First Correctional Medical since Dec 1, 1999, contracted for the Delaware Correctional Center.

66. Defendant Janet Labon, Director of the Delaware Center for Justice was responsible for legally upholding All Wards and family members rights to resolve

problems in the criminal justice system, including grievances, professional prison
conditions, and legislative advocacy to insure the laws are upheld.

67. Joyce Talley, Bureau Chief for the Bureau of Management Services,
was personally responsible for the oversight of Wards health care management
services, medical vendor contract compliance, including responsibility for detailed
reviews of inmate medical grievances, and ultimately responsible for contract performance
of medical vendors, and surely other vendors also.

68. (Jane Doe XXXVII) Dentist for Wards for all of Delaware, Supervisor. Insures
all proper dental services are provided for all Wards.

69. Carl Hezzard, Cpt, security staff for Delaware Correctional Center.

70. (J.) Henry, Cpt, security staff for Delaware Correctional Center.

71. (J. Doe XXXVIII) responsible for all public library services in
Delaware for All citizens by State Law; Director.

72. State Administrative Procedure Act Administrator (J. Doe XXXIX)
Insures all state agencies and employees follow those laws.

Biven 73. Federal Administrator who enforces that States follow the Federal
Administrative Procedure Act (J. Doe XL), and Federal related objectives
States MUST follow.

74. State Administrator for the American Disabilities Act and Rehabilitation
Act. (J. Doe XLI)

Biven 75. Federal administrator(s) who enforces American Disabilities Act and
Rehabilitation Act within States, (J. Does XLII), and Federal related
'objectives' States MUST follow.

76. Delaware Department of Corrections Counsel / Board is responsible to
uphold the law of the land for all Wards of State, are to be named
(J. Does XLIII).

16

77. (J. Does) <u>XLVI</u>) - Psychologists):

CMS|FCM
 X | X

Professionally care for all Wards of Delaware Correctional Center.

78. (J. Does) <u>XLVII</u>) - Psychologist Assistants;

Assist psychologist in all possible duties.

## Defendants

Plaintiff reserves right to correct Defendants involved as needed.

#4. Jane Brady        Former Attorney General of Delaware
Complaint
Paragraph
Defendant

### Department of Corrections Employees

| # | Name | Title | DOC | DCC |
|---|------|-------|-----|-----|
| 6. | Stanley Taylor | Commissioner | X | |
| 14. | Paul Howard | Bureau of Prisons Chief | X | |
| 61. | James Welch | Medical Services Administrator | X | |
| 7. | Robert Snyder | Warden (former) | | X |
| 5. | Thomas Carroll | Warden | | X |
| 10. | Elizabeth Burris | Deputy Warden | | X |
| 11. | David Pierce | Deputy Warden | | X |
| 48. | Francine Kobus | Legal Services Administrator (former) | | X |
| 48. | (Mike) Little | Legal Services Administrator | | X |
| 62. | Edward Johnson | Paralegal II | | X |
| 45. | (John) Melbourne | Supervisor of Counselors | | X |
| 44 | (Jane) Thompson | Counselor of Inmates | | X |
| 9. | Michael McCreanor | Prison Grievances Chairman, Correctional | | X |
| 8. | Lise M. Merson | Prison Grievances Chairperson, Correctional officer | | X |
| 51. | R. Vargas | Prison Grievances Chairperson, Correctional officer | | X |
| 58. | Evelyn Stevenson | Prison Classification Administrator | | X |
| 27. | (J. Doe V) | Prison Grievances Chairperson, Correctional | | X |
| 42. | (J. Doe XX) | Medical Services Administrator | X | |
| 52. | (J. Doe XXIV) | Mailroom Staff | | X |
| 54. | (J. Does XXVI) | Correctional officer for Food Services | | X |
| 55. | (J. Doe XXVII) | Food Services Administrator | X | |
| 60. | (J. Doe XXVIII) | Bureau Grievance officer | X | |

19

| Complaint Paragraph Defendant # | Name | Title | Place of Employment DOC | DCC |
|---|---|---|---|---|
| | ~~Anthony Bright~~ | ~~Statistician~~ | | |
| 67. | Joyce Talley | DOC Bureau Chief for the Bureau of ~~the~~ Management Services | X | |
| 69. | Cpt Hazzard (carl) | Cpt | | X |
| 70. | Cpt Henry | Cpt | | X |

|  |  | Other Agencies |
|---|---|---|
| 5D. | Nikita Y. Robins | Delaware Center For Justice Adult Offender Services |
| 57. | (J. Doe XXX) | Delaware Mental Health Assoc. Representative |
| 56. | (J. Doe XXIX) | Community Legal Aid Society, Inc |
| 66. | Janet ~~Laban~~ Leban | Delaware Center For Justice, ~~President~~/Director ~~Action~~ p3⁵¹ |
| 71. | (J Doe XXXVIII) | Delaware Director of Public Libraries |
| 72. | (J. Doe XXXIX) | Delaware Administrative Procedure Act Administrator |
| 73. | (J. Doe XL) | Federal    "         " |
| 74. | (J. Doe XLI) | Delaware American Disability Act and Rehabilitation Act Administrator(s) |
| 75. | (J. Does XLII) | Federal ADA + RA Administrator(s) |
| 76. | (J. Does XLIII) | Delaware Department of Corrections Council/Board |

20

Defendants Employed By Contractors as Medical Services Providers

CMS= Correctional Medical Services, FCMS: First Correctional Medical Services, TBD = To Be Determined.

| Complaint Paragraph Defendant # | Name | Title | CMS | FCMS | TBD | DOC | TBD | DCC. |
|---|---|---|---|---|---|---|---|---|
| 12. | (JOHN) MALANEY | Administrator | X | | | | X | |
| 12. | (J. Doe) | Administrator | | X | | | | X |
| 17. | (Jane) Alice | Doctor | | X | | | | X |
| 18. | Deborah Rodweller | Medical Staff, Medical Grievances Informal Resv. | X | X | | | | X |
| 19. | Gail Eller | " , Medical Grievance Committee | X | | | | | X |
| 20. | Oshenka Gordon | " , Medical Grievance Committee | | X | | | | X |
| 21. | Brenda Heddinger | " | | X | | | | X |
| 16. | Nancy (Doe) | " | | X | | | | X |
| 23. | R.W. (Doe IV) | " | | X | | | | X |
| 13,15. | (J. Doe I and II) | Administrator | X | X | | | X | |
| 22. | (J. Doe III) | Nurse | | X | | | | X |
| 25. | (J. Doe VI) | Administrator for Medical Grievances | | X | | | X | |
| 26. | (J. Doe VII) | Doctor | | X | | | | X |
| 27. | Ihoma (Doe) | Physician Assistant | X | | | | | X |
| 28. | (J. Doe VIII) | Inmate Scheduling | | X | | | | X |
| 29. | Larry A. Linton | Administrator | | X | | | | X |
| 30. | (J. Doe IX) | Supervisor of Linton | | X | | | X | |
| 31. | Kimberly Weigner | Nurse | X | | | | | X |
| 32. | (J.Doe X) | Inmate Scheduling | | X | | | | X |
| 23. | (J.Doe XI) | Supervisor of (J.Doe X) | | X | | | | X |
| 34. | (J.Doe XII) | Pharmacist | | X | | | | X |
| 35. | (J. Doe XIII) | Supervisor of Pharmacist (J. Doe XII) | | X | | | | X |
| 36. | (J. Doe XIV) | Administrator | | X | | | | X |
| 37. | (J. Does XV) | Medical Grievance Committee Members | | X | | | | X |

| Complaint Paragraph # / Defendant Name | Title | CMS | FCMS | TBD | DOC | TBD | DCC |
|---|---|---|---|---|---|---|---|
| 38. (J. Doe XVI) | Medical Grievance Committee Members after 11/28/05 | | X | | | | X |
| 39. (J. Doe XVII) | Pharmacist | | X | | | | X |
| 40. (J. Doe XVIII) | Medical Grievance Committee Members on/about 1/24/06 | | X | | | | X |
| ~~(J. Doe XIX)~~ | ~~Pharmacist on duty 4/11/06 to 5/14/06~~ | | X | | | | X |
| ~~(J. Doe XXI)~~ | | | | | | | |
| 41. (J. Doe XIX) | Medical Grievance Committee Members on/about 11/27/06 | | X | | | | X |
| 43. (J. Doe XXI) | Pharmacist on duty 4/11/06 to 5/14/06 | | X | | | | X |
| 46. (J. Doe XXII) | Mental Health Staff since Dec 1, 1999 | X | X | ● | | | X |
| 49. (J. Doe XXIII) | Medical Grievances Informal Resolutions on/about 10/19/05 | | X | | | | X |
| 53. (J. Doe XXV) | Medical Staff | | X | | | | X |
| ~~(J. Doe XXVI)~~ | ~~All Prior Mental Health Staff~~ | X | X | | | | X |
| 47. Anthony R. Cannulè | Psychiatrist | X | | | | | X |
| 61. (J. Doe XXXI) | Dietician | | | X | X | | |
| 62. (J. Doe XXXII) | Supervisor of Medical Services for DOC | X | | | | X | |
| 63. (J. Doe XXXIII) | President/owner or alike | X | | | | X | |
| 64. (J. Doe XXXIV) | Supervisor of Medical Services for DOC | | X | | | X | |
| 65. (J. Doe XXXV) | President/owner or alike | | X | | | X | |
| 47. (J. Does XXXVI) | Prosthetist since Dec 1999 | X | X | X | | | |
| 68. (Jane Doe XXXVII) | Dentist Delaware Supervisor | X | X | | | | |
| 71. ~~(J. Does XLIV)~~ | ~~Spinal Injury Convalescent Care Nurses~~ | | | | | | ● |
| 72. ~~Henry~~ | | | | | | | ● |
| 73. ~~(Doe XLVII)~~ | ~~Director Delaware~~ | | | | | | ● |
| 74 (J. Doe XLV) | Optometrist | X | X | | | | |
| 77. (J. Does XLVI) | Psychologists | X | X | | | | |
| 78. J. Does XLVII | Psychologist Assistants | X | X | ● | | | |

<u>Defendants Addresses</u>

State of Delaware
Dept of Corrections (
245 McKee Rd
Dover, DE 19904

Delaware Mental Health Assoc.
James Lafferty, Exec, Dir.
100 West 10th Str, Suite 600
Wilmington, DE 19801


State of Delaware
Delaware Correctional Center
1181 Paddock Rd
Smyrna, DE 19977

State of Delaware
(Former) Attorney General Jane Brady
Superior Civil Court

New Castle, DE

State of Delaware
Dept of Justice
Attorney General
820 N. French Str.
Wilmington, DE 19801-3509

Dr. Sitta Coombeh-Ali, MD
802 Ridge Court
Middletown, DE 19709

First Correctional Medical
Services
Daniel L. McKenty
C/o McCullough + McKenty, P.A.
1225 North King Str, Ste 1100
POB 397
Wilmington, DE 19899-0397
Contracted with State:
July 1, 2002 to June 30, 2005

State of Delaware
Delaware Center For Justice
100 West 10th Str, Ste 905
Wilmington, DE 19801

Community Legal Aid Society, Inc., or
Disabilities Law Program
100 West 10th Str, Ste 130
Wilmington, DE 19801

for Correctional Medical Services;

    Kevin J. Connors

    c/o Marshall, Dennehey, Warner, Coleman, + Goggin

    1220 N. Market Str., Ste 500

    POB 8888

    Wilmington, DE 19899

    Contracted by State:

        July 1, 2005 to present


Federal <u>American Disabilities Act</u> and <u>Rehabilitation Act</u> Employees Counsel:


Delaware Department of Corrections Council and Board members, whatever was;


Delaware Dept of Services for Children, Youth, and their Families
    Council and for Board members whatever was.

Delaware Division of Family Services, Kent County
    and State Central Office Director,

Reply To Judge Jordan's Memorandum Order
Dated Aug 21, 2006

Pg 5 - A Claim should have been dismissed because, only if it appears
beyond doubt that the plaintiff can prove no set of facts in support of his claim
which would entitle him to relief. " <u>Haines v Kerner</u>.    A set is defined
as 2 or more.    Therefore, each claim had at least 2 facts.    Therefore,
reinstatement of claims with this <u>Amendment</u> which further corrects any deficiency,
because of unrepresented citizen doing best he can with all the illegal conditions, abilities,
and disabilities caused upon Plaintiff, and as one of classes, which gravely, obstruct
justice causing manifest injustice in this case, due to Defendant and his legal custodians
deliberate indifference, ill-will, upon this Ward, and as one of class members.

Third Circuit created additional requirements of providing at least 6 facts per
pleading, which has been shown by Judge Jordan to overrule the U.S.
Supreme Court ruling.    Plaintiff is not clear of these technicalities and
has been prejudiced in this case, being very unusual apparently requiring

early appointment of counsel for due process, equal protection, and fundamental fairs to stop the damages and provide proper relief to Me, and as one of classes, in service to humanity for the less able and more disabled, here under these custodians in Delaware. Thus, My damages are continued on Me.

The Reason to, Defendants names was, of course, because they have not been available to Me, and will need to be acquired during discovery. Thus, there seems to be no need to prematurely dismiss those claims.

The Claim 13 about information, a FIRST Amendment Right, and FIFTH Amendment denying due process, causing cruel and unusual punishment, denying inherent natural right, abusing power not reserved for the States, but are prohibited to States, and not reserved for the States to deny or obstruct illegally as is, causing involuntary servitude when not duly convicted to the denials of these Constitutional and other Federal rights and Objectives; all these violations in harmony denying due process and equal protection of the laws. It is not The claim is NOT for internet access, but information access rights to stop above violations.

Claim 15 is for legal access to courts right as non-indigent, non-imprisoned, non-disabled, and attorneys can as in the opposing party. Legal access defined as being timely, equal, effective, meaningful, capable, and adequate as precedence establishes, which is still denied due to equal equipment, like pen + paper was in those medieval days in that society. But today, in an ever more modern, civilized, and decent society, electronic equipment, like others have, is necessary to equalize the playing field, actually the field of life or death for life, liberty, property, and happiness interests.

Thus, the federal rights denied are the legal access to court rights, and the cruel and unusual punishment in THIS modern society. As for example, Myself having to rewrite everything by hand as if in the middle ages of the scribes used as copiers, gravely delaying.

Claim 20: There was NO attempt to gain relief from My sentence and/or conviction, in this case. It is only a sample of actual legal injury, actually not required in a systemic, broken system of equal, obstructed access to "necessities of life," as here at Delaware Dept of Corrections ostrich effect by employees.

Claim 25: Is very simple, attempts to mislead this case are shown again. That is one reason why counsel should have been appointed to avoid this. Thus, I continue to be prejudiced and discriminated against because of My indigency, ward of state, ~~unable~~ unable, and disabled statuses. What is plainly alleged is that too many obstructions, handicaps, and disabilities exist here and to the, and as one of classes, due to Defendants conduct.

"pg 8, B. Respondeat Superior." No such allegation was made to be under the respondeat superior theory. Misleading speculation for pro se citizen. Judge ~~bias~~ bias is apparent. He failed to recuse himself in the interest of justice. Superiors are moving forces.

Jane Brady's failure to do duty, to uphold the laws of the land after All citizens is Her first violation. She is aware and knows the laws of the land, but kept deliberately indifferent to My, and as one of classes, plight. Thus, this claim also prematurely dismissed.

"pg 9, C. Access to Courts". Again, I am NOT contesting the fact or duration of My conviction and sentence. I am showing a sample of the denial of procedural due process and equal protection of laws, allowed in 42 U.S.C. §1983.

Last paragraph, pg 9. Complaint shows also that 'NO' meaningful complaint can be filed by Me also due to obstructive, denying, handicapping, and disabling prison and Dept conditions contrary to laws. Paging system is legally insufficient, and not timely as will be shown further in this Amendment, ~~complaint show this also.~~

Pg 10. The legal access to courts rights is not a matter of My 'liking', but rather what is right, equitable, fair, and ethical, by laws precedence.

Single-spaced, hand written because of no timely electronic equipment made available. If it were double spaced in hand-writing, only 13 lines per page would be written, and number of pages doubled, since unrepresented, and much bias to mislead. Typewritten pages would be about the same. Since single-spaced. handwritten prejudices a persons, My legal papers, assorted electronic equipment and accessories must be allowed.

"Pg 11, D., Habeas Claim." Again, there is NO habeas claim by Me, only an example of actual legal injury by denials of procedural due process and equal protection of the laws.

~~complaint show this also example.~~

"Pg 12, E., Court Appointed Defense Counsel." These issues only raised to show further actual legal injuries; not for habeas corpus claim for relief to sentence or conviction.

"Pg 14, State Judicial Immunity". These claims I have to now drop, I guess, because I cannot bring these violations, legally, at this time due to custodians / Defendants obstruction of justice, which should allow them because of external factors beyond My control.

28

"Pg15. H., Federal Judiciary." Same goes for this claim, as above.

"Pg 18, J., ADA and Rehabilitation Act."

ADA ; 42 USC §§ 12131(1)(A)-(B) (2000) defines "public entity" as "any State or Local Government" or "any department, agency, ... or other instrumentality of a State, or local government."

Thus, Defendants are <u>Dept of Corrections</u>, <u>Delaware Correctional Center</u>, <u>State of Delaware</u>, <u>State Dept of Public Libraries</u>, <u>Delaware Dept of Justice</u>, <u>Delaware Center For Justice</u>, <u>Kent County, Delaware</u>, others to be named, who receive federal financial assistance, upon info and belief, for the programs, activities, and prison in Complaint, Amendment, and to be discovered from obstruction to information. Lesser quality program or service not allowed, as in this case. State and local funding operations can be in violation.

Pg19. paragraph 2., Grievances. Procedural claims are made.

Much citation to mislead the unaware pro se citizen, instead of showing how to make the claim in the interest of justice, since still unrepresented, as other judges have done.

Grievance administrative exhaustion is required. Then <u>Administrative Procedure Act</u>, State and Federal, must be followed, which are NOT. Federal objectives and laws require exhaustion, not the Constitution. How am I being mislead to receive due process and equal protection of the laws?

"Pg 19, L. Prison Litigation Reform Act limitation of Attorney's Fees." I don't know how to make this claim meritorious yet due to prejudicial conditions to bring meritorious claim. But it is not fundamentally fair to deny a class equally competent representation by denying equal pay, which is common sense and well known to prejudice finding a lawyer, as I have been, to take this case. Thus, obstruction of justice persists.


"Pg 20, IV., Appointment of Counsel." Denial of counsel so far shows prejudice and bias towards this case where much less damaging cases, and as one of classes, have had counsel appointed at time of need and necessity in the interest of justice toyson the law of the land equally for All citizens.

Special circumstances and likelihood of substantial prejudice due to My resulting ~~xxxx~~ actual inability as can easily be seen, especially by the premature dismissal of actual injuries, systemic debauchery in this State shows bias by denial, in this obviously complex case over 6 claims, per national ranking of civil rights cases.

"Pg 21, Motion For Relief From Service Of Copies on Defendants."

I am unrepresented to reduce pages and Defendants to obtain proper relief, thus prejudiced here also. Complaint was ruled with still insufficient facts, requiring more pages.

The Certain Defendants named herein Amendment obstruct justice to provide necessities of life for legal access to courts to provide sufficient envelopes, in time to mail Complaint to each Defendant.

"Pg 21, VI. Motion for Injunctive Relief." I continue to be prejudiced due to no injunctive relief due to My inabilities and disabilities. Preliminary injunction answers were provided as best as I can at this time under current/past illegal prison and Dept conditions denying legal rights to access to courts with meritorious claims. Injuries and rights are to stop current/past continues, systemic deliberate indifference and ill-will on Me, and as one of classes, needing protection also because unable to gain access to

courts meritoriously. Injury and rights continuing to be violated by Defendants are actual, and are projected because Defendants will not stop unprofessional conduct on their own, and want only court involvement, clogging up our courts with basic professional conduct Defendants should have and could have prevented before this _Complaint_. History shows their states of mind of deliberate indifference.

As _Complaint_ and _Amendment_ start to show as best as I can at this time, the dangers of suffering irreparable harm, health wise, and legal injuries.

pg 22: That is the purpose of preliminary injunction, to prevent injury on Me, which has occurred on other Wards, under these Defendants. I have not yet been allowed access to the legal information to provide more meritorious facts and laws in this issue also, showing counsel required and preliminary injunction required to remove all obstructions to full-time access to all information, which continues to prejudice this case also and obstruct justice. Showing bias ruling so far.

Sincerely Yours, In Service,

Petitioner

4 June 2007


Petitioner requires legal interpretation to conflicting laws and conduct by Judge. For instance, "Only if it is clear that NO relief could be granted under ANY set of facts that could be proved consistent with the allegations." _Graves_, 117 F3d at 726, _Nami_, 82 F3d at 65 ( both citing _Conley v Gibson_, 355 U.S. 4, 45-46 (1957).

And pro se complaints are held to "less stringent standards ... and can only be dismissed for failure to state a claim." Estelle v. Gamble, 429 U.S. 97, 106 (1976) ( quoting Conley, 355 U.S. at 45-46). I don't remember any claim being dismissed for that reason. Therefore, should be allowed to continue to be added to to develop the claim. Since Judge Jordan had insufficient facts, more are provided. Any other shortage will be developed as needed.

Third Circuit has held that a district court may not dismiss a complaint with prejudice, and must permit amendment, where a Plaintiff can remedy the complaint by an amendment. Alston v. Parker, 363 F3d 229, 235-6 (3rd Cir, 2004).

Reference Judge Jordans Early Dismissal of Some Claims

In the interest of justice, especially for pro see litigation, and extra ordinary external conditions to Me caused by Defendants and others as malicious conduct by them to deny legal access to information and legal access to courts rights, and their deliberate indifference to the rights, only a "short and plain statement" of the claim, as per Rule 8(a), 28 U.S.C.A., is needed for fair notice of claim and grounds. When custodians deny this ability, as per Complaint, how is a citizen to get these illegal obstructions removed to bring more meritorious claims before a more proper Complaint can be brought? The cart before the horse concept exists in this case.

Such simplified 'notice of pleading' is made possible by the liberal opportunity for discovery and other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense, and to define more narrowly the disputed facts and issues. See Rules 12(e), 12(f), 12(c), 15, 16, 26-37, 56, which I have been denied.

"The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel [!] may be decisive to the outcome and, to accept the principle that the purpose of the pleading is to facilitate a proper decision on the merits." Conley v. Gibson, 355 U.S. 41, at 46. If counsel, surely citizen indigent, and disabled.

"Under the liberal pleading rules, during the initial stage of litigation, a district court should construe all allegations in a complaint in favor of the complainant." Gibbs v. Roman, 116 F3d 83, at 86 (3rd Cir 1997). Petitioner can not see why violations would be dismissed prematurely?

33

and while unrepresent, and while malicious custodial conditions exist which <u>Complaint</u> attempts to correct as best as Petitioner can at this time? These rights dismissed already could possibly never see the light of day and be continued by my custodians, and surely that is not the intent of our proper legal system? If every citizen is expected to be a lawyer or have those skills or ability also, something has gone astray?, obstructing justice, due process and equal protection of the laws for All citizens, not just the rich or able.

 <u>Complaint</u> set out minimums of an initial step by (1) allegation of past conduct by Defendants, (2) allegation of illegal conduct, thereby substantiating a claim, (3) a claim for damages directly from physical harm posed to him by Defendants and those to be named from discovery with counsel, and alleged result of Defendants actions, dictating a standard of giving credit to allegations.

 Then, in the interest of equal justice for an unrepresented person, or one unable to bring sufficient information in initial stage, court would direct to provide all missing information to proceed; if working in good faith, without conflict of interest, or some other illegal state of mind causing obstructive conduct. I can now see better why so many illegal conditions exist in Delaware for wards of State, as this Honorable court, will surely be able to see also,

 Interference and deprivation of rights is actionable under 42 US CO § 1983.

 Action preventing communication with a court is denial of access, as in this case.

 Deprivation of materials necessary for reasonable access violates My constitutional, FOURTEENTH Amendment due process and equal protection of the laws rights. As done by Judge Jordan from <u>Complaint</u>.

<center>34</center>

Reply To Judge Thynge Memorandum Order
Dated   May 9, 2007


1.  Reference paragraph 3:; it seems to Me that it is not right
since Defendants Brady, Taylor, Howard, Talley, Snyder, and
Carroll are not doing their duty to provide every Ward of State like Me
their necessities of life when the State chooses to incarcerate someone,
and then a federal code 28 USC § 1915 still requires a filing
fee at this time of indigency.  A custodian should be doing their
duty first so that an indigent can properly pay the filing fee at
this time.
      Request a proper court ruling on this issue since § 1915 assumes
custodians are doing their duty.   Relief needed: Filing exception
is when custodian fails to provide necessity of life, which surely
the Legislature intended if it knew that a custodian was not
following the law in the first place.
      2. para: 5: Request new Defendants be added as per new coversheet.
      3.  Reference paragraph 6: Plaintiff believes to have shown needs for
appointment of counsel in ☒ My Motions ?
      Apparently I have not yet sufficiently articulated all the needed
alleged facts, showing inability as former Judge dismissed many Claims,
already obstructing justice and for equal protection of the laws?; and
due process of law ?


35

## FACTS - How

● Following are legal elements discovered so far being listed for each claim below! in order to prevent repetitive writing, in the interest of efficancy, the following describes each Defendants as best as Mr. Hartmann can communicate the situation at this time:

Each Defendant : 1. acted under pretense/color of law;

2. directed, permitted, authorized, encouraged, supported, allowed, ordered, and/or ignored the below violations of statute(s) and/or Constitution(s);

3. with actual knowledge or acquiescence, or should have known as Mr. Hartmann's rights; as a ward of State; and as one of classes;

4. acting with deliberate indifference to law(s) or alike;

5. breaking legal custodians duty;

6. failed to ` care and maintain and prevent ´ harm or damage by law or alike for this ward of the State; and as one of classes;

7. laws they should have atleast known of as required under the Delaware Constitution, Article 1, Section 7 and 11 for equal protection of the laws of the land; for due process and equal protection of the laws;

8. and 11 Delaware Code Section 306(c)(1);

9. these and other clearly established laws and rules and regulations;

10. failing to manage risks of health and safety by their illegal and methical conduct;

11. failed to inform ward of State, Mr. Hartmann, of his legal rights as a proper, competent, legal custodian would;

12. failed to uphold Mr. Hartmann's rights;

13. displaying invidious discriminatory animus culture here in Defendants by their actions;

14. adding to the illegal, systemic and systematic conspiracy by denials or alike of proper treatment and conditions for Mr. Hartmann, a representative of Ward of State;

15. acting with conflict of interest;

16. denying life;

17. liberty;

18. property;

19. and happiness interests Mr. Hartmann is entitled to;

20. denying fundamental fairness for equal protection of the laws for all inmates at DCC and probably DOC w/ Mr. Hartmann and as one of and disabled subclass

●. deprived of:

21. FIRST Amendment rights under the United States Constitution to timely, equal, effective, meaningful, capable, and adequate access to information, press, speech, communication and/or;

22. Family Integrity FIRST Amendment Right; Freedom of Speech, press, info-organize and redress of Grievances; and/or

23. FOURTH Amendment rights to be free from unreasonable search and seizure; and/or right to be secure in their person, confinement, papers, and affects;

24. FIFTH Amendment rights to due process of law for life, liberty or property interests; and/or

25. SIXTH Amendment rights to timely, equal, effective, meaningful, capable, and adequate access to grievances and courts; and/or

26. EIGHTH Amendment rights to be free from cruel or unusual punishment, or to be free from uncivilized or indecent conditions in an ever more modern, improving society; and/or;

NINTH Amendment rights to be; discovered being denied or used to disparage Mr. Hartmann, family, class
27. FOURTEENTH Amendment rights to due process or equal protection of the laws;

28. Defendants are sued individually, and officially where possible;

29. Certain Defendants conduct show continued violation of the Delaware Department of Corrections Code of Conduct for employees to be "courteous";

30. Certain Defendants conduct can be seen to violate the Prison Mission Statement and their deliberate indifference to it;

38

31. All or allmost all claims violate Mr Hartmann's rights to legal " necesities of life;" in status as inmate ward of State.

32. All claims, individually and in totality of conditions, violate My. Hartmann's legal rights;

33. All medical claims are serious medical needs;

34. All mental health claims are serious medical needs;

35. All medical claims violate medical ethics and code of conduct to do No HARM, a duty breached; by contractors as medically employed;

36. Any reasonable person would have seen the need for the medical services; smaller problems have not been raised;

37. Each claim violates the Constitution(s), Federal Objective(s), Federal Statute(s), State Statute(s), Civil Rights Laws), and/or Objectives States, persons must follow;

38. ~~Defendants knew or should have known these laws and alike;~~

39. Defendants failed to pursue, + accomplish, generally accepted professional standards in these violations for many years; atleast since Dec 1, 1999 to present.

40. Each Defendant acts a part in the conspiracy and corruption as organized crime in State government to deprive Petitioner, as one ward of State, the laws, and alike, of this great land.

41. Denies Plaintiffs special needs, mostly caused by Defendants, and other State employees, for mental illnesses, chronic illnesses, physical disabilities, who now has troubled, andhas had for about 7 years under these custodians, performing activities of daily living; affecting his daily, major life activities.

42. Defendants violate their Oath of fice, if taken.

43. Defendants, destroy, abuse, neglect, exploit, and/or invidiously discriminate against Me, and as one of inmate class; and as sacred public property.

Facts Applying To All Claims Against Supervisors Also Include

A. Supervisors fail to control, train, and/or supervise their subordinates by law; training does not cause mastery of professional standards as moving force.

B. Supervisors are the moving force behind the Constitutional and federal 'objectives,' not just federal laws, which States must follow by United States Supreme court Order.

C. Supervisors exhibit pattern, practice, systemic, and/or systematic deliberate indifference to the laws by their actions to the plight/degradation of this ward in the classes.

D. Supervisors show no proper risk management and prevention of violations or harm to inmates for professional "best practices," and standards shown from experience and expertise like from accreditation and Associations. (Generally accepted professional standards)

E. Supervisors cause no known, proper, independent, neutral "impact report" before changing, adding, or deleting a rule in the interest of law, health, safety, of all involved, as is done for wildlife which is less important, and failing to follow the Administrative Procedure Acts, Administrative Law and Procedure, for the Constitutional right or federal objectives they ensure to accomplish.

F. Supervisors conduct is grossly negligent conduct in this ever more modern and civilized, decent society of this information age for the Wards of the State, causing bodily degradation and continuously deliberate indifferent to it by ostrich affect also.

G. Supervisors as legal custodians of Wards of State fail to provide equal footing for inmate to be able to communicate to prevent damages as parents patriae like they are, preventing grievance and access to courts legally causing mental and physical damages, and preventing an organized and harmonious conditions in prison by law.

H. State contractors for Department of Corrections fail to be held legally accountable, getting away with their illegal conduct, for proper relief and compensation to injured Petitioner, thus, acting as accomplices to the crimes against Petitioner and

41

family members, bonds, and integrity violated causing more dysfunctional families contrary to laws and crimes ; damages caused by Defendants.

I. Their 'repeated negligence' shows their deliberate indifference ;

J. By their actions or inactions were/are the moving force to continues harm /damages to Plaintiff, and as one of classes

K. Superiors implemented ~~some~~ deficient policies, or custom and were deliberately indifferent to the resulting risk.

L. Superiors fail to uphold their Oath of office, if taken.

M. Since not knowing the law is no excuse for the common citizens, upon inf and belief, surly ~~alleged~~ not knowing to professionals in a field as lawyers is no excuse.

N. The training, if it applies to a claim, was so inadequate by policy or custom by moving forces, where more or different training was so obvious, and the inadequacy resulted in violation of federal right, that policymakers or enforces as the moving forces of the subordinate Defendants, were deliberately indifferent to the need. Thus, those actually involved caused injury by omission or commission.

O. These moving forces as Defendants named and to be named, are liable where policy or custom deficiency in staffing or procedure effectively denied access to adequate, professional care.

P. 'Entity' liable under American Disabilities Act or Rehabilitation Act, their direct causal link of deprivation of laws to Me, and as one of class disabled, custom deprives of Constitutional rights, federal rights.

Q. Need for more or better training was obvious where patterns of constitutional violation exist in such a way that the entity and municipality knows or should know that corrective measures are needed.

42

R. Customs were/are such a widespread practice that, although not authorized by written law or policy, is so permanent and well settled as to constitute a custom or usage with the force of law.

S. Longstanding and widespread practice is deemed authorized by the policymaker officials because they must have known about it but failed to stop it.

T. Supervisors showed deliberate indifference to professional standards to prevent risk of damage by not hiring outside experts for evaluations, as part of standard, professional management. Continues, systemic failures to protect Wards as Me of future harm.

U. State actors turn blind eye to equal protection of the laws showing nefarious discrimination against Plaintiff, and as one of class Wards, based on Plaintiffs membership of defineable class.

V. ~~State actors Brady, Taylor, Howard, Talley fail to enforce~~

W. Application of 42 U.S.C.A. § 98(0) to injured (Me, and as one of classes?) by conspiracy depriving civil rights by directors, employees, agents, and alike as Defendants, et. al. to be named.

X. Clearly established laws put Defendants, et. al., on notice.

Y. Delaware Secretary's and Commissioners of Departments of State, their Boards and/or their Councils, if existed, for Mental Health, Children and Their Families, and Corrections, for starters, were/are 'persons' within meaning of 42 USC § 1983, even though they are also being sued in their official capacities. Including Director of Division of Family Services, County Director for Kent County, and its Board and/or Council members.

Z. Medical contractors had to have conspired with State employees Brady, Taylor, atleast to allow their failures to uphold the laws of the land, violating My civil rights, and one of class as wards.

AA. Tort liability makes Defendants, and those to be named, responsible for the natural consequences of their actions.

AB. Supervisors moving forces of inaction and deliberate indifference failed to establish, written, legal policy and procedure and/or failed to control, train, and/or supervise the subordinates adequately.

AC. Supervisors as moving forces failed to enforce the laws on the books, and allowed, by failing to control, train, and supervise by law, the systemic and systematic maladministration of those laws, and others to be discovered from cover-up, can qualify as a custom.

AD. History of mishandling is sufficient for deliberate indifference.

AE. These officials are liable for aggravating pre-existing conditions and delays. Ontop of that continues deliberate indifference displayed.

2.A., 2.C., 19.A., 19.E., 19.F., 19.H., 19.J., 19.K., 19.L., 19.N., 19.Q.,
19.R., 19.W., 19.X., 19.Y., 19AA., 19.AC., 19.AD., 19.AG., 19.AH.,

Claims - Illegal Denial or Obstruction to Medical and Health
Information; Censorship of All Information From Internet From Custodian
19.AI., 19.AJ., 19.AL., 19.AR., 19.AS.

Medical grievance 16668, dated and put in medical grievance box on
8/20/2005, was sent to Dunn by Merson for investigation on 9/1/2005,
11 days later when it should have been done the next day for professional
standard, violating timely, legal medical/health relief; bureaucrating
delay times timely, legal relief, and is unnecessary.

Rogers actions, as representative of medical contractor for state, deprives
my patient rights to be properly informed, to knowingly and intelligently and
voluntarily participate in ones medical/health prevention, diagnosis or alike, and
treatment or alike.

Dunn fails to cause informal resolution in 48 hours per prison rule,
neither does Merson cause procedural requirement.   Informal resolution
not done until 10/19/2005, 48 days later.

(J. Doe XXIII) acts as medical hearing officer for resolution and
fails to be able to provide any info for relief resolution, further delaying
legal medical condition which should have been existing here all
along for info access.

Merson did NOT forward grievance to Medical Grievance Committee
until 1/19/06, 3 months later.

Medical Resolution Committee finally had hearing with me on 2/7/2006,
19 days later for resolution to do duty to provide a way or means to all
information for informed patients rights and prevention.   Their resolution was to
get me printed info.

Due to inconsistencies, ineffective actions by Merson and McCreanor,
and failures for me to receive replies, appeal letter was sent to

45

Pierce, Malaney, and DOC Grievance Administrator on Feb 10, 2006, all at once because of delays or no replies, or no relief from illegal condition, and daily risk of irreparable damage to me, and damages discovered so far ably to communicate to the courts, legally.

Pierce stamped his copy received Feb 16, 2006. His reply received after Feb 21, 2006 saying, "grievance appeals must be forwarded through proper channels; this office does not handle the appeals process." Wow, that was news to me; I don't know what is going on now.

Therefore, what he is saying, if that were legally true, warden or designee is NOT responsible for medical services at D.C.C.. More confusion to frustrate and bezile legal rights and legal access to courts, redress of grievances.

Grievance Appeal Form also sent on or before 10 Feb 2006, besides previous appeal letter which has been used up to now, via grievance box. This form was returned because Merson wanted only original form which prison rule did not require. So, an original was sent after copy was returned to me by Merson, and then original was allegedly received by Merson on 21 Feb 2006. She fails to reveal these facts on Her Grievance Information Report For Appeal misleading case, as if appeal was received late per prison rule.

Weldin receives Appeal 2/21/2006, and decides on it 3/30/2006 per reply, 37 days later with unknown reason for unprofessional delay.

Weldin upholds grievance for me ~~against~~ against medical providers, to provide me the info.

Howard upholds, reply received 4/19/2006.

Eller provides TOKEN printed information, deplorably insufficient, with arrogant attitude by having to provide any info.

46



<u>Continued Claims - Access To Information Violations,</u>
<u>Illegal Censorship and Denial of</u>

Timely, Equal, Effective, Meaningful, Capable, and Adequate Access To Medical and Health Information in violation of life, liberty, property, and happiness interests and the Constitutional Amendments 1, 4, 5, 6, 8, 9, 14; also violates Right To know, Patients Rights, Prevention Rights, American Disabilities Act, Rehabilitation Act, By <u>Brady</u>, <u>Taylor</u>, <u>Howard</u>, <u>Talley</u>, <u>Weldon</u>, <u>Malaney</u>, (<u>J. Doe</u>), Rodweller, Eller, others to be named.

these Defendants below in this claim deny: FIRST Amendment Right to freedom of speech and communication, to the press and information, publishers rights to communicate to inmates, redress of grievances obstructions or denials for legal access to courts, and personal interests, family, and community interests for the public good; legal redress of grievances; family integrity right;                    FOURTH Amendment rights by search and seizure of this printed matter when needed as a necessity of life for legal, medical, mental, physical prevention, protection, treatment, preservation, maintenance and alike;
                    FIFTH Amendment rights violations by denying due process to information, by custodian failing to be responsible for wards of state to preserve, protect, care for, and maintain with improvement atleast to this information, by denying Administrative Procedure Act and alike before implementing prison rules, denying possession of this information illegally; and theirly denying the legal elements to information for life, liberty, property interests, access to courts, etc.;
                    EIGHTH Amendment rights violations by denying or obstructing this information causing cruel and unusual punishment allowing denying medical, health into life, liberty, and property to stay healthy, improve health. if possible, prevent risk of health problem, have patients right to be totally informed about ones medical condition, medications, prevention, diagnosis or alike, and treatment or alike, in an ever more modern, civilized, and decent society for proper access

to internet information and all other sources;

NINETH Amendment violations to natural rights in other Amendments to basic, fundamental rights to life, liberty, property, and happiness interests denied or obstructed by these Defendants.

TENTH Amendment violation by denying Constitutional and Federal rights, privileges, and immunities which were not left up to the States to decide.

from me, World of State THIRTEENTH Amendment violation by these Defendants requiring payment for those necessities of life, as others in this Complaint, custodian is responsible for, making Me indentured servant. FOURTEENTH Amendment violation by abridging my privileges to information; denying me due process for legal prison rules, and denying me equal protection of the laws by denying my access to this info for facts and laws to uphold my life, liberty, and property interests available from the right information to be found/searched for by me, but obstructed, censoring all this info illegally allowing punishing conditions and facts.

Denial of information violates Patient's rights, and causing fear of death or other serious damage due to systemic denial of professional standards of medical care, and Patient's Rights.

These Constitutional violations cause denial of precedential laws for legal access to info and legal access to info to be in a timely, equal, effective, meaningful, capable, adequate, and meritorious manner, without obstructions no matter what policy and procedure is legally developed, for Petitioner and classes He is a member of.

I can not find the best cases, nor sheppardize them all in a legal manner to make all proper legal arguments and show all the violations by Defendants in a legal manner with the past/current obstructive customs and policies, deliberately indifferent to legal access to courts. This is one form of actual legal injuries.

48

19.AL., 19.AR.

<u>Claims 2.B. Spinal Cord Injury</u>, and 19.A., 19.C., 19.H., 19.J.,
19.L., 19.M., 19.Q., 19.W., 19.X., 19.Y., 19.AG., 19.A.H., 19.AT., 19.A.S.,
On and about 9/13/2004, <u>Nancy (Doe)</u> failed to provide proper relief from severest spinal cord pain and suffering which had caused extended immobility of Plaintiff until it healed on its own usually around 10 to 14 days.

<u>Merson</u> illegally delayed emergency sick call application from 9/13 to 9/28/2004. She was unqualified to make medical decisions, and unqualified to delay emergency medical condition when inmate patient must be seen immediately under security code 4 call which she also failed to have done as correctional officer's duty.

<u>Wolken</u> further condoned the ignoring of the emergency medical condition until present to fix wrong attitudes, conduct, procedures, and restoration.

<u>Munson</u> trys to blame Plaintiff for the conduct of her and medical staff, Defendants, instead of doing their job, breaching duty, by misleading the issue saying on grievance form that I, Plaintiff, fail to use the sick call procedure; emergency pain and suffering condition has priority care, obviously.

<u>Wolken</u> added to deliberate indifference by waiting to refer for diagnosis and treatment to <u>Munson</u> until 10/08/2004; its now been 27 days since severe spinal cord injury.

<u>Munson</u> conspires with <u>Nancy (Doe)</u>, vouching for <u>Nancy (Doe)</u> delaying action.

<u>Ali</u> fails to provide any relief; no diagnosis, treatment, prevention, procedure followed nor attitudes to duty corrected.

I was coerced into signing this grievance while under mental disab-ilities, unknowingly, nor intelligently by continued deliberate indifference to patient information rights and participation rights in prevention, diagnosis,

and treatment by these Defendants.

On and about 2/4/2006, McCreanor denies medical grievance <u>22364</u>, as if a medical expert, impersonating a licensed professional he is NOT, to be seen in medically professional timely manner, within 24 hours or sooner depending on severity, by medical staff to stop severe pain and suffering, obstructing grievance procedure and medically professional standard.

Menson on and about 4/30/2006 to 5/16/2006, for 17 days delays sending for investigation of emergency medical grievance <u>39665</u> of severe pain and suffering to Rodweller. Failing to properly and timely treat asthma type symptoms denying ability to work affecting daily, major life activities under <u>American Disabilities Act</u>.

<u>Brady</u>, <u>Kaylor</u>, <u>Howard</u>, <u>Talley</u>, <u>Snyder</u>, <u>Carroll</u> as State supervisors who failed to implement proper policies and were deliberate indifferent to the resulting risks of all the violations so shown in This <u>Complaint</u> and <u>Amendment</u>, and were (are for injunctive purpose) the moving force behind the continued harm suffered by Me, and continue personally and officially do not provide proper opposition to illegal conduct by other Defendants from Dec 1999 to present.

No proper correction of these violations by Defendants would have been attempted if local newspaper did not expose the horrific, destructive conditions, conspiracy, corruption and organized crime in State government among these Defendants, for correction depriving Me, and as one of classes, our rights, and My family rights, and as one of those classes - children +

and spouses. Only because of newspaper exposure was federal civil rights investigation done with findings of constitutional and other violations by Defendants, et. al.. Thus, government employees responsible would have continued to degrade and destroy people illegally, which has NOT yet stopped as in this case.

#39665 continued: <u>Rodweller</u>, during informal resolution attempt meeting 5/18/06 at 7:15AM, sweeps medical problems under the carpet, as usual, for this grievance, as usual deliberate indifference to serious medical needs, and supervisors continue to let her get away with it.

<u>Eller</u>, <u>Cordon</u>, and <u>Heddinger</u> deny grievance illegally and unethically for medication in a timely manner, and for a proper diagnosis, at this medical grievance hearing, for these common sense, basic rights.

<u>Welch</u> and <u>Wright</u> fail to reply to-date to grievance appeal to them for an emergency grievance; should have been handled verbally - not requiring paper work and egotistical deliberate indifference delay, wrong attitude to duty, affecting my breathing seriously.

Failures to provide the any convalescent care during my spinal cord injuries recoveries, were First Correctional and Correctional Medical employees employed and responsible for My convalescent care, To be named. ( J. Does <u>XLIV</u>).

51

Legal Claim : These Defendants violate the following Constitutional
rights : redress of grievances ; patients rights ; security in person ;
illegal abridgement/omission of rights ; due process and equal protection
of the laws ; freedom from cruel and unusual punishment in an
ever more modern, civilized, and decent society ; freedom of speech,
communication, press and information ; life , liberty , and property interests ;

19.AL., 19.AR.,
19.L., 19.N., 19.Q., 19.W., 19.X., 19.Y., 19.AG., 19.AH., 19.AI., 19.AJ.,

Claims 2B   <u>Severe Throat Pain and Suffering</u>, and 19.H., 19.J.,

During medication dispensing at housing unit, (Jane Doe III) ignores plea for help to emergency condition denying ability to eat, drink, sleep, swallow without severest throat pain and suffering. She directs to put in a sick call slip after informing her of immediate, severe pain and suffering, and offered to show her bloodied saliva. My entire body would cringe from pain during every swallow. Failures to diagnose + treat for possible contagious disease like strep-throat or alike,

R.W. (J. Doe IV) failed to timely handle emergency sick call for diagnosis and treatment immediately for severest throat pain and suffering by only responding with on sick call slip, "scheduled with medical. R.W." Emergencies do not wait till whenever.

<u>Carroll</u> was sent letter for help for emergency medical condition, which had NOT been properly handled by medical staff, on Dec 29, 2005; 3 days after trying proper channels to get relief. Letter was stamped received Dec 30, 2005 by Pierce who replied and which was by Me on Jan 9, 2006; 10 days later under emergency pain and suffering. No immediate verbal, phone handling of emergency was done. Letter reply did not fix severe condition. Grievance policy requires 24 hour reply by Warden in an emergency case as this one which was not done. Need injunction for condition still currently; no assistance for future problem provided by Him and Defendants to prevent any future damage, pain and suffering. Unable to do duty to care forward of State requiring constant, other legal supervision any ward can

immediately contact.

Pierce only referred problem to Malaney for action in writing which only caused further delay. The gross deliberate indifference is horrific.

Malaney never replied and was never held accountable. State unable to ensure to do its duty requiring constant outside oversight, immediately reachable by a ward of State.

Pierce, et.al., Defendants, who monitor grievances, as legal custodians duty and responsible for proper ward treatment, fail to ensure contractor fulfills their duties. Injunction needed for continues conduct.

Merson illegally delays emergency medical grievance 22133 also until 1/06/2006, 9 days for referral to Plante to investigate and properly treat.

Rodweller did NOT address emergency grievance for Plante until 1/11/06, another 5 days delay.

Throat had healed by now; but evil attitudes of ill-will and conduct are unforgiveable for now and need correcting permanently.

⁻ Rodweller and Gordon, as medical grievance committee, did not receive grievance from (J.Doe Ⅴ) until 1/19/06.

Hearing for emergency grievance was further delayed until 2/7/06 by (J. Doe Ⅵ); another 19 days delay.

Rodweller and Gordon upheld grievance for proper diagnosis and treatment.

Rodweller and Gordon failed to enforce ruling and fix problems.

Appeal to DOC by mail on 2/10/06.

Another letter went out for timely relief to Pierce, Malaney, Dept Grievances Administrator for Medical, and Delaware Center For Justice case manager Robins, who are, upon info and belief, the state agency responsible to ensure the grievances policy and procedures are enforced and upheld, but fail to do so.

Robins only answers with more bureaucratic delay, breach of duty, mismanagement, and admission of Dept of Correction (self-caused) being "inmundated with concerns."

Breaches of Duty by Defendants, et. al., keeps custodian running around frantically, wasting man hours, putting out fires they caused instead of prevention by doing generally accepted professional standards. Lack of risk management and quality control professional standards.

Howard replies on 4/19/2006, 60 days later, denying proper medical treatment. Blatently out of touch of what he is doing.

<u>Legal Claims</u>: These Defendants violate; redress of grievances, life, liberty, and property interests, cruel and unusual punishment, due process and equal protection of laws, of the Constitution for starters.

19.AS., 19.AL., 19.AR.,
19.Q., 19.W., 19.X., 19.Y., 19.AA., 19.AC., 19.AG., 19.AH., 19.AI.,

## Claims 2.P.   Medical Specialists, and 19.A., 19.H., 19.J., 19.L., 19.N.,

Medical grievance mailed 9/07/2000 for failures to treat symptoms of thyroid disease ; and failures to properly diagnose, test + treat ; failures to prevent, diagnose and treat chest pains ; and failures to prevent, diagnose, and treat mental health issues by referral to competent specialist keeping Me disabled in several ways, denying me to proper daily, major life activities under American Disabilities Act, and Rehabilitation Act, for starters.

Aug (8)/31/2000 seen by Doctor (J.Doe VII), but no scientific testing was done for thyroid disease and heart disease for proper assessments.  Only aspirin and nitroglycerine provided instead of proper testing, prevention, causing use of these damaging drugs by speculation, and deliberate indifference.

Merson does Not have her supervisor's, Burris, approval to her reply for grievance per policy or custom, staking personal and official responsibility for all damage.

I file another medical grievance  9/19/2000, for relief from symptoms and degenerative prison conditions from independent, 3rd party medical person specialized in appropriate fields, due to deliberate indifference by Defendants to My symptoms.

Merson's reply to this second grievance for the same issue, due to her inability to communicate with Me for proper relief, dated 9/19/2000, that I was to put in another sick call slip requesting to see the CMS Doctor. I had already been brushed off by medical staff of CMS preventing Me to see Doctor.

I continued to be under severe, traumatic stress, emotional

57

disability severity in terroristic and tortures conditions, to have a proper, representative voice to speak for Me; and custodians' deliberate indifference to mental health, failed to provide a timely 'voice' for proper care of Ward causing My continued abuse and exploitation due to my mental disabilities. See Mental Health Claims.    Defendants again fail to uphold Patients' Rights'.

 Burris, working in harmony to deprive, approves <u>Messons</u> reply on 9/24/2000.

<u>Legal Claims</u>: In violation of the Constitution include: redress of grievances; denial of due process + life, liberty, property interests; cruel and unusual punishment in an even <u>more</u> modern, civilized, and decent society; continues fear of risk of health for imminent death or severe injury, with history of this Dept of Corrections of deliberate indifference and inability to be effective in these areas; for starters. Future damages and past ones due to failures to treat symptoms, for economic burdens, setting me up to be a medical burden on society welfare.

19.W., 19.X., 19.Y., 19.AC., 19.AG., 19.AH., 19.AI., 19., AJ., 19.AL.

Claims 2.F., 4. Allergy, and 19.H., 19.J., 19.L., 19.N., 19.P., 19.Q.,

2F,
4

Sick call Nurse on duty before 27 Apr 2003 who saw Me sayed she could not approve nondrowsy allergy medication.  Until now, since Spring 2000 ~~medical~~ I could not communicate the problem of CTM acting as a sleeping pill for Me, because I had been so out of it, just living daily going through the motions and sleeping ~~too~~ much till I finally realized that CTM was part of the problem. Prior to Apr 2003, other attempts were made for relief for non-sleep medication which kept being brushed aside from proper relief, by those unknown medical staffs, which should be named in My medical record.  I had severe, cronic fatigue problem with other mental conditions ignored by mental health staff for ~~~~ any diagnosis then, which all affected my daily, major life activities as serious medical needs.

Above Nurse directed me to put in another sick call slip for seeing a midlevel ~~p~~medical provider, which further delayed timely treatment. Fortunately, I was competent to do that at that time. But, if I were not, what happens to those who did not or can not for whatever inability or disability unknown to a Ward on how to communicate? I would have been left to rot or alike if I could Not communicate for some reason.  ~~This~~ This cannot be the professional standard.  I did put in sick call slip on Apr 27, 2003. Chucks was seen and she sayed that nondrowsy medication could not be provided, and that I would have to continue on CTM (abbreviation unknown) for any allergy relief.  Then, I did not know what to do to get the medication I needed.  And medical

59

just kept shuffling me around and ignoring my serious medical need.

I was then directed by a nurse unknown to write to Dr. Alee which I did on Apr 27, 2005. No reply was ever received.

Legal Claims: These Defendants violated; education ~~to~~ on how to redress this grievance thereby denying due process and equal protection of the law; custodians failed to assist, care, and find the status I was in; cruel and unusual punishment in an ever more modern, civilized, and decent society; patients 'rights'; unable to work during attacks, worsened by only giving sleep medication to save medical contractor money; condition is a daily, major life activity debility to Me.

19 AM., 19. AN., 19. AR.
19. Y., 19. AA., 19. AC., 19. AG., 19. A.N., 19. AI., 19. AJ., 19. AL.,
19. F., 19. G., 19. H., 19. J., 19. L., 19. N., 19. Q., 19. W., 19. X.)

<u>Claims 2.J., 4.D.</u>  <u>Thyroid Disease</u> (Chronic Care), and 19. A.,

2.J.
2.P.
4.D.

Medical grievance mailed in grievance box for medical slips on 11/10/2005,
20560, for lack of treatment, prevention, and diagnosis for this
disease because of continuing symptoms.

Merson delays forwarding grievance for informal resolution attempt
for 18 days.

Dunn fails to have informal resolution done for another 37 days delay,
when policy is to do this in 48 hours.

Rodweller only refers to physician then. Physicians had already failed
to treat or refer for years I had been in this condition unknown to me to
communicate. Custodians fail to be a <u>voice</u> for Ward and provide
patients' rights.

Custodians and medical staff failed to inform me of my patients' rights when
signing off on My grievances, what it means. Coercion at its best was
was going on.

Thus, I refused to sign-off on this grievance since I heard by
gossip, the only way to get legal information in time here, of these
illegal tactics being used by medical staff to deny, deceive,
and perpetrate fraud on Me for proper medical services.

Merson, on Grievance Information print-out from Her, lied by
marking that "offender signature captured."

Label as "offender" on print-outs shows intention of management
for DOC Brady, Taylor, Howard, Talley, Snyder, Carroll, since
everyone is an offender in some way, is not a rehabilitative term,
medical grievances come from `patients`, offender implies irreparable
person, unprofessional conduct.

61
58

Merson delays this medical grievance for medical relief for 15 days before refering for Informal Resolution to Medical Grievance Committee for relief, when it is an instant activity with a few strokes on the keyboard.

Rodweller and Gordon uphold My need for a medical specialist on 2/07/2006, another 19 days later. But then comment on computer print-out reply that no specialist is indicated, causing further confusion to deny proper relief.

Rodweller is in conflict of interest position, denying dueprocess, by Administrative Law and Procedure by also being on the appeal committee called the Medical Grievance Committee when her actions caused the appeal.

Appeal of 20560 sent on 2/10/2006 to Weldin, Howard, via Merson as administrator of grievance (Prison Grievance Chairperson).

Letter also sent to Pierce, Malaney, Weldin, Howard for needed immediate relief from yet speed of bodily degradation and imminent death for Me.

Pierce stamped copy received 2/16/2006. No relief.

Merson failed to forward appeal to Weldin for 5 days via computer internet with the stroke of a few keyboard buttons.

Weldin was asked to review CMS treatment plan and advise.

Weldin denies all issues in grievance totally, saying I am getting all medications according to M.A.R. - Medication Administration Record. He misleads the issue when no prevention and diagnosis tests were done yet for medications needed. Weldin denies professional treatment as medical specialist would - endocrinologist.

Note continues failures to test symptoms, and stop expedited actual death of Plaintiff.

Howard denies grievance in lock – step, without (properly) checking legality of medical procedure and standard use to test symptoms, on 4/11/2006.

Dept of Corrections replied via Howard, received by Me on 4/19/2006. Grievance was filed 11/10/2005, over 5 months later for type of medical condition; no proper prioritization, risk management, or alike.

It took 159 days, minus Christmas holiday, to respond to this one grievance about expedited actual death conditions not stopped.

Defendants create their own unnecessary work and law suits due to their continued deliberate indifference. If they did their job in the first place without the wrong attitude and wrong intentions, we'd have less work and could work on something more beneficial. Busy putting out fires instead of preventing them in the first place, we are.

This serious medical need affects My daily, major life activities, which is still denied proper prevention, diagnosis + treatments. One can only cringe at this abuse, and be shocked at all the other wards in custody of Delaware Dept of Corrections who cannot file a law suit for relief who are obstructed access to courts for whatever reason, due to indigency, like official oppression, deliberate indifference by state employees, inability, and/or disability. A Monitor must be appointed to go talk to each Ward, with time and patience, to get to the bottom of each case.

Chucks denied medical specialist, an endocrinologist, for years here to Me. But now, all of a sudden, after civil rights

investigation started in Delaware Dept of Corrections, She all of a sudden tells me She can refer me and will, to an endocrinologist on or about September 2006. And here I am now, at this filing, and still have NoT seen one.

Federal investigation was ongoing about September 2006 for out of control medical services killing too many people, and not caring for serious medical needs, and professional standards.

Then, said medical contractor staff member ( J. Doe VIII ) administrator replied saying — they are not aware of that referral, I am still now waiting for a response from that investigation by administrator.


Grievance 20823 is Not a duplicate grievance as Mc Creanor wants it to be in his reply to sweep grievance under the carpet, since in this one Chucks is also named in this reoccurrence.

Mc Creanor illegally acts as My legally appointed counsel, by denying this grievance, fails to act as legal custodian should for Ward's relief, and trys to mislead the grievance to deny it obstructing access to court, obstructs exhaustion need, fail to inform of right to appeal and how to appeal as legal custodian would to uphold Ward's and patient's rights. Security should NoT be involved administratively with medical grievances to obstruct access; only forward papers if necessary.

64

<u>Legal Claim</u> : These Defendants obstruct justice, redress of grievance, security in person, deny due process and equal protection of the law for My interests, cause cruel and unusual punishment in an ever more modern, civilized, and decent society, in an information age, and denies rights to speech and ~~the~~ communication, press and communication, expression.

65
64

19 AJ., 19. AL., 19 AR.

19. L., 19. P., 19. Q., 19. X., 19. V., 19. AC., 19. AG., 19. AH., 19. AI.,

<u>Claims 2. R. Illegal Medical Co-Pays, and 19. G., 19. H., 19. J.,</u>

I was forced to file a medical grievance on 4/27/05 for relief from abuse from continuous charging and removing money from my inmate account as other Wards probably were, to get refunded wrongful taking for cronic care condition / patient as per State law.

I was also mislead by nurse that allergies are NOT a reoccurring condition. Allergies happen to Me every year. These allergies cause Me severe disability affecting My daily, major life activities, as covered under the <u>American Disabilities Act + Rehabilitation Act</u>, being unable to work, care for Myself, on top of other mental disabilities from these tortures conditions under these Defendants.

Merson took 7 days to send this grievance via computer and a few key strokes, instantly transmitted to Wolken for investigation by medical staff informal resolution, causing wrongful delay of symptoms prevention, diagnosis, and treatment.

Kratso held informal resolution meeting with Me on 5/25/05, 21 days later for more unnecessary delay, for something a Doctor could have instantly order presqription / natural treatments for.

I never had any of these medical problems on the outside of prison; I never had to file one grievance their, even through military service.

She chose to reply and ignore this grievance by saying this problem was taken care of last grievance meeting. It was NOT — No refund received, nor compensation and punitive damages. Therefore, another grievance needed to be filed.

67

I was coerced and not informed at all about patients right and information for conditions to knowingly and intelligently participate in my medical care, and sign-off on this grievance, and on any others sign-off so far, if I did.

Medical grievance 20776 was put in grievance box on 11/10/2005 due to me having to sign a statement, illegally conceived, to receive my prescription glasses, stating I would have to pay for any repair or maintenance of these glasses to receive them. I am also legal indigent which was NOT considered.

When a State takes a person into custody, the State becomes its legal custodian who is responsible for all their medical needs as a Ward, as State property requires proper care and maintenance payed for by State. With more responsibility that comes with authority since any person is actually secret property at time of custody under the Constitution, or alike.

But, do to lack of supervision by law of these Defendants, Wards are made less then State property by actions under pretence/color of law.

Ward of State having to pay State for their needs makes Us indentured servants, which is against the Constitution and Federal Objectives.

Copay amount is also unequal treatment of class compared to percentage of pay state employees receive, which shows further abuse and exploitation by captors, Brady, Taylor, Howard, Talley, Snyder, Carroll, fail to supervise as moving force allowing abuse not holding medical contractor accountable for their actions, and NOT causing restoration of Wards as a legal custodian should.

68

McCreanor illegally denies this grievance 20776 claiming expired filing period when He and custodians and medical providers fail to inform Me about the illegal conduct, allowing the abuse, and failing to uphold Wards rights as a legal custodian should.

No competent, professional checks and balance system for accountability risk/damage prevention system exists in this case, as probably Dept of Corrections wide by custodians/Defendant for Wards.

McCreanor apparently back-dates his replies on grievances because they are not received the next day from His date of signature. It takes only one day to receive inhouse mail. He or someone he is responsible for dated grievance reply Nov 28, 2005. Actual date I received it was 12/16/2005, 18 days later. Date grievance mailed to McCreanor NOV 10, 2005. It took Him 34 days to see the dates on the grievance. Grievance policy for medical grievances does not show seven day requirement to file as for regular grievances.

Medical grievance 22386 put in grievance box 12/18/2005, showing filing period not expired. NOT expired due to failures to inform of patients' and legal rights' for knowing and intelligent decision and participation in ones medical care.

McCreanor replies saying 'duplicate grievance.' Actually reoccurring condition, which also has not yet been resolved in a professional, timely manner.

Reply dated, signed and mailing date Dec 27, 2005. Date actually received by Me was 2/04/06, 38 days later. Backdating or whatever is going on is illegal delay of reply for relief.

Medical grievance <u>22773</u> put in grievance box on 1/2/06, about needing refunds for all medical co-pays because (A) taken illegally, (B) taken illegally from My inmate account, (C) legal custodian who allegedly requires co-pay be taken by medical staff according to unknown nurse, (D) failures by custodian to supply "necessities of life", (E) and in a professional manner, timely, equally, effectively, meaningfully, capably, adequately for Me as Ward, and class members, (F) and Defendants conduct legally approved under <u>Administrative Procedure Acts</u>, for proper notice and hearing and time to unobstructed access to information like legislative action to implement a law, (G) and failures by Defendants to uphold Wards rights as a legal custodian should.

McCreanor obstructs justice and takes personal and official responsibility in all His replies to Me, as a Ward class member, by failing to send grievance to a legally competent authority in Delaware which can investigate the law, as an effective, competent custodian should to look out for the Wards responsible for.

McCreanor replies saying grievance produce procedure is not a court. We know that, but it is administrative law enforcer, especially for their Wards; His obstructive conduct under color of law continues damage.

Expiring filing period rule is illegally applied by McCreanor. I cannot file a grievance until patients rights are fulfilled to file a meritorious grievance, which Defendants continue to obstruct.

Defendants fail to consult competent legal counsel before implementing or changing a DOC rule, nor check and implement professional

70

standards for proven reasons, — like best interests for all involved.

Otherwise, grievance would have to be filed prematurely on every action to preserve it, to not miss filing period, which would be more of an overwhelming response to an already ineffective grievance system and administrators already clogged up, broken, mismanaged, unprofessional grievance system.

McCreans and Merson continue to work, with proper supervision, in conspiracy and corruption to bezile, deny, discourage, frustrate, anger, obstruct justice for professional standards.


Legal Claim : These Defendants deny redress of grievances properly, freedom of speech, communication, and to press and information, and to expression; deny due process and equal protection of the laws for Wards interests, and State and National interests to uphold the laws and objective; causing cruel and unusual punishment in an ever more, modern, civilized, decent society by taking a persons last few dollars; and then also expecting indentured servitude by running the inmate account into the negative - continuing to charge for many things, and not duly convicted to this punishment.

19.Q., 19.X., 19.Y., 19.AG., 19.AH., 19.AL.

2.S.      Claims 2.S. Severe Foot Pain and Suffering, and 19.H., 19.J.,

No grievance, again, should have been necessary for medical staff to do their duty. But, instead, deliberate indifferent to serious medical need, I was forced to file medical grievance 3178 which was put in medical grievance box on 4/29/2004 for no treatment for flat feet. Only then treatment was provided 17 days later. Thus, treatment was needed.

Edith Rivera resolved it in time. She and medical record would know medical staff persons initially denying diagnosis + treatment.

Legal Claims : These Defendant(s) abused redress of grievance procedure by requiring its use by failing to do their duty in the first place ; Cause cruel and unusual punishment ;

19.L., 19.N., 19.Q., 19.X., 19.Y., 19.AG., 19.AH., 19.AI., 19.AJ., 19.AL.
Claims 2.T., Medical Records And Vaccinations, and 19.A., 19.J.,


Medical grievance 16283 put in grievance box 7/28/05 for failures
to keep correct medical records, and proper vaccinations procedure.
Merson chose not to forward automatic referral procedure for
medical until 8/18/'05, 21 days later for Dunn to investigate.
Dunn did not cause informal resolution of possible irreparable
vaccination procedural error until 10/19/2005, 61 days later,
by "DM". No relief from these Defendants.
Merson forwarded this grievance to medical grievance committee
on 12/28/'05, 80 days later, for proper disposition. She is also
NOT medical staff, not licensed in this State for any medical service
upon info and belief except for first aid + cpr probably,
This medical grievance committee (J. Does VI ) fail to respond
to correct medical violations and grievance procedure violations.


Legal Claims: Defendants here violate redress of grievance in a timely,
effective, meaningful, capable, and adequate manner for GOOD health;
fail to provide patients right; practicing medicine without a license;
cruel and unusual punishment; denial of due process, equal protection
for life, liberty, and happiness interests.


75

19.X., 19.Y., 19.AA., 19.AG., 19.AH., 19.AI, 19.AJ., 19.AL, 19.AR.

Claims    H.I.P.P.A. Violations In Grievance Procedure

2.S., 2.T., 4.A., 4.B., 4.C., 8.M., 19.H., 19.J., 19.L., 19.N., 19.Q.,
Brady, Taylor, Howard, Talley, Snyder, Carroll, violate HIPPA
law by denying privacy and requiring medical ~~███████~~
grievance forms to go through security staff, obstructing
timely, equal, effective, meaningful, capable, and adequate,
good access to medical services.

HIPPA presumeably standing for something like  Health Information Personal Privacy Act.


Legal Claims: These Defendants violate right to privacy; cause
cruel and unusual punishment in an ever more modern,
civilized, and decent society; obstruct or deny legal, professional
access to medical staff, without delay.

77

17
70
70

Claims <u>3</u> Failures To Provide Proper Dental Services, and 19.H., 19.J.,
19.N., 19.Q., 19.T., 19.V., 19.AA., 19.AC., 19.AG., 19.AH., 19.AI, 19.AJ., 19.AL., 19.AR.

Medical Grievance (no number provided) put in grievance box 6/8/2001 for proper
dental check-ups, prevention services, and patience rights to be informed, dental + denture
cleaning, flossing method not provided since Dec 1999. On intake dental
check-up, Dentist says no preventive services, cleaning, nor flossing method
provided here.

Merson replies with illegal responses from federal and state law:
A. "preventive dental care is not part of the medical contract,"
B. "it is not covered under the grievance 4.4 because it is outside
of the power of the Institutional Grievance Chairperson,"
C. "Dental floss is a security issue and not grievable."
These are illegal because:
A. Contract with medical services contractor has to include "prevention" by
state law 11 Del. C. § 6536, and federal laws for legal care for wards of State
to do no harm to them;
B. Not outside of grievance procedure;
C. Other prisons have preventive services, cleaning, and flossing method.
But now, new medical standard upon scientific proof requires a water-pik,
Petitioner's custodian must provide. There are serious medical needs known
by any reasonable person.

Burris, on 6/27/2001, concurs and allows illegal conduct and
reply by Merson.

Merson and Burris add to risks of death like arterial plaque build
up for stroke, and yet other covered-up damages possibly occurring due to
no information provided from, ie. the internet, for patients right to be informed and
participating in one's treatment, by custodians.

79

Grievance 14669 put in grievance box 6/05/2005.

Merson does not forward it until 6/16/05, 11 days, to Wolken for investigation. Unnecessary delay for an instant decision and transmition.

Grievance 18768 put in grievance box 7/15/2005.

And another one 40 days later due to lack of reply for above grievance with #14669.

Merson replies by saying still under investigation with signature and mailing date of 7/22/05.

But, another state employee "WGW" approves in reply on 10/17/05.

Then, Merson's grievance 18768 was received 93 days after sending by petitioner when replies should be more than 30 days later by generally accepted professional standard.

Merson sends grievance 14669 to Dunn on 7/22/05 since Wolken had not acted on it; 47 days later.

Medical informal resolutions should be handled at least as proper as regular prison grievance informal resolutions must be handled in 48 hours by prison rule.    USCA 1, 8, 14.

~~Medical informal resolutions~~ Thus, all informal resolution staff, Wolken, Dunn, Rodweller, and their supervisors to be named (J. Doe's), caused illegal delays for risk (s) of injury.

Linton refers to schedule appointments again with medical staff who already ignored medical issues. He fails to provide for any patient information and participation rights. Fails to handle his proper attitude to be professional for a medical staff member, instead arrogantly intimidates with derogatory questions to put me on a guilt trip and coerces Hartmann to sign off on grievance when patient unknowingly of his rights, legal and proper medical services for problems medical staff already ignored.

80

No one from Correctional Medical Services nor Dept of Corrections for legal custodians checks to see if Linton did his response legally. Failures to supervise by Taylor, Howard, Snyder, Carroll, Linton's Supervisor (J. Doe IX to be named), and Medical Grievance Committee Members that time on duty.

Linton failed, or supervisor(s), to perform informal resolution from 6/16/05 date grievance turned over for medical staff resolution, till 7/27/05, 41 days. And then, cycle of deliberate indifference or incompetence started again by same medical staff on duty then.

Grievance 20558 put in grievance box on 11/10/05, for denial of dental services for over 6 years now. Failure to inform and care for ward of state, and patient.

Merson took 18 days to refer this grievance for informal resolution by Dunn. Dunn referred to next level for Medical Grievance Committee on 2/28/06; about 90 days that took to just refer to Committee, failing to prevent risk of damage, and administrative, professional procedure. Ellen, Weigner, Gordon illegally denied dental services totally, outright saying no legal right to prevention, diagnosis, treatment, nor patient/ward of state education and rights, on 3/20/06; 26 days later. Appeal received by Merson on 3/24/06. Forwarded by her to Welch. Welch upholds grievance but reply comments denys legal access to dental services, fails to refund co-pays illegally taken, denies indigent patient right to be informed, denies any prevention services and causes damages, or risk thereof, from that action, causes illegal punishment while in custody as ward of state, and threatens health, approves/causing illegal cost-cutting measures by medical contractor, causes x-rays to be denied

(Jane Doe XXXVII)

by Dentist (female, young caucasian alleges being in charge of all delaware inmate dentistry) due to indigency, denies rights under Administrative Procedure Acts, notice, hearing, appeal, and American Disabilities Act rights for advocate, denies patient rights, risk of harm, and right to dental flossing method, and special dentist denture cleaning.

Howard upholds Petitioner's appeal request on 4/11/2006, but fails to enforce his order, and for class members - inmates rights.

Petitioner does not receive decision on grievance until 7/19/06. It took from 11/10/05 to answer this grievance, about 189 days, while no dental services/prevention done during that time.

Brady, Taylor, Howard, Snyder, Carroll, dental staff, medical services contractors fail to control, supervise and/or train bylaw, ethics, code of conduct, American Dental Association Standards, American Correctional Association standards for services, and laws for wards of state, and patient rights. Medical physicals are automatically scheduled for all inmates annually, why not dental services for wards of state?

Special appeal directly sent to Carroll on Mar 23, 2006 because of severity of situation. No reply to date.

Medical grievance 22370 put in grievance box 12/18/05 informing administration of illegal denial of a flossing method causing harm to body and speeds up death.

McCreanor takes legal authority he does not have to obstruct justice, official oppression, abuse of authority, by denying grievance on 12/27/'05.

McCreanor's reply fails to be corrected by failure to oversee by supervisor of his replies for legality. Thus, failure to supervise.

82

Above Defendants deny constitutional rights to redress of grievances by generally accepted professional standards, abridge freedom of the press and information for patient rights to participation in his treatment; USCA 1;

deny security in their person (Petitioner, classes where appropriate) under 4th Amendment;

deny due process of law for life, liberty, and property interests by Petitioner, classes; 5th;

cause cruel and unusual punishment in an ever more, modern, civilized, decent society to proper, professional health/medical/dental care; USCA 8th;

deny natural rights by denial of other constitutional or statutory rights or common law rights; USCA 9th;

deny powers of the state statutes; 10th USCA;

deny rights to be free from involuntary servitude having to pay for medical/dental services if one has an income or not, or is indigent.

deny privileges, due process, equal protection of the laws; deny life, liberty, and property interests; USCA 14th.

All Patient's rights must be permanently, and visibly posted for all to see.

Dental copays illegally required for indigent wards.

2.E., 2.H., 4.D., 4.I., 4.J., 19.A., 19.H., 19.S., 19.L., 19.N., 19.P., 19.Q., 19.W.,

<u>Claims</u>, Illegal Conduct with Medications For Petitioner

19.X., 19.Y., 19.AA., 19.AG., 19.AH., 19.AI., 19.AJ., 19.AL., 19.AR.

Medical grievance (no number since no reply) put in grievance box 9/1/02 for failure to provide chronic care medication for 6 days. Scheduling secretary for medical staff appointments ( J. Doe X ) on and before 9/1/2002 for inmate appointments, and supervisor of scheduling secretary ( J. Doe XI ) failure to properly schedule so medication does not runout, and fails to stock medication for these situations. Defendants Pharmacist ( J. Doe XII ) and supervisor of pharmacist ( J. Doe VIII ), moving force, and Medical Services Supervisor ( J. Doe XIV ) on and before 9/1/02, all moving force behind unprofessional, deliberate indifference. Institutional Grievance Chairperson & Merson at that time of mailing this grievance, responsible for picking up grievances from grievance boxes and keeping control over them from locked boxes, on 9/1/2002 obstructs justice to medical rights by failure to respond to this grievance.

Medical grievance dated and put in grievance box on 9/7/2002 is follow up for previous grievance for failure to respond timely to serious medical need for chronic care medication.

Merson replies 9/13/2002 to her supervisor Burris with medication having been received on 9/11/2002. That was true.

Merson and Burris fail to cause relief to fix broken medication system. Merson took 5 days to reply to this grievance which needed immediate attention. Grievance improperly delayed; medical services improperly delayed by bureaucracy or alike.

Merson and Burris, as legal custodians of Petitioner, and one of class - inmates, condones, moving force, harm to Petitioner, class, due to required,

daily, prescribed medication.  <u>Systemic problem of pattern and practice.</u>
This was the first time Petitioner Hartmann, while legally incompetent,
had enough information and capability, which custodians ignored, from
terroristic and tortures prison conditions <del>to</del> to file a medical grievance
on medications obstructions.

Burris approved misconduct, breach of duty, on and about 9/19/2002,
with above medical grievance dated 9/7/2002.

<u>Medical grievance dated and put in grievance box on 9/10/2002</u>, showing
day 15 now without cronic care medication and no reply <del>to</del> prior 2
medical grievances received 9/13/2002.

Merron and Burris fails to do duty to forward grievances in a timely manner
delaying prescribed medications, acting as if my assigned medical doctor,
impersonating a licensed doctor assigned over Petitioner's medical care,
obstructing medical services.

<u>Medical grievance 13291 dated and put in grievance box on 4/12/2005 for</u>
failure to provide medication for cronic care.

Merron delays medical grievance for 9 days (4/21/2005) before forwarding
for medical investigator Ellen.

This was first change Petitioner was able to file another grievance for delays in
medication due to incapacity caused by custodians unprofessional treatment
further shown in other claims.

<u>Ellen fails to get informal resolution until 5/10/2005 by Krebs.</u>
<u>Krebs provides no relief from broken medication dispensing system procedures.</u>
<u>Merron forwards grievance to Medical Grievance Committee on 5/24/2005;</u>
14 days later;

# Claim 1 - Medication Violations - continued

These medical grievance committee members (J. Does XV) after 5/24/05, fail to fix broken medication dispensing procedures.

Petitioner provided no relief for damages but is only continued on medications. Thyroid medication controls entire body metabolism; denial of medication slows system down towards imminent death.

Howard, Welch directly involved, and under State supervisors moving force, Brady, Taylor, fail to enforce law upon medical services contractors for all medical grievances this Petitioner had to file, which would not have been necessary if Petitioner was NOT in custody of state. Petitioner never had to file a grievance with his doctors to get what should be done, through the military, and as State and Federal employee.

Department medical grievances policy says all medical grievances are monitored by the Department, as should be by law, thus Defendants as state employees knew of the problems and not fix them under systemic wrong attitudes to their duties.

Medical grievance (no number since no reply) dated and put in grievance box on 4/16/05 for failures to provide prescribed medications from April 7 through April 16, 2005. Eventually continued medications.

Medical grievance 18848 dated 10/17/2005 for denial of cronic care heart medication since 10/1/05 without relief from sick call slips sent. One sick call slip was returned saying it was refferred to pharmacy. But, no date nor initials of medical staff having done referral.

Mc Creanor fails to forward ( have forwarded) grievance for informal

87
86

resolution until 11/08/05, 22 days later for an instant forwarding event, for required timely cronic care medication as if Petitioner's doctor, practicing medicine without a license.

McCreanor wrongly puts medical grievance for cronic care medication on "non-grievable" status. Maliciousness; ill-will.

No informal or formal resolution provided by McCreanor to not delay, move the emergency risk prevention medication, degrading condition untreated, by lack of grievance policy for risk prevention, medical issues no delay.

Petitioner was NOT informed then by McCreanor or representative that this grievance was denied as a "duplicate grievance"#19555." It was not a duplicate because it was another incident with different dates, showing the continues broken medication dispensing system, for years, no one fixing it.

McCreanor falsify's document on Grievance Information form, from Institutional Grievance Chairperson that "offender signature captured," which cannot be true because NO informal resolution was ever, even attempted.

Grievance was sent to Medical Grievance Cmte on 11/08/05, skipping informal resolution attempt phase by McCreanor.

Medical Grievance Committee (J. Does' XVI) never hears nor replies to grievance.

Appeal reply from Welch delayed by him until 3/31/06 to UPHOLD this grievance.

Then, Dept of Correction's Health Services Director (J. Doe XX) on 3/31/06 reports on reply form, wrongfully to deceive and mislead broken medication dispensing system by saying "he continues to receive

88

meds on a timely basis. "

Therefore, Petitioner has not signed off on this grievance, as he used to be tricked into without being informed of his right – and still has not been informed in writing, due to continues deliberate indifference to problems to fix them.

Howard UPHOLDS grievance on 4/11/06, but fails to enforce proper medication dispensing procedures and create them.

This reply was not received until 5/5/06, 34 days later. Why all these unprofessional delays? Therefore, it took from 10/17/05 to 5/5/06 for this grievance to get a legal/ethical answer for relief. Where current grievance procedure allows 180 days, way too long and unprofessional when the professional standard is 30 days maximum per level. Answer should be able to be produced the following week. But due to so many illegal conditions in this facility, as probably state wide, this administration cannot keep up with putting out the fires continuesly starting due to their illegal conduct. And as Taylor just addmitted in his resignation period deposition during federal investigation, he did not follow-up to enforce his delegation. So, lower echelons did what they wanted; lack of accountability. Only relief is court; they cause courts extra work. Permanent Monitor needed, to continuesly interview inmates of what is actually going on, to also break off the retaliatory conditions people have to wrongfully, inhumanely have to live under, when trying to get proper relief from evil forces, and degenerating conditions.

## 20422

Another time not received meds on time was from 4/28/06 to 5/11/06, for 13 days. No grievance was filed due to being a lost

cause, vexatious, discouraged, beaten down, exhausted from prison conditions.

Howard inconsistently upholds or denys a grievance as can be blatantly seen from this grievance, and previous one. This one was denied. Previous one, exact same issue - UPHELD.

One can only be shocked by how others are treated here who cannot, for whatever reason, bring a civil complaint because of their inability, disability, and/or handicap.

# 20422 dated 10/27/05.

## 19555 + 19848

Same issue grieved, but was assigned two numbers by Grievance Staff.

For 19555, informal resolution was alleged by Dunn on 11/01/05, was not resolved as alleged, by Petitioner, Ek & result mislead.

And, fails to address pattern and practice for lack of timely medications.

Resolution shows Petitioner not seen for 57 days while heart/chest pains - sign of stroke, continued off and on during that time ; Dunn approves of delay.

Dunn 'now' explains custom to Petitioner, after many years of grievances about getting medication on time, putting problem in Petitioners lap to solve. Petitioner has to write more sick call slips - she says.

Medical Staff, Pharmacist (J. Does XVII), for part of problem of delivery, fail to provide medications from sick call slips.

It should not require all these sick call, slips and grievance and hurdles to get what any outside doctor would provide without any of these problems, created by these Defendants.

All this waste of time, work, taxpayer money, and damages are caused by Defendants, et. al. *et all contractors since Dec 1, 1999,*

Correctional Medical Services, Administrator at Delaware Correctional Center (T. Does) XX) for all these medication dispensing problems, grievances, continue to not fix problems. *et al. ( J. Does XXXII, XXXIV, XXXV)*

Correctional Medical Services, Supervisors can see the medical grievances whenever they want, but continue to allow problems. Thus, moving force to damaging conditions, failures to prevent risk, etc. to be determined.

Grievance 19555 has no known offender signature for informal resolution as alleged by Merson on Grievance Information Form from Institutional Grievance Committee. Falsifying government document.

No resolution or relief ever provided by Medical Grievance Committee ( J Does XVII), nor proper supervision by supervisors for proper relief.

### 20422

This medical grievance was dated and put in medical grievance box on 10/27/05 for denial of timely medication by Pharmacist (J. Doe XVII).

McCreanor took from 10/27/05 to 11/22/05, 26 days to refer by instant computer for investigation by medical staff, unnamed by McCreanor as form needs, and receiver needs to know who is responsible for action.

McCreanor failed to provide any grievance info until 5/5/06; almost 7 months.

McCreanor's report then showed 'non-grievable' ruling by him.

He obstructs Dr's order again for prescription. Obstructs proper procedure, denies medication ordered, etc.

McCreanor never refers for informal resolution by procedure, never attains or attempts to get patients (offenders) signature as alleged on Grievance Information Report dated 5/5/06; falsifying government document.

McCreanor also alleges on Grievance Report printed 5/5/06 that grievance expired filing period. It could NOT have; see Grievance Date 10/27/05 and Incident Date 10/27/05 on report. Falsifying Government document to deny legal right, etc.

No decision was ever received from Medical Grievance Committee (J. Does XIX) as of to-date.

Welch denies grievance allegedly on 3/31/06. He reports that DOC Health Services Director reports that the meds issue has been resolved. But, actually, he falsifies record because medication dispensing problems have not been knowingly resolved for this case and Petitioner. Why would Welch deny a proper medication dispensing system; a blatant illegal, malicious conduct?

On 4/3/06, Howard, without apparent independent investigation and findings which denies proper appeal for supervisors duty, blindly denies grievance, blatently contrary to law and ethics, as if licensed medical doctor for Petitioner to deny medication prescribed, a

Petitioner did NOT receive ruling till after 5/5/06. Grievance start date 10/27/05; 218 days to answer this grievance. Professional Standard is 90 days.

<u>19868</u>

This medical grievance dated and put in grievance box on 10/27/05 for

denial of medication from sick call slip - no reply.

It took McCreanor to forward this for investigation till 11/8/05, 12 days, just to transfer case to proper authority for investigation, which is an instant event on the computer network. Medical issues especially require no delay. Investigator responsible well known. Having to go through Inmate Grievance Chair causes further unnecessary delay, damage, bureaucracy.

McCreanor illegally calls this Grievance also "non - grievable."

McCreanor does NOT forward for informal resolution per policy, and without authority, denying medication.

McCreanor shows No signature captured as per policy/custom for procedure.

McCreanor shows no informal resolution attempt. alleged

McCreanor wrongly reply's as this Grievance being a duplicate of 19555. This grievance is actually different because of it being another incident at a different time, showing reoccurring problems, and continuing deliberate indifference to systemic conditions.

McCreanor allegedly forwards grievance to Medical Grievance Committee on 11/8/05 per Grievance Information Report printed 5/5/06. No hearing held with Petitioner.

Welch allegedly upholds grievance on 3/31/06 per report.

Howard upholds grievance but does NOT enforce his decision to fix medication dispensing problems/procedure, and getting proper compensation/restoration for damages from medical contractors, for Petitioner, as legal custodian to uphold laws of the land for Petitioner/Ward of State. Of course, this issue goes for all claims related. Custodians have obvious conflict of interest in their duty; Brady, Taylor, Howard, Welch, Carroll, Snyder, McCreanor, Menon,

20824

This medical grievance dated and put in medical grievance box on 11/17/05    93

93

for lack of timely medication, and Grievances NOT responded to in a timely, professional manner, and failures to professionally see sick calls the next day to stop any pain and suffering from ill-will by custodians, and to be seen by a qualified medical staff person no later then in 48 or 72 hours if unusually overcrowded with unexpected amount of sick calls that day. If not prepared for regular routine daily events, what will happen during an outbreak of a disease?

McCreaNor fails to refer for level one meeting for informal resolution.

McCreaNor alleges this grievance a duplicate of 20558, 20422, 19868, 19555, to deny proper medical treatment, when they are all different incidents, continues repetitive problems, continually being ignored for ill-will to Petitioner as a class member for illegal discrimination as a status, and failures to fix problems.

## 20156

Regular grievance dated and dropped in regular grievance box on 11/3/5 for fixing last incident date to 10/17/05, not 10/01/05, the first incident date because, when figuring that a grievance should be filed in 7 days of incident date if legally possible, the last incident MUST be used to prevent premature, illegally denied by Merson or McCreaNor of a grievance filed date.

Record must be correct with last incident date for that grievance to prevent any future problems or misunderstanding, by human nature, when one has to go By The Record.

McCreaNor illegally responds allegedly by the record on 11/15/05, due to Petitioner being entrapped as grievance form is printed, that this grievance was a 'request'. This excuse is only used to obstruct justice, cause ill-will, contrary to custodians duty to properly communicate with ward of State to uphold his/her rights, and NOT act contrary to that as Defendant McCreaNor in this case, to beguile, frustrate, intimidate, degrade Petitioner and prevent proper relief.

94

McCreanor comments on reply that "grievance date cannot be later than the incident date," which is totally misleading again, ~~xxxxx~~. But, it has to be. Then he tries to mislead further by trying to blame it on the computer program. Any program can be fixed if wrong.

McCreanor comments also to further mislead and deny relief that "grievance was accepted." But, actually, as one can see, that this grievance was NOT accepted for processing further as he signed it and denied it for allegedly being a "request," therefore `unprocessed.' There are NO grievances sent as `requests' by this Petitioner, when a law continues to be violated with ill-will.

McCreanor further tries and did bigile, frustrate and discourage legal rights by vouching / condoning medical staff illegal conduct, and obstructing justice by writing as comment, "Medical is aware of how the (computer) program work." If they are, then why are they not handling timely medical relief 10/1 rather then 10/17 which should require more immediate treatment / processing before any older grievance incident + type of incident requiring more timely attention?

Special appeal letter sent to DOC Grievance Administrator Welch, and Howard on Dec 6, 2005, since regular appeal process was obstructed by McCreanor and Menon when timely reply was required to prevent further damage from denials of 19555, 19848, 19868, 20422, 20156.

Letter required relief from wrongful conduct and procedures to resolve medical grievances, unobstructed, in a timely manner. No relief to-date.

## 22384

This medical grievance was dated and put in medical grievance box on 12/18/05, for relief from calling grievances 20824, 19555, 19868 duplicates, causing obstruction of justice & relief from different incidents, systemic abuse.

Mc Creanor replies saying "inmates do not decide what is a duplicate," on alleged 12/27/05, to further beguile, etc.

Each grievance is needed to show, a new charge.

Mc Creanor suspiciously back dates his reply to Petitioner. Reply was not received until 2/14/06; about 38 days after he signed and dated it.


20824, 22364, 22370, 22384

Special appeal letter sent on 2/6/06 to Maloney and Carroll since regular medical appeals process obstructed by McCreanor for these grievances, for lack of timely medical grievance hearings.

Then On 2/6/06, heard were: 16668 dated 8/20/05 (about 180 days later); 20560 dated 11/10/05 (about 90 days later); 22133 dated 12/28/05 (about 39 days later).

Procedural due process denied, and equal protection of the laws, for starters.

But there were NOT heard: Special appeal letter asked for relief for following due to DISAPPEARANCE from Menon / Mc Creanor custody of these grievances:

— 7166 dated 1/13/05, a follow-up grievance for:

7166, 16668, 11/10/05, 20558, 20560, 20776.

— 12/18/05, no number available, a follow-up grievance for:

20776, 20823.

— No reply to-date to any of these.


Reference 22370 reply from McCreanor, further beguiles to obstruct justice with reply saying that Grievant does not decide what is a security issue. That is true, but, courts already have, but Mc Creanor and supervisors continue to do the ostrich effect, acting under color of law, for selfish gain.


Reference 22364 reply from Mc Creanor, not a duplicate due to different

96

incident; proving reoccurring problem; deliberate indifference.

### 39084

Medical grievance dated and put in grievance box on 5/10/06 for relief from lack of timely cronic care medication; now having developed a new symptom from lack of timely medication and speeding up bodily degradation toward death; failures to prevent, diagnose, and treat mental health issues from terroristic and tortures conditions by Defendants for over 6 years now; and No timely appointment for emergency asthma symptom for relief to be able to breath normally, attempting murder, and deliberate indifference to risk of imminent death.

Referred to Rodweller on 5/15/06; days late for an emergency situation breathing, and other above by Inmate Grievance Chair to be named; Merson/McCreanor?

No informal resolution attempt by Rodweller at all per policy, laws, etc.

Medical Grievance Committee then Eller, Gordon, Heddinger, received appeal on 5/18/06 allegedly by record per Grievance Information from Merson.

All three DENIED All issues on 8/01/06, 75 days later, way too late for preventing any possible risk of injury.

Eller arrogantly, degradingly replied at hearing by saying for Petitioner to "follow procedure for sick call and doctors appointments." Petitioner had done that. What goes on in Defendants mind is blatantly apparent by their conduct. Petitioner also followed procedure with sick call slips dated Apr 21 and 30, 2006.

Appeal for this was filed on 8/3/06 on Nurses above blatently denying proper medical care for serious condition, lying about hypothyroidism to not causing new symptom obtained, and Petitioner again insulted, degraded, abused, exploited by Eller at hearing for using this legal appeals process.

No response to-date from Welch and Howard, as useless as it is to get a response, with proper relief or not.

<u>37663</u>

Medical grievance dated and put in medical grievance box on 5/01/06 for lack of timely medication again.

Dr. Durst ordered medication on 4/11/06. It only takes 1 to 3 days to get medication to the Delaware Correctional Center Pharmacy according to Pharmacist. But, it was NOT available to Petitioner until 5/11/06.

Medication ran out 4/28/06, but reordered on 4/11/06 by Petitioner by procedure. Thus, Petitioner out again for 13 days for daily prescribed chronic care medication. Pharmacist (J. Doe XXI) Defendant.

Rodweller still acknowledges mismanagement for medications. Are still "trying" to fix it, she says.

Merson fails to forward instant process for grievance not until 5/9/06, 8 days later, delaying timely relief, as if medically qualified.

Rodweller tries to wrongfully to get me to sign off on this grievance on this still broken medication system, by coercion and trickery, and failure to inform of patient rights. Did Not sign off, after finally better understanding this legal system to attain relief.

Medical Grievance Committee received grievance 5/12/06 allegedly from Grievance Information Report printed on 8/1/06, and under control of custodians, Defendants Merson, McCreanor, et. al.

Recommendation by Eller, Gordon, Heddinger not acted on till 8/1/06, about 78 days later, unnecessary, improper delay.

Eller, Gordon, Heddinger also illegally denied timely access to required medication prescribed by Doctor.

Insulted at this hearing by Eller instead of fixing broken medication dispensing system.

Appeal received by Merson allegedly on 8/3/06 per grievance information

she types in. Report printed for Petitioner to see replies on 8/7/06; 96 days later for only two levels for exhaustion when possible.

No response to-date from Walch and Howard for 3rd level.

Rodweller, also tired of all the grievances generated by medical staff, including herself, asked Petitioner to send her a letter from now on if their is a problem, for ‡ obvious reasons, not to use grievance system.

Petitioner did on 6/7/06 due to running out of cronic care medication again this day. Two reorder sick call slips were already sent for these meds, on time, before this letter. Thus, letter + 2 sick call slips did NO good.

Petitioner sent another, 3rd, sick call slip on 6/7/06. It came back received, a copy, dated 6/9/06. Meds finally received sometime after.

8/22/06 new sick call slip sent for being out of cronic care meds again. Finally received them 19 days later. These are life time medication; should have standing on-going order to prevent these problems, with, as currently, quarterly evaluation blood test for upkeep.

Legal Claims:

These Defendants violate FIRST Amendment for proper redress of grievances;

FOURTH Amendment by denying security in person by unreasonable seizure when medical rights cannot be upheld in prison, and under current custodians;

FIFTH Amendment violations by denying due process of law for life, liberty and property interests; medical problems deny liberty and property interests;

EIGHTH Amendment violations for cruel, unusual, and inhumane prison conditions by these Defendants, and deny rights of an ever more modern

3

99

civilized, decent society;

NINTH Amendment rights violation by denying natural rights to humane conditions, and others yet to be determined from obstruction to information for legal access to courts to make meritorious claims;

TENTH Amendment violations by denying federal rights not reserved to the States;

THIRTEENTH Amendment violations by making Petitioner involuntary server to attain His own rights by law when it is custodians duty, causing petitioner mental, emotional, physical damage, as the other Constitutional violation;

FOURTEENTH Amendment violations by abridging or denying privileges, due process, and equal protection of the laws for life, liberty, property, and happiness interests.

Past and present physical injuries from lack of medication can not be corrected under past management of Dept of Corrections and these Defendants since shortages continue and harm would continue in future without Court relief since custodians/Defendants cannot provide the needed serious medical needs of Plaintiff since they have not been able to for about seven years in their care.

Failure to provide medication interaction information in writing for all prescriptions, manufacturers patient information, and independent research summery of medication by a professional doctor in the field for doctors to be properly informed as patient.

PRELIMINARY + PERMANENT INJUNCTIONS NEEDED, ongoing failures to fix problems.

Interruptions of prescribed treatment, not providing medication on time, is deliberate indifference.

Medication interruptions cause mental and/or physical injury to degenerate this body of Mine for over 6 years now without known improvement.

100

Still no system in place yet for years, to ensure medications do NOT run out. Lack of availability of meds. Failures to administer meds consistently.

Following pages of Title 24, Chapter 25 for Pharmacists Defendants to be named in discovery to see who is legally licensed to do the work they were doing. If they were or not, if they followed there laws. There following pages show the violations of those in medical staff acting under color of law, violating statutory rights at least.

Meds claim 4

Delaware State Government
Title 24, Professions and Occupations.
Chapter 25. Pharmacy.

Pharmacists failed to provide any drug information patient information from the manufactures, research results of the drugs used, interactions, drug product selection options from approved prescription drug products with therapeutic equivalent evaluations with less problems for Mr. Hartmann's health from the Food and Drug Administration, as a patient right to be totally informed and involved in ones treatment, especially with the cover-up and degrading conditions to Mr. Hartmann's health at this facility with the past staff of Defendants:

Pharmacists failed to participate to correct violations in drug utilization information and drug regimen review to stop intermittent delay of providing drugs for Mr. Hartmann far from January 2000 to present.

Pharmacists failed to participate in Mr. Hartmanns therapeutic drug selection for Him and substitution of therapeutically equivalent drug products with less damage, injury and illness to Him.

Pharmacists failed to advise to the practitioners as well as to the Mr. Hartmann, the patient, regarding the total scope of drug therapy, so as to deliver the best care possible.

Pharmacists were illegally and unethically denied to do their duty by Contractor to be named (_____) to recommend the best possible over-the-counter products for Mr. Hartmann.

103

These Defendants criminal conduct is substantially related to this practice of pharmacy by pharmacists, licensed or not, or those acting in that capacity which has had a direct bearing, substantially related on their fitness and ability to perform their duties and responsibilities.

Claims 6 Denial of Professional Standard
Optometrist Medical Services, and 19.G., 19.H., 19.J.,
19.L., 19.N., 19.Q., 19.W., 19.Y., 19.AA., 19.AG., 19.AH., 19.AI.,
19.AJ., 19.AL., 19.AR.
Merson and McCreanor fail to process medical grievance dated and put in grievance box on 11/10/05.  No reply to date.

Another medical grievance dated and put in medical grievance box on Nov 4, 2006.  No reply to date.


<u>Legal Claim:</u> This violates the FIRST Amendment by denying redress of grievances, denying freedom of speech and communication with a medically qualified person in the field, and denying press and information from this qualified person to patients rights to information to be part of ones treatment, diagnosis.

This violates the FOURTH Amendment by being held against my will to have legal access to medical specialist, denying security in in being a healthy person. FIFTH Amendment

Defendants above violate, due process of law for legal right to unobstructed access to medical specialist for life, liberty, property, and happiness interests.

Defendants above violate EIGHTH Amendment rights to be free from cruel and unusual punishment in an ever more modern, civilized, decent society of yet unknown degradation risk to optometry damage, by not allow regular access to doctor for regular visits by professional standard for physical evaluation.

Violate NINETH Amendment to natural rights in other Amendments.

Violates FOURTEENTH Amendment by abridging, worse yet - denying, privileges, denying due process, and denying equal protection of the laws, and denying life, liberty, and property.

Optometrist fails to provide professional standards for me in proper, preventive, diagnostic, and treatment services, patients rights as per American Optometry Association, like for glaucoma test, astigmatism, and any other yet to be discovered.

All standards still hidden from Me by medical services provider as patient right.

Following pages on Title 24, Chapter 17, <sup>nursing</sup> has Defendant to be named in discovery to see who is legally licensed to do the work they were doing. If they were or not, if they followed these laws. These following pages show the violations of those in medical staff acting under color of law, violating statutory right at least.

And Title 24, Chapter 21 for Optometrist.

medical
claim 2

Delaware Title 24, Professional and Occupations
Chapter 17. Medical Practice Act
Violations by Defendants

§1701. Statement of Purpose.  Defendants

fail to follow this policy violating health, safety, and welfare of Mr. Hartman
by unprofessional, improper, unauthorized, and or unqualified practice of medicine
and practice of certain other healthcare professions started to be shown in
Civil Complaint.

Chapter 19. Nursing.

§1902 (b)(1) b.  Defendants ~~Those~~ (Med Staff Nursing Staff members to be named), advanced practice nurse,
fails to operate in collaboration with a licensed physician to consult with
each other as appropriate pursuant to a collaborative agreement defined
in the ~~in the~~ rules and regulations promulgated by the Board of Nursing,
in the provision of healthcare to their patients.

§  Medical Staff Defs ~~Those~~ (        ), who practices independently, shown by not being
supervised to insure proper, legal, ethical & medical services to Mr.
Hartmann, or prescribes independently contrary to requirements under
§1906 (20) of this Title 24.

§1902 (b)(2).  Medical Staff Defs ~~Those~~, practices as if without written guidelines or protocols,
having apparently ~~lack of proper~~ lack of proper supervision for years, acts as if with independent
prescriptive authority without having either, applied for such privilege(s)
to the Joint Practice Committee, or fails to collaborate with a licensed
physician or licensed Delaware Health Care delivery system.

107

Nursing staff Defendants :

fail to diagnose or refer by medical ethics code - do no harm. These Defendants failed to describe the Mr. Hartmann's actual or potential health needs by failing to properly assess for amenable nursing prevention as required in 24 § 1902 (i).

These Defendants failed to practice practical nursing due to conflicts of interest to duty by failing to assess, give nursing care for symptoms for illnesses, injuries and infirmities of Mr. Hartmann; failed to maintain health and well being; failed to administer medications and treatments prescribed by a licensed physician, or advanced practice nurse (Thoma); and failed to provide additional nursing services and supervision commensurate with the licensed practical nurse's continuing education and demonstrated competence.

"Nothing contained in this chapter shall be deemed to permit act of surgery or medical diagnosis; nor shall it be deemed to permit dispensing of drugs, medications or therapeutics independent of the supervision of a physician who is licensed to practice medicine and surgery, ..." But yet, ~~~~~ Defendants did.

Nursing Defendants failed to assess human responses to actual or potential health conditions of Mr. Hartmann constrained by budgetary concerns, and conflicts of interest to duty; failed to identify Mr. Hartmann's needs and developing a nonbiased nursing diagnosis; failed to implement nursing interventions based on the nursing diagnosis; failed to teach health care practices, prevention and patient's bill of rights; failed to advocate, refer, the provisions of health services through collaboration with other health service personnel;

(cont 24 - Chap 19) Nursing

fail to execute regimens, as prescribed by licensed physician and advanced practice nurse IHarne, including the dispensing and administration of medications and treatments;

Medical staff of nurses as Defendants continued unprofessional conduct, breach of duty by sweeping, ignoring, symptoms under the rug and failed to scientifically apply the body of of health knowledge, allowing grave, degrading and injuries interference to better health affecting Mr. Hartmann's daily, major life activities, failed to manage, prevent, and educate Mr. Hartmann on his illnesses, injuries and infirmities.

The crime conducted by these Defendants in conspiracy and corruption with Brady, Taylor, Howard, Snyder, Carroll, Contractors Representatives, is substantially related to the practice field of medicine which has a direct, substantially related bearing on their fitness and ability to perform their duties and responsibilities, to Mr. Hartmann since Dec 1999 at DCC.

Civ 2
claim 6

Title 24 Delaware Code. Professions and Occupations.
Chapter 21, OPTOMETRY.

Violations by Optometrist at DCC (John Doe ___) since Dec 1999 by deliberate
indifference to professional standards of Optometry by unsafe practices, failures
to prevent and educate on all eye care issues, and by denying proper standards
of eye care, prevention, and testing to cause fixing of price of services rendered
to be the least possible he can get away with under CMS, FMCS supervision,
for conspiracy to deprive of the laws and medical ethics for organized crime in
State government with State contractor and Defendants.

Optometrist fails to educate patient / possible patient rights to be totally involved in
their complete eye, lid, adnexa and visual system.

He has provided no information of any anatomical anomaly of the eye possessed
or prevented for, and other practice of optometry care or services.

He engaged in the act of consumer fraud and deception of professional
optometry; engaged in the restraint of competition by holding himself back
to provide all proper, standard practices by optometrists to prevent and
inform Mr. Hartmann from receiving any further loss, damage, or injury
of vision; and He directly participated in price-fixing by NOT
providing proper optometry services to save contractor money as
conspired with Commissioner Taylor, former Attorney General Brady, Contractors
and others to be named contrary to laws and ethics and public trust.

Thus, He engaged should have known illegal, negligent, and unethical
conduct in the practice of optometry.

Thus, He violated provisions of this Chapter, rules and regulations of the Board
for Optometrists in Delaware.

|||

These continues crimes performed on Mr. Hartmann are substantially related to the negative history of the contractors and state employees of and for DOC of Delaware and to the practice of medicine which has a direct bearing on their fitness and ability to perform their duties and responsibilities.

8, 19.W., 19.X., 19.Y., 19.AA., 19.AC., 19.AG., 19.AI., 19.AJ., 19.J., 19.L., 19.M., 19.N., 19.O., 19.Q., 19.T., 19.U., 19.V.,

## Claims 7 - Mental Health Violations, and 19.G., 19.H.,

Sick call slip dated and put in medical grievance box on 2/26/06. Stamped received by Mental Health on Feb 27, 2006. This is Hartmann's first attempt for proper mental health services etc during severe mental trauma and torture. He has been going through denying him the ability to have a voice to communicate and start to understand and explain the years of abuse and exploitation he has been going here at Delaware Correctional Center since Dec 1, 1999 by staff and wards in his first time to be incarcerated. Defendant J. Doe XXII includes Dr. Cannuli, now still working here. No other response has been had since from this sick call slip.

Another sick call slip dated and put in medical grievance box on Apr 10, 2006. No reply.

Another sick call slip dated and put in medical grievance box on Apr 26, 2006. No reply.

Medical grievance dated and put in grievance box May 10, 2006 for proper mental health services. Was then seen by staff, including Cannuli, but was had symptoms continued to be ignored for proper testing, evaluation, assessments, and diagnosis per Psychiatric Association standards.

Another medical grievance dated and put in medical grievance box Nov 40, 06 for proper mental health services due to symptoms affecting daily, major life activities including cronic fatigue sleeping needed about 15 hours a day if not over stressed or ext exerted the previous day. Months later, part of problem discovered that medical assistant Thoma had not been properly treating thyroid disease causing more imminent death. And mental health continues to fail to treat severe, debilitating stress, depression, and other mental health conditions.

Delaware Correctional Center continues to be seriously, with deliberate

113

113

indifference, understaffed in mental health department to do proper services by law and ethics and professional standards. Cannuli's caseload unprofessionally about 250 cases, he says then. Cannuli only sees Hartmann 15 minutes every 3 months. No time to properly diagnose all and provide complete treatment plan. Services only token professional service to say to the supervisors that proper care is provided, but actually, damaging cover-up existed/ exists.

Cannuli and staff (J. Does ) fail to protect Hartmann, as probably rest of class members, from psychological abuse, exploitation, terrorism, and torture from environment where lack of accountability rules.

Proper psychological evaluation lacks for proper, legal 'maintenance and care' for ward, required to be used for classification as required, but since not available to classification, Hartmann was continually being housed with terrorists, violent people, and unaccountable correctional officers while Hartmann could not communicate the abuse and exploitation he was/is going through. Custodians fail to teach ward of his rights, privileges when first arriving at Delaware Correctional Center to prevent abuse or exploitation. Supervisors/Defendants fail to enforce their duties, breaching them, by not caring for ward they are responsible for, forcibly held in their custody.

Community Legal Aid Society, Inc., its staff, and those in the Disabilities Law Program **(D.L.P)** fail to do their duty for federal funds they receive, and discriminate against Hartmann because He is an inmate with mental disabilities, and because, apparently by their reply, don't want to understand and communicate with Him to get to bottom of the problems.

Programs staff fail to uphold for Hartmann, as one of mentally disabled class, the federal programs such as <u>Protection and Advocacy of Individual</u>

Plaintiff' <u>Diagnostic</u> and <u>Statistic Manual IV</u> <u>Assessment Scale</u> of A Person has gravely dropped since my illegal imprisonment under illegal conditions, probably causing continued future State and Federal dependency, contrary to governments purpose;

Lack of professional group and individualized therapy.

No American Disability and Rehabiliation Act rights upheld.

Staffing inadequacies, and serious systemic deficiencies.

Failure to properly develop treatment, diagnosis, prevention plans,

No physical measurements of psychotropic medication to prevent damage.

Failures to diagnose caused disciplinary sanctions wrongly imposed, tortures conditions Me still; never know what someone is gone do to abuse me next. Mental disabilities denies defenses.

Delaware Secretary and Commissioner and Board and/or Council for Mental Health are 'persons' within meaning of this 42 USC § 1983, even though they are also sued in their official capacities for failures to uphold these laws for Me and My family, and each one of us being a member of a legally protected classes, the family, disabled, Wards.

Following pages on Title 24, Chapter 30 for Mental Health professionals, as Defendents, some to be named in discovery, to see who is legally licensed to do the work they were doing. If they were or not, if they followed these laws. These following pages show the violations of those on that staff acting under cola of law, violating those statutory rights atleast.

And Title 24, Chapter 35 for Psychologists, goes the same.

Psychiatrists are presumed to follow the medical doctoral professional statute.

Rights (PAIR) program, and others.

These Defendants

VIOLATING : and Community Legal Aid Society employees / volunteers (J. Doe's XXIX) & FIRST Amendment denial to provide services to redress of grievances; These Defendants more then abridge, but deny freedom of speech and communication as patients rights to information to be part of treatment, diagnosis, and services;

FOURTH Amendment by continuing to assist captors of Plaintiff to illegal seizure to deprive of proper treatment and care of ward;

FIFTH Amendment to due process of law for life, liberty, and property interests;

EIGHTH Amendment to be free from cruel and unusual punishment in an ever more modern, civilized, decent, information age society;

NINETH Amendment to natural rights from other Amendments;

FOURTEENTH Amendment more then abridgement, but by total denial of due process to proper treatment, diagnosis, services and alike; and denial of equal protection of the laws for life, liberty, and property interests; due to degrading, degenerative conditions to life interests, and possible liberty interests denied by those conditions, and possible property interests denied due to those conditions.

Mental disabilities severely affect daily, major life activities.

Mental disabilities from trauma, terrorism, and torture is daily, constant punishing conditions causing physical injuries.

AM-8
Claim 1

Delaware State Government
                Title 24. Professions and Occupations
Chapter 30. Mental Health And Chemical Dependency Professionals
  § 3001. Objectives.      Mental Health Department Defendants, and ones
to be named, since January 2000 fail to protect the public, ie Mr. Hartmann,
from unsafe practices performed by them.

  CMS Defendants hire practitioners who will deny or omit proper medical services
for keeping CMS, First Medical expenses low, allowing them to give a lower
bid for the medical contract which tends to reduce competition.

  DOC Can Taylor, Brady hire contractors who provide lower bid by
denying services to patients and/or inmates like Mr. Hartmann. And in cases
allow no competitive, open bidding for any qualified contractor, causing loss
of public trust and degrading conditions of Mr. Hartmann's life, liberty,
property and happiness interests.

  No open bidding has caused fixing the price of services rendered
by omitting or denying proper, legal, and ethical medical services, including
dental, mental health, etc for All health services.

  Defendants of the Mental health department at the Delaware Correctional Center,
Taylor, Howard, Snyder, Carroll were all part of this criminal conduct, and
Contractors employees and representatives to be named since Dec 1999
to present, which is directly, substantially related on the fitness and ability of
these Defendants to perform their duties and responsibilities of a licensed mental
health professional and legal custodian of Mr. Hartmann in violation of this Chapter.

  Thus, Defendants engaged in acts or omissions contrary to laws and ethics
which involved consumer fraud and deception, restraint of competition, and
price fixing, abuse of authority, official oppression,

0117



Delaware State Government
Title 24. Professions and Occupations
Chapter 35. Psychology

§3502. Definitions.    Psychologists (J DOES          ) fail to do their
duties by not doing the standards and practice of psychology for Mr. Hartmann
whom they have contracted for to do their legal and ethical duties, responsibilities
by failing to observe, describe, evaluate, interpret and modify human
behavior by the application of psychological principals, methods, and/or
procedures, for the purpose of preventing or eliminating symptomatic,
~~~~~~ behavior, and for enhancing interpersonal relationships,
work and life adjustment, personal effectiveness, behavioral health
and mental health while he was in DOC custody since Dec 1999, having
now caused him damages, injuries, and illnesses.

   J. DOES failed to proper psychological testing from anyone under their custody,
and evaluation and assessments by proper standards of abilities and neuropsychological
functions as they have declined while under care of those custodians of D.O.C.
Defendants and Brady, and contractors. Failures included lack of counseling,
psychoanalysis, psychotherapy, hypnosis, biofeedback, and behavior analysis
and therapy for his mental, disabilities + protracted disorders and caused by traumatic conditions described
elsewhere by Mr. Hartmann in Civil Complaint, and failures to; failure to alleviate
symptoms associated to psychological aspects of physical illness (thyroid Disease,
heart disease, hypertension, cronic fatigue syndrome, _____ )  Violation of
                                                                    §3502(4).

   Psychological assistants (Defendant J. DOE's  VII ) (Defendant #8          ),
under conspiracy and corruption with other Defendants through chain of command,
deny and omit proper standards and ethics to practise in the field psychology,
who had to be under the direct supervision of a supervising psychologist for

                                119

11°

Mr. Hartmann during Dec 1999 to present at D.C.C.

Thus, psychologists Defendants (J. Doe's XLVI) #77 Defendant ) fail to follow the rules and regulations which specify the arrangements for supervision, in violation of §502 (5).

Psychologists and assistants, and other Defendants Taylor, Howard, Snyder, Carroll, contractors representatives, in their nature of criminal conduct, is substantially related and has a direct bearing on their fitness and ability to perform their duties and responsibilities necessarily related to the practice of psychology and legal custodian of Ward of State, Mr. Hartmann.

The supervision by psychologists fails to be as required by the nature and practice of psychology with the work of the psychological assistant. Since the assistants or alike do not do their job to refer if they were not qualified to assess or alike, then the psychologists failed to do their duties and responsibilities that Chapter Purposes and Definitions are fulfilled.

120

19.AE., 19.AW.,
19.W., 19.X., 19.Y., 19.AA., 19.AG., 19.AH., 19AI., 19.AJ.,
2,3,6,8,17,   19.G., 19.H., 19.J., 19.N., 19.O., 19.P., 19.Q., 19.R., 19.V.,

## Claims ∧ Abuse of Government Funds/Statistics

Upon inf and belief, state receives an extra 10,000 dollars, United States, for each 'cronic care' ward of State, per year.   First, a limit deny's constitutional right in proper health care.   Second, if their are sufficient funds, or need to be made available why am I Not receiving the constitutional, federal objective, proper health care?

Defendants Brady, Taylor, Howard, Talley, Snyder, Carroll.
Government Statistics wrong due to lack of duties followed by government employer/Defendants, and contractors for them.

Legal Claim: Resulting in My cruel and unusual punishment in on ever more modern, civilized, and decent society; denying My freedom of press, information, and expression, and patients' rights; freedom to be able to speak and communicate the abuse, neglect, exploitation, and discrimination ongoing contrary to law; thus, denying or obstructing redress of grievances in a proper manner; allowing unconstitutional and unfederal objective conduct on Me, as one of classes by those Defendants and others, like unreasonable search and search for My insecurity in person, house, papers, and effects due to evil forces using uneducated guards to abuse or harass Me, and as one of mentally disabled class entitled to American Disabilities Act qualifying conditions; also denying due process and equal protection of the laws for life, liberty, property, and happiness interests; and denying 9th, 10th, 13th, 14th Amendment rights also yet to be discovered from illegal denials to legal access to info for right to legal access to courts.   And to Rehabilitation Act.

These Defendants fail to enforce contractors contract by law for violation of equal rights under the law, as government officials and employees act in their official capacity and personal.   42 U.S.C. §1981?

19.U., 19.V., 19.W., 19.X., 19.Y., 19.AA., 19.AC., 19.AG., 19.AH., 19.AI., 19.AJ.,

19.A., 19.D., 19.E., 19.F., 19.G., 19.H., 19.J., 19.K., 19.L., 19.Q., 19.S., 19.T., 19.AL,

Claims ∧    Custodians Fail To Provide Indigent Wards
        Necessities of Life

19.AN.,
19.AO,
19.AP,
19.AS.

Brady, Taylor, Howard, Talley, Snyder, Carroll failed to provide these humane conditions in this ever more modern, civilized, decent society as custodians should to properly 'care' for their Wards:

1. Unobstructed access to information, legal resources and tools like from the internet upon request, for rights to legal access to courts, life, liberty, property, and happiness interests, just like non-indigent, non-imprisoned wards, non-disabled have, and attorneys have for legal access, since wards are also still ultimately responsible for their case even if represented by counsel;

2. For professional "good" health care and maintenance statutory right for wards, for free daily use of anti-perspirant/deodorant, hair care products, natural food, health care products, ∧ shaving cream, skin care products, natural foods, health care products, condiments, spices, coffee, tea and supplies, watch + battery, cereal bowl, spoon, drinking cup for hot or cold drinks, writing materials and postage for family integrity rights depending on family size and writers needs, proper storage locker for all personal supplies and lock, nail clippers, shower shoes, rain poncho, wintercoat, two winter hooded sweatshirts, art supplies, summer sun baseball cap, two summer shorts, four handkerchiefs, sneakers for health, two sweatpants, two thermal pants and tops, fans atleast 19" diameter, TV + headphones, ice for drinks, over the counter medications from commissary but as needed, and others yet to be discovered, and free weekly supply of ~~~~, greeting cards, candy, potato chips, and others yet to be discovered.

When State chooses to incarcerate, and prison is AS punishment, NOT

123

punishment by deprivation of these necessities in a status as a ward of State. These Defendants also fail to provide humane housing units temperatures, sufficient ice, care packages, penological approved vendors catalogs and shipments for Wards ps other prisons; abusive telephone costs and time limits too restrictive,

19.Y., 19.AA., 19.AC., 19.AD., 19.AG., 19.AH., 19.AI., 19.AJ., 19.AL., 19.A., 19.G., 19.H., 19.J., 19.K., 19.L., 19.Q., 19.U., 19.W., 19.X.,

Claims - A Denial of Public Library Services Contrary to
State Law mandating Services to All Citizens
violating due process and equal protection of the laws,
violating life, liberty, property, and happiness interests,
violating freedoms of speech and communication,
freedoms of press and information, etc.

Delaware Director of Libraries (J. Doe) failed to reply to reminder of law.
Brady, Taylor, Howard, Snyder, Carroll, fail to uphold this law,
causing unprofessional mass punishment, and breach of duty for Saxtons;
deny freedoms of speech, communication, press, information, expression, family
integrity, redress of grievances; denys due process, equal protection of the
laws, privileges, life, liberty, property, and happiness interests;
9th, 10th, 13th Amendment violations and others yet to be discovered
from illegal cover-up of information; censorship; obstruction of justice for timely,
equal, effective, meaningful, capable, and adequate access to info for legal use,
and necessities of life.

19. AI, 19 AJ, 19. AL. ~~[struck through]~~ ~~[struck through]~~ ~~[struck through]~~

●● 19. AG, 19. AI, 19. AJ, 19. AL, 19. L, 19. W, 19. G, 19. H, 18. AG, 19. AH,

Claim ☞ Illegal Denials for Timely, Equal, Effective, Meaningful, capable, and adequate, legal access to information, and law libraries, violating United States Constitutional Amendments 1, 5, 6, 8, 9, 14, for starters.

### FACTS

Regular grievance dated and put in grievance box 3/9/2000 for legal access to information, which was denied by Johnson, Kobus, Snyder, when Petitioner was in detainee status, and for legal law library access.

Grievance was stamped received Feb 7, 2001, eleven months later, by inmate grievance chair, allegedly Merson, without any informal resolution attempt with me.

Legal custodians for me, Warden Snyder as supervisor, failed to inform me of my legal rights as a ward of State upon entry of facility and becoming a detainee, and how to attain proper procedures for obtaining relief by law. It is my first time for being incarcerated. Training was required since custodian, Snyder, as person responsible for me, fails to uphold the laws of the land for a ward.

I sent a letter to Kobus on 23 Feb 2001 for more inmate paralegal access for proper relief from delaying and denying tactics and illegal prison policies/customs obstructing justice, officially oppressing, abusing authority, breaching duty to uphold laws of the land by Johnson, Kobus, Snyder.

Kobus illegally fails to respond to needs for unobstructed access to information to prepare legal papers for criminal case and illegal prison conditions properly, in time, as legally required.

Kobus, Snyder, Taylor, Brady illegally fail to provide entitlements for American Disabilities Act, Rehabilitation Act for legal access to information,

courts, for mentally disabled.

These Defendants action prejudices and delays my cases, active and contemplated, which I was not able to bring and argue in a timely, equal, effective, meaningful, capable, and adequate manner for the same kind of relief, extending my illegal imprisonment, and inability to stop the abuse and exploitation against me by too many illegal prison conditions, and custodians malicious actions against me contrary to duty.

Regular grievance dated and put in regular grievance box on 8/1/02 for illegal obstructions to law library by correctional officer posting appointment list on the wall in a different hall way where it used to be posted causing me to miss my appointments that week again. No reply by grievance chair from this grievance.

Letter to Kobus dated and put in mail box for inhouse mail on 24 Jan 2002 for removal of obstructions to timely, legal access to information via law library for legal work. She chose NOT to reply.

Regular grievance dated and put in grievance box 23 Mar 2002 for removal of obstructions to timely, legal access to information via law library for the courts minimum needs. Obstructions continue to add to length of illegal confinement, and illegal conditions.

Merson replies illegally blaming time limits to law library on security when sufficient facility is required or means for legal access requirements are by law, not provided to obstruct.

Merson believes, per prison policy, that Johnson will provide more law library time upon showing deadline.    Johnson wants to waste court time and clog up the courts to discriminate against Hartmann expecting Hartmann to write to court to order more law library time for Hartmann when prison policy already provides.    Johnson continues to discriminate against Hartmann by giving certain other inmates more law library time.

Courtesy copy for supervision of this grievance dated 3/23/02 was sent to Kobus by Burris.    Kobus does not respond nor supervise by law; condones illegal obstructions and discrimination.

Burris condones and approves of illegal obstructions on 3/29/02.

Grievance dated and put in grievance box 6 Aug 2002 for denial of access to law library by correctional officer, name unknown, since he could not find appointment list required by building sargeant to release an inmate for a program area.

Johnson denies access to law library 7 Aug 2002, date of grievance and when it was put in grievance box.

Merson wrongfully says in her reply to this grievance to write to Johnson's supervisor, Cpt Scranton.    Who is actually not Johnson's supervisor, Johnson's supervisor then was Kobus.

Hartmann wrote letter to Scranton on 8/14/02 for needed full-time law library access pass.    No reply.

Letter to Taylor dated and mailed on 29 Aug 2002 with postage, needing illegal obstructions to law library removed.    No reply.

Grievance 3674 dated and put in grievance box May 22, 2004 because Johnson again illegally obstructs access to information for legal, meritorious access to the courts requiring Hartmann's full-time access.

<u>Little</u> asked <u>Johnson</u> about lack of appointments for Hartmann, <u>Johnson</u> alleges appointment slip was not turned in, which is not true. This was not the first time Johnson pulls this scam on Hartmann; this was the first time Hartmann was able to raise this illegal conduct by Hartmann. No checks and balance system that appointment slips are turned in, Slips used to obstruct justice to deny access to law library. <u>Johnson</u> would rather have the law library empty so he would have to do less work, because their are always open chairs every week. And facility should have been expanded with population or other means made available to unobstructed access to information like other prisons have.

Resolution Grievance Committee received this grievance on 6/3/04 allegedly according to their record. Committee made recommendation on 8/12/04. I received no notice of hearing date; 24 hrs is professional standard and administrative standard procedure. I never had a grievance hearing before this regular grievance. (Never had training on how grievance system works; custodians breach duty). Hearing was not meaningful since I could not prepare for it, did not know how or what to expect, and was then still under mental disabilities; thus incompetent to represent myself. Custodians failed to do their duty to uphold all my rights. No grievance would be necessary if they did; informal resolution could provide proper relief, with competent custodians and with right attitude. Committee failed to meet in 30 days by written prison procedure for grievances. Committee was brainwashed with wrong information, and denied grievance. Custodians failed to communicate with ward they are responsible for. I was not made aware of any of these rights, and that custodians should have someone available to properly represent mentally disabled and their rights.

<u>Carroll</u> replied to grievance on 12/7/04. This was the first time

he ever replied to any of my grievances as a supervising custodian should. He too is suppose to be monitoring all grievances. This reply received 4 months later, denying grievance; he apparently thought info provided to him by committee was correct and that they did their job. Obviously not when he fails to control, train, and supervise his employees by law and professional standards.

Hartmann was not then aware, nor trained, nor provided appeal form and directions, on how to appeal this.

Bureau Grievance Officer replied surprisingly in 5 days; never has it been that quick as should be.

Howard answered in 15 days over christmas holidays, never has it been that quick even on an emergency medical condition.

I wrote a 3 page appeal on 8/14/04 and mailed it that day to DOC grievance administrator, 2 days after reply by DCC grievance committee. No reply yet to that explaining misleading story developed by someone on committee, and rest of committee blindly following in their vote to deny grievance on wrong issue.

Another regular grievance dated and put in grievance box on June 9, 2005, because of Johnson, again, failing to provide more law library time, per prison policy, when court deadline was shown causing denial of legal right to information for legal access to the courts, causing legal damages and further mental, emotional, and physical damages to me frustrating proper access to courts. Johnson requires me to file a Motion for Extension from the court, and provides no proper time to obtain needed information for motions. This, again discriminating against me when he gives more law library to his 'pet' inmates.

No reply from Menson on appeal.

131

Another regular grievance dated and put in grievance box on Apr 18, 2006 for obstructing me to go to the law library by officer Harris. She claimed their was no law library appointment list provided her by ~~————~~ previous guards on duty. Johnson says he has list delivered weekly to each building. ~~&~~ These Defendants work in harmony to obstruct justice. It is not my duty to insure officers have the list.

Merson does not reply and handle grievance by prison rules, obstructing justice.

These Defendants work in harmony to deprive of information sources like the internet. Total deprivation is random, arbitrary, and capricious, violates FIRST Amendment of the U.S. Constitution. Under Turner standards, not valid reason to deny totally.

Adjoining room to main law library in L bldg was sitting empty for unknown number of years, ~~Johnson~~ Johnson, et. al., continue to deliberately set it up for law library use as now to obstruct justice in his continued ill-will, discriminatory, obstructive attitude and conduct.

State employees and their supervisors fail to uphold their duties and functions by state standard of profession due to their discriminatory animus and ill-will nature, learned, as follows:

1. To provide information, resource materials, and library services as should be provided as all other public libraries (prisons are public areas) are run, especially when Defendants are legal custodians for the wards as Plaintiff, in need of library services;

2. To coordinate library services of the several branches in order to assure to every citizen timely, equal, effective, meaningful, capable, and adequate, free access to services, resources, and ordered guidance in the use of such for continuing self-education, political, cultural,

economic, recreational, and intellectual enrichment, and for legal purposes to be a better citizen, which are goals/objectives of incarceration, and the public interests government employees, especially custodians, must uphold.

3. To coordinate the provisions and entitlements of accessible library and information services (including internet) for people with disabilities, especially for mental or physical ones as required by the American Disabilities Act and Rehabilitation Act all prisons must follow.

4. To STIMULATE every citizen to fully utilize, not deter, bezile, frustrate, anger, or discourage in any way like Defendants of the Dept of Corrections do, properly providing the Wards' resource materials in libraries bought and payed for by inmate funds, and only 'managed' by state employees, not for abuse of funds, and to maintain the individuals right to timely, equal, effective, meaningful, capable, and adequate access to those materials and services.

5. To offer resources which supplement and reinforce prison libraries as any professional and qualified librarian would do.

6. To recommend improvements in an ever more modern, civilized society, keeping up with the times, to achieve timely, equal, effective, meaningful, capable, and adequate library development and use.

7. To establish, interpret, administer, publish, and have BEST PRACTICES used as standards ~~to achieve~~ to achieve the proper library service.

State Public Library Director ~~and~~ (J. Doe XXXVIII) and Taylor, Howard, Talley, Brady, fail to do their duty by State laws to provide all public library services to All citizens, without discrimination nor in professional mass punishment as is, in violation of FIRST Amendment rights to freedom of speech and communication, freedom of press and information, freedom of expression, family integrity rights, and redress of grievances, and public interests in above librarians duties.

these Defendants violate the Governor Memorandum of Understanding that all state agencies and employees support each others purposes.

Legal Claims: Denial of information, or delay or obstruction to very limited illegal censorship, to information violates the FIFTH Amendment due process for life, liberty, property interests to information; and violates EIGHTH Amendment rights to be free from cruel and unusual punishment in an ever more modern, civilized, and decent society when information is denied, delay, obstructed or hindered in any other way for a wards understanding and application of the life, liberty, or property interest information; and NINETH Amendment violations are yet to be discovered from denial of information; and the TENTH Amendment is violated by these Defendants assuming power under color of law not delegated to them, and assuming power of laws prohibited to them as State, and assuming powers under color of law not reserved for the States; and violates THIRTEENTH Amendment when Defendants force Plaintiff, and as one of inmate class, to be an involuntary servant of this State to pay for need information to attain his rights, privilege, and immunities under the laws, when information needed is not provided to Him in a legal manner, timely, effectively, equally, meaningfully, capably, and adequately; and violates FORTEENTH Amendment by abridging privileges, denying or delaying due process, and equal protection under the laws.

(See next page)

134

Adjoining room to main law library in L building was kept unused when needed by Me, and as one of class inmates, for legal access to courts, due to Snyder, Carroll, Burris, Brady, Taylor, Howard, Talley & Kobus, Martin, Johnson deliberate indifference to legal rights, from about 2002 to 2006. Now it has been available, but all the damages were added when I, too, could not have legal access to info for legal access to courts which directly affected all My legal work also in My cases for more actual legal injuries.

During My pretrial stay, about 16 month, the adjoining multipurpose chow room was available, but was not used by these Defendants allowed to be used for full-time access to read the legal books in pretrial. The damages were irreparable here also, from those actual legal injuries by Defendants deliberate indifference and ill-will to Me and class.

The lack of legal access to information for legal access to courts, in pretrial was also irreparable, actual legal injuries damage. Only 10 minutes allowed to read a book, sometimes by Johnson, was highly detrimental and malicious during those 16 months, violating the Constitution. And was condoned and allowed by Snyder, Burris, Kobus, Johnson, Brady, Taylor, Howard, Talley.

More actual legal injuries includes all the delays and denials to information and entitlements for legal access to courts by these Defendants since Dec 1, 1999 to present, and ongoing requiring injunction for systemic failures, to remove all obstructions by a certain date, for all classes.

These Defendants actions continue to frustrate, impede, and/or deny legal rights and conditions, causing lost, rejected, or impeded defenses and claims, obstructing justice, as in all My legal action and cases, and continue to cause criminal violations against Me and others.

These Defendants illegally deny 'browsing' among the law library stacks by wards as Me when other ☙ ways and means could have been implemented to not cause the tearing out of pages by some wards, as these Defendants have ~~been~~ caused.    Lack of legal, and legally adopted policy, procedure, and customs caused these continued obstructions to legal info in a legal manner for legal access to courts.    This is another arbitrary, capricious, unprofessional conduct implemented without substantially required legitimate penological interest, causing illegal mass punishment, and actual <u>legal injuries</u>.

Not allowing browsing and full-time access to info and law libraries, and other libraries denies legal access to compare legal theories, intellectual development, formulate ideas, and have legal access to do research, for more actual <u>legal injuries</u>.

Libraries are still <u>not</u> in compliance with the <u>Abdul-Akbar V. Watson</u> case, 775 F. Supp. 735, requiring to have 'adequate' (equal to a specific requirement; unobstructed access to info, law library, courts) shelving, study space, chairs, tables.

Lack of proper access and continues deliberate indifference to law qualifies as relevant injury — in-fact to Me, and as one of classes.

Legal access to info, libraries, and courts are <u>fundamental</u> constitutional rights, grounded in the FIRST Amendments right to petition, and the FIFTH and FOURTEENTH Amendments due process and equal protection clauses, which I and as one of classes continued to be denied for systemic injunction.

These Defendants reckless endangerment, so extreme exceeding all reasonable bounds of human <u>decency</u> under the EIGTH Amendment, that their policies and procedures, and customs, illegally adopted, for legal access to info, libraries, and courts shows how deliberately indifferent and out of touch of reality

136

they are. They don't know Me nor my needs of info, libraries, nor courts with the number of cases problems, defenses and claims, my reading speed, my comprehension level, my memory capability, my IQ level, my intellectual level, my mental disability, my note taking and writing speed, my motion needs, and other similar issues, to have a legal voice in the interest of justice, which I too continue be denied in violation of the Constitution.

Although security concerns may be considered in choosing the method by which the mandate of BOUNDS is satisfied, security consideration which render a particular method prohibitive cannot be relied upon to justify the non-implementation of other methods which have been used in other prisons which provide relief and where the restrictions are not so onerous as to jeopardize My, et.al., access legally to info, libraries, courts, health, entitlements, rights, privileges, and immunities, as these Defendants do systemically with deliberate indifference.

The very statute used to render Petitioner's claims dismissed, cost constitutes an illegal impedement for the purposes of invoking legal rights.

These impedements are State and persons as Defendants created, supported, maintained under pretense of law.

Unlike the public, I too must exclusively rely upon prison libraries to discover info. And if a malicious and incompetent nature runs them like these Defendants, no one has held them accountable, causing official oppression, abuse of authority, that has built up here in this Dept. of Corrections since about 40 years ago. The reality here

is an atrocity to our Constitution and laws of the land, getting away with it by slow degradation of life, liberty, property, and happiness interests,

Since attorney ineffectiveness is considered by some judges an extraordinary occurrence, clients as I, even if incarcerated, must vigilantly oversee actions or failures of their cases, because some lawyers are sometimes legally ineffective causing miscarriage of justice, or have conflict of interest. Thus, there can be no obstructions to info and other tools as standard resources for attorneys must be for all citizens.

Attorney incapacity is equivalent to No counsel, and proper for equitable tolling purposes. My incapacity, as is, is equivalent to puzzling to legal access to info, libraries, and courts, and proper for equitable tolling concept purposes, since older grievances could not yet have been legally brought to this Honorable Court by Me as can be seen in this Complaint and Amendment. Citizens incapacity/inability/disability, as Mine, is equivalent to No legal access to info, libraries, and courts, and proper for equitable tolling concept purposes for older grievances. These are more actual legal injuries.

Thus, citizens whether in prison or not, must be able to vigilantly oversee the actions of their attorneys (which these Defendants deny due to ill-will), and if necessary must take matters into their own hands because citizen is still responsible for their case, by precedence. This I have been denied to legally do, for more actual legal injuries.

Another way Carroll obstructs justice and legal access to courts is by requiring attendance to medical appointments made by medical

scheduling secretary/nurse. The already obstructive policies, procedures, and customs to libraries, info, and thus courts, are made worse by this wrongful policy and deliberate indifference to its obstruction.

Medical contractors professional standard is that if an inmate misses 3 appointments, medical counsels inmate. Security is NOT involved. An inmate can refuse services. Some medical appointments are in and out, quick. But arbitrary and capricious law library ~~policy~~ custom illegally implemented, or continued, by Johnson, Kobus, Martin, Carroll, Snyder does not allow entry into law library after medical or other appointment may needing priority for whatever reason. Penological experts know that regimentation is detrimental to inmate rehabilitation. Decision making is gravely available in prisons, therefore more opportunities must be allowed so that a citizen can better reintegrate into society. Other inmates come and go in this facility all day, thus it can be allowed for law library also, in the compound for minimum and medium security inmates.

These Defendants failed to grow libraries with the population sufficiently, as professionally proper. Seventeen still only exist in the main law library, L Building for about 1,500 inmates, and the antiquated access to information policies, procedures, and customs.

Adequacy (equal a specific requirement of professional, unobstructed access for all inmates) nor timely, effective, equal, meaningful, capable, and meritorious access to info, libraries, and courts is determined by counting books or library floor plans, as part of wrongful Defendants way of thinking, instead of providing an adequate way.

Defendants Carroll, Pierce, Martin, Little, continue to join in conspiracy even now still, even Attorney General on duty at time of filing Complaint in May 2006, still act under color of law, denying legal relief to any of the claims made for timely relief and less damages. Is that an obvious evil nature or what?

Carroll, Pierce, Martin, Little even still now deny access to main law library when it is NOT full, to the, and others.

Justice delayed is justice denied, as in Petitioner's cases as this one.

These Defendants even still now deny ANY legal access to law library per prison rule stating, if an inmate has a court deadline, their appointments are given first.

All claims herein, and obstructed, are actual legal injuries caused by these Defendants.

Denial of photocopies of info for free as wards' necessity of life for legal access to information for legal access to courts, by Defendants Brady, Taylor, Howard, Talley, Snyder, Carroll, Kobus, Little, Johnson since Dec 1, 1999, due to their continues deliberate indifference to these rights, privileges, violating civil rights to info and press, speech and communication, of expression, and to legally redress grievances, as denied under color of law, to Me, and class ward members.

Custom or Policy was not legally approved by competent, effective Dept of corrections counsel, by law.

Johnson, Kobus, Little, continue deny legal information from State Codes Commentary maliciously removed and kept removed, pgs 200 to 399, obstructing justice, and legal access to courts, from 2002 to present. Actual legal injury and FIRST Amendment violations.

140

All these illegal prison conditions (and Defendants conduct relative to legal courts access) act in harmony (as conspiracy and organized crime among Defendants, et. al) to prevent, frustrate, beguile, harass wards like Me in this Dept custody from submitting papers and pleadings (by law) to courts violating the Constitution in some of the ways shown herein Amendment and Complaint, since Dec 1, 1999, to present here at Delaware Correctional Center, violating also civil rights and statutes as American Disabilities Act, Rehabilitation Act, and others.

There Defendants malicious conduct, still continuing to-date, illegally denies Constitutional and Statutory rights to defense and claims preparation, causing obstruction of justice by info left out, legal theories not pursued, and cases not cited to assist the clerks and Courts, prejudicing the outcome of My cases, proceedings, and contemplated ones which have legal protections.

There is no legal deference to prison officials as Defendants named related to illegal obstruction to access to court, when Defendants' decisions restricted My detainee and convicted right to access to legal materials as legally requires, timely, effective, equal, meaningful, capable, adequate and meritoriously possible, by precedence,

There are external factors and sufficient cause for any procedural default I may have caused so far, denying Me, and classes due process, even though this is NOT a class-action lawsuit, its just that I am one of those classes.

Denials or obstruction to info, and justice legally administered is required without delay or denial by the Delaware Constitution

141

14'

and than atleast the 14th Amendment which requires legal opportunity for timely, equal, effective, meaningful, capable, adequate access to be able to bring meritorious claims, to present every available defense or claim for relief from damage, As these Defendants have been causing since Dec 1, 1999 to present.

Of course, research is a key step in developing and presenting meritorious legal claim, which is deliberately denied here by these Defendants.

Defendants deny the right to learn the law in a legal manner and to go to court in a legal manner.

Legal right of access to courts has been denied to Me since Defendants prevented, and still are, Me from creating and mailing, meritorious legal papers by with holding necessary resources and materials. This constitutional violation overlaps with the other Claims: Legal Materials, Mail Censorship, legal postage and supplies, Public library, state mail, information, mental health, legal and ethical prison condition, Necessities of life, electronics equipment and supplies with accessories.

Inmates have a constitutional right to send and receive mail. The modern standard now has become, in this civilized society, E-mail which inmates should have an upgraded right to now also, because their is no other way to accomplish a task the same way, mainly because not knowing who to contact for FIRST Amendment rights of inmates, and their family.

142

19.A., 19.H., 19.AG., 19.AL.

Claims ☐ Denial of Honor Visit Legally Earned

Thompson fails to process Honor Visit earned for end of summer of 2006, according to prison rule.

Melbourne fails to control and supervise Thompson to process honor visit by prison rule.

No response of appeal to Pierce so far.

Legal Claim: these Defendants violate:

The FIRST Amendment right to Family Integrity, and to redress of grievances to them by NO reply, as a necessity of life.

The FOURTH Amendment right to be free from unreasonable seizure to attend Honor Visit, by arbitrary, capricious maliciousness.

The Fifth Amendment right to due process of law by denying Honor Visit by failure to cause it to happen, denying liberty interest.

The 8th Amendment right to be free from cruel & unusual punishment to be kept from my family, in an even more modern, civilized, decent society, as a necessity of life.

The NINETH Amendment right to be free from natural rights damage to family integrity, as a necessity of life.

The FOURTEENTH Amendment right to be free from abridgment of privileges, worse yet – denial of privilege to an Honor Visit, and the abuse and exploitation of families by these Defendants of probably other families who have not been able to bring this cause to a court.

This denied due process and equal protection of the laws to the Honor Visit with family, a liberty interest for each family member.

Hartmann had completed 6 months of programming required by prison rule in Kings Garden Group from February 2006 to September 2006.

Melbourne working in harmony with Thompson to deprive of right to family visit and family integrity rights under the Constitution, state, and federal objectives.

Pierce's reply not yet received to-date for right.

19.A. , 19.H. , 19.AG., 19. AI, 19.AJ., 19.AL.

Continued Claim, Denial of Family Legal Rights

Defendants, to be named, deny necessities of life for family bonds, integrity, association, society, consortium, companionship, compassion, comfort, connection, government, reentry requirements, as one of the two main needs to prevent recidivism, showing deliberate indifference to those needs by Defendant including Brady, Taylor, Howard, Snyder, Carroll.

They deny needed time with legal family members on the phones, at discouraging - contricting visits, and by lack of postage and supplies to write them for indigents, contrary to legitimate penological interests, Memorandums of Understanding signed by State Agency Department heads to support each others purposes, Administrative Procedure Acts, Laws, and procedures that agency rules (prisons) be legally implemented, by notice and paticipatory hearing by those it effects, and that these rules be by law, ethics, and generally accepted professional standards, The FIRST Amendment of the U.S. Constitution for families, a state + nations foundation, FOURTH Amendment violation by illegal seizure to be kept from family for the other legal rights, privileges, and immunities; FIFTH Amendment violation to due process for life, liberty, and property interests through family members which legitimate penological interests do not unnecessarily deny as at Delaware Correctional Center under Dept of Correction. Defendant authority abused arbitrarily and capriciously.

These Defendants caused cruel and unusual punishment upon Petitioner, as one of inmate class, in an ever more modern and civilized, decent society by working on improvements to remove obstructions, continuously acting in deliberate indifference. to needs and necessities of life for all parties involved.

No impact report was done by an independent party to objectively show all, actual measurements of conditions.

Injuries caused by Defendants ~~entitled~~ added to illegal family ~~suicide~~ cide and irreparable child abuse upon my children, contrary to laws and objectives of government; and to prevent divorce by State Law. Denied ability to attend divorce prevention ^(A religious right.) class.

NINTH Amendment was violated by denying natural, family needs from other Amendments and laws, and objectives.

TENTH Amendment violation by denying Constitutional rights NOT delegated to the State.

THIRTEENTH Amendment violation by making Petitioner involuntary servant of Dept and State without providing means to self support and other necessities of life, due to charging for postage + supplies as indigent ward of state; charging for phone calls; and not providing means ~~of~~ for ^(in maximum) gifts for my family members in a capitolist society, to show affection, concern, and love, and alike as necessities of life; and failing to provide Petitioner means to support atleast himself at the visit picnics, and personal necessities.

FOURTEENTH Amendment violation by denying each family member, privileges of family membership, ^(+ relationship, integrity,) in an ever more modern, civilized, and society; denying due process for each family member to the privileges not denied by a law or alike for a legal, proper reason; denying equal protection of the laws and alike by denying family membership, relationship, and integrity; denying life, liberty, and property interests ~~of~~ by family integrity.

Defendants deny legal right to " maintain "family bonds and alike, actual conditions working contrary ~~to that~~, where conditions should be encouraging, causing a better family relationship by example of more educated, wiser, capable people, as a necessity of life, and for government.

Childrens rights violated denying mandated, legislated family ` preservation, protection, stabilization, ▬ care ` from laws established.

146

These unprofessional conditions caused damages to each family member, as one of classes in a family, because of ill-will nature/attitudes of Custodians/Defendants in such prison rules, having added to dysfunctional families as this one was illegally, maliciously made by Defendants, et.al.,

Family members are discouraged to their legal rights by harassing, beguiling, frustrating, limiting unnecessary conditions to deter and disassemble communication, visits, relationships by past and current conduct and procedures by Defendants, which is only hoped for, caused, and representative of an evil nature.

Conditions are not legitimately, penologically required when Defendants, et.al, build illegal conditions and add by their conduct, systemic and systematic destruction of families and children,.

Other prisons are heard of having all-day visits, picnics, barbecues, professional, and therapeutic conditions as visiting rooms, contrary to what is done here.

No impact study report also shows lack of risk prevention management.

Defendants are deliberate indifferent to proper standards for a therapeutic environment for children when a family member is in prison by not finding a way for extended visits as other prisons, flexible scheduling, evening hours every night till 8:30 PM or so., special parent-child, relative-child, custodian-child visits with crafts, games, reading room, alleviate congestion + noise in visiting room, and ways for parents/children/family to properly communicate with feelings without a ~~thick~~ concrete block wall too high and too far away for communication with one whom a relationship exists. State employees, as courts, do not do anything ~~to destroy~~ family relationships, as ~~to was~~ should be occurring.

Children must want to visit their family member in prison, and not be discouraged in any way, as is.

Correctional staff must learn to understand to see the value, from proper education by supervisors, for their proper professional conduct, as an ~~they~~ important service to the institution, State, and Nation, if not to the family, as the laws of the land require.

Lack of parent-child, family-child, custodian-child visitation program does not look good for custodians\Defendants. ie. <u>Snyder - Joy and Carlo</u> (1998) program; the <u>Sesame Street Program</u> (Fishman, 1983); the <u>Girl Scouts Beyond Bars Program</u> (GSBB; Bloch and Potthast, 1998); or the <u>Youth Advisory Program</u> (Weissman + La Rue, 1998).

McCreanor denies grievance as legal expert by saying, "To accomplish what you wish would require additional staffing authorization, staffing and staff assignment are not grievable, IM's cannot file grievances on behalf of civilians. DCC is operating in accordance with state + federal law."

<u>Reply</u>: It is not just what I wish, but what should be done, as law also defines. Failures to provide) have sufficient staff for a prison does not allow for illegal conditions to be. If a state chooses to imprison someone, it must do so with all proper, legal requirements. I am not grieving staff assignment as McCreanor again misrepresent the issue to malicious deny grievance.

Meaning Just because McCreanor says I cannot grieve for civilians the problem he has been made aware of and his supervisors fail to uphold the laws of the land, is malicious justification for him to mislead grievant to deny grievance and laws of the land.

Also see below claim 16 exhausted grievance for denial of FIRST amendment right to ~~postage~~ postage and supplies as indigent inmate for preserving + protecting Family integrity rights.

<u>Claim # 19    Family Integrity, Preservation and Protection Rights</u>
<u>of Legally Protected Class</u>

Defendants Brady, Taylor, Howard, Talley, Snyder, Carroll, Department
of Services, for Children, Youth, and their Families Secretary or Commissioner to be
named fail to uphold the Constitutional and Federal Rights involved,
~~under~~ including the the two Depts statutes, Governors <u>Memorandum of Understanding</u>
to support each others purposes for Me, and as a member of the legally
protected class, the Family, and Delaware's <u>Family Court Act</u> Purpose,
and the federal Acts such as the <u>Child Abuse Prevention and Treatment</u>
<u>Act</u>, and <u>Acts</u> for Familys.

Since Dec 1, 1999, violating civil right under color of law.
Delaware Correctional Center and Dept of Corrections are thus illegal
because they are NOT in the Best of the children and their families
as in My situation, under these Defendants. No child left behind concept
deliberately indifferent to due to these Defendants actions, making My children
and family left behind causing irreparable and repairable damages to
us, and as one member of classes as Wards and legally protected family members.

By Terrorism, horrific, panicy conduct, treating us with irreverance,
to debase us for worthy use, as evil wants it, by intense and furious
destructive actions to totally deny purposes of laws for children
and their families. And violant conduct marked by extreme
familycideal actions as the nazis did, and causing in Me
atleast, such severe emotional agitation to the point of
loss of self-control, mind freeze, extreme survival mode as if
death is imminent, by such extreme conduct by Defendants
failing to uphold laws above for any showing of good faith

149

action from those laws. This situation and these Defendants are so out of control and unaccountable to a competent authority so far, I too could not believe it if I were not going through it. (Fact).

The violations of the antiterrorism Act by Defendants needs to be determined by counsel or this Court.

The levels of tortures conduct violates atleast the 8th Amendment of the United States Constitution.

These Defendants actions attempt to overthrow this government by undermining its foundation, the legal family. And assists the enemy of evil nature in doing so. And requires counsel or This Court for legal presentation of these claims, if legally possible. This is another example of actual legal injuries in this case, for one, not having been able to bring this claim also in a legal manner. Thus, of course, violating our national security.

In the interest of justice for All, and equal protection of the laws.

I, and as of class as wards, and as a protected class member, the legal family, continued to be denied civil right, Constitutional, and federal rights, and federal objectives, and state laws and objectives to parental right, privileges, immunities to proper bonds, integrity, association, society, consortium, companionship, to My children, by these Defendants.

These Defendants put My children in a position of danger.

These Defendants severed My childrens relationship, a liberty interest.

Visiting and communication obstructions with family members fail to reasonable, and effective to uphold the laws and objectives for Us, for important reasons.

150

Defendants conditions and conduct is so unreasonable as to cause an appearance of abandonment by Me of My children, when I would never do such a thing.

County Divisions of Family Services are liable for failures to uphold the Constitution and statutes for children, or families, and the Secretaries, Commissioner, and Director of the State and Kent County Offices, for this legal family member, and parent of His children.    Violating _Memorandum of Understanding_ from Governor Minner.

And Delaware Secretary, Commissioner, Board and/or Council members for State Department for Children and their families, all to be named, are also sued in their official capacities besides personal, for not upholding the established laws for children and families, and Me, violating My civil rights, atleast, while under State custody and custodial duties.

151

15

8.H., 8.L., 8.D., 8.P., 8.O., 2.X., 8.N., 19.N., 19.O., 19.G., 19.T., 19.E., 19.F., 19.AO., 8.H., 8.L., 8.D., 8.P., 8.O., 2.X., 8.N., 19.N., 19.O., 19.G., 19.T., 19.E., 19.F., 19.AO., 19.AP., 19.AR., 19.H., 19.AG., 19.AH., 19.AI., 19.AJ., 19.AL.

## Claims 19°. Failures To Provide Legal minimum Living Space of 64 Square Feet per non-mentally disabled inmate

And More For Mentally Disabled as proper professional living conditions.

I, and as one of class inmates, was continually, illegally, inhumanely caged in a 60 sq. ft cell with another inmate, and without considering compatibility as required by state law, atleast, for an organized and harmonious environment and conditions from Dec 1, 1999 to Aug 2006, and from then until now in a different kind of excessively, unnecessary stressful environment of a dorm with only 30 sq ft of living space.

All this without any compensation atleast like Maryland, where every inmate gets 5 days goodtime per month for having to live in such inhumane conditions, upon information and belief.

And having to live in those unprofessional conditions 78% of the time. And where hallway use is allowed sometimes during the rest of the 22% of the time if I don't have a program to go to, which is wrong also where sufficient dayroom/ recreation room space must be made available, but is totally denied, due to excuses such as understaffing, or laziness by guards. But for some reason, moving forces never want to correct blatantly wrong conditions of buildings built for half the population.

Bathrooms and showers are only half the proper size causing more unnecessary stress damages, inmate on inmate violence, and very tense atmosphere, especially in bathrooms and showers, all without partictions required under 8th Amendment decency law. Also continually ignored on purpose, indifferent to plight and damages incurred by me, and those similarly situated, especially among violent, more ignorant people. All, in harmony, denying legal rights to organized and harmonious conditions.

153

Brady, Taylor, Howard, Snyder, Carroll, Pierce, Burris, continue to ignore professional standards for non damaging conditions caused by not having atleast minimum standards a custodian, legal guardian, should have for his/her Wards of State.

There Defendants fail to enforce professional standards for proper mental health evaluations, diagnosis, and treatments oversight audits of independent parties to see if contractors are doing their duties since Defendants are unqualified to do so, but are in the position of responsibility to uphold these laws, ethics, codes of conduct, duties, for classification and housing in proper area.   Mental or physical disability included, but not done in my case since Mental Health staff, see other claim, fails to test, evaluate, as proper professional standards probably are for proper classification housing. Of course, mental health evaluations should be ongoing, regularly for changes in a persons status and for proper treatment, not causing him, as myself, to become worse in these incompetent conditions.

Dorms still house over design capacity of 42 inmates, and classification capacity of 39.   Actual housing still 50 beds for occuppancy; now 48 occuppied April 16, 2007.   April 18, 50 beds filled.

Denying use of recreation rooms available during recreation times only 22% of time now even in minimum and medium security classifications, If no mass punishment is going on, or some other abusive, preemptive strike to deny recreation or recreation room use.   Use of hallway on tiers is not a recreation room, causes excessive noise, but custodians dont care, in already overcrowded tiers doubled in capacity.

These Defendants continue to fail to enforce proper intake interviews upon entry into prison, and proper full mental health evaluations, not just token activities to be able to say something is being done,

as part of coverage, when I was never interviewed properly to see if I was getting all I should for services, evaluations, and treatments.

There Defendants continued to fail to provide legal and ethical housing conditions of required 64 sq. ft. per inmate

If custodians choose to provide only illegal conditions, proper relief must be provided for inmates, legal, ethical, humane, civil, and decent conditions appropriate for treatment and improvement in all areas of a persons conduct, not degrade + punish 24/7/365 as here. Maryland, for example, gives 5 days good time per month per inmate who is doubled celled and in less then 64 sqft per inmate, or in a dorm with atleast 64 sq ft per inmate in living space,

Custodians were well aware of expected, projected inmates + detainees for future years, but failed to proper compensate. Taylor announced projected incoming inmates to be 300 per year in 2006, and Delaware courts, and these Defendants news of 40% increase of criminal case filings in next two years (2007 and 2008).

<u>Legal Claim</u>: These Defendants violate redress of grievances for relief by law obstructing justice, abusing authority; deny security in person, house, papers, and effects by unreasonable threats of seizure of legal materials and actual seizure due to insufficient personal space by law; deny due process and equal protection of the laws contrary to custodians duty; deny natural rights to space, humanity; deny privileges by law by abridgement of authority, acting under color of law; causing cruel and unusual punishment in an ever more modern, decent, civilized society; and causing more communicable diseases due to illegal close quarters for health reasons. No American <u>Disabilities Act</u> cells and dorms for mentally disabled, in a least restrictive environment.

Female guards illegally supervise inmates during bathing and toilet use when they are working a tier; pretrial, and convicted areas in the compound atleast.

Claims 9. W., 19. H., 19. AG., 19. AH., 19 A I., 19. AJ.,

American Disabilities Act and Rehabilitation Act Total Denial   19. AL.

Regular grievance was dated and put in regular grievance box on Sep 14, 2005, for entitlements under these Acts.

McCreanor, unqualified, denies federal entitlements signed by Him on Sep 23, 2005, according to reply.

Reply received by me on Sep 30, 2005.

Appeal letter was sent to Carroll on Oct 2, 2005.  He chose not to reply.

Delaware Disabilities Law Rights Project, allegedly government funded, fails to provide legal services for disabilities entitlements under American Disabilities Act and Rehabilitation Act, and for abuse of government funds and statistics, as a member of N.A.P.A.S., National Association of Protection and Advocacy System, a federally funded protection + advocacy system to assist people with mental illness or developmental disability in understanding and asserting their rights. As one of class members, Hartmann was totally denied any service with deliberate indifference to needs, in His condition well known to require advocate with better communication ability.  As does the Delaware Mental Health Association fail members in upholding their professional standards and state licensing personally.

Violations: FIRST Amendment violations by denying freedom of speech and communication for patients rights, and prevention duty of custodians;

Denial of freedom to the press and information for same reasons;

Denial of redress of grievances;

FOURTH Amendment by seizure kidnapping denying access to info and entitlements to be secure in person, house, papers, and effects;

FIFTH Amendment denial to due process for redress of grievances to life, liberty, and property interests;

157

EIGHTH Amendment denial to be free from cruel and unusual punishment; unsafe conditions amount to punishment, not free from harm or risk thereof, not secure from danger or loss, not reliably safe, not prevented or protected from unsafe conditions.

NINETH Amendment denial to natural rights.

THIRTEENTH Amendment by having to buy information, if possible, when custodian is responsible to provide such, denying necessities of life, making Petitions, atleast, involuntary servant of State for what State should be providing.

FOURTEENTH Amendment denied of privileges to entitlements; denial of due process to entitlements; denial of equal protection under the Acts, denying life, liberty, and property interests.

Disabilities Law Rights Project operates under the Community Legal Aid Society, Inc. These Defendants as members of these Project and Society fail to uphold their professional duty as required under State law licensure, and for receiving government funds to not discriminate against wards of State in prison as Plaintiff.

Bivens  Do to their omissions to uphold these laws, and due to federal employees (J. Does XL) responsible to uphold these following federal statutes, breach duty and discriminate illegally also for Plaintiff, and as member of Delaware wards, as do the federal employees responsible to uphold the American Disabilities Act and Rehabilitation Act for all citizens without discrimination (J. Does XLI).

1. U.S. General Services Administration, Center for Information Technology Accommodation (CITA), for federal electronic and information technology access for people like Plaintiff Hartmann with a disability under Rehabilitation Act § 508.

2. The Protection and Advocacy for individuals with Mental Illness (PAIMI)

158

Program, and the State funded program from the National Center for Mental Health Services which fails to provide Plaintiff discriminatorily, mandated, to protect and advocate for his mental illness.

3. The Protection and Advocacy for Individual Rights (PAIR) Program fails to provide Plaintiff and each family member, and as members of classes, protection and advocacy for the legal and human rights of persons with disabilities.

4. The Client Assistance Program (CAP) mandatory program fails to provide Plaintiff, and each family member, and as one of classes, administrative, legal and other appropriate remedies to ensure the protection of persons seeking services under the Rehabilitation Act, as Plaintiff, and as classes members not informed of these legal rights to these services.

5. The Protection and Advocacy for Assistive Technology (PAAT) and still fails in the same ways to the same Plaintiffs and as one of classes.

Delaware Correctional Center, and probably other state facilities, fail to be certified to be complying with these Acts/Programs since Plaintiff, and as one of classes, is a prime example of non-compliance. Plaintiff would have probably never have found out about these rights, privileges if it was left up to these Custodian/Defendants deliberate indifference to their duty to uphold the laws of the land. Thus, they violate their public trust to do their duty.

Upon info and belief, every space, program, activity, and service here in in these State facilities, in all State Departments must be certified American Disabilities Act and Rehabilitation Act qualified, and maintained by regular check-ups to stay in compliance with building, demolition, or personnel change.

PRELIMINARY AND PERMANENT INJUNCTION needed for State and Federal employees to uphold these laws for All Wards of State.

Facilities must fully accommodate handicapped/disabled for their needs, regardless of funding, but Defendants as Federal Employees To Be Named, Brady, Taylor, Howard, Talley, Snyder, Carroll, and Delaware Department of Corrections Council To be Named (J. Does XLIII).
Board

These Defendants continue their deliberate indifference to these Acts and My symptoms as disabilities, fail to diagnose, prevent, and treat them, to continue cover-up for over 6 years now while I have been under horrific, damaging trauma causing My disabilities. On top of that, wrongly medicated with sleep medication with deliberate indifference to my severe allergy symptoms, cutting off my breathing ability at times, when non-sleeping pill medication for allergy symptoms are available, and used as professional standard, as verified by current new doctors employed here at Delaware Correctional Center now, caused daily inability to work. Due to maliciousness and illegal cost cutting measures by Correctional Medical Services and First Correctional Medical Services, and due to Defendants Brady, Taylor, Howard, Talley, Snyder, Carroll continues deliberate indifference to ensure medical contractors uphold the laws for the Wards of State as Me. Daily inability to work also obstructed justice, and My rights to unobstructed access to courts in a legal manner. Degrading conditions denied life, liberty, property, and happiness interests of Mine, and My family integrity rights by not being able to be more beneficial to them.

160

This prevented Me already under cronic care and cronic fatigue syndrome due to Thyroid Disease and mental illnesses, too incoherent, effectively, competently to be able to do My legal work in a timely, equal, meaningful, capable, and adequate manner around the other many illegal prison conditions due to lack of accountability and professionalism in this State.

State public library employees, as Director ( J. Doe XXXVIII ), fail to do their duty by State law and these acts to provide all its services to All its citizens, including disabled as I.

Relief needed includes auxiliary aid of a laptop with largest memory available and accessories as entitled to under this Act. Also full-time access, 50 hours per week, to libraries and information when custodians / Defendants need to legally implement any proper policies and procedures for their use as long as they don't obstruct access, as per precedence.

I, and as one member of classes of Wards, and disabled Wards, whose VOICE, ability to communicate wrongful conditions for Me as Ward, has been caused due to maliciousness, degrading, dehumanizing conditions atleast to Me by Defendants failing to preventing Me from becoming mentally ill when they are the alleged professionals, hired to do that, and so to provide professional conditions.

These Defendants work in harmony to achieve their evil goals fueled by selfish natures, and apparently failures to be trained, controlled, and supervised by professional standards for proven reasons, as moving forces to deprive of professional conditions.

These Defendants as prison authorities are liable for failures to provide interpretive and assistive communication devices.

This State does not have an advocacy source to stand up for these proper conditions as other larger States have. Thus, for the history of this institution, conditions continued to worsen to these, and more destructive conditions as per this _Complaint_ and _Amendment_.

Instead of being improved professionally, to become an independent and contributing member of society, if there is any way possible, which is the duty of government and its employees, which should not be beguiled by a conflict of interest, as in My cases.

Because I have now been made poor and destitute, I cannot afford justice under the law like the prosecutorial and state civil defense team have, thus it is so far denied. Now I have to fight these teams, handicapped, disabled, unable; where is the due process and equal protection of the laws in a legally, adversarial sides? So, the Defendants will continue to get away with their damaging behavior if I cannot bring and do anyone of an infinite number of an element, to me.

Diminished mental capacity is procedural default, as I have, but keeps being swept under the carpet. It took me about one year to put together the _Civil Complaint_ from years of research, and this _Amendment_ since its authorization on Aug 21, 2006. As for an example of actual legal injuries conditions existing for Me, my family, and those this case will help.

Fact: I have to copy by hand, due to mental illness and lack of photocopying, everything for later use, which has/is causing grave, damaging delays for relief, denying legal access to courts, and obstructing justice. This is a cruel and unusual hardship for Me, and those in similar situations as Wards of State, and prejudices all my cases.

162

My Disabilities affect My daily, major life activities, which continue to deprive Me also of timely, equal, effective, meaningful, capable, and adequate access to information for timely, equal, effective, meaningful, capable, adequate, and meritorious communication with the courts as can be also seen by the claims prematurely dismissed in Civil Complaint.

No entitlements deprives legal access to courts under the 14th Amendment.

Failures to adequately control, train, and supervise guards as moving forces to deprive proper accommodation of mentally ill prisoner represents deliberate indifference to inmate's mental health, as Mine.

Denials by these Defendants to accommodations and aids to freedoms of First Amendment rights, privileges, immunities, is cruel and unusual punishment in an ever more modern, civilized, and decent society to keep the ignorant of information to continue to allow these Defendants to abuse, neglect, exploit, and discriminate against me since Dec 1, 1999, here at Delaware Correctional Center.

Also violating My 5th, 6th, 9th, 10th, and 14th Amendments for fair and proper proceedings, due process, equal protection, and equal access to courts, are State + Federal Defendants of this claim.

These Defendants also deprive Me, and as one of class all, patients rights.

The following types of discrimination have been occurring to Me under the American Disabilities Act:

1. Denying an otherwise qualified person with a disability the opportunity to participate in or benefit from services of libraries, and as they should be operating, for legal access to information, for legal access to courts. And named Defendants, and those to be discovered, deny Me the opportunity to participate in or benefit from State programs under the American Disabilities Act and

<u>Rehabilitation Act.</u>

2. The programs or services to individuals with disabilities are not equal, if at all, to those provided to people without disabilities. Provided by state and federal agencies, to Me, and as one of disabled wards of State. The public entities named, and to be named from discovery by counsel. These programs and services have been denied to Me because of entities deliberate indifference, to My disabilities and these laws.

3. Defendants, and others to be named, assist in or cause discrimination to continue against Me, and as one of class wards of State, with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries like Me of the public entities programs. State, entities as contractors like First Correctional Medical Services and its persons, and Correctional Medical Services and its persons, omit all legal rights under this Act. Such as assisting custodians / Defendants of State that I qualify and should be provided the accommodations and auxiliary aids. Such as better records and supervision that all proper medical, dental, mental health services are provided in time to Me.

4. Defendants, and others to be named, use criteria or methods of administration that have the effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to people with disabilities. i.e. illegally deny or mislead grievances; assist to omit <u>Acts</u> completely.

164

Under both the American Disabilities Act and Rehabilitation Act Section 504, I am a qualified person with physical and mental impairments which substantially limit one or more of My major life activities. Impairments see in other Claims. And their is a record of such impairments, and I am regarded as having such impairments[52]. Any one of these tests would satisfy qualification.

Protection and Advocacy organization Delaware, who's primary purpose may be to advocate on behalf of persons with disabilities, including those in criminal institutions. The Protection and Advocacy for Individual Rights (P.A.I.R.), 29 U.S.C. § 794 e (2000) setting up a system in each state with "the authority to pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of ... individuals (with disabilities) within the State." Which Defendants named, and to be named, failed to do for Me, and as one of class of wards of State.

Protection and Advocacy for Individuals with Mental Illness (PAIMI) 42 U.S.C. §§ 10803, 10805 (2000) requiring the establishment of systems in every state "designed to protect and advocate the rights of individuals with mental illness, and investigate incidents of abuse and neglect of individuals with mental illness," and stating that the system "shall have the authority to ... pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness who are receiving care or treatment in the State." Also not done for Me, and many similarly situated here as wards of State. Apparently, working in conspiracy to deprive with State employees to be named.

Several attempts have been made as filed complaints with the federal Dept. of Justice, Civil Rights Division, but nothing has come of it yet. Last mailing was Dec 27, 2006.

<u>A.D.A./R.A. §504 Claims</u>

1. State of Delaware, and others, and Defendants sued for A.D.A. Title II violations and R.A. §504 violations relating to Mr. Hartmann's disabilities' access to the courts since December 1999 to present at the Delaware Correctional Center. This facility, upon information and belief, receives federal funding.

2. Mr. Hartmann is an individual with qualified disabilities.

3. Mr. Hartmann is qualified to participate in or receive the benefit of the particular program or activity of the prison that was/is discriminating against Him with deliberate indifference.

4. Mr. Hartmann is excluded from participation in or denied the benefits of the prison services, programs, or activities, or was/is being discriminated against in some other way for unobstructed access to information and its communication to the courts and for necessities of life, and for life, liberty, property, and happiness interests.

5. Mr. Hartmann is being obstructed to justice by official oppression, abuse of authority, abuse of process, and equal protection of the laws because of Defendants official and individual conduct contrary to laws and alike causing His exclusion, denial of benefits, and discrimination was/is because of His disabilities causing Him inability to communicate meritoriously in a timely, equal,

(6. The R.A. §504)

effective, meaningful, capable, and adequate manner to the appropriate authority.

Chapter 16 = Vocational Rehabilitation and other Rehabilitation Services

Rehabilitation Act Title 29 U.S.C. Section 701 et. seq. (Title 29 - Labor, Chapter 16, Defendants Brady, Taylor, Howard, Snyder, Carroll continue to fail to provide federal entitlements as follows:

Section 701 (a)(6) ; provide Mr. Hartmann with disabilities with the tools necessary to- (A) make informed choices and decisions

(B) achieve equality of opportunity, full inclusion and integration in society, independent living, economic and social self-sufficiency.

Section 701 (b) - (1) to empower Mr. Hartmann with disabilities to maximize employment, economic self-sufficiency, independence and inclusion and integration into society, through - (A) workforce investment systems implemented in accordance with title 1 of the Workforce Investment Act of 1998 (29 USC 2801 et seq) that include, as integral components, comprehensive and coordinated state of the art programs of vocational rehabilitation;

(B) N/A

(C) research;

(D) training;

(E) demonstration projects; and

(F) the guarantee of equal opportunity; and

(2) to ensure that the Federal Government plays a leadership role in promoting the employment of Mr. Hartmann with disabilities, especially significant disabilities, and failing to assist Mr. Hartmann with State employees and providers of services in fulfilling the aspirations of Mr. Hartmann for meaningful and gainful employment and independent living (upon reentry)

Section 701 (c) Policy - It is the policy of the United States that all programs, projects, and activities receiving assistance under this chapter shall be carried out in a manner consistent with the principles of - (1) respect for individual dignity, personal responsibility, self-determination, and pursuit of meaningful careers, based on informed choice, of individuals with disabilities;

(2) respect for the privacy, rights, and equal access (including the use of accessible formats), of the individuals;

(3) inclusion, integration, and full participation of the individuals;

(4) support for the involvement of an individual's representative if an individual with a disability requests, desires, or needs such support; and

(5) support for individual and systemic advocacy and community

[rest of page missing - see law library].

Mr. Hartmann is NOT provided the following entitlements and keeps to be denied these following entitlements under the Rehabilitation Act Amendments of 1973, as amended by His legal custodians Taylor (Brady), Howard, Snyder, Carroll since 1999 at the Delaware Correctional Center:

He continues to be denied the following due to His disabilities having encountered deliberate indifference and various forms of discrimination in such critical areas as communication, education for unobstructed access to information in a timely manner, recreation due to legal custodians failing to do their legal and ethical duty for Him as Ward of State such as providing Him his necessities of life by law at least, institutitutionalization mismanagement and illegal imprisonment, health services by law and medical ethics, and public services such as unobstructed access to information via State Library Services per State and Federal laws, Consumer Source Water Test Results per Water Safety Act, American Disabilities Act entitlements, and others yet obstructed from to communicate to this Honorable Court.

Defendants have continued to allow, Mr. Hartmann's disabilities to diminish his rights of individuals as a human being in a humane society, for an ever more improving, civilized, decent society by NOT allowing independent, healthy, legal, and ethical living in this institution, continues to obstruct self-determination with access to unobstructed information, and to make knowing, informed choices, to contribute to society from this institution, to pursue a meaningful career, and to have legal, proper, ethical, ever more improving inclusion and integration in the economic, political, social, cultural, and educational mainstream of American society, to achieve equality of opportunity for others and Himself, for full inclusion and integration in society, and for economic and social self-sufficiency.

Custodians continue to fail to empower Mr. Hartmann with His disabilities for maximized employment in service to our society, for His family and Himself to be a contributing, useful member, instead is warehoused under mismanagement Department of Corrections running around putting out fires, law suits & grievances, instead of having a model program with the least amount of imprisoned people as done by the wise; to be smart on crime and corrections, not selfishly, politically expedient contrary to the Best Interests of the People, All People.

Defendants also fail to reasonably fullfill this Rehabilitation Act's purpose, required to be fulfilled by the States (cite omitted), statewide workforce investment systems implemented in accadance with Title I of the Workforce Investment Act of 1998 that include, as integral components, comprehensive and coordinated state-of-the-art programs of vocational rehabilitation, training to uphold these laws continuously by state employees and custodians to "guarantee" equal opportunity, and to ensure that the Federal Government plays a leadership role in promoting the employment of individuals with disabilities and in assisting States and providers of service in fulfilling the aspirations of such individuals with disabilities for meaningful and gainful employment and independent living (in and out of prisons).

Defendants fail to follow Act by not having someone qualified to comprehensively assess the individuals like Mr. Hartmann for a 'Plan for Employment' with the rehabilitation needs of the individuals. See Section 7(2)(B)

Defendants fail to provide 'assistive technology device' from Assistive Technology Act of 1998 for Mr. Hartmann's need for a current laptop with largest memory and accessories with information access from the internet. See Section 7(3)

Defendants fail to provide community rehabilitation program for Mr. Hartmann in the following areas under Section 7(5):

172

direct or facilitate the provision of vocational rehabilitation services to enable Mr. Hartmann to maximize opportunities for employment, including career advancement through; (A) medical, psychiatric, psychological, social and vocational services that are provided under one [organized and harmonious] management, (B) recreational therapy, (C) rehabilitation technology, (D) job development, (E) evaluation of specific disabilities for assistive and accommodation services, (F) extended employment, (G) services to family members to vocational rehabilitation, with meaningful, therapeutic prison visits, and communication by postal mail by providing stamps and mailing supplies to Mr. Hartmann, providing free phone services since He is indigent, family members were NOT sentenced to pay higher phone costs by a court but yet are punished that way by having to accept charges now for collect calls to talk to Mr. Hartmann at an exploitative and abusive rate.

Defendants fail to provide facility needs to accommodate disabled to the law libraries, where some mental disabilities require full time access because paralegals do not do and cannot do Mr. Hartmann's Motions and legal work for the courts.

Defendants fail to provide any integration and accommodation for competitive employment in the integrated labor market, fail to allow satisfying the vocational outcome of supported employment including self-employment, telecommuting, and business ownership. See Section (11) Employment Outcome.

Defendants fail to provide any establishment of a community rehabilitation program including acquisition, expansion, remodeling, or alteration of existing buildings necessary to adapt to community rehabilitation program purposes.

Defendants fail to provide and inform disabled of right to an impartial hearing officer, as Grievance Chair for the institution must be, who is NOT an employee of a public agency (other than an administrative law judge, hearing examiner

173

, or employee of an institution of higher education". One who has no bias for either or atleast does not let that affect their decisions to rule by law. One who has not been previously in both the executive branch of a government for or against citizen inmates. One who has the knowledge of the laws that apply for inmates, disabled, wards of the State, legal custodians, and official duties. One who has no personal or financial interest that would be in conflict with the objectivity of the individual. (See also Grievances Claim).

The hearing officer shall not be considered to be an employee of a public agency for purposes of subparagraph (Above) solely because the individual is paid by the agency to serve as a hearing officer.

Defendants fail to provide 'independent living core services': (A) all information and referral services, (B) cross disability peer counseling, (C) individual and systems advocacy.

Defendants fail to provide 'independent living services' as: (A) appropriate accommodations to and modifications of space used to serve, occupy them with his disabilities by not providing: (i) a non-terroristic or non-tortures living conditions away from violent people, and seeing other weaker inmates taken advantage of due to deliberate indifference by classification and prison staff where custodians fail to protect those who don't know their rights and have No voice, (ii) services and training for individuals with cognitive or sensory disability, including interpreter for atleast one inmate who had a stroke needing physical therapy and speech therapy, and Mr. Hartmann's cognitive, learning disabilities caused by custodians, (iii) personal assistance services, including attendant care and the training of personnel providing such services, but instead, custodians let disabled people in here at D.C.C. fend for themselves shocking any caring persons conscience.

174

11/
/07

(iv) surveys, directory, and other activities to identify appropriate housing, recreation opportunities, and other support services, and accessible transportation by wheelchair drivers inside this facility with payed positions to have proper, ready transportation service for disabled; (V) consumer information program on rehabilitation and independent living services available under this Act, especially for minorities and other individuals with disabilities who have traditionally been unserved or underserved by programs under this Act; (vi) education and training necessary for living in a community and participating in community activities in prison and for reentry so as such as how to use the internet in this ever more modern, civilized, decent society for health, medical, career, arts, sciences, etc. (vii) physical rehabilitation for inmates, (viii) therapeutic treatment with a proper therapeutic environment, inmates properly educated on their rights upon entry of a government facility by legal custodian as part of their duty, (ix) provision of needed prosthesis, appliances, and devices, (X) training to develop skills specifically designed for youths who are individuals with disabilities to promote self-awareness and esteem, develop advocacy and self-empowerment skills, and explore career options; (xi) services under other Federal, State, or local programs designed to provide resources, training, counseling, or other assistance, of substantial benefit in enhancing the independence, productivity, and quality of life of individuals with disabilities; (xii) appropriate preventive services to decrease the need of individuals assisted under this Act for similar services in the future; (xiii) community, in and out of prison, awareness programs to enhance the understanding and integration into society of individuals with disabilities; and (xiv) such other services as may be necessary and not inconsistent with the provisions of this Act.

Mr. Hartmann qualifies as an individual with a significant disability who

4

has a severe mental impairments which seriously limit ~~functions~~ functional capacities such as communication and memory, cognitive and learning memory, interpersonal skills from severe memory loss and severe emotional disabilities, severe affecting his work skills and career he used to be in making Him no longer able to work in that career, and ~~affecting~~ the disabilities affect His daily, major life activities to perform at the ability levels He used to be able to work in. His vocational rehabilitation can be expected ~~to~~ require multiple vocational rehabilitation services over an extended period of time after 6 years of degrading conditions to Him so far. Mr. Hartmann has disabilities from tortures conditions and other traumatic crisis in His life resulting in heart disease, hypertension, mental disabilities, spinal cord injury and bodily nerve damage undiagnosed due to breach of duty of custodians, learning disabilities causing substantial functional limitation and yet unknown future impact due to breach of duty by ~~poor~~ custodians.

Mr. Hartmann speaks also as an advocate for the other disabled under the Delaware Dept of Corrections custody, who upon information and belief, are not receiving these minimum services under this Act in Delaware, legally qualified to advocate for this class under the Act for individual's representative.

Mr. Hartmann qualifies legally under the Act for "ongoing support services," and for "personal assistance services" to communicate, defend, and advocate for Him for on the spot support services to prevent any attempted, further abuse or exploitation by anyone, in prison by inmates or staff, for daily living activities to prevent further harm to Him because of His mental disabilities, and on or off the job that ~~the~~ He would perform if He did not have a disability to increase His control in life and ability to perform everyday activities.

Mr. Hartmann fails to receive ANY "rehabilitation technology" as defined under the Act to include in His case, laptop computer with largest memories and accessories

and full-time access to all information sources like law libraries, information from the internet, filtered only from pornography and violence advocating websites while in prison, since its NOT legal to do that to Him when He gets released.

And other needs to address the barriers confronted by complete and totally integration into society when able to communicate them and by an advocate assigned to Him to uphold these Acts for Him in all ways, including "supported employment" as defined in Acts (A.D.A. and R.A.), and "supported employment services" with assigned "rehabilitation counselor or coordinator" qualified to enforce these Acts.

For "Administration of the Act" (R.A.)(A.D.A.), the Federal Commissioner shall appoint a State of Delaware overseer for All Wards of the State to see that they receive all entitlements or alike from these Acts, and all others qualified under these Acts, and that strict "Evaluations" be done under totally compliance is proven by disabled persons Affidavid after they have been totally educated on their rights/entitlements and alike under these Acts.

Overseer insure a small poster be permanently posted in all government facilities so that every new Ward of the State will be able to see the basics about the Act and whom to contact for further information, perhaps by the qualified rehabilitation counselor or coordinator, and the ways to contact the Information and Resources Clearinghouse for those with possible qualifying disability.

Overseer insures "Electronic and Information Technology" as amended 29 U.S.C. § 794(d) be enforced to provide required access to this technology provided by the Federal government [and State law should do the same for State Information] to be accessible, properly, timely, equally, effectively, meaningfully, capably and adequately to members of the public with disabilities including computers, software, and electronic office equipment for Mr. Hartmann and class members disabled under the Acts.

177

The disabled have been abused and exploited, discriminated enough, way too much in this State by Defendants, such inhumanity to people is cruel and unusual punishment in an ever civilized, decent and more modern society.

Such abuse of the mentally disabled citizens often because they put up the least resistance shocks anyones reasonable conscience.

If a parent treated their kid the way this State is treating their inmates and disabled, the state would come take the kid away.

Prison in Delaware should NOT be used as treatment centers for the mentally ill, as any reasonable mental health worker or Commission should know,

Nor should it be a place to cause mental disability as to Mr. Hartmann.

Such use is inappropriate or cause of illness, its in contravention of ethics and purpose of government, and the United Nations principles used by civilized societies pertaining to mental health care, particularly the principle which states that 'all persons have the right to the best available mental health care, which shall be part of the health and social care system.' And the Delaware Department of Corrections lack of use of proper intake mental health screenings, totally, for proper indepth actual treatment and proper housing to NOT create mental illness in anyone, not just superficial and token treatment to make it 'look' good on paper.

19.B., 19.C., 19.D., 19.E., 19.F., 19.G., 19.H., 19.I., 19.J., 19.K., 19.L., etc.

Claims 19 Housing Assignments Violations By Classification Supervisor

Stevenson, Wardens Snyder, Carroll as Moving Forces Causing

Degenerative Health Conditions:

Petitioner has right to be free from cruel and unusual punishment, unprofessional conditions in level of security classification and actual personality in minimum, among minimum wards. But, due to custodians continuous deliberate indifference to legal, organized, harmonious conditions, was continually housed with medium and maximum security level inmates with violent, habitual natures, causing me physical and mental damages.

Actual conditions are all more like maximum, overcrowded, insufficient facilities as per other claim, and custodians, continues deliberate indifference to them. Wards that cannot live at lower levels of security need to be moved, contrary to current conditions of mass punishment rules and regimentation for all which professionals know only cause more problems.

Stevenson fails to work with me for a compatible celly and tier, instead does not reply, for required legal, organized and harmonious, nondamaging conditions to me, for least restrictive environment especially for disabled ward.

Conditions, Stevenson, Snyder, Carroll's conduct violates life, liberty, property, happiness interests. Brady, Taylor, Howard, Talley fail to enforce applicable laws like proper mental health evaluation required for classification, and proper rehabilitation to actually reduce recidivism, but continue to be deliberately indifferent to, breaching their duties, ethics, laws, abusing government funds. Fail to prevent risk, no apparent risk management, professionalism, or audits, accountability within State, Governor Minner and others breach duty + public trust.

Prison conditions under these custodians / Defendants exacerbated classes conditions by overcrowding, levels of terrorism, torture, or violence, lack of

179

privacy, damaging excessive noise, and other unnecessary stressful conditions that are hard on everyone, but particularly so on those subject to or have emotional, mental, or psychiatric problem, adding to public health problem and best interests of this State and Nation.

Legal claims: Violation of due process of law by omission of required mental health examination for proper treatment, housing, for equal protection of the laws, to be free from cruel and unusual punishment, abuse power not delegated to the States, and prohibited to the States by precedence, for me also to have physical security; to be protected against threats and harassment; for failing to have a proper intake orientation for all newly committed to prevent this from occurring;

14.H.; 14.AG., 14.AI., 19.AJ., 19.AL.;

<u>Claims</u> - Illegally Charging And Not Refunding Monies Taken
<u>Illegally from Indigent Inmate Account for legal photocopies</u>

Grievance 21527, dated and put in grievance box on Dec 16, 2005 for
refund for monies illegally taken, when case law shows prison must provide
free copies for indigent inmates.

Little condones, assists illegal conduct, fails to act as legal custodian should
to uphold rights for Wards of State.

<u>Menon</u> perjures herself on <u>Grievance Information Report</u> dated 5/23/06
that 'offender signature captured', when 'it was not.'

<u>Burris</u> wrongfully denies assisting illegal conduct; after it took her
about 66 days to reply ~~xx~~ unprofessionally late.

Bureau Grievance Officer (J. DDE XXIII) denys grievance illegally
without checking law and facts/ laws presented by me, for him, to help him
do his duty.

Howard denys unprofessionally about 40 days later by obviously
not checking the law either.

This ruling took 159 days for administrative exhaustion by these
Defendants which is way too unprofessional, which could not become a
certifiable grievance procedure because of the damaging, daily delay
to what should have been legally in place already by custodians.

These Defendant conduct at least violates the: FIRST Amendment rights to
freedom of speech and communication with the courts in a legal manner to
minimum standards; rights to the freedom of press and to information for
the courts; obstructs pro se citizens access to courts; legal redress to
grievances; denies FIFTH Amendment right to due process for indigent,

necessity of life, liberty, and property;    denied SIXTH Amendment Right in criminal prosecution and appeals to speedy trial, to an impartial grand jury denied in any criminal case fraudulently brought and defense counsels conflict of interest allowed deceitful jurisdiction and legislated procedural due process, denied fundamentally fair and timely, equal, effective, meaningful, capable, and adequate criminal proceedings to be knowingly, intelligently, and voluntarily proceeding; denied nature of the case legislated procedural due process, denying all substantive due process, and equal protection of the laws;    denied EIGHTH Amendment violations to cruel and unusual punishment in an ever more modern, civilized, and decent society to legal access to courts, timely, equally, effectively, meaningfully, capably, and adequately have the needed information for defense preparation, having caused further false imprisonment, mental and physical damages to me from illegal prison conditions started to be shown in this Complaint, and its daily punishing conditions to me and custodians gross deprivation of professional conduct and ill-will upon me, as one of class of inmates; denied NINETH Amendment rights to natural to life, liberty, and property, and happiness interests so far shown in this Complaint; denies TENTH Amendment right to me, and class, to be free from illegal conditions not authorized by Federal Statutes, and the Constitution; which were not delegated to the States; denies THIRTEENTH Amendment right to be free from involuntary servitude by custodian failing to provide necessities of life to ward of State - me; requiring me to pay for state's duty; not having been duly convicted to involuntary servitude; denies FOURTEENTH Amendment right, privileges, immunities to due process and equal protection of the laws needed with free copies for courts, and case preparation and proceedings for my interests.

19.E., 19.G., 19.R., 19.W., 19.AH., 19.AG., 19.AI., 19.AJ., 19.AL., 19.AM.

New precedence

Claim 8 - Word processors and accessories Denied Wrongfully in these. Evolving Standards of an ever more Modern, civilized, and decent society causing punishing conditions now considered cruel and unusual by prejudice from untyped papers, with less errors, more timely, equal, effective, meaningful, capable, and equally adequate access to the courts due to computers abilities to cut, paste, process words, grammar, spelling; equal access as non-indigents, non-imprisoned on bail, and attorneys have; mentally disabled as I am to have equally capable access to information and memory as entitled under the American Disabilities Act, and for Rehabilitation Act entitlement, such as a career skill for reentry to be a productive member of society;

Just as pen and ink were once ordered to be provided to indigent inmates, in these times, equal aids must be allowed as others have. Word processor and accessories have become a necessity of life as radio, TV, fans, telephone, electricity, utilities, which are in prisons, if this society is more modern, civilized, or decent.

Denial is punishment to me, and inmate class, delaying or denying access to courts for some inmates because of their inability or mental disability denying them legal access to courts without these aids, because it delays my defense preparation due to note taking by pen, having to rewrite everything atleast once, often twice, when capable to write; less frustration by judiciary having to read these documents, inmates prejudiced by their handwriting or inability to write; as for example in my original complaint took me one year to write from notes. Thus, equipment + supplies must be allowed in prison, provided free for indigent inmates, as decided by a court if inmate is legally indigent, which is usually already done for in-forma-pauperis rulings.

State American Disability Act Administrators should assist in procurements.

123

State and/or Federal Education Departments can assist funding and administration since legal work is educational, and law library paralegal is apparently payed for by local School District funds. And the location of the millions of dollars of the commissary profits are still unknown, which are required to be used for inmate needs, not for prison administration, security or alike.

Fundamental, equal fairness to free expression and communication should not be abridged, or stigmatized due to indigency or incarceration.

Other prisons out of state allow word processors + accessories, thus it should be allowed here.

Thus, procedural due process and substantive, and equal protection of the law his obstructed, sometimes denied, to inmates or indigent inmate class as myself. It also deprives or delays my FIRST Amendment rights to freely speak and communicate with others when one has to rewrite copies manually; it obstructs or delays my freedom of press and information rights to produce, copy and my able to provide information; it also denies or obstructs, depending on the situation, my redress of grievances for timely, equal, effective, meaningful, capable, and equally adequate access to redress, prejudicing my actions whenever one or more of these elements are obstructed or denied; and denies or obstructs for me to have the right information, at the right time, to present it in the right way, to a court. And of course, the computer word search capabilities in a memory are invaluable. Access to courts also includes access, equally to anyone else, not so available in manual means, verse electronic means. Government agencies almost all convert to electronic means showing its standardization. Government websites, for me, are not yet accessible to me equally as non-indigent, non-imprisoned, and

attorneys, to communicate timely, retrieve information equally as non-imprisoned can.     Keeping me, as one of ward class from these tools keeps me wrongfully dependent, unable to file grievances due to lack of timely, proper information for relief, for learning career information or other education, to prepare for reentry and prevent recidivism, instead of being kept dependent and ignorant as a slave of the state because of malicious or sadistic minds.

Having word processor capabilities would open up my capabilities to be a more productive member of society, allow more equal access to life, liberty, property, and happiness interests which a proper state of mind would want to occur, to have the right information, at the right time, in the most concise way, to present it in now standard way as other citizens can, like to courts, government officials, and others for freedom of speech, communication, press, and information rights, and timely, equal, effective, meaningful, capable, and adequate access to file proper redress of grievance.     Thus, total denial of laptops and accessories are unnecessary, and destructive in this alleged modern, civilized, and decent society of the United States of America.

Denial of such equipment and accessories delays timely access to courts, government officials, and others as legal right because the legal rights are time sensitive, effectively time limited for me, as one of ward class, to timely learn or respond for relief from damage, and keeping families dysfunctional, if not causing it, as in this state by keeping us from info processing.

Timeliness requires punctuality, accurate, legitimate, understood and understandable information, valid info, for unabridged FIRST Amendment rights.

Equal access to equipment and information is required for access in the same measure as non-wards, in quantity, value, quality, degree,

impartial, able to cope with information as other citizens which a penological interest would surely not deny.

Equipment and accessories are necessary and important for wards to have to attain timely, effective consequence and proper, legal outcome; for meaningful information to be conveyed as intended by facts, to be less ambiguous when the proper information is available from memory in equipment as other citizens have access to; for wards to be capable to able, with capacity from tools, provide competent communication; and to adequately be able to provide for equal to or sufficient for a specific requirement if the information were not available or obstructed as now by these Defendants Brady, Taylor, Howard, Snyder, Carroll, Talley.

Provision would add to preventive measures for risk of harm to wards, to hold more accountable the custodians continues disregard for or indifference to the risks as started to be shown in this Complaint, and to be able to improve oneself in the areas these custodians have not nor can do, nor care to do, to prevent further reckless endangerment.

Provisions are needed for societal decency to conform to standards of propriety and quality, and social, societal standard as a TV, telephone, fan, radio, watch, and so on, in this facility, and many more in other facilities.

Provisions are needed for this civilized society in an advanced and ordered and harmonious state and stage of cultural development where laws of electronics are throughout our society now; its become a necessity of life.

Provisions are needed in this society since we are bound by common interests such as our Constitutional rights and Federal Objectives

To be, for example, a government for all people, not a degrader of our people. And since we are tied to common standards in electronics now in this information age, in this ever more progressing, modern society.

Any further delay for these provisions would only further delay legal rights, fatigue, worry, impede, handicap, obstruct equal justice for All, to continue to impede, restrain, shackle ward citizens from their legal, humane, natural rights, by arbitrary, autocratic, despotic, states of mind with will or caprice to discriminate against equal access to information and communication, by impulsive, insecure lack of wisdom for equal conditions for wards and indigent, to keep us in distress contrary to government objectives.

Provisions would release citizens as wards from unnecessary constraint and confinement to ignorance in certain subject areas, repression of justice and proper conditions, continue to keep me, as one, in a more hazardous, risky condition of dependence on the government, abusing authority and taxes, prevent freedom from harmor risk to me, to be able to keep me more secure from danger or loss, to keep myself and others from hazard or danger, and for myself and others to be more secure, free from fear due to education and capability for society, to be happy, healthy, and prosperous.

Provisions would allow for ease of adaptation on reentry to society, to be more functional, contributing, uniting effort for our Union; and harmonious in action and sentiment, in an organized society, instead being made an outcast by insecure, selfish people.

Provisions would prevent further abuse, neglect, exploitation, and discrimination of convict, to further, selfishly belittle, discredit, and be abused by the 'non-sinners,' and their 'good intentioned' but ignorant conduct.

187

Provisions would help prevent further ▬ legal violations by custodian(s), uphold due process of the 5th Amendment, 4th Amendment, 6th Amendment, 8th Amendment, 9th Amendment, 10th, 13th, and 14th Amendment violations these custodians continue abuse and live as if they are above the laws.

Try living without your electronics and see the handicap.

In order to satisfy the equal protection clause of the 5th Amendment of the United States Constitution, I as indigent ward must be provided with the same basic tools of adequate defense (claims) or appellate review without cost if those same tools are available to other wards for a price, these Defendants continue to deny, maliciously.

As an indigent Defendant who made a timely appeal, as by <u>Motion To Dismiss</u> but was unable to perfect it because of My poverty, was denied a right guaranteed by the 14th Amendment of the United States Constitution and is entitled to release upon <u>Habeas Corpus</u> or a hearing on appeal. This is <u>NOT</u> a Habeas Corpus claim, but an actual legal injury claim of denial of procedural process claim heared in 42 USC § 1983 claims.

My indigency continues to prejudice My cases due to illegal conditions like custodians/Defendants Brady, Taylor, Howard, Talley Snyder, Carroll fail to provide My legal and ethical necessities of life due to deliberate indifference.

19.H., 19.AG., 19.AH., 19.AI., 19.AJ., 19.AL.,

<u>Claims</u> — Failures To Provide Free Legal Mail Postage and Supplies For
<u>Indigent Inmates As Necessity of Life And By Law Precedence</u>

Regular grievance dated and put in regular grievance box on <u>6/18/2004</u>
for illegal deprivation of legal mail postage and, takings clause, for legal supplies
from indigent inmate account due to illegal prison rule.
McCreana/Merson obstructs justice by not replying to this grievance. Denies
equal access to the courts.

Another Regular grievance dated and put in grievance box on <u>3/21/2005</u> for
illegally charging indigent inmates for legal postage and supplies; illegal
indigency prison rule.   Courts have already granted my indigency,
but prison administration still wants me to be indentured servant.
McCreana/Merson fail to reply to this grievance.

No supervisor oversees this conduct to control and supervise this
conduct under pretense of law.   Carroll is Warden moving force, as
Snyder was with Taylor, Howard, Brady.

Regular grievance dated and put in regular grievance box on 4/9/2005 showing
that monies still illegally taken for indigent legal postage and supplies, and
that custodians still fail to uphold law to provide these necessities of life for inmates.

And that this custodian fails to provide postage and supplies for indigent
inmates to maintain atleast their legal right to family integrity to be able
to write to them,

Burris delays her reply until Aug 4, 2005, about 117 days.
No relief provided by law that my custodian is responsible for these necessities of life,
under atleast the FIRST Amendment of the U.S. Constitution.

No informal resolution within 2 days per prison rule caused by Merson.

No grievance committee hearing was convened in 30 days, as per prison rule, due to Merson.

Burris denies legal right on 8/4/05, and fails to supervise to uphold grievance policy procedures above.

Burris fails to use outside review by legal counsel for needed interpretation of law, per grievance policy, thus taking responsibility for all damages.

Merson's Reply and Burris's condoning illegal activity by custodians. because an illegal prison rule or condition can NOT continue to exist, no matter when it is raised, especially when denials to information and law library keep me a pawn, slave, dependent on them to have power and control over me, and class of inmates, to continue to abuse, neglect, exploit, and discriminate against illegally, unethically, and inhumanly. And especially when legal custodians fail to do their duty to uphold word of State, my, rights, privileges from the beginning before implementing a prison rule legally by the Administrative Procedure Acts, state and federal, and Administrative Law and Procedure.

Regular grievance dated and put in regular grievance box on May 17, 2005 has not been heard from to-date. Merson and Mc Creanor Defendants.

Letter to Delaware Center for Justice assists obstruction to justice by Nikita Y. Robins approving denial of notice and hearing right to all new proposed prison/agency rule/regulation, working in harmony to deny legal access to courts, as required by Administrative Procedure Acts. Robins also obstructs justice by misleading reply on definition of court indigency.

Defendants of mailroom, to be named (J. Does XXIV), continue to illegally censor My nine pamphlets with legal information which is not yet been received violating FIRST, FOURTH, FIFTH, EIGHTH, FOURTEENTH Amendment rights and privileges. Proper procedure to appeal grievance was followed, but I continue to be stone-walled, denied them with excuses and no answer. In about 2005; grievance will show.

Thus, another claim is stated by Me alleging that these Defendants ignored multiple requests to return these legal materials to Me needed for pending case, but continue to ignore it.

Another claim exists for (J. Does XXIV) having received legal books for Me, payed for too by Me, had arrived here at prison but were not received nor informed about by Defendants. But My further investigation discovered that books were illegally returned to sender, causing illegal censorship and denial of Constitutional and federal rights.

The question then of course arises, how much more of My mail also, and as one of class as Ward, has been illegally censored, returned, destroyed, or stolen?

Obviously, proper written policy and procedure is needed for accountability for each mail piece because of inherent invidious discrimination of state employees here. What is the legal claim and legal relief for restoration, and prevention of future damage?

Legal Claims : These Defendants violate First Amendment freedom of speech and communication,
and to freedom of press and information obtaining,
and to legal redress of grievances,
and to legal freedom of expression,
and to legal censorship only, and family integrity right,
and to the Fifth Amendment right to due process to uphold this
    precedence by custodians responsible to do that for wards,
    and to uphold wards life, liberty, property, happiness
    interests which obstruction ~~caused~~ denies,
    and necessities of life obstructed for wards,
and violates the Eighth Amendment in an ever more modern,
    civilized, and decent society to obtain information for the interests
    and family relationships integrity,
and violates Nineth Amendment to natural family integrity
    rights, and legal access to courts rights,
and violates the 10th Amendment because this power was not
    delegated, and prohibited by the States,
and violates the 13th Amendment because it causes wards to be
    an involuntary servant to the state to have to pay it back
    when wards were not duly convicted ~~to this~~ with this to
    their sentence,
and violates the 14th Amendment because it abridges the privileges.

193

19.A., 19.H., 19.AG., 19.AH., 19.AI., 19.AJ., 19.AL.

Claim 21 - Illegal Denial of Use of State Mail By
Wards of State

Regular grievance 57843 sent for relief to use state mail system
already in place, where state is required to provide all necessities
of life and Wards needs including access to all state agencies, courts,
and alike government personnel or offices for this state, county, city and alike.

Letter of appeal to Carroll. Pierce reply's illegally by
sweeping issue under the carpet, avoiding precedence, breaching
duty, etc. He also denies grievance of appeal wrongfully because
Merson illegally returned grievance to me as unprocessed. She
cannot legally answer a grievance on an issue she does not
know what the law is. Typical, historical abuse of authority, etc.

Legal Claims: These Defendants violate First Amendment by not providing for
wards of state, necessities of life, to communicate with
government officials, and precedence
and Fifth Amendment denying due process of law for liberty,
life, property interests,
and Sixth Amendment for the rights in all criminal prosecutions,
and Eighth Amendment due to cruel + unusual punishment in
an ever more modern, civilized, decent society to FIRST
Amendment rights abridgement delaying or denying relief from
illegal prison conditions and illegal prisonment, even if it is just
one day found in appeals,
and Ninth Amendment rights to natural life, liberty, and property,
happiness interests to attain relief or prevent damage,
and Tenth Amendment by not following precedence not delegated to

195

the States,

and causing 13th Amendment violation by forcing ward to be involuntary servant when not sentenced to this punishment condition,

and violates 14th Amendment abridging or denying privileges, rights, or immunities.

Refund legal and privileged mail postage because of state mail use by wards precedence, ~~the~~ plus damages, etc; also prevents FIRST Amendment rights.

17,
++9G., 19.H., 19.Y., 19.A.G., 19.AH., 19.AI., 19.AJ., 19.AL.,

Claims 17 - Illegal Mail Censorship, Illegal Legal Mail
Censorship,

Grievance dated and put in grievance box on June 26, 2005 for illegal
censorship and seizure of 9 pamphlets.

Menon fails to respond to-date on that grievance.

Another regular grievance dated and put in regular grievance box on
Oct 7, 2005 about illegal censorship and seizure of 9 pamphlets, and
no reply to prior grievance dated June 26, 2005.    No reply to date.

Grievance dated June 26, 2005 had then been received as
grievance # 18612 which was received on Oct 27, 2005, four months
later (122 days) after Burris allegedly denied it on Oct 13, 2005
due to alleged expired filing period, authorized by Vargas on July 6, 2005.

Time to file had not expired due to exhaustion attempt with
mailroom staff by letters before filing grievance to give them the
benefit of the doubt. This excuse just used by Vargas /
Burris to obstruct justice, to do duty, etc.

Appeal mailed to Carroll on Oct 27, 2005. Reply obstructs
justice when custodians fail to do their duty to uphold wards rights,
alleging still expired. Illegal conditions /conduct can't persist under
proper states of mind by a custodian.

Mailroom staff ( J. Does) XXIV ) illegally censored and seized two
legal supplements to books, without informing Me of their arrival,
and returned them to sender. Legal books, thus, obstructing access
to courts by denying timely legal information to appeal fraudulent criminal case,

197

Oct 7, 2005 regular grievance became # 19322 illegally ruled on by Merson or Mc Creanor, as a 'request' when it was NO such thing. This excuse has been used on wards here at Delaware Correctional Center to obstruct justice by them, to begile, frustrate, or anger wards to attain proper relief.

This grievance was also wrongfully ruled a duplicate grievance of 18612, when it is NOT. And thus also showing illegal condition has not yet been corrected from 18612 admission.

Grievance chair allegedly, per report, did not send this grievance for investigation to Havel until after Oct 27, 2005, 20 days later for an instant forwarding.

Havel denies having any mail for me, on Nov 21, 2005 Havel denies, for the mail being sought. Thus, someone at that mailroom caused illegal seizure of legal mail. No accountability by needed policy + procedure.

Appeals of 18612 and 19322 sent to DOC Grievances Administrator without reply to-date.

Legal Claim: These Defendants violate First Amendment right to:
freedom of speech and communication,
freedom of press and information,
freedom from illegal censorship,
freedom to family integrity for appeals,
and Fourth Amendment of illegal search and seizure,
and denying Fifth Amendment rights to due process to use information for a redress of grievances, denying life, liberty, property, and happiness interests from legal information coming in the mail, and not legally provided by these Custodians and Defendants, and denying Six TH Amendment right for same reasons, and causing cruel and unusual punishment in this ever more modern, civilized, decent society

198

to information for redress of grievances extending illegal prison conditions, and illegal imprisonment atrocity going on in this State,

and violating natural rights to necessities of life in these conditions under these custodians / Defendants for relief,

and violating 10th Amendment by abuse of power not delegated to the States, under color of law action by Defendants, failing to adhere to prohibition by precedence,

and illegal abridgement of privileges, rights, and immunities.

and relief from years of deprivations of catalogs and yet other unknown mail not delivered to me for inherent damages for denial of FIRST Amendment rights,

19.G.O.O., 19.H., 19.N., 19.Q., 19.W., 19.X., 19.Y., 19.AA., 19.AC.,
DOC+        19.AG., 19.AH., 19.AI., 19.AJ., 19.AL.,

*Claims 6 - Prison Grievance System Violations*

Brady, Taylor, Howard, Talley, Snyder, Carroll, Meson, McCreanor, continue
to obstruct justice, due process and equal access to the laws and the courts
by not following grievance procedures written, nor cause their
purposes for legal, proper, ethical relief.

Violations by denying grievance contrary to law; denying timely, equal,
effective, meaningful, capable, and adequate access to the administrative
procedures exhaustion required for legal access to the courts.

Timely access to courts and relief denied by unprofessional replies, past
proper times, for a proper reply; to beguile and frustrate relief with indefinite
response times, if a response is ever received; laxity in professionalism, responsibility,
accountability, wanting authority but not qualified, causing "mystic legal system",
when custodians fail to represent their wards in the first place;

Equal access to courts for relief is denied as others similarly situated not in
Delaware prisons; this prison problem can be no better in the other Delaware facilities
these custodians are responsible for.    These Defendant deny the quantity, value, quality,
impartial from wrong states of mind for inmates, and an equal system of communication
custodians are responsible for to communicate with to provide proper relief
for their wards in the position of authority they have been temporary given their public
trust to do their duty;

Effective access to courts for relief through a proper, effective grievance system
I am still denied also for a proper outcome;

Meaningful access to courts for relief through a proper, effective grievance system
still denies me, at least, the intent/objectives of our laws by illegal replies,
frustrating, beguiling attempts, actually to deprive legal relief as can be seen by this
Complaint; responses failing to be accurate, legitimate for proper relief.
denying meaningful communication custodian is responsible for;

201

A Capable grievance system is still denied by these Defendants by not causing competent, able communication with me of the issues by misleading replies, or illegal replies for capable relief, and by denying information to communicate as a mentally disabled or as ward's similarly situated.

An adequate grievance system is still denied by these Defendants by not causing legally sufficient relief for a specific requirement; thus causing more problems) the laws are made for to prevent; thus, Defendants continue to run around putting out fires which should have been prevented by custodians doing their job in the first place as enclosed claims show.

The indifferent recklessness to an effective grievance system shows Defendants illegal state of mind, and duty. The thoughtless consequences, unjustifiable and legal risk of harm fails to be prevented, but caused by these Defendants, and by their deliberate disregard for or indifference to the risks in question; their continuous deliberate indifference grossly deviates from a reasonable, professional conduct; Defendants conduct continued to put me under reckless endangerment, and surely others who have not been able to communicate this to a competent court, having put me at risk of death or serious injury as per Complaint.

Defendants not caring about the consequences of their actions in grievance replies or procedures, and indifferent to law, intend to cause ill-will as done to me, and others. The grave risk I have been under is even known by laymen as myself.

The futile use of this grievance system by these Defendants only bureaucratically denies the relief. The few times relief was upheld, it was not enforced to be provided.

The institutional abuse, neglect, exploitation, and discrimination is obviously here to stay if no legal action is brought, because of no checks and balance system in Delaware yet, requiring this Court to cause all federal agencies to investigate Delaware facilities where wards are.

Two reasons why statute of limitations can not apply to earlier grievances:
First, because I was prevented from asserting these and other claims legally, in a timely, equal, effective, meaningful, capable, adequate, and meritorious manner by these Defendants continues wrongful conduct since Dec 1, 1999 to present. Second, Defendants caused extraordinary circumstances: ① obstructions, ② denials, ③ disabilities, ④ inability, were/ are beyond My control making it impossible to file all claims, and defenses in other cases, legally; on time, equally, effectively, meaningfully, capably, adequately, and meritoriously. All actual legal injuries.

These Defendants violate law by misleading Wards about 7 day rule. It does not automatically cause denial of legal right if grievance was denied. Actions like this has frustrated claims only to continue to deny them by these Defendants, and Wards of State, as I, continue to fester in damaging conditions due to deliberate indifference.

Failures to legally care for Wards, breach of duty, official oppression, abuse of authority, abuse of process also by these Defendants.

State employed mediators at the Delaware Center for Justice, upon info and belief, continue to fail to do their duty, or did, to insure State employees legal conduct grievances by policy and procedure, and that proper relief is granted.

Grievance committee inmates cannot be legal and vote their conscience due to intimidating and historical retaliatory conduct by state employees on committee, thus oppressed and made pawns of State to obstruct proper justice.

Out of all the grievances I had ever filed, only two received a hearing, no informal resolution ever for a regular, non-medical grievance. Non security staff members present were non cooperative to process.

203

Inmates on board not trained of laws involved, gossip rules the roost to obstruct justice. Emergency grievances not handled by policy in 24 hours,

<u>Legal Claim</u>: These Defendants, at least, violate all Constitutional rights below because they fail to uphold the laws of the land expressed in this <u>Complaint</u>, by denials therefor, abusing authority under color of law; denying a legal redress of grievances system, upheld, enforced when it is ineffective, causing abuse of courts when Defendants fail to uphold basic, precedence laws in the first place; denying due process of law under the Fifth Amendment and its interests; causing continues cruel + unusual punishment in an ever more modern, civilized, decent society;

causing Nineth Amendment violations with other Amendments to natural rights;

causing Tenth Amendment violations by abuse of power not delegated to the States, and ignoring prohibitions of precedents deliberately with invidious discriminatory animus,

causing Fourteenth Amendment violations by abridging or ignoring privileges, rights, and/or immunities.


PRELIMINARY AND PERMANENT INJUNCTIONS NEEDED since denying due process and equal protection of laws still today.

204

This list shows the types of violation these Defendants performed, and continue to fail to correct. No certified system exists from a Court for this Dept as far as I know.

<u>Dept of Corrections Policies Standard Operating Procedure 4.4</u>

| <u>Policy Element Violation No.</u> | <u>Policy</u> |

1     Defendant(s) reply or no reply fails to afford required "meaningful remedy" by law.

2.     Maximum period from (apparent illegal policy) initial grievance receipt and final appeal response exceeded 180 days. (Administrative law is 30 working days max per level; we have 3 levels).

3.     Chair fails to provide a copy of the response (at each level) to grievant within 7 days calendar of receipt of said response. (This policy violates due process because Grievant does not know when chair receives response sometimes, and back-dating is apparent by chair or designee).

4.     Committee (with grievant) did NOT convene in 30 days of receipt of grievance to examine issue, document investigation (details), hear testimony, make recommendation (of proper issue, not to mislead).

5.     Chair did not forward recommendation to Warden Level II.

6.     Warden responds in 10 days for distribution did not occur.

7.     Appeals to level III, but no reply.

8.     Outside review was never recommended (in past 7 years) for interpretation of law or expansion (correction) of policy.

9.     Administrative Procedure Acts, Laws not followed.

My Grievance Reply's Received Summary
For pattern and practice, systemic, systematic, deliberate indifference
to legal rights and relief.  As of about April 2007


Dept. of Corrections
Level

| | | |
|---|---|---|
| I | 34% | had No Reply To My Grievances |
| II | 82% | had No Reply " |
| III | 16% | had No Reply " |
| I | 39% | Omitted Problem " |
| II | 74% | " " |
| III | 35% | " " |
| I | 8% | Ordered Relief " |
| II | 2% | " " |
| III | 19% | " " |
| I | 91% | Did Not Order Relief ~~~~ For All Issues |
| II | 96% | " |
| III | 94% | " |
| I | 3% | Received Relief, in a legal & medical manner |
| II | 0% | " |
| III | 0% | " |
| I | 97% | Did not receive Relief, in a legal and medical manner |
| II | 100% | " |
| III | 100% | " |

19.F., 19.G., 19.H., 19.I., 19.N., 19.Q., 19.R., 19.W., 19.X., 19.Y., 19.AC.,
19.AG., 19.AH., 19.AI., 19.AJ., 19.AL., 19.AM., 19.AN.,
19.AR.

Claims ⬛, Lack of Nutrition Causing Health Degradation

Regular grievance dated and put in grievance book on July 27, 2006 due to starvation diet and lack of nutrition diet put into punishment on me, as a ward, by kitchen staff and Warden.   I, and probably state prison wide, were not sentenced to a forced, degrading food diet of harmful processed . and cheapest food available in Delaware, which is contrary to professional standard.

McCreanor falsly replies to this grievance about one sample day in question where where a planned power outage occured.   He tryed to allege it was an emergency power outage and no prior preparation could be made.   Thus, again, McCreanor caught red handed in attempt to obstruct justice to obtain proper relief from a condition of a starvation diet which was totally unnecessary. On this sample day, only about ½ the food amount was served.   Food portions are almost never per proper professional dietary guidelines.   Kitchen staff and Warden fail to prepare, as duty, for even a planned power outage. What will they try to get away with in a real emergency ? Mismanagement and no risk management, and no prevention rules the roost.

Kitchen Staff ( X X V I ) continue to serve illegally small portions of
fruit and vegetables, for years, under 4 oz, usually 2 to 3, rather then
the minimum dietary and professional guideline of 6 oz's.

Minimum serving requirements are set by a nutritionist on paper, but actual servings that end up on a tray are less.

Apparently, supervisors Taylor, Howard, Snyder, Carroll are rewarding subordinates, in someway, to serve less food, cheaper food, continuously over the years, or it is all going home with kitchen staff and coworkers.

Processed foods, non-organic, non-kosher foods have disease causers, toxin, poison, antibiotic, growth hormone, steroid filled,

dangerous cancer causers, diabetes, obesity, other diseases.

Failure to provide healthy meals, organic, fresh, forces me also in degenerative conditions to earlier death caused by custodians, placing my health at risk. Health care costs more in the long run to taxpayers, and is not in the public interest. Forcing me to eat in order not to starve excessive carbohydrates, fluffers, fillers, white flower products is cruel and unusual punishment in this ever more modern, civilized, and decent society.

Lack of kosher meals to me, or healthy meals deprives me of life, liberty, property, and happiness interests, and equal protection to be free from physical and mental disease caused by my custodians / Defendants Taylor, Howard, Snyder, Carroll, and others to be named.

Forced eating time for a meal in 10 minutes or less causes obesity. Need 20 minutes atleast, Carroll deliberately indifferent. since custom started.

Legal Claims: These Defendants violate right to effective grievance system for exhaustion requirement; causing cruel and unusual punishment in an ever more modern, civilized, decent society by slow degredation of body and mind due to lack of good, nondenerative food; violate Ninth Amendment to natural rights with these other Amendments; violating Tenth Amendment by abusing powers not delegated to them, and were prohibited by precedence; and violate 14th Amendment for due process and equal protection of the laws.

Denial of "Good" health as required by State law, and professional standard.

Defendant(s) to be named fail to follow following statutory rights.

Eating nutritional food is a daily major life activity requiring prevention from becoming a disability, as proper time to eat it; prevent Disability Act need.

208

Claim 19AN

Delaware State Government
Title 24. Professions and Occupations
Chapter 38. Dietitian / Nutritionist Certification Act

Defendants (+DOE's XXXI Defendant 61 ) in conspiracy and corruption
with Bredy, Taylor, Howard, Snyder, Carroll, Contractors Representatives
fail to integrate and apply the principals derived from the
sciences of food, nutrition, biochemistry, physiology and management
and behavioral sciences as an integral part of health care delivery
to achieve and maintain a person's health throughout the life cycle.
They fail to be preventive and in response to illness, injury and
conditions already described.

These Defendants continue to fail to provide the scope of services utilized in
the delivery of preventive nutrition services and nutrition therapy. They fail to
involve an assessment of Mr. Hartmann's specific nutritional needs and
the development and implementation of an intervention plan, updated atleast
annually or as needed. Since no intervention plan was ever done, Mr.
Hartmann was wrongfully, illegally, and methically deprived of nutrition education,
all available of relative condition, injury, or illness, counseling, adminis-
tration and monitoring of specialized nutrition support and referals for
additional services.

Mr. Hartmann was denied preventive nutrition services for specific nutritional
interventions to PROMOTE health and PREVENT disease involving all his.
These Defendants nature of criminal conduct is substantially, directly related to
Mr. Hartmann's fitness and health, life, liberty, property, happiness interests.
Defendants criminal conduct is substantially related, directly bearing on their
unfitness and inability to do their duties and responsibilities necessarily

209

related to the provision of nutrition / dietetics services.

Thus, Dieticians (J. Doe's _____ ) have violated this Chapter in the following ways:

(1) They engaged in illegal, incompetent conduct in the provision of nutrition services;

(2) Has knowingly engaged in an act of consumer fraud and deception by representing themselves as duly licenced / certified and be conducting themselves by law and ethics.

(3) They engaged in restraint of competition by maintaining their duty position illegally under illegal conduct.

(4) They engaged in price-fixing activities by omitting legally and ethically required services, to Mr. Hartmann since Dec 1999, as for all violations.

(5) They continue to violate the Code of Ethics as established by their Committee;

(6) They have violated lawful provisions of this chapter, and lawful rules and regulations established hereunder;

210

8, 19.A., 19.E., 19.F., 19.G., 19.H., 19.J., 19.K., 19.N., 19.Q., 19.R., 19.U., 19.V., 19.W., 19.X., 19.Y., 19.AG., 19.AH., 19.AI., 19.AJ., 19.AL., 19.AM.,

Claim (20), Illegal Protective Custody Threats To Ward Victims,    19.AR.

and Illegal Conditions in Protective Custody.

Regular grievance 23457 dated and put in grievance box on Jan 22, 2006 to cease and desist threatening ward victimized by another ward into protective custody as only alternative, instead of moving violent ward to higher security classification, encourages + reinforces victimization, contrary to custodians duty.   Other less restrictive options are available, but are not used as required by DOC Rules of Conduct By Staff, and common sense to behavior modification.

Snyder, Carroll fail to provide ward rights, upon entry of prison, to be free from insecure conditions, and how to obtain relief.

Snyder, Carroll fail to house mentally disabled, me, under American Disabilities Act rights to proper accommodations of a non-degrading environment, in a safe environment from violent people.

Classification fails to do its duty to properly house me with compatible allies for a legally organized and harmonious environment.

Classification (JOSE Stevenson) fails to obtain a proper mental health evaluation before classifying to a building, tier, and celly, in illegal double-celling and dorm overcrowded conditions, by law, upon entry of each inmate to facility.

McCreanor illegally replies saying that issue is NOT grievable, when any illegal condition is grievable, or appealable, in a prison.

Snyder and Carroll fail to cause proper detainee and convicted ward prison orientation, and ward rights and privileges, and how to attain relief for any illegal condition.

211

Classification supervisor Stevenson fails to do her duty to use a legal mental health evaluation to assign wards to proper conditions.

McCreanor is part of security staff who should have fixed custom, illegally adopted, of threatening victim ward, me, as one of class, with protective custody as only option besides staying among violent wards, as cruel and unusual punishment, showing systemic deliberate indifference.

Other competently run prisons have a transfer request form which is approved if their is no legal problem, allowing ward to attempt to be housed among a 'harmonious' environment.

These custodians cause violent conditions to help justify more secure housing units just built, putting nonviolent people or mentally disabled as myself in their, as a constant threat 24/7/365 causing me unnecessary damages due to custodians unprofessional conduct, conflict of interest, etc.

These custodians conduct added to my degenerative health damages.

<u>Legal Claims</u>:
These Defendants including Brady, Taylor, Howard, Talley as moving forces to illegal prison conditions, denying legal redress of grievances;

violating <u>Fourth</u> Amendment by illegal search and seizure of person, wards papers, and effects to move ward to protective custody building, contrary to Code of Conduct for Delaware Bureau of Prisons to use least restrictive means to attain behavior modification on attackers, not on victim(s);

denying <u>Fifth</u> Amendment due process denying proper grievance procedure for life, liberty, property interests;

causing <u>Eighth</u> Amendment violation due to cruel & unusual punishment in an ever <u>more</u> modern, decent, civilized society upon victims of abuse by other inmate(s), without mental health clearance,

into more punishing conditions, reinforcing crime upon abused inmates as I was, and not causing any punishment upon attackers,

— violating powers not delegated to the States, and were prohibited to the States by precedence;

— violating due process and equal protection of the laws by denial thereof.

19.E., 19.H., 19.J., 19.L., 19.N., 19.Q., 19.W., 19.X., 19.Y., 19.AA., 19.AC.,
19.AG., 19.AH., 19.AI., 19.AJ., 19.AL., 19.AM., 19.AR.,

Claims: Denial to Right of Proper, Legal Access to Courts
by Denying legal materials Possession, and Constant
Threats Thereof as a Sign of Conflict of Interest By
Custodians

See prior motion filed in this court on Court Docket.

Prison rule limiting legal materials, no matter how many active and contemplated cases which have legal protection, to one cardboard Box 11"x15".

Need for maintaining legal materials in my possession, as one of inmate class, is especially needed here at Delaware Correctional Center, in this excessively handicapping, disabling, abusive, neglectful, exploitative, and discriminatory environment imposed by these Defendants Brady, Taylor, Howard, Snyder, Carroll, Hazzard, Henry, and other correctional officers, almostly weekly threatening legal injury by illegal seizure (4th Amendment) of legal materials (1st, 5th, 6th, 9th, 8th, 9th, 13th, 14th Amendment violations), for 7 years now, and only now was I able to bring this claim to court due to custodians/Defendants conduct.

Illegal denial of: freedom of speech to courts, and freedom of communication to courts, government officials; freedom of press and information in legal materials censorship; redress of grievances; by threats of seizure to cause me, as one of class, to be insecure in person due to threats of punishment; insecure in my house privacy, insecure in my papers and effects; due process of law for life, liberty, and property interests; environment and conditions to be free from cruel and unusual punishment in an ever more modern, civilized, decent society with educated, competent, professional custodians, supervised by same skills; natural rights to speak and be able to communicate, to redress one's grievances, and the other Amendments natural right; freedom from involuntary servitude unless duly convicted to denial of certain Constitutional, Federal, and/or State rights, privileges, or immunities;

where these custodians Brady, Taylor, Howard, Snyder, Carroll, require my purchase of necessities of life to timely, equal, effective, meaningful, capable, and adequate legal materials to not be obstructed access to courts; nor abridgement of privileges, nor denial of due process and equal protection of the laws, for life, liberty, property, and happiness interests, in a humane society, for the betterment of our State and Nation.

Prison officials Brady, Taylor, Howard, Snyder, Talley, Carroll, Hazzard, Henry, attest fail to be controlled and supervised by law, and illegally implement prison rules.

American Disabilities Act requires 'accommodations' and entitlements for disabled like myself to be provided by custodians, but continue to be denied these.

Legal Claims: above.

216

## FACTS / EXHAUSTION / LEGAL CLAIMS

Each claim occurred at the Delaware Correctional Center and/or through the Department of Corrections Office(s) unless otherwise shown. 19AJ., 19.AL, 19.AR. 19.G., 19.H., 19.I., 19.J., 19.L., 19.N., 19.Q., 19.X., 19.V., 19.AK., 19.AG., 19.AH., 19.AI.,

Claim(s) __, Drinking Water Safety; Regular Grievances dated 8/11/2000 and 6/21/01 were denied by Merson illegally vouching, directing, and taking responsibility as an unqualified biologist and unlicensed medical specialist for the harm caused or risk thereof by tainted drinking water Mr. Hartmann, atleast, had to use even at times when water was coming out of the faucets brown at unannounced times of backwashing pipes on information and belief, and unannounced times when water was safe to drink again.

Merson fails to have her supervisor approve her conduct on 8/11/2000 grievance reply taking legal responsibility for all damages of legal, emotional, mental and physical nature.

Merson failed to follow inmate patients rights to be informed of all possible affecting circumstance from water possibly affecting health or safety of Mr. Hartmann. Chlorine, for one, affects, his thyroid disease.

Merson obstruct all legal rights as consumer Hartmann, and one of class, of the Federal Water Safety Act. And Taylor also, and Talley.

Merson and Burris violated pretrial detainees rights for safe drinking water under Water Safety Act for Mr. Hartmann, and one of class, from Dec 1, 1999 to March 31, 2001; a denial of due process and equal protection of the laws for any pretrial detainee status.

Burris directed 6/21/01 regular grievance illegally as supervisor by inaction causing harm to Mr. Hartmann, et.al., or risk of harm from a harmful water supply, and forcing Mr. Hartmann to drink risky water in extreme summer heat conditions and other times of the year for bodily requirements under fear of expedited actual death to him.

Burris was moving face to deny legal rights to be an informed patient and Ward of State to be properly involved in ones health and medical needs. Keeping Mr. Hartmann under official oppression, abuse of authority, abuse of process, for starters, adding to thyroid disease damage, and Water Safety Act requirements.

Pierce, Maloney, and Howard ignore plea for proper drinking water in letter to them dated Feb 10, 2006; stamped received by Pierce on Feb. 16, 2006, due to thyroid disease and other risks to health.

Talley and Taylor fails to post properly so all Wards of State can read in a timely manner, without unnecessary ~~and~~ obstructions, the Reports and Assessments per Act since 1999, exposing Wards of State to an excessive risk of health and bodily degrading conditions.

These Defendants obstruct the following Constitutional right: redress of grievances by proper authority; to be secure in person; abridge privileges; due process and equal protection of the laws; cruel and unusual punishment in an ever more modern, civilized, and decent society in the information age.

218

## Claims 8, 19: Cell Searches and Seizure

Cell searches in E building by Sgt's Creasy and Wallace, and a search in bathroom are alleged to be unconstitutional since they singled Me out due to malicious inmates, uncredible nor reliable, acting as informants and Sgt's failing to determine credibility and reliability, and Myself having No sufficient history of actual security violations since I am Not that type, but was inherently treated suspect because of Sgt's insidious discrimination towards Me; so under pretext came to harass, abuse, neglect, exploit Me, unaware nor oriented towards My legal rights to allow abuse, etc. by custodians with any malicious nature or evil spirit.

Sgt Crease's illegal taking of games one time, and magazines another time, were with malicious nature since I was the only one singled out when He came straight to My cell on the tier, and skipped all others, for civil rights violations.

Sgt Crease's maliciousness can also be seen by His search and seizure done to Me, and Not to everyone else, also violating 4th and 5th Amendment rights just discovered and never oriented to prevent abuse as this, for supervisory liability for failures to orient at all.

I was not afforded Any protection against unjustified appropriation of My private property, and most meticulous search through each one of my papers, boxes, containers, and alike which took about 1 hour by 2 guards, one being Crease.

Allowed private property list by inmates in minimum security illegally adopted, contrary to Administrative Procedure Acts and professional standards to cause no risk of damage, by Brady, Taylor, Howard, Talley, Snyder, Carroll.

219

All this occurred about 2002 to 2003, or 2004-2005, in violation of civil rights.

Blanket searches without a reasonable and particular suspicion, as all ~~mine~~ were in about 16 months in pretrial, Dec), 1999 to May 2001, violated My detainee status due process rights; by Defendants to be named.

<u>Legal Elements for the Claims in 19</u>

Defendants <u>Brady</u>, <u>Taylor</u>, <u>Howard</u>, <u>Talley</u>, <u>Snyder</u>, <u>Caroll</u>, and others to be named,

failed to enforce the professional standards,

as moving forces, and deliberately indifferent to My, and as one of classes plight, My family rights, and as one of that class, a `protected class', by their illegal conduct of omissions to prevent damages, causing them, professional Associations know of,

and Defendants as experts know of, or should know of, by not adhering to them since Dec 1, 1999 to present, here at the Delaware Correctional Center and Dept of Corrections for Delawareans, and probably the other facilities in Delaware, violating these federal civil rights to adequate and sufficient professional standards shown in this <u>Amendment</u> and <u>Complaint</u>, acting under color of law, fraudulently and deceitfully ~~~~~~ failing to properly due their duty,

by continues, pattern, practice, systemic, systematic, conspiracy, and corruption as organized crime in State government,

Failure to have policy and procedure, below, may mean failure to enforce it, if they exist.

Depart of Justice Federal Standards For
Prisons and Jails
Effective December 16, 1980.

These standards are concerns that prisons be operated in a manner that is decent (professional; conforming to standards of taste, propriety, or quality), humane (marked by compassion, sympathy, or consideration of others), and safe (free from harm or risk; secure from danger or loss; reliable; protected; prevention) from the American Correctional Association, Commission on Accreditation for Corrections to be realistic and forward looking, supported by many corrections practitioners. Also from the American Bar Association, American Medical Association, American Public Health Association, and the American Institute of Architects, compiled by the Law Enforcement Assistance Administration, Office of Justice Assistance, Research, and Statistics. State Defendants fail to prevent these risks.

I, and as one of classes, continue to be denied these following professional standards, and would be locked up 24-7-365 under these custodians if they could get away with it:

Claim 2,3,6,8 19: Entitlement to a safe and healthy place in which to live. Including protection from personal injury, disease, property damage, and personal abuse or harassment. (1.01)

Claim 8, 19: No discrimination based on handicap, disability, and equality on proper classification. (1.02)

Claim 12,13 19: Access to appropriate law library and to supplies and services related to legal matters. If unable to make

`meaningful' use of the law library alone, the facility provides additional assistance necessary for 'effective' access. (1.05)

(Meaningful means what is conveyed, or intended to be ; not ambiguous as the acren is/was, and as <u>Civil Complaint</u> was taken ; capable of being understood only in one way ; capable is able, with capacity, power, competent ; effective means for a consequence or outcome, as not yet achieved in <u>Civil Complaint</u> requiring appoint- ment of counsel ; <u>Complaint</u> was not yet 'adequately' received because it has <u>not</u> yet attained specific requirements]

Claim 19: Family Integrity ; and for policies and procedures to <u>ensure</u> right to practice religion. No inmate is subject to reprisal for failure to participate (or in the opposite in this case, be denied to religious participation by custodians.) (1.08)

<u>Claim 19. AA.</u> : Each facility develops and implements policies and procedures to ensure the right of convicted inmates to refuse to participate in activities and programs, without penalty, except for 'programs' mandated as part of sentence. (1.10)

<u>Claim 19</u> : A written and followed prison grievance procedure with the following minimal elements : (1) an advisory role for inmates and staff in the formulation, implementation and general policy operation of the system, (3) (only listing elements not done here at Delaware Dept. of Corrections) provision for written response within a 'prescribed' reasonable time limit (at each step), with special provisions for responding to emergencies (and failures to respond), (8) 'independent review of the disposition of grievances, including alleged reprisals by anyone. (Independent Chair not on Dept staff), (effective relief). (1.11)

<u>Claim 19 B, 8</u>: (Bathrooms, showers, necessities of life). Policies and procedures to ensure the inmates are allowed to exercise freedom in personal grooming and appearance (not only at yard times)(due to overcrowding and half sized required bathrooms and showers); subject only to actual safety, security, and hygiene. (1.12)

<u>Claims 2, 8, 19</u>: Policies and procedures to ensure the right of inmates to communicate or correspond with persons and organizations. (unobstructed for any non-violent and non-pornographic info, medical, health info, necessities of life like career, family integrity, religion, life, liberty, property, and happiness interests, electronically in a modern and civilized society, in a timely-daily manner, free for indigent, accessible and useable by any inmate). (1.13)

<u>Claims 8, 19</u>: Search and Seizure to ensure that unnecessary force and embarrassment or indignity (not being honored, worthy, or esteemed)(formal reserve of manner, language, or appearance) to the individual are avoided (to keep away from; shun; to prevent the occurrence of). (to avoid arbitrariness, capriciousness, lack of credibility in accusation causing search and seizure by ill-willed, jealousness, or alike). (1.07)

<u>Claims 8, 19</u>: PHYSICAL PLANT — Single cells of at least 80 sq ft in long term institutions, and only one inmate per cell. Detention facilities 70 sq. ft. if required to spend more then 10 hours per day there. Detention facilities no more then 16 inmates, with minimum 60 sq ft of floor space per inmate in the sleeping area, excluding activity space. (Long term institution are here, under there Defendants and entity's, 60 sq ft for two inmates per cell. And 78% lock-in time for minimum and medium security inmates who should sufficiently more freedom for

health, rehabilitation, socialization, and reentry preparation which should be allowed full-time, weekday opportunities for at least self-improvement, and sufficient programming and activities for each inmate to learn to become a productive member of society. ie - what services can certain qualified inmates do for government jobs that need doing? A government employee can be assigned to one or more inmates to crop out work the inmate can do, via statemail, internet, or whatever, to return to government employee for approval and disposition. Volunteer and non-profit organization could surely use help also. If custodians don't have sufficient good-will, there will be no way.) (2.0)

Claim 19,8: Classification committee should 'carefully' evaluate each inmate before assignment to dorm or cell, to ensure protection. (2.?)

Claim 8,19: Separate day room for each cell block (tier) or detention room cluster. The day space is of a regular and functional configuration and NOT a corridor in front of the cells. (As here in Delaware Correctional Center and probably Dept wide). (2.06)

### Existing and New Facilities

Claim 8,19: Rated capacity should be consistent with standards relating to square footage, sanitary fixtures, and other relevant aspects of physical plant. (2.07)

Claim 19.C.: Heating and ventilation systems to maintain humane (marked by compassion, sympathy, or consideration of others) comfort in accordance with The Guide Book for The American Society of Heating, Refrigeration, and air conditioning Engineers. (2.08)

Claim 8,19: Acoustics that ensure noise levels which do not interfere with normal human activities daytime range of 65-70 decibels not to be

exceeded, and 45 decibels at night for residential areas. (2.08)

Claim 19 $^{G, H, L, N, K, AG, AH}$: Drinking fountains (with cold water) accessible to all inmates (without having to ask a guard) in numbers specified by nationally recommended applicable codes, including Basic Building Code, Standard Building Code, Uniform Building Code, and natural light.

Claim 19G $^{H, L, N, AG, AH, 4L, K}$: Each inmate has a bed, desk or table, shelf, hooks or closet space, chair or stool in the room, cell or dorm. (2.08).

Claim 8, 19: Dorms minimum space of 60 sq ft of floor space per inmate, living units, excluding activity space. Living conditions should be enhanced by placing privacy partitions between beds and by increasing space between beds as much as possible. (8th Amendment decency right also) (2.13).

Claim 19: Food in HIGH QUALITY meals. (2.16)

Claim 12, 19: Adequate (equal to a specific requirement; unobstructed access to information, libraries, courts) space for conducting programs. (2.20).

Claim 2, 3, 6, $^{8, 12, 19}$: Facility provides without charge those articles necessary for maintaining proper (very satisfactory; excellent; correct; meet) personal hygiene (conditions or practices conducive to health (well-being, sound physical or mental condition; healthy means enjoying or typical of good health)) (good means conforming to a standard (= professional standard); favorable, fertile, sound, wholesome, agreeable, considerable, ample, full, kind, competent, benefit, welfare.) This includes comb, shaving (supplies), (etc.)

## FOOD SERVICES

Claim 2, 19: All meals meet or exceed dietary allowances by

National Academy of Sciences Standards. (4.02).

Claim 2, 19: All meals planned in advance to assure proper food flavor, texture, temperature, appearance, and palatability. Substitution should be of equal nutritional value. (4.03).

Claim 2, 19: Therapeutic diets available upon medical authorization prescribed by physician. (4.05) (Physician says he cannot prescribe what I need since it is not available and done here at Delaware Correctional Center) (Nutritionist never seen after Apr 11, 2006 referral to date)

Claim 2, 8, 19: Accurate records made of meals served. (4.07) (To be see in Discovery).

Claim 19: Policy and procedure preclude food as reward or disciplinary measure. (4.09) (Food taken by some custodians as disciplinary measure) (or maliciousness) (Lt Setterfield maliciousness, and threats by Lt Sales, and done by other custodians)

Claim 19: Meals are served under conditions that minimize regimentation, and space is provided for group dining. Where possible, dining room hours should be "Open" to eliminate traditional waiting lines and required seating by housing units. (4.10).

(Food Service workers are in good health, free from communicable disease (and open infected wounds.) (4.15).

## 5. HEALTH CARE SERVICES

Claims 2, 3, 6, 8, 19: The designated responsible physician is under No restrictions imposed by the facility (or their employer) administration regarding medical decisions. (5.02)

<u>Claims 2, 3, 6, 8, 19:</u> Quarterly report to chief executive officer (State and contractor) on health delivery system with an annual statistical summary; includes effectiveness of medical care system, substandard environmental health factors, changes since last report, recommended changes, stats on number operations - referals - ambulance service - etc. (5.03) (to be seen in Discovery)

<u>Claims 2, 3, 6, 8, 19:</u> There are written standard operating procedures approved by the health authority (Federal, State, Association, and alike) for atleast the following: screening, health appraisal data, non-emergency services, emergency medical and dental services (emergency means an unforeseen event or condition requiring prompt action) (requiring means necessary or essential, as per medical standards and ethics like - Do No Harm), deciding what is an emergency nature of an illness or injury, dental screening, hygiene, exam, treatment, medical and dental prosthesis, first aid, notification of next of kin for serious illness, injury, chronic care, convalescent care, medical preventive maintenance, screening and referral and care of mentally ill and re-tarded, special medical programs, detoxification procedures, delousing procedure, pharmaceuticals, periodic lab and medical re-exams. (5.04).

<u>Claims 2, 3, 6, 8, 19:</u> State licensing, certification, and registration requirements. (continued adherance to that duty). (5.06).

<u>Claims 2, 3, 6, 8, 19:</u> Job Descriptions approved by (state, federal) health authority. (5.07).

<u>Claims 2, 3, 6, 8, 19:</u> Standing Doctors Orders and verse direct orders. (5.08).

<u>Claims 2, 3, 6, 8, 19:</u> Medical services are in an adequate space in

private, adequate staff, equipment, supplies, materials as determined by health authority, are provided for the primary health care delivery. (5.09)

Claims 2, 3, 6, 8, 19 : There is a manual of nursing care procedures. (properly, by professional standards).

Claim _____ : If a hospital exists (as in Delaware Correctional Center) requires legal requirements for a license as a general hospital in the State. (5.11).

Claims 2, 3, 19 : 24 hour emergency medical and dental care. (5.12)

Claims 2, 3, 19 : If 24 hour emergency care not provided, written plan approved by health authorities outlining : (1) emergency evacuation of (any number) inmates from the facility, (2) personnel responsible for each shift being fully informed. (and able to follow written policies and procedures) (5.12)

Claims 2, 3, 19 : First aid Kits are on hand in all facilities Health appraisal data collection is completed for each inmate within 14 days after admission to facility, including review of intake screening (approved by authorities, as all other proper policies and procedures), additional data to complete medical, immunization, mental health history. Taking of lab and diagnostic tests to detect (any) communicable diseases including V.D., T.B., other tests and exams with appropriate comments about medical and dental status. (Automatic dental appointments as physicals) Medical status may dictate housing and activity assignments. (First timers in such a facility, as other special classes, require

special housing to cause no damages to them /us, or others)

Claims 2, 3, 8, 19: Written policy and procedure require the inmates medical complaints are processed, reviewed and responded to DAILY by health trained personnel according to priority of need. In all cases, inmates receive treatment for medical problems promptly by the appropriate level of health personnel. No inmate or correctional officer (or government employee) inhibits or delays an inmate's access to medical services or interferes with medical treatment. (5, 19).

Claims 2, 19: Sick call is available to each inmate at a minimum of 4x per week. Sick call is for non-emergency illness or injury.

Claim 2, 19: Chronic and convalescent care provided to inmates (professionally). Chronic is medical service over a long period of time. Convalescent care is medical service to assist recovery from illness or injury. (Not untrained, unlicensed, inmate laden with expectation to give free convalescent care). (5.25) ( I was expected, +did have to do my own convalescent care through severe agony, pain and suffering during spinal cord injuries).

Claims 2, 3, 6, 8, 17: Written policy and procedure require that medical preventive maintenance is provided to inmates. (so far denied by Defendants wrongfully). Includes health information (proper and full disclosure with Patients Bill of Rights), medical services to take advance measures against disease and instruction in self care for chronic conditions. (None done for Me, and class members generally).

231

(5.26).

## Mental Health

<u>Claims 8, 19:</u> Written policy and procedure require that (proper) screening and referral for (proper) care are provided to mentally ill or retarded inmates whose adaptation to the correctional environment is significantly impaired. (A Mine). All staff with custodial and program responsibility are trained regarding recognition of symptoms of mentally ill and retarded. (5.29). (Defendants failed to recognize Mine, Mental Health covered-up, Defendants caused my mental disabilities while imprisoned)

<u>Claims 8, 19:</u> Special programs exist for (1) disabled, handicapped and chronically ill inmates, (2) inmates with severe emotional disturbances (Me also), ... A written individual treatment plan is approved by a physician or qualified mental health professional after "appropriate" multidisciplinary consultation and in accordance with written policy. Plan includes directions to medical and non-medical personnel regarding their roles in care, supervision, and habilitation. (5.30) (.

<u>Claim 8, 19:</u> Where there are separate living units for inmates with severe emotional disturbances, (or not) mental illness or retardation, an interdisciplinary treatment and custody team is assigned to those living units (or inmates). (5.31) (I have no treatment besides a drug, and no custody team that is properly trained, controlled, and supervised since Dec, 1999 under Delaware custody)

<u>Claims 2, 3, 6, 8, 19:</u> Written policy and procedure require that inmates

232

with acute or chronic illnesses (including psychiatric) who require health care beyond the resources available to this facility are transferred or committed to a facility where proper conditions are available. (5.32).

Claims 2, 19: Standing operating procedure (written policies and procedures) for pharmaceuticals dispensing and administrative or distribution. (5.34).

Claims 2, 19: Health records - all findings recorded including notations concerning psychological, dental, (medical, optometry,) and ~~consultive~~ consultative services. (5.38)

Claims 2, 19: Health record is NOT in any way part of confinement record. Dr. - patient confidences. (5.39)

Claims 2,[3,6,8] 19: "Informed" consent of inmates is required for all exams, treatments and medical procedures. (5.44).

Claims 2,3,6,8, 19: Written policy and procedure specify the conditions for periodic lab and medical re-exams for inmates. (including dental, optometry, mental health) (5.45).

Claims 2, 19: All medications to be in form and at the times prescribed. (5.46).

Claims 2, 19: Therapeutic medical (and health) treatment (prevention, diagnosis) specifically designed to benefit an individual inmate ▮ (should be provided) is permitted provided that (1) the treatment is approved as medically sound and in conformance with medically accepted standards by a committee of outside medical consultants, and (2) the inmate gives full voluntary and informed consent after being (fully) informed of the treatment's likely effects, the likelihood and degree

233

of improvement and/or remission, the hazards of the treatment, the reasonable alternatives to the treatment (including alternative medicine or natural healing methods), and the inmate's ability to withdraw from the treatment without penalty at any time. (5, 51). (Or provide a complete printout, probably already created by some on the internet to save medical staff time) (Has not been done).

## Security and Control

Claims 19 : Searches are conducted no more frequently than necessary (inevitable, inescapable, certain) to control contraband (defined by rules legally adopted by Administrative Procedure Acts, Administrative Law and Procedure) (probably not done in this Case by Defendants), or to recover missing or stolen property. (My searches in E building by Sgt Wallace and Sgt Creene were malicious, invidious/discriminatory, harassing, abusive, exploitative to Me probably instigated by jealous, selfish inmates who easily manipulated Sgts.) (Searches were NOT necessary). Whenever searches are required, staff avoid unnecessary force and strive to preserve dignity and integrity of inmates and their property.

Visual inspections of anal and genital areas, only with reasonable (sound mind, logical, moderate under circumstances, rational) belief (based on facts) that inmate is secreting. (Also NOT done for Me; I never have nor am capable due to My mental illness.)

Searches need to be done by the greatest possible privacy. (Also NOT done at evening program at Visiting Rooms May 2007, in public holding area with all glass windows and about ten guards and

other inmates standing around.) (6.13).

Claims 19:   Receipts provided to inmate whenever property is seized. (6.13) (Not done by Sgt Crease several times while in E Building) (games + magazines taken).

## Supervision of Inmates

Claims 19:   Written policy and procedure prohibit inmates from supervising, controlling, or exerting or assuming any authority over other inmates .  ( Done by Defendants Brady, Taylor, Howard, Talley, Snyder, Carroll since Dec 1, 1999 here at Delaware Correctional Center and probably Dept wide). (Even in mental health classes, inmates are hired to assume authority.)

Claim 2, 19:   On Admission, inmate is issued personal hygiene items without charge.  ( Not properly done here; still have medical damage from that) (8.04).

Claim 2, 19:   Promptly receive orientation manual with facility procedures, programs, rules, regulations, and rights of inmates. ( never received; adds to so many illegal conditions still here). (8.08).

Claims 19:   Social worker / counselor (Ms Herr) should interview all new inmates as part of admission to relieve any anxieties, to assist them with any immediate personal or family problems, and possible diversion programs. ( No organized program, list or alike for first-timers as I was/am.) (which added to My current mental and physical disabilities).

Claims 19:   Written policy and procedure provide a daily program including education and work during reception and orientation program.

235

(8.14) (none provided).

## Classification

Claims 8, 19: No inmate receives more supervision then required and that NO inmate is kept in a more secure status than potential (actual) risk requires. (9.01)( Classification system ineffective here in this Dept of Corrections causing My damages.) ( wrongfully housed among violent inmates and habitual types) ( damaging housing in overt actual security status of buildings wrongfully housed in; building security actually like maximum which many need, but definitely NOT me; classification without actually knowing Me = deliberate indifference.)

Claims 8, 19: Classification manual with all policies and detailed procedures. Manual available to All inmates. (Never oriented on this issue; never seen one). (9.02).

Claims 8, 19: Special needs of inmates identified and addressed through classification process. ie emotional, mental illness suspected, etc. (Never done till I finally got some education in 2006 by myself.) (9.06).

Claims 8, 19: Inmates can request review of their progress and status, and request changes in housing and program assignments; and ongoing process with policies and procedures. (Never oriented to that possibility; housing requests denied.)(9.08).

Claims 19: Receive written reasons for classification review decision. (Not done). (9.09).

Claims 19: Classification appeals process written available to All inmates. (Never oriented to that )( Don't know about it since

236

I got here in Dec 1999. (9.10).

## 10. Inmate Rules and Discipline

<u>Claims 19</u>: Rules prohibit only behavior that can be shown to have a direct, adverse effect on an inmate, or on the good order, or program operations of the facility. (Not shown; rules probably adopted without legal administrative requirements).

## 11. Special Management Inmates

<u>Claims 19</u>: Physical living conditions in administrative segregation units are approximately equivalent to general population. Same general privileges apply. (Had been denied minimum status conditions when wrongfully housed among medium and maximum security level inmates in E, C, and D buildings; No orientation to these inmate rights; caused my damages) (11.07).

<u>Claims 19</u>: Basic personal items allowed unless 'imminent' danger of item destroyed someone, or induce self injury (to many people). (mass punishment is illegal as done limiting personal property to same level as maximum security for minimum and medium status inmates also, except for some commissary, but that is arbitrary and capricious also.) (11.15).

<u>Claims 19</u>: Should be provided writing materials (free if indigent.) (11.15), (and mailing needs). (Non-special management inmates should have better conditions.)

## Mail and Visiting

<u>Claims 19</u>: Can receive softcover books and publications from <u>other</u> than publishers. (ie. churches).

No limit on volume of mail inmate can send or receive, or on length, contents, or source unless to protect public

safety, or institutional security. (books and magazines limited to two is arbitrary and capricious)

_Claims 19:_ `Reasonable` limits on (care) packages. (12.03).

_Claims 19:_ Mail in and out daily. No event delays more than 24 hours, excluding weekends and holidays. (unexplained delays, understaffing purposeful) (12.04).

_Claims 119:_ Written policy and procedure provided so that inmates are notified when mail written by or addressed to them is either rejected or censored with reasons. (12.06). (Been denied these rights.)

_Claims 17,19:_ Inmates and authors are provided opportunity to protest decision; such complaints are referred to higher authority. (12.06) (Defendants still display deliberate indifference to Me and these rights).

_Claims 17,19:_ (Custodian provides) unlimited legal postage. (free). (12.08). (Not done)

_Claims 19:_ Visiting rooms allow some degree of privacy and conversations not monitored. (12.12). (Denied here).

_Claims 19:_ Where furloughs are not appropriate, extended visits between inmates and family should be encouraged. (12.16). (Not here by these custodians /Defendants).

_Claims 19:_ Written policy and procedure provide that an inmate may deposit personal funds in an interest bearing account and that the interest accrues to the inmate. (13.04)( None exist)

### Inmate Work Programs

_Claims 19:_ Full time employment is available so that there is

minimal idleness. A job should be provided to every inmate who wants one. (14.01) (Not here).

Claims 19: Employed inmates are paid sufficient wages so that they can make purchases from the canteen and accumulate funds to assist them upon their release. (14.06). (Not here; many inmates made indentured servants like Me)

## Recreation and Inmate Activities

Claims 19: Comprehensive recreation program is provided away from cell with leisure time activities. (16.0) (provided chess, checkers, some puzzles, and scrabble, are not a comprehensive rec. program for leisure activities) (commissary profit audit needed of the millions of dollars made and not used for the legal purpose like this recreational equipment.)

## 17. Education and Vocational Training

Claims 19: Vocational Training should be available to all inmates, and counseling (professional) for careers. (not done) (evil forces at work causing recidivism).

Claims 19: Education program continues to meet the needs of the inmate population. (17.04) (very doubtful; professional investigation needed and results published to inmates and community).

Claims 19: Systematic approach to determine the personnel requirements for education and vocational purposes to ensure all inmates access to staff and services. (17.05). (not done).

Claims 19: Annual evaluation to measure the effectiveness of education and vocational training programs against state (and professional) performance objectives. (17.06) (not probably done).

Claims 19: Atleast every 3 years, the educational and vocational training programs are assessed systematically (in writing) against state objectives by qualified, professional groups and trade associations. (17.07) (Not probably done).

Claims 19: Education supervisors and instructors are licensed or accredited by the state or other appropriate body. (17.08). (not probably done).

Claims 19: The institutional education program allows for flexible scheduling that permits inmates to enter at any time and to proceed at their own learning pace. (17.11) (not probably done) (now limiting and restrictive).

Claims 19: Vocational training programs are relevant to the vocational needs and interests of inmates and to employment opportunities in the community. (17.13) (not done).

## 18. Library Services

Claims 12,19: There is a systematic approach for determining the library services needs of inmates. (18.03) (probably not done).

Claims 12,19: The parent agency (Dept of Corrections) has a full-time staff member, preferably qualified in library services (not here), to coordinate and supervise the library services for all institutions in the system. (not here) (18.04).

Claims 12,19: Library services are available 5 days a week, including evenings. (18.05) (not here to Me and all inmates).

Claims 12,19: There is a systematic approach to determine (and acquire) the personnel requirements for the library services so that inmates are assured access to staff and services.

Sufficient library staff should be available to assist inmates in learning what is available ( what should be to acquire it ) and how to locate it. ( also by inter-library loan). American Correctional Association and American Library Association Joint Committee on Institutional libraries has established staff / inmate ratios for number and type of library personnel ( and facility ) required . ( 18.06)( Not done here).

<u>Claims 12, 19:</u>  At a minimum, planned and continuous acquisition of materials to meet the needs of users, circulation of materials to satisfy the needs of users ( not custodians) info services to locate facts, a reader's advisory service that helps provide users with suitable materials, promotion of the uses of library materials, environmental temperature control, and generally inviting in appearance. ( 18.07)( not done).

<u>Claims 12, 19:</u>  Libraries participate in available inter-library loan program. ( 18.09)( not done).

~~Claims 1~~                    <u>19. Social Services and Counseling</u>

<u>Claims 19:</u>  Social service program with a range of resources. appropriate to the needs of inmates, including individual and family counseling and community services . ( 19.01) ( not done) ( ie first timers locked-up counseling and for their family members, family preservation and protection counseling, divorce prevention counseling, parent + child bonds maintained and improved with all reasonable efforts and resources)

<u>21. Administration and Management</u>

<u>Claims 19:</u>  Commissary is non-profit (21.13) ( if ours is, where

where are all the profits actually?)

Claims 19: Written policy and procedure provides that inmates have access to their files and records, setting forth procedure and conditions for that review in accordance with applicable statutes. Inmates have a serious and legitimate interest in access to their files. (and institutional file). (21.19) (not done) (never oriented to this).

American Bar Association Standards
For Criminal Justice
Legal Status of Prisoners

These are the 1980 approved, legal profession in corrections benchmarks for the criminal justice community, legislators, and others. There are Bill of Rights Tested. The American Correctional Association and the American Bar Association mediator resolved the following. The House of Delegates for the United States approved, in 1980, the following American Bar Association official Policy.

Health Care is preventive and therapeutic, personal, hygiene, dietary, and environmental.

Informed Consent is agreement by a patient to medical treatment, exam, or other procedure after the patient receives the material facts regarding nature, consequences, risks, and alternatives of proposed treatment, exam, or other procedure.

Order is the minimum amount of regimentation necessary

for an institution to exist (not its employee(s) personal desires) and perform essential functions.

<u>Claims 12, 17, 19:</u> Standard 23-2.1 Access to the Judicial Process: (a) Prisoners should have <u>free</u> and meaningful access to the judicial process; governmental authorities should assure such access. Regulations or actions should NOT delay unduly or adversely affect the outcome of a prisoner's claim (or defense) for relief or discourage prisoners from seeking judicial consideration for their grievances. (not done here).

(b)(ii) An administrative process unable to reach a decision within 30 working days is presumptively unreasonable.

(iv) Prisoners should be allowed to prepare and retain legal documents. (That means unobstructed. ~~access to~~) Least restrictive conditions (including supplies) is necessary for preparation and retention of legal documents. (not done here).

<u>Claims 19:</u> Standard 23-2.3 Access to legal Material Educational services to legal rights even when they have legal services. Prisoner entitled to acquire personal law books and other legal research material (obstructed or denied here).

<u>Claims 12, 19:</u> Standard 23-6.1 Communication Rights: Least restrictive (actually) necessary. (No mass punishing rules as is).

(e) Indigent prisoners should be provided free stationery, free postage for letters to attorneys, courts, public officials, family, and friends. (not done here).

<u>Claims 19:</u> Standard 23-6.2 Visitation: should be at least 1 hour with cumulating visitation periods for extended visits.

243

<u>Claims 19</u>: Standard 23-6.5 Religious Freedom ; No keeping of any info of prisoner's religious activities. (Chaplains, assistants, and Mr. Holsterman, atleast)

<u>Claims 19</u>: Modes of dress or appearance, including religious medals and other symbols, as long as they don't interfere with identification and security. (My beads returned to sender ; prison policy illegally adopted probably). (

<u>Claims 19</u>: Even while being punished, religious counseling allowed. (Not oriented to this proper treatment ; probably not done here with all the other ill-will conditions).

<u>Claims 19</u>: Standard 23-6.7 Prisoner Communication Media ; allowed to operate newspapers for dissemination with info, opinions, and other info of interest to prisoners. (Not as an administrative propaganda organ to be used for administration's needs for free, nor contractors) (Commissary profits are only for inmates which are
apparently used to totally fund this newspaper). Any attack on a person or group must allow rebuttal, review by designated official ; no obscene or substantial threat, ~~the~~ apparently not allowed.

Dixon

<u>Claims 2, 8, 19</u>: Standard 23-6.9 Physical Security. Inmates are entitled to a healthful place, protected from personal injury, disease, property damage, personal abuse or harassment, including sexual manipulation. (Twice have I been manipulated to attempt sexual abuse by inmates, both times inmates were slick talkers who had guards involved wrapped around their little finger, causing me to be threatened with protective custody, instead of predator.)

( I fear for it happening again to me and others because proper policy, procedure, custom does not exist in writing or is NOT enforced.)

<u>Claims 8, 19:</u> Standard 23-6.10 = Searches : Areas <u>except</u> prisoners living quarters may be searched anytime. ( it's the opposite here). Routine visual inspection of living quarters ( not, ashere, private property) for health, safety, security periodically without prior authorization.

<u>Claims 8, 19:</u> Without specific cause, the chief executive officer, or in their absence, the acting chief of a correctional institution may authorize a routine and random intrusive search of prisoners living quarters and belongings. (Apparently not here, anyone can ). ( without being inherently suspect).

<u>Claims 8, 19:</u> An intrusive search of a prisoner's living quarters and belongings, other then the routine and random should (consider <u>American Disabilities Act</u> entitlements to accommodations for mental or physical disabilities, and to be NOT be mentally or physically damaging as abusive, neglectful, exploitative, and for invidious discriminatory as Mine were in E building by Sgt's Wallace and Crease): ① require prior authorization of superior, and ② based on reasonable belief that contraband or other prohibited material WILL be found. ( requiring reliable and credible informat which was apparently not done of jealous, selfish or alike inmate(s) who had ulterior motive(s)). No prior orientation on these rights allowing abuse, ~~that~~ and of course caused, allowed, condoned or alike by failures to control, train, and/or supervise as moving, allowing force(s), against Me and surely others in similar situation .) ( Uncredible bathroom search.)

<u>Claims 8, 19:</u> All searches minimize harm to property and privacy. ( harm by illegal taking with written confiscation from copy, and due

to invidious discriminatory conduct towards Me by Sgt Crease).

Claims 8, 19: All searches must preserve privacy, dignity, bodily integrity. (which dignity, and mental integrity are deliberately indifferent to Me by Sgt. Crease, and search team in May of 2007 at the Visiting Rooms evening program.)

Claims 8, 19: Custodians should use non-intrusive sensors vs. body searches when possible. (never attempted with Me, and probably everyone else here at Delaware Correctional Center; no known non-intrusive sensors provided due to deliberate indifference to such humane ideas as dignity, and due to apparent sadistic minds in custodians.)

Claims 19: Standard 23-6, 13, Maintenance of Institutions: Comply to school, hospital, (and other public facilities used by government) codes.

Claims 19: Community release programs with separate living of adequate size. (probably not happening either with all the other wrongful conditions under these Defendants).

Claims 8, 19: Quarters with substantial (existing as in substance; material; real; important; essential; nourishing; satisfying; well-to-do) privacy consistent with classification. (As minimum security, I was housed (still am) with medium or maximum security inmates with maximum conditions such as 78% lock-in.) 'Private' toilet, supplies for personal cleanliness, freedom from excessive noise, (No private toilet; lack of supplies provided free like shaving cream, shower shoes, deodorant, toilet paper (rule), nail clippers, etc.) (No American Disability Act qualifying housing unit with freedom from excessive noise)

246

Claims 8, 19: Segregation is NOT to deny psychologicals such as books, or other (printed matter or recorded media), mail, exercise, items of personal care or hygiene, light, ventilation, regular diet, oral communication with others. No conditions that unnecessarily cause physical or mental deterioration. (No talking, no reading in chow hall) (2 book, magazine limit for all, even minimum and medium security, arbitrary and capricious) ( personal items already mentioned; lack of proper ventilation due to over-crowding double celling, and in dorms, Complaint and Amendment full of unnecessary, mass punishing, regimental conditions causing mental and physical damages in Me, and as one of classes mentally disabled)

Claims 2, 6, 8, 12, 17, 19: Standard 23-7.1, Grievances: Informal whenever possible. ( never attempted as per Grievance policy and procedure) ( for regular grievances; medical informal hearings ineffective.) Should be for any employee or official. (not here.)

Grievance procedure be designed to ensure the cooperation and confidence of prisoners and official including : written response with reason ( by law), within time limit ( not done), 30 days NO reply is deemed denied. (No court certified grievance policy and procedure upheld) ( Dept employees conduct ineffective with votes of NO-confidence by inmate class generally, and employees continues, systemic deliberate indifference to duty.)

Provisions ( lacking, no confidence, ineffective) for participation by staff and prisoners in the design of the grievance procedure. ( Totally controlled by staff; illegal administrative laws and procedures adopted; retaliatory atmosphere caused by staff.) Access without reprisal.

247

claims 2,3,6,8,12,17,19: Standard 23-7.2, Regulation of Dept. of Corrections organization, procedures, policies and practices be governed by rules adopted by, like Model State Administrative Procedure Act. (Severely, systemically lacking)

Standard 23-7.3, Administrative Oversight by an Ombudsman or similar official be for receiving and inspecting complaints from prisoners. (Not as current security staff with bias, deliberate indifference to laws, and conflict of interest, failing to do duty, conspirators in organized crime in Dept administration.)

Standard 23-7.4, Legislature: Each State legislature should enact legislation to implement these standards and to provide sufficient (define) resources to ensure implementation of the legal rights of prisoners.

Claims 19: Standard 23-8.2, Expungement of Conviction to mitigate or avoid collateral disabilities. (Apparently not done for all equally without invidious discrimination.) Unfairly affects private employment.

Claims 8,17,19: Standard 23-8.6, Domestic Rights: Domestic relationships of convicted persons should be governed by rules applicable to the general public. (Not Done; family integrity laws and objectives avoided by Defendants in supervisory positions acting as moving forces to deprivations causing various damages). Conviction or confinement must be insufficient to deprive a person of domestic rights; parental (familial) rights, right to withhold consent to adoption, right to adopt. (visits and communication possibilities too obstructive,

damaging, and illegal.) Confinement should be assisted for proper communication. ( No orientation to rights, privileges, and Immunities provided for family integrity, and societal best interests.) ( Deliberate indifference by supervisors to remove damaging obstructions.)

Persons convicted of any offense or confined as a result of a conviction should NOT, for that reason alone, lose any vested pension rights or become ineligible to participate in any government program providing relief, medical care, and old age pensions. ( Apparently not done).

Claims 2, 3, 6, 8, 12, 17, 19: Various violations by these supervisory Defendants mostly of the Uniform Laws Annotated Model Sentencing and Corrections Act , Article 4. - Treatment of Convicted and Confined persons, which could NOT be brought yet due to illegal obstructions to info for the Constitutional rights that go along with that, and the Constitutional violations caused by NOT upholding those rights, privileges, and Immunities.

<u>Claims 19</u>; Business or Profession in Prison

Brady, Taylor, Howard, Talley, Snyder, Carroll, total denial of all business or profession in prison is NOT reasonably related to legitimate penological interests, therefore an illegal prison rule.

Like any FIRST Amendment freedom deprivation, for even minimal period of time, unquestionably constitutes irreparable injury under <u>preliminary injunction</u> analysis.

Total ban is deliberately indifferent to life, liberty, property and happiness interests I as Ward have,

Professional counsel is required come up with a legal policy and procedure which is not illegally overbroad, and shows invidious discriminatory animus, when there are obvious, easy alternatives to address Departments security concerns,

251

## Claims 19 ~reflective, Incompetence In Office

Prison and Dept of Correction Rules, are thus generally unreasonable, arbitrary, and/or capricious, if there is a legal policy and procedure actually followed. Since their are so many rules, and due to obstructions and denials of legal access to information, My inabilities, and My disabilities, and ~~their~~ illegal omissions to correct for them, justice is still obstructed for Me, in the only classes I am a member of — ward, disabled, family, atleast, toped of with deliberate indifference to professional conditions in prison! , certain employees

One possible solution for relief is to require this State, to become members of all the relative associations, responsible to keep all professional standards for All wards of State, with continuous, professional training for future relief because state, employees, and Defendants cannot do it on its own, as history has shown.

Restrictions, especially ones in totality, generally, are punishment to Me, and ~~easily~~ other class members, ~~illegally implemented~~ ~~offenses~~.

Delaware Dept of Correction Secretary, Board and/or Council members are also sued officially, besides personally, for failures to do duty to uphold established laws, civil rights, Constitutional, and statutory rights, too many to list here. See each person named / titled, statutory and common law duties, oath, ethics of public trust violated.

Punishment means any retributive suffering, pain or loss, or rough treatment, as I too have experienced here under these custodial Defendants Brady, Taylor, Howard, Valley, Snyder, Carroll, since I have been here, which continue to punish Me also by injuries sustained, under color of law. And these Defendants conduct, with their subordinates, caused as moving forces, these illegally punitive conditions inflicting, involving, or aiming at punishment.

253

~2

These Defendants 'fail to protect' Me also by failing to orient Me at all to My legal rights, policies, and procedures which allowed this continues abuse, neglect, exploitation, and invidious discrimination by their continues deliberate indifference to prevent damage to Me, and My family, and legal member I am of.

All these Defendants, and ones to be named if necessary, who qualify as Public Officer and Employees for Title 29, Delaware Code, Chapter 51, violate the show statutory rights to attest Me, as per following pages.

These Defendants created or continued punishing conditions for Me, ~~any~~ and ~~similarly situated ward~~ as one of classes, by deliberate indifference to professional standards, an alternative ~~~~ to which the restriction may rationally be removed ~~~~ as assignable for it, and the appearance and actual excessiveness in relation to the alternative (s) possible to reduce the punishment to the least restrictive condition possible in a legitimate penological context, especially when other prisons can do it.

Delaware State Government Law

Public officers and Employees

Title 29, Delaware Code, Chapter 51

§ 5101. Oath of office. State employee Defendants failed to take and subscribe to oath(s) or affirmations set forth in article XIV of the Constitution.

§ 5115. Protection of public employees reporting suspected violation of law;

[A whistleblower law] (b) No public employee shall be discharged, threatened or otherwise be discriminated against with employment... reporting ... a violation or suspected violation of a law or regulation promulgated under the law ... [including Administrative Procedure Acts, Administrative Laws and Procedures].

these Defendants failed to expose and properly act on legal violations even when legally protected.

Title 29, Delaware Code, Chapter 58

Laws Regulating the Conduct of Officers And Employees of the State

§ 5802. Legislative findings and statement of policy.

(1) these Defendants fail to uphold public trust to care properly for the wards of State as started to be shown in this Civil Complaint, which has created a justifiable impression among the public incarcerated and their families, atleast, that such trust is [has being / been violated with such blatant rule as if above the law.

(2) these Defendants fail to be representatives and proper examples of a polite society, have lost public confidence by those they are legal custodians for, by failing to follow the specific standards to guide their conduct and fail to be organized in an equal manner among all prisons to guarantee uniform maintenance of those standards by law. Standards of this type are so vital to government that violation thereof subjects these Defendants to criminal penalties.

(3) these Defendants fail to apply minimum basic standards and fundamental fairness for equal protection of the laws for Wards like Mr. Hartmann they are responsible for, to not allow any degradation or deterioration of human rights; and their contractors.

§5805.  Prohibitions relating to conflicts of interest.

(3) These Defendants who have a statutory responsibility to duty failed to file a written statement with the Commission fully disclosing the personal or private interest and explaining why it is not possible to delegate responsibility for this matter to another person, failed to uphold this law relative to the duties breached by each Defendant.

§5806.  Code of Conduct.

(a) These Defendants failed to pursue a course of conduct which will NOT raise suspicion among the public by engaging in acts, mentioned in this Civil Complaint, which are in violation of the public trust which reflect unfavorably upon the State and its government.

(e) These Defendants use their public office to secure private advancement and for personal illegal and unethical gain at the expense by abuse and exploitation of Mr. Hartmann, his family members, and classes he is a member of.



Plaintiff Is Entitled to A Temporary Restraining Order and/or
Preliminary Injunction

In determining whether a party is entitled to a Temporary Restraining Order
and/or Preliminary Injunction, courts consider four elements below.
Each of these elements favors the granting of this Order.

A. Plaintiff is threatened with irreparable harm:

The Plaintiff Mr. Hartmann alledges that He is denied his Constitutional Rights
~~A~~ and Federal Rights and State Statutes. The continuing deprivation
of Constitutional Rights constitutes irreparable harm; Elrod v. Burns, 427 U.S.
347, 373 (1976).

B. The balance of hardship favors the Plaintiff:

The Defendants will have ~~xxxxxx~~ expenditure of funds which will have to
be proven by them to comply with TRD, ~~xx~~ and/or P.I. laws. It is
in the interest of laws, rules, and regulations ~~for~~ which were created for
purposes favoring Mr. Hartmann, who suffers continued illegal prison conditions.

C. ~~xx~~ Mr. Hartmann's likelihood of success on the Merits:

The laws are clear on the issues, deliberate indifference nature among
Defendants is clear by their actions and history; its systemic and systematic.

D. The relief sought will serve the public interest:

Because it will uphold the laws of the land, as per Complaint and Amendment, correct the damages as much as possible,
prevent future damages, and stop the undermining, treasonous like actions of these Defendants and
others doing similar actions in this State to other citizens similarly situated, regain
respect for our Justice System and prevent the degradation of this State and Nation by the
evil forces here at work. ~~ADA, RA, PAMI, PAIR~~

257

Mr. Heitmann should NOT have to post security because He has been made indigent by State employees abusing their authority and obstructions to justice, in the interest of justice for all, due process and equal protection of the laws. The Court may waive said posting of security. _Orantes - Hernandez v. Smith_, 541 F.Supp 351, 385 n.30 (C.D. Cal. 1982).

This Plaintiff, and as one of classes, have had no plain, adequate, legal, or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to damaged irreparably by the conduct of these Defendants unless this Court grants the relief below which this Plaintiff seeks by law, and as one of the classes He is in.

## Relief Requested and Needed

Injunction is needed due to ongoing illegal practices by Defendants, money damages will not fix my injuries, and as one of classes, without this Courts help, Plaintiff, and class members, will likely continue to suffer illegal harm. I will likely succeed at a trial because claims are by law, except maybe one new precedence needed. I, too, will continue to suffer more if injunction is denied, then the Defendants will suffer if it is granted due to precedence, systemic and continuous deliberate indifference Defendants should know as any reasonable layperson can see. The injunctions will thus serve the public interest to uphold the laws of the land and stop the damages, and have Defendants do their duties without wrong state of mind or conflict of interest.

Preliminary and permanent injunctions are needed to Order Defendants involved in each violation to have State, timely provide proper policy and procedure to;

1. Enforce the federal Water Safety Act for all wards of State.
2. Enforcement and public postings of proper Patients' Bill of Rights.
3. Follow all preventive, diagnostic, and treatment options for proper medical care as per related association standards.
4. Quality assurance staff will cause no more grievances needing to be filed by wards of state by properly caring for any symptom in a professional manner.

259

5. Appoint independently certified Court Monitor to have no conflict of interest or wrong state of mind in any intention as state-wide systemic problem exists, until all infractions are corrected, and is reinstated if a new state contractor is contracted to provide any service directly or indirectly, to any ward of state, to insure all generally accepted professional standards continue, and are improved upon in an ever more modern, civilized, and decent society, and new proper, research exposes.

6. Provide direct communication line in person to Monitor for all wards of state after ~~state~~ department, exhaustion for grievances to insure communication is occurring, as it has not been by systemic, deliberate indifference to an effective grievance system. Past history of Defendants shows. continues inability to self-monitor.

7. Competent, effective, independent Institutional Grievance Chairpersons be appointed, and properly staffed to resolve grievances legally. To timely authority to enforce and uphold the laws of the land, not to extend damage to any ward, nor cause clogging up of courts with unnecessary Civil Complaints if Defendants, et. al., did their job, and were held accountable in lower echelons.

8. Court certify the grievance procedures if State chooses to continue to use a grievance system.

9. Implement proper policy and written procedure for timely, enforceable imminent danger or emergency grievances for proper relief; medical and regular grievances. How does a Ward get imminent relief when grievance system and communication to wardens, medical director are ignored? Proposal - ward allowed immediate use of telephone, or if unable someone in his place, to call an ~~xxxxxxxx~~ Inspector General or Monitor who can and will act by law to stop damages.

10. Patients Bill of Rights, all inclusive, be permanently posted in all medical waiting areas. And noted for Point-of-Contact for proper relief.

11. Monitoring to insure timely transportation to outside medical services refered to.

12. Proper relief to stop running out of medication to save money, failure to order or distribute in a timely manner, or failure to renew medication in time.

13. Every new detainee and convicted person, or otherwise in state custody be informed properly of all their rights and privileges by law custodians should uphold for them and how to get timely relief from failure to do duty; DOC approved intake checklist for facilitators with sufficient detail with handouts of contacts information and important details required to be done, for each ward of state to understand. To be monitored properly and regularly update the intake class orientation.

14. Both, state and Federal Administrative Procedure Acts be enforced by some state office for all state departments and lower government echelons, especially Dept of Corrections. All notices and hearings under these Acts be properly, timely posted for all Wards of state to properly participate before any change, implementation, or alike.

15. All Wards be called annually for proper dental-checkup as for physicals is being done.

16. 'Water-Pic' method be properly provided to each ward.

17. State Governor's Memorandum of Understanding be enforced by Monitor and state employees for each state agency to support its purposes particularly the Dept of Correction, Dept of Services for Children, Youth, and Their Families, ie to preserve protect families when family member is in custody, Dept of Justice, Dept of Public Libraries, Councils,

261

261

42 USC 12101

Depts responsible for Administrative Procedure Acts, American Disabilities Act, Rehabilitation Act, and others mentioned herein, and yet to be discovered, State should know of, from illegal cover-ups of information.

18. Proper enforcement of professional mental health staff duties by Monitor, et. al..

19. Proper enforcement of professional dental staff duties by Monitor, et. al.

20. Proper enforcement of professional optometry duties by Monitor, et. al. All of these as should have been done if professionals did not have a conflict of interest, wrong state of mind intentions, or other selfish persuasion to duty and professionalism.

21. Federal agencies enforcement of government funds received that they are used as intended, and not discriminatorily used against Plaintiff mentally disabled inmate, upon info and belief by Community Legal Aid Society, Inc., employee(s) or volunteer(s), to uphold disableds' rights, privileges, and/or immunities.

22. All obstructions be removed for timely, equal, effective, meaningful, capable, and adequate access to information and libraries for each ward of State.

23. Saydd Defendants Intake orientations, perhaps weekly, for new in custody and those who want to retake the orientation for personal reasons, to include rights of federal acts like the American Disabilities Act and Rehabilitation Act custodians have a duty to uphold for all wards of State.

24. Provide the minimum required living space of 64 sq ft per ward, and more for mentally disabled per professional standard. Remove obstructions from being locked up 78% of the time in one's cell, with a celly or NOT, causing the common areas living space to

262

not be available. Open common areas up after count clears in appropriate minimum and medium security areas. Any ward that cannot behave can be properly written-up and moved to hire security. The current mass punishment and regimentation must stop because of its damages well known of by experts in the field of penology, as Defendants should know.

25. Provide, policy and procedure for five days good time for all those wards 'accepting' to live in less space then humanly proper for good-time, per month.

26. Provide proper policy and procedure, All bathrooms and showers be doubled since occupancy doubled wrongfully, or occupancy be reduced to half which is the original building capacity in certain buildings.

27. All bathrooms and showers have permanent, and immediate repairs, partitions between each fixture to block sight in a civilized society, with doors on toilet stalls and showers, like all other proper public bathrooms and showers like at government facilities.

28. Dept of Corrections, or alike, of Delaware be fined for any violation daily prolonged, and each ward-treated uncivilized be properly compensated for any illegal condition we have been forced to live in due to custodian Defendants deliberate indifference to professional conditions and standards.

29. Monitor or someone become an Advocate for proper conditions for wards of State since none exists in this mini state, as larger states have. All other wards unable or disabled to uphold their rights, as I.

30. Removal of all obstructions to timely, equal, effective, meaningful, capable, and adequate access to medical and health information for each ward.

31. Refund all monies taken, from each indigent ward of State, for photocopies fee of legal materials like at the law libraries and any other place like the business office, plus current interest, compensation, and restoration.

32. Provide written policy and procedures, in a professional timely manner as for all other relief, for Dept of Corrections policy allowing personal, private property or government provided property allowing laptops and their accessories, with a 1' security cable and padlock permanently attached, for each ward of State.

33. Provide written policy and procedures, legally by Administrative Procedure Acts as for all other new or changed policy, for providing free legal mail postage and supplies for all indigent wards. Refund, restore, compensate all monies taken for this for each ward.

34. On intake orientation for all new in custody, provide policy and procedure by Dept of Corrections, written purpose of Delaware Center For Justice and any other support services for Delaware Wards and their families, job descriptions of any of those employees or volunteers any ward may receive ANY assistance from, and any assistance a family member may receive Any assistance from, including any state and federal employees.

35. Provide, written policy and procedures for all wards of State use of State Mail system, including any class entitlement or other service as should be provided like for indigents and mentally disabled.

36. Do what needs to be done to stop all illegal mail censorship, or non delivery to recipients, or failures to provide appeal notice of censorship or alike to wards/recipients/addressee of mail and alike.

37. DOC grievance system be immediately corrected, overseen, and provided proper policy + procedure of enforcement of upheld grievances, or be totally scraped, and be certified by a court.

264

38.  Independent and neutral inmate grievance chairperson be made an independent job opening under State Personnel, or similar status to stop the obstruction of justice, for timely enforcement of laws, and stop the abuse, neglect, exploitation, and/or invidious discrimination of wards of State.

39.  All natural and vegetarian menus be provided properly for those wards signing up for them.

40.  Unannounced monitoring regularly of actual food portions served on each tray for each ward, to stop abuses and leaving hungry from chowhalls.  Served for proper nutritional amounts, being due to chow halls supervisors continues inability to do their professional duty.

41.  Enforce DOC policy to use 'least restrictive means' to correct any problem among wards and/or staff, not just protective custody as the only other means to correct volatile situation.  Options like moving a ward to another cell or trade with a compatible ward, to another tier, or building.  To stop the punishment of use illegal conditions in Protective Custody here at Delaware Correctional Center, upon info and belief.  And to not punish the victim, but the perpetrator(s) be moved.

42.  Classification staff be enforced to follow laws for mentally disabled, proper mental health evaluations, properly updated annual mental health evaluations for every ward of state, for proper treatment and rehabilitation, before assigning a bed in proper, non-damaging 'organized and harmonious' environment, and to reduce recidivism properly by actually treating wards, and not just superficial token treatment.

43.  Transfer Request form be available for each ward to change for any good reason such as incompatibility with celly, as other professionally run prisons do, to move or be moved to another bed,

cell, tier, building, for an 'organized and harmonious' environment for proper treatment conditions.

44. Proper accommodations be provided by each custodian knowing and applying housing rule that all legal materials of active and contemplated case(s) are allowed to be in wards private possession, or have daily, easy access without requiring a correctional officers assistance because of their swaying momentary attitudes, like for unlocking something, unless that is a wards choice to put up with, as a proper custodian would. Also see proper size storage locker be provided to every ward permanently installed at each bed. Proper minimum size surely atleast 5' tall, 2' wide, 18" deep, filled with shelves one foot apart.

45. That professional standards, more privileges be applied to lower security level housing, to not be all like maximum as here at Delaware Correctional Center, except for some token more commissary. Trouble makers are written-up and moved; but not for current mass punishment to continue, and harmful regimentation for proper socialization.

46. Timely information from the internet be provided free in printed form from commissary profits or other source for education, First Amendment rights to speech, press, expression, communication, information; to stop cruel and unusual punishment to be kept ignorant, and for e-mail, and personal web-sites. By any proper means possible.

47. Provide self-service copier in law libraries as in Gander Hill Prison and others, to stop removing, speech, communication, denial of press and information, at proper competitive rate as 5¢ charged on the outside, not some monopolistic, exploitative fee, commissary profits should subsidize like paying for all the equipment, for which funds are intended.

266

48. Proper risk management studies and impact study before implementation of any Acting, loss of wards interest in life, liberty, property, or humanity, in an ever more modern, civilized, and decent society.

49. Require a correctional association membership for risk management and proper professional standards, to stop ostrich effect, reduce law suits and grievances, and to properly inform the State Legislators constantly from an independent source about new research and professional penological management, which obviously has not been done here in Delaware Dept of Correction before, to stop the abuses, neglect, exploitation, and/or invidious discrimination against the unable or disabled wards,

50. All obstructions be removed which hinder family relationship improvements, as should be.

51. Sick call slips be timely handled in 24 hours for appointments in 24 hours prioritized by severity, but no later then 48 or 72 hours if an unusual peak or overload comes about,

52. Remove all obstructions to legally and ethical 'Good' health care by State Statute. Good defined as per Webster's office Dictionary as: favorable, fertile, bountiful, attractive, sound, whole, agreeable, pleasant, wholesome, considerable, full, conforming to a standard, commendable, virtuous, kind, competent.

I  53. Systemic deficiencies historically in staffing and following professional standards was/is denying Me also, proper, Good health care & making more unnecessary suffering inevitable for injunctive powers.

I  54. Irreparable damages and ongoing untreated damages require preliminary injunction.

I  55. All the failures to uphold the law of the land need

injunction, or they would not be corrected properly or timely due to historical systemic deliberate indifference to laws of the land and objectives State employees must follow, to stop breach of duty, abuse of authority, obstruction of justice, official oppression, for starters.

56. Defendants can be seen to work in a pattern and practice, in harmony to achieve their evil intentions, fueled apparently by selfishness which perverts justice and democracy with malicious natures' which continue to abuse, neglect, exploit, and/or discriminate against Plaintiff, and as one of classes, his family, and as one of those classes, which are a legally, protected class to be preserved and protected by All 'reasonable efforts' by government employees; Monitor Dec policies + procedures around

57. Defendants cause referral to specialist medical care as approved by properly informed, patients rights, in writing of total patient information in a timely manner. In Plaintiffs case, endocrinologist, cardiologist, psychiatrist, and natural healing arts practitioners following professional standards in their field censured by State.

58. State ensures provisions for special needs entitlements, accommodations, auxiliary aids for proper and total enforcement of the American Disabilities Act and Rehabilitation Act, for all wards, and all new wards in custody be properly educated in these rights at intake orientation as a custodian should do, with proper handouts of printed summary.

59. State ensure proper disease prevention methods including stopping double-celling in housing units built for half the actual occupancy. Common diseases go through many wards, spreading each time someone gets one.

60. State ensure all grievances are handled in a professional, timely manner, which a civilian can do as a state job, not wasting shortaged security staff.

61. State took responsibility when some of My medical records disappeared.

268

State ensures future prevention.

62. State Attorney General's office received this initial Civil Complaint several months ago, and upon information and belief, NOTHING has been done to correct ANY of these violations, for continuous deliberate indifference, moving force to wards rights, and their States duties, having and continuing to violate public trust. Proper relief as appropriate.

63. State needs to provide Me, and class members, professional preventive and curative medical management plan to try all possibilities to cure, instead of only prescribing Me also only cover-up prescription of symptoms only when I become aware of them, which is sometimes too late or fatal, or handicapping.

64. State needs to insure that the I should have received or atleast offered flu, pneumonia, and Hepatitis vaccinations upon custody when they are the professional standard, and whatever else should have been and been denied due to lack of Patients Rights yet upheld.

65. State need failed to ensure only qualified licensed medical staff performed their authorized duties. Reference Ali, Thoma Chucks, etc. to be determined, upon info and belief.

66. State and Defendants needs failed to ensure Me timely, good screening, assessments, evaluations, treatments, and structured, therapeutic conditions and activities for all, as I, entering or developing medical needs while in custody.

67. Psychiatrists need to be in sufficient number, collaborate with staff in professional standards of mental health services management as well as clinical treatment, to communicate problems and resource needs to Warden and, upon info and belief, Warden failed to act for medically appropriate autonomy for clinical decisions at this facility, or atleast

was responsible to ensure it occurred. ■ Mental health staff needs to be of sufficient number depending on changing needs of the wards of state. Staff must never be allowed to work in too great a case load for proper services and results for each ward of state.

68. Mental Health staff must reinstate a sex offender treatment program, because of increasing cases, and lack of licensed staff now pretending.

69. State needs to ensure all state employees who work with wards of state can recognize symptoms of mental illness, especially in pretrial for timely, proper care.

70. Defendants, et. al., need to be able to recognize and know how to handle abuse, neglect, exploitation, or discrimination by other inmates on inmates who are unable to communicate the problems, or new conditions, surroundings, for themselves. And also to stop taking advantage of disabled, mentally also, by other inmates, which further damages Me in this unprofessional, tortures and terroristic environment run by custodians with wrong attitudes and beliefs, causing more damage on me, as a ward.

71. State failed to ensure mentally disabled are not punished and harassed as I was by illegal search and seizure caused by jealous inmates who want to only steal or destroy others for selfish gain.

72. Private Property list in Inmate Housing Manual be increased to professional standards, not just ill-will as is conceived by the wrong states of mind.

73. State ensure treatment of mentally ill ward Plaintiff serious damaged now with a professional array and types of therapeutic conditions and conduct, and for all wards similarly situated.

74.  State ensure punishment and/or harassment, abuse, neglect, exploitation or discrimination stop by education of staff and inmates during intake orientation, of others, especially mentally disabled, bullying, conflict resolution, for people like me who were very close, due to lack of education + professionalism, to being placed into isolation wrongfully from tortures and terroristic conditions allowed by staff.

75.  State ensure any punishment attempted to be imposed upon a mentally disabled person, prior to placement or punishment, a qualified mental health professional determine to the extent to which the charge may have been related to mental illness, and if it is a mitigating factor when ~~when~~ treating properly by AOC Code of Conduct with least restrictive means for the inmates involved to modify behavior if possible due to mental disability.

76.  State needs to ensure that a proper intake orientation includes education of one's in custody early on to prevent damage upon ~~the~~ others, to properly protect.

77.  State needs to ensure wards now in custody who have not received this new orientation, be also given the prevention education and be informed of all their rights, privileges, and immunities, grievance procedure, and alike.  Inmates who have been warehoused here for many years are still very angry and on edge, thus actually not sufficiently educated and ~~to~~ treated.  Some are still rapists doing their predatory activities to the unaware so ~~the~~ ~~would~~ allowed by the custodians.  Thus, this also causes spread of disease of those who don't tell their possession), who are criminally spreading disease.

78.  State needs to ensure every new convicted person receive a thorough, proper mental health evaluation to actually care and

treat the person as should be governments duty to not cause recidivism.

79. State needs to ensure to conduct professional quality assurance programs for risk management, impact studies prior to implementation, and enforcing professional standards internally, to stop systemic deliberate indifference, ostrich effect, which has plagued this State historically. Quality assurance would prevent reoccurrence.

80. ~~State~~ Proper policies and procedures, written, and readable by inmates to follow them, and to stop the arbitrary and capricious actions by a staff member out of control, abusing, neglecting, exploiting, and/or invidiously discriminating against an inmate, for better accountability lacking here with deliberate indifference.

81. Legal libraries must be open 12 hours a day per precedence of 9th Circuit, if no other unobstructed access to info is provided, for each Ward.

82. Affirm constitutional or federal deprivations in training, control, and/or moving force.

83. Proper convalescent care be provided by policies and procedures for any ~~such~~ illness or injury professionally needing such, such as My spinal cord injuries.

84. All relief that should be provided needs written policy and procedure, for All to read anytime, unobstructed, timely implemented.

85. And whatever relief should be provided.

I  86. Preliminary + Permanent injunction(s), Declaration, or whatever is proper for timely removal of all obstructions to information. Custodian Carroll to provide a point-of-contact to obtain any printed information legally possible like from the internet in a timely manner (5 working days turn-around time). Maybe public library researches via state mail could do it, as their law says.

Prayer for Relief

No just and sufficient relief can be provided in this case.

Proper Compensation for deliberate indifference to these rights, privileges, or immunities, against each Defendant involved, jointly and severally.

Punitive damages be ordered by this Court ordering Defendants to pay.

A jury trial on all issues triable by jury.

Plaintiff's costs, fees, expense or alike in this suit.

Any additional relief this Court deems appropriate to correct any of the Custodians duties to prevent any further damage to any ward in this State.

## Verification

I have read the foregoing complaint and hereby verify that the matters alleged herein are true, except as to matters alleged on information and belief or alike, and as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Completed at Smyrna, Delaware on May 5, 2007.

DETLEF F. HARTMANN, SBI No. 229843
PLAINTIFF
Delaware Correctional Center
1181 Paddock Rd, T2
Smyrna, DE  19977


Dated: June 5, 2007

Appendix

## Delaware Correctional Center
### Mission Statement

As dedicated employees of the Delaware Correctional Center, the largest correctional facility in the state, it is our responsibility to provide a humanistic, working and living environment to all who come under our care. Our mission is accomplished by maintaining the highest standard of training and support for our employees and offenders at this institution. We fulfill our obligation because we are committed to: Protecting - The public by providing a safe and secure environment for the staff and inmates. Providing - Inmates rehabilitation by offering a wide range of programs to assist them in reuniting with their families and re-entering society. Promoting - Inmate development of self-discipline, interpersonal and work related skills in a structured and humane environment."

Appendix A

Retaliation
TRO                    for Motion
for TRO

The News Journal, Sat, Aug 12, 2006, pg B1, Local Section:
"Corrections Officer sues Del. over promotion" by Sean O'Sullivan.
President of Correctional Officers Assoc. of Dela. filed federal civil suit w atty. Thomas.
S. Neuberger, charging state officials for retaliation against him for speaking out
about problems in the prisons and his union activities. Sgt Wilbur F.
Justice speaking, exposing, understaffing and security lapses.
Neuberger said the dept' actions against Justice were meant to send a
signal to all union members." that this would happen to their careers if they
pushed mgmt too hard." Delaware Merit Employee Relations Brd found
" gross abuse of discretion".
At a Friday news conference, Neuberger also said that ongoing safety and
security problems in the prisons still have not been addressed.
Neuberger's general counsel to the Union,
"This will cost the taxpayer millions of dollars, as already has happened with
similar misconduct by the leadership of the Dela State Police," Neuberger says,
Neub. blames Goor Minner, "The Minner admin. cannot play by the rules
and so it retaliates against good men and woman who blow the whistle
to the the public about gov mismanagement. This must stop," Neub. said.

When they, Defendants have these attitudes, how will wards be treated?

2-77                    Appendix B

## Certificate of Service

I, _Walter Hartmann_ ,hereby certify that I have served a true

And correct cop(ies) of the attached:_ Amendment to Civil Complaint, _

_Motion To Correct Case Caption_ upon the following

parties/person (s):

TO: _U.S. District Court for Delaware_      TO: _____

_844 King St._      _____

_Lockbox 18_      _____

_Wilmington, DE 19801_      _____

_Attn: MPT_      _____

_06-340_

TO:_____      TO:_____

_____      _____

_____      _____

_____      _____

_____      _____

BY PLACING SAME IN A SEALED ENVELOPE, and depositing same in the United
States Mail at the Delaware Correctional Center, Smyrna, DE 19977.

I certify under penalty of perjury, that the foregoing is true to the best of my knowledge.

On this_ 5th _day of_ June _,200 7

_____

I/M  Detlef Hartmann
SBI# 293113  UNIT T2-10
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

Civ No. 06-340-APT

Legal Mail

U.S. District Court for Delaware
844 KING STR.
LOCK BOX 18
WILMINGTON, DE
19801