In The United States District Court
For The District of Delaware


Detlef F. Hartmann,
            Plaintiff,

                V.

Jane Brady, Stanley Taylor, Paul Howard, James Welch,
Robert Snyder, Thomas Carroll, Elizabeth Burris, David
Pierce, Francine Kobus, (Mike) Little, Edward Johnson,
(John) Melbourne, (Jane) Thompson, Michael McCreana,
Lise M. Merson, R. Varges, Evelyn Stevenson, (J. Doe(s)
to LXIII), Joyce Talley, Carl Hazzard, (Jane)
Henry, (John) Scranton, Nikita Y. Robins, Janet
Lebon, Michael Knight, (John) Maloney, (Jane)
Alice, Deborah Rodweller, Gail Eller, Oshanka
Gordon, Brenda Heddinger, Nancy (Doe), R.W.
(Doe IV), Thoma Chucks, Larry A. Linton,
Kimberly Weigner, Anthony R. Cannuli,
            Defendants.

C.A. No: 1:06-cv-00340-***
                                    (MPT)

Civil Rights Complaint pursuant
to 42 U.S.C. Section 1983,
and others to be determined,
also the American Disabilities Act,
Rehabilitation Act, and
'Bivens' Actions, and
R.I.C.O. violations.


Date: 3 Oct 2007


Second Amendment To The Civil Complaint



RECEIVED

OCT - 9 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE



## Table of Contents

| | pg(s) |
|---|---|
| Table of Contents | 1 |
| Jurisdiction, Venue, Plaintiff, Defendants Duties | 2 |
| Defendants Employer and Place of Employment for the State Employees | 15 |
| Defendants Employer and Place of Employment for Other Agencies | 16 |
| Defendants Employer and Place of Employment for Medical Services Providers | 18 |
| Defendants Addresses | 21 |
| Elements For All Claims Generally | 23 |
| Violations Involving Each (Claim Against Defendant(s) Generally | 25 |
| Claim 2 - Medical + Health | 27 |
| " 3 - Dental | 31 |
| " 4 - Medications | 33 |
| " 6 - Optometry | 34 |
| " 8 - Mental Health | 35 |
| " 11 - Disability Rights | 38 |
| " 12 - Access To Courts | 39 |
| " 17 - Legal Mail Censorship | 43 |
| " 19 - Prison Conditions | 44 |
| Temporary Restraining Order + / or Preliminary Injunction | 50 |
| Relief Requested and Needed | 52 |
| Prayer For Relief | 66 |
| Mission Statement for the Delaware Correctional Center | 67 |
| Mission Statement for the Dept of Corrections | 68 |

## I. Jurisdiction & Venue

1. This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of law, of rights secured by the Constitution of the United States, and federal 'objectives' States must follow under United States Supreme Court Order. The Court has jurisdiction under 28 U.S.C. Section 1331 and 1343 (a)(3). Mr. Hartmann seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Mr. Hartmann's claims for injunctive relief are authorized by 28 U.S.C. Section 2283 & 2284 and Rule 65 of the Federal Rules of Civil Procedure. Relief for nominal, punitive, and compensatory damages are sought.

2. The District of Delaware is an appropriate venue under 28 U.S.C. Section 1391 (b)(2) because it is where the events giving rise to this claim occurred. This court has supplemental jurisdiction over plaintiff's State law claims under 28 USC § 1367.

## II. Plaintiff and Classes

3. Plaintiff DETLEF F. HARTMANN, and as one member of classes below, is and was at all times mentioned herein an inmate of the State of Delaware in the custody of the Delaware Department of Corrections. He is currently confined in the Delaware Correctional Center, by Smyrna, Delaware.

## III. Defendants And Duties Upon Best Information and Belief

4. Defendant, Jane (Brady), was the Attorney General of the State of Delaware, She was legally responsible for upholding all the laws of the land for each inhabitant, and the operation of that office, and this Department of Corrections as all other state agencies, under its jurisdiction, including the Delaware Correctional Center.

5. Defendant, Thomas (Carroll), is the Warden of the Delaware Correctional Center. He is legally responsible for the operation of the Delaware Correctional Center and for the welfare of all inmates of that prison.

6. Defendant, Stanley (Taylor), is the Commissioner of the Delaware Department of Corrections. He is legally responsible for the overall operation of the Department and each institution under its jurisdiction including the Delaware Correctional Center.

2

7. Defendant, Robert (Snyder), was the Warden of the Delaware Correctional Center. He was legally responsible for the operation of the Delaware Correction Center, before Carroll took over, and for the welfare of all the inmates of that prison.

8. Defendant, Lise M. (Merson), Correctional Officer, Institutional Grievance Officer/Chairperson of the Delaware Department of Corrections who, at all times mentioned in this Complaint, and was assigned to the Delaware Correctional Center for administering all inmate grievances by law.

9. Defendant, Michael (McCreanor), Correctional officer, Institutional Grievance Officer/Chairperson and Captain; Head of Security for the Delaware Correctional Center of the Delaware Department of Corrections who, at all times mentioned in this Complaint, and was assigned to the Delaware Correctional Center for administering all inmate grievances by law.

10. Defendant, Elizabeth (A.K.A. Betty) (Burris), is a Deputy Warden of the Delaware Correctional Center. She is legally responsible for the operation of the Delaware Correctional Center and for the welfare of all the inmates of that prison, including legally administering the Department of Corrections Grievance Policy.

11. Defendant, David (Pierce), is same as 10. above.

12. Defendant, (J. Doe) + (Malaney), Medical Health Services Contractor/Administrator for the Correctional Medical Services Company contracted by the Delaware Department of Corrections Commissioner Taylor for the Delaware Correctional Center Infirmary/Hospital to be operated by law and ethics, medical and government. He is responsible for all inmates receiving legal, proper medical services.

13. Defendants, (J. DOE ∧ I), during different times did same as 12. above.

14. Defendant, Paul (Howard), is the Bureau Chief for the Delaware Department of Corrections. He is legally responsible for the overall operation of the Department, including Grievances, and each institution under its jurisdiction, including the Delaware Correctional Center.

15. Defendants, (J. Does II), during different times did same as 12. above except for working for First Correctional Medical Services Company.

3

16. Defendant, Nancy (DOE) (~~Nancy~~), was a nurse for the medical contractor for the Delaware Department of Corrections who, at all times mentioned in this Complaint, was assigned and working at the Delaware Correctional Center Infirmary, responsible for all medical services for all inmates be provided ethically and legally.

17. Defendant, (J.) (Alie), was a doctor for the medical contractor for the Delaware Department of Corrections who, at all times mentioned in this Complaint, was assigned and working at the Delaware Correctional Center Infirmary, responsible for all medical services for all inmates be provided ethically and legally.

18. Defendant, Deborah (Rodweller), is a nurse and medical grievances committee member for the medical contractor for the Delaware Department of Corrections who, at all times mentioned in this Complaint, was assigned and working at the Delaware Correctional Center Infirmary, responsible for all medical services for all inmates be provided ethically and legally.

19. Defendant, Gail (Eller), same as 18. above.

20. Defendant, Oshenka (Gordon), same as 18. above.

21. Defendant, Brenda (Heddinger), same as 18. above.

22. Defendant, (J. Doe III), "was a nurse delivering medications to D-East building in the Delaware Correctional Center on Dec. 27, 2005, 9PM. She is/was a working for the medical contractor for the Delaware Department of Corrections, who at all times mentioned in this Complaint, was assigned and working at the Delaware Correctional Center Infirmary, responsible for all medical services for all inmates be provided ethically and legally.  Much turn-over in staff causes many J. Doe.

23. Defendant(s), (R.W. Doe IV), is/was a medical scheduling person of inmate sick calls on duty Dec. 28 + 29, 2005. S/he is/was working for the medical contractor for the Delaware Department of Corrections, who at all times mentioned in this Complaint, was assigned and working at the Delaware Correctional Center Infirmary, responsible for scheduling all inmate sick calls legally and ethically.

4

24. Defendant, (J. Doe V), refering medical grievance on 1/19/2006, to medical grievance committee. S/he is/was responsible for referring all medically grievances in an ethical, legal, and timely manner to the committee. S/he is was assigned and working for the medical contractor for the Delaware Department of Corections at all times mentioned in this Complaint, ~~at all~~ in the Delaware Corectional Center Infirmary.

25. Defendant, (J. Doe VI), is/was a _____ working for the medical contractor for the Department of Corections who, at all times mentioned in this Complaint, working as a medical services administrator for all medical grievances for all inmates, at the Delaware Corectional Center y responsible to uphold all laws and ~~was~~ ethics.

26. Defendant, (J. Doe VII), is/was a doctor working for the medical contractor for the Delaware Department of Corections who, at all times mentioned in this Complaint, working in the Delaware Corectional Center Infirmary, responsible for all medical services for inmates legally and ethically applied. ⊗ (In 31 Aug 2000)

27. Defendant, Thomas (Doe)(J. DOE) CHUCKS, is a doctor or alike working for the medical contractor for the Delaware Department of Corections who, at all times mentioned in this Complaint, working in the Delaware Corectional Center Infirmary, responsible for all legal and ethical medical services for those inmates.

28. Defendant, (J. Doe VIII), is/was a medical staff inmate sick calls scheduling person on duty at end of October 2006, working for the medical contractor for the Delaware Department of Corections who, at all times mentioned in this Complaint, working in the Delaware Corectional Center Infirmary, responsible for all legal and ethical scheduling.

29. Defendant, Larry A. (Linton), was a grievances manager for corectional medical services contracted out by the Delaware Department of Corections who, at all times mentioned in this Complaint, working in the Delaware Corectional Center Infirmary, was responsible for handling all grievances legally/ethically.

5

30. Defendant, (J. Doe IX), supervisor of Hinton, working for ~~medical~~ Correctional Medical Service, contracted out by Delaware Department of Corrections, who all times mentioned in this Complaint, was supervisor assigned over Hinton.

31. Defendant, Kimberly (Weigner), is/was a nurse for Correctional Medical Services contractor used by Delaware Department of Corrections, who all times mentioned in this Complaint, is/was responsible for all inmate medical services legally and ethically, at the Delaware Correctional Center.

32. Defendant, (J. Doe X), is/was the scheduling secretary for all inmate medical services at the Delaware Correctional Center on and about 2/1/2002, for the medical services contractor used by the Delaware Department of Corrections.

33. Defendant, (J. Doe XI), is/was the supervisor of above secretary (32.) at the Delaware Correctional Center Infirmary, same time, for the medical services contractor used by the Delaware Department of Corrections.

34. Defendant, (J. Doe XII), pharmacist for inmates at the Delaware Correctional Center on and about 2/1/2002, responsible for all inmates medications, for the medical services contractor used by the Delaware Department of Corrections.

35. Defendant, (J. Doe XIII), supervisor of pharmacist above (34.), responsible for all inmate medical services, legally and ethically, for medical services contractor for Department of Corrections in Delaware, responsible for the Delaware Correctional Center medical services. (on and about 2/1/2002)

36. Defendant, (J. Doe XIV), medical services supervisor for inmates at the Delaware Correctional Center contracted by a medical services contractor for the Delaware Department of Corrections on and about 2/1/2002, responsible for same.

37. Defendants, (J. Does XV), medical grievance committee members responsible for resolving all inmate medical grievances by law and ethics. On duty 5/24/05 for medical grievance 13291. These Defendants are part of medical staff for medical services contractor hired by Department of Corrections for Delaware by Taylor, for serving

6

Delaware Correctional Center inmates.

38. Defendents, (J. Does XVI), medical grievance committee members after 11/08/05 were responsible for all legal and ethical medical services for all inmates at the Delaware Correctional Center. Worked for the medical services contractor hired by Delaware Department of Corrections.

39. Defendent, (J. Doe XVII), pharmacist responsible for all inmate medications at the Delaware Correctional Center. Worked for medical services contractor hired by Delaware Department of Corrections.

40. Defendents, (J. Does XVIII), medical grievance committee members on and about 1/24/06 responsible for resolving by law and ethics all inmate medical grievances at the Delaware Correctional Center Infirmary. They worked for the medical services contractor hired by the Delaware Department of Corrections.

41. Defendents, (J. Does XIX), medical grievance committee members on and about 11/22/05 responsible for resolving by law and ethics all inmate medical grievances at the Delaware Correctional Center Infirmary. They worked for the medical services contractor hired by the Delaware Department of Corrections.

42. Defendent, (J. Doe XX), Department of Corrections Health Services Administrator Director on and about 3/31/06 responsible for all legal and ethical medical services for inmates at the Delaware Correctional Center.

43. Defendent, (J. Doe XXI), pharmacist on duty 4/11/06 to 5/11/06 responsible for all inmate medications for the Delaware Correctional Center. They worked for the medical services contractor hired by Delaware Department of Corrections.

44. Defendent, (Jane) (Thompson), counselor at the Delaware Correctional Center for D building who, at times mentioned in this Complaint, was responsible for all inmate inmates needs for programs, residing in that building.

45. Defendent, (Jane) (Melbourne), head counselor at the Delaware Correctional Center who, at times mentioned in this Complaint, was responsible for all counsels

7a

to do their duties by law and ethics.

46. Defendants, (J. Doe XXII), mental health staff and professionals for all Wards at the Delaware Correctional Center responsible for all legal and ethical mental health services since Dec. 1, 1999 to present.    Worked for medical services contractor hired by the Delaware Dept. of Correction Commissioner Taylor.

47. Defendant Anthony R. Cannuli, et. al. to be named since Dec 1, 1999 ( J. Does XXXVI ), doctors, psychiatrists responsible for all mental health needs of all Wards at the Delaware Correctional Center, Employee of the medical services contractor at the time, hired by Delaware's Dept. of Corrections authorities Brady, Taylor, others to be named.

48. Defendants Francine Kobus, now Michael Little, legal services administrators at the Delaware Correctional Center responsible for all legal services by law and ethics for Wards of State.

49. Defendant (J. Doe XXIII), informal resolutions medical staff person responsible for legally and ethically resolving all Wards medical grievances properly on and about 10/19/2005 for medical grievance 16668 ( Health Information Rights Claim 12 ). Employed by medical services contractor hired by Delaware Dept of Corrections working at the Delaware Correctional Center.

50. Defendant Nikita Y. Robins, case manager for Wards of State, adult offender services for the Delaware Center for Justice, responsible to insure grievance systems are properly followed for Wards, and to assist Wards to resolve their grievances by law with custodians / Defendants, to be a neutral, independent, objective party, upon info and belief.

51. Defendant R. Vargas, correctional officer of the Delaware Dept. of Corrections who, at all times mentioned in this Complaint and Amendment also, was responsible for the duties of Institutional Grievance Chairperson and was

assigned to the Delaware Correctional Center.

52. Defendants (J. Does XXIV), mailroom staff responsible for all Wards mail at the Delaware Correctional Center, employed by the Delaware Dept of Corrections, are correctional officers who, at all times mentioned in this Complaint and Amendment, worked here.

53. Defendants (J. Does XXVI), correctional officers responsible for ensuring legally-healthy and sufficient food is served from a certified/licensed dietician's order for the Dept of Corrections of Delaware.

54. Defendant (J. Doe XXVII), Dept of Corrections staff food service administrator responsible for ordering only legal, healthy, safe, non-degrading food to a body and mind of Wards.

55. Defendant (J. Does XXIX), Community Legal Aid Society, Inc. member's, responsible for providing legal services for mentally disabled covered under the American Disabilities Act and Rehabilitation Act, as a member of professional standards followed under the National Association of Protection and Advocacy System, and professional, and official standards receiving government funding requirements for the Delaware disabled.

56. Defendant (J. Doe XXX), member of the Delaware Mental Health Association and representative of professional standards responsible for upholding the laws of the land for All mentally ill, and assisting in our needs from any government funding Association or person within receives therefor,

57. Defendant Evelyn Stevenson, Wards classification administrator at the Delaware Correctional Center, at all times mentioned in this Complaint and Amendment, was responsible for upholding the laws and rules for Wards housing to cause no legal harm, and to be providing a State required `organized and harmonious' environment on tiers and buildings used for housing inmates.

58. Defendant ( J. Doe XXVII ), bureau grievance officer, that is the Delaware Dept. of Corrections, for regular, non-medical grievances, responsible for upholding all laws of all involved for Dept, which includes the Delaware Correctional Center and Any grievances appeals by Wards.

59. Defendant James Weld, Bureau of Prisons Medical Services Administrator for the Delaware Dept of Corrections, is responsible for ensuring that all proper medical services and procedures be provided to each Ward in Delaware including overseeing medical grievances.

60. Defendant Edward Johnson, former law library paralegal state employee, was responsible for supervising the main law library at the Delaware Correctional Center, and support satellite libraries, to ensure the State provides all proper services and resources are available legally to All Wards.

61. Defendant ( J. Doe XXXI ), Dept of Correction's Dietician is responsible for the State to ensure Wards Menu is GOOD, and NoT degenerative or harmful in any way to life, liberty, or happiness interests, within professional standards.

62. Defendants ( J. Does XXXII ) Correctional Medical Services Contractor supervisors responsible for ensuring all medical services are properly provided for each Ward for the Dept of Corrections since Dec 1, 1999.

63. Defendant(s) ( J. Doe(s) XXXIII ), President, Owner(s) of Correctional Medical Services since Dec 1, 1999 contracted for Delaware Correctional Center.

64. Defendants ( J. Doe XXXIV ), First Correctional Medical Services contractor supervisors of all services for inmates for the Dept of Corrections since Dec 1, 1999,

65. Defendant(s) ( J. Doe(s) XXXV ), President/owner(s) of First Correctional Medical since Dec 1, 1999, contracted for the Delaware Correctional Center.

66. Defendant Janet Labon, Director of the Delaware Center for Justice was responsible for legally upholding All Wards and family members rights to resolve

problems in the criminal justice system, including grievances, professional prison conditions, and legislative advocacy to insure the laws are upheld.

67. Joyce Talley, Bureau Chief for the Bureau of Management Services, was personally responsible for the oversight of Wards health care management services, medical vendor contract compliance, including responsibility for detailed reviews of inmate medical grievances, and ultimately responsible for contract performance of medical vendors, and surely other vendors also.

68. (Jane Doe XXXVII) Dentist for Wards for all of Delaware, Supervisor. Insures all proper dental services are provided for all Wards.

69. Carl Hazzard, Cpt, security staff for Delaware Correctional Center.

70. (J.) Henry, Cpt, security staff for Delaware Correctional Center.

71. (J. Doe XXXVIII) responsible for all public library services in Delaware for All citizens by State Law; Director.

72. State Administrative Procedure Act Administrator (J. Doe XXXIX) insures all state agencies and employees follow those laws.

73. Federal Administrator who enforces that States follow the Federal Administrative Procedure Act (J. Doe XL), and Federal related objectives States MUST follow. ~Given

74. State Administrator for the American Disabilities Act and Rehabilitation Act. (J. Doe XLI)

75. Federal administrator(s) who enforces American Disabilities Act and Rehabilitation Act within States, (J. Doe(s) XLII), and Federal related 'objectives' States MUST follow. ~Given

76. Delaware Department of Corrections Council / Board is responsible to uphold the laws of the land for all Wards of State, are to be named (J. Does XLIII).

11

77. (J. Doe(s) XLVI) - Psychologist (s) or Psychiatrists) who are responsible for all professional mental health services to all inmates, working for CMS and/or FCM, and coordination to provided all needs for those services from CMS, FCM, and state representatives as Brady and Taylor.

78. (J. Doe(s) XLVII) - Psychologist Assistants are responsible to provide all professional assistants services to their supervisors to accomplish the goal of serving all inmates properly.

79. (J. Doe KLVIII) - Supervisor of Melaney is responsible for several prisons medical services as administrator for CMS.

80. (J. Does LI) Medical Staff of CMS is responsible for all the medical services for the inmates at DCC to be professional.

81. (J. Doe XLIX) Medical Staff Member of CMS is responsible to schedule all medical transportation with security staff member of DCC, to transport all inmates to their scheduled referrals from Doctors.

82. (J. Doe LII) Jane Dentist for CMS is responsible to provide professional dental services to all inmates scheduled.

83. (J. Doe LIII) Institutional Grievance Chair or Designee for DCC is responsible for all inmate grievances to properly administered.

84. (J. Doe LIV) Guards and supervisors on duty at DCC responsible for a safe, healthy, secure, humane environment, for each inmate

85. Cpt Scranton is responsible for safety, health, security, and human environment for each inmate.

86. (J. Doe (s) LVI) Dentists since (J. Doe LII) working for CMS and FCM at DCC responsible for all professional dental services for each inmate scheduled for treatment at their time of duty.

87. (J. Does LVII) Institutional Grievance Committee members on duty 8/12/04 responsible to administer professional penological conditions for each inmate.

12

88. (J. Doe LVIII) Unit Supervisor after 6/3/04 was responsible for informal resolutions of grievances submitted by inmates within 48 hours attempted with grievant.

89. (J. Doe LIX) Grievance Administrator on duty 8/14/04 for DOC was responsible to professionally administer all inmate grievances appealed at that level.

90. (J. Doe LX) Correctional Officer on 6 Aug 2002 was responsible for proper care of inmates to preserve and protect their health, safety and security and related duties.

91. (J. Does LXI) Division of Family Services Directors or alike for the State and County offices are/were responsible for providing all statutory duties to preserve and protect the familys have need for any services.

92. (J. Doe LXII) Dept of Services for Children, Youth, and Their Families Commissioner is responsible for all those people to professionally care for preserving and protecting Delaware familys by laws.

93. (J. Does LXIII) Delaware, Dept of Services for Children, Youth, and Their Families Council(s) and/or Board(s) ~~directors~~ are responsible to ensure that the statutory duties are fulfilled to preserve and protect families or children and put forth improvements for these protected class members which should be done to correct the statutes with the legislators.

94. Michael Knight is responsible for all the menus for inmates, that proper food is bought, available, and prepared and served for the DOC inmate, detainee population on a daily basis, is a healthy, safe manner by codes.

95. (J. Doe LXI) Optometrist since Dec 1, 1999 at DCC is responsible for all professional eye care for each inmate, and professional duties involved.

96. (J. Does LXII) Mental Health staff on duty April 2006 at DCC employed by CMS to provide all professional mental health services for each

inmate.

~~Place of Employment~~

97. (J. Does LXIII) DOC Grievances Administrator    ~~DOC~~    DCC
at time of this grievance, is responsible for managing
all inmate grievances appeal to this level professionally.

## Defendants

Plaintiff reserves right to correct Defendants involved as needed.

#4.    Jane Brady            Former Attorney General of Delaware
Complaint
Paragraph     Department of Corrections Employees
Defendant

| # | Name | Title | DOC | DCC |
|---|------|-------|-----|-----|
| 6. | Stanley Taylor | Commissioner | X | |
| 14. | Paul Howard | Bureau of Prisons Chief | X | |
| 61. | James Welch | Medical Services Administrator | X | |
| 7. | Robert Snyder | Warden (former) | | X |
| 5. | Thomas Carroll | Warden | | X |
| 10. | Elizabeth Burris | Deputy Warden | | X |
| 11. | David Pierce | Deputy Warden | | X |
| 48. | Francine Kobus | Legal Services Administrator (former) | | X |
| 48. | (Mike) Little | Legal Services Administrator | | X |
| 62. | Edward Johnson | Paralegal II | | X |
| 45. | (John) Melbourne | Supervisor of Counselors | | X |
| 44. | (Jane) Thompson | Counselor of Inmates | | X |
| 9. | Michael McCreanor | Prison Grievances Chairman, Correctional officer | | X |
| 8. | Lise M. Merson | Prison Grievances Chairperson, Correctional officer | | X |
| 51. | R. Vargas | Prison Grievances Chairperson, Correctional officer | | X |
| 58. | Evelyn Stevenson | Prison Classification Administrator | | X |
| 24. | (J. Doe V) | Prison Grievances Chairperson, Correctional | | X |
| 42. | (J. Doe XX) | Medical Services Administrator | X | |
| 52. | (J. Doe XXIV) | Mailroom Staff | | X |
| 54. | (J. Does XXVI) | Correctional officer for Food Services | | X |
| 55. | (J. Doe XXVII) | Food Services Administrator | X | |
| 60. | (J. Doe XXVIII) | Bureau Grievance officer | X | |

| Complaint ~~Eneugeet~~ ~~Defendant~~ # | Name | Title | Place of Employment DOC | DCC |
|---|---|---|---|---|
| ~~(J. Doe XXX)~~ | | ~~Dietician~~ | | |
| 67 ~~8.~~ | Joyce Talley | DOC Bureau Chief for the Bureau of ~~##~~ Management Services | X | |
| 69 ~~8.~~ | carl Cpt Hazzard | Cpt, Security | | X |
| 70. | Cpt Herry | Cpt, Security | | X |
| 80. | ( J. Doe L) | Security Staff Member of Transportation | | X |
| 83. | (J. Doe LIII) | Institutional Grievance Chair or Designee | | X |
| 84. | (J. Doe LIV) | Guards and Supervisors on Duty | | X |
| 85. | Cpt Scranton | Security Staff | | X |
| 86. | ( J. Does LVII) | Institutional Grievance Cmte on duty 8/12/04 | | X |

Other Agencies

| | | | | |
|---|---|---|---|---|
| 50. 51. | Nikita Y. Robins | Delaware Center For Justice Adult Offender Services | | |
| 57. | (J. Doe XXX) | Delaware Mental Health Assoc. Representative | | |
| 56. | ( J. Doe XXIX) | Community Legal Aid Society, Inc. | | |
| 66 ~~81.~~ | Janet ~~Laban~~ Leban | Delaware Center For Justice, ~~President/Director~~ Laban | | |
| 71 ~~70.~~ | (J Doe XXXVIII) | Delaware Director of Public Libraries | | |
| 72 ~~82.~~ | (J. Doe XXXIX) | Delaware Administrative Procedure Act Administrator | | |
| 73 ~~8.~~ | ( J. Doe XL) | Federal        "              " | | |
| 74. | (J. Doe XLI) | Delaware American Disabilities Act and Rehabilitation Act Administrator(s) | | |
| 75 ~~8.~~ | (J. Does XLII) | Federal ADA + RA Administrator(s) | | |
| 76 ~~8.~~ | (J. Does XLIII) | Delaware Department of Corrections Council/Board | | |
| ●.91 | ( J. Does LXI) | DFS State + County Directors | | |
| ●.92 | [J. Doe LXII) | DSCYF Commissioner | | |
| 93. | ( J. Does LXIII) | DSCYF Council/Board Members | | |

Defendants

of Dept Of Corrections (continued)

| # | Name | Title | Place of Employment |  |
|---|------|-------|---------------------|--|
|   | LVIII |     | DOC | DCC |
| 88 | (J. Doe ⬤) | Unit Supervisor after 6/3/04 |  | X |
| 89. | (J. Doe L IX) | Grievances Administrator 8/4/04 | X |  |
| 90 ⬤ | (J. Doe L X) | Correctional Officer on 6 Aug 2002 |  | X |
| 94 ⬤. | Michael Knight | Kitchens Supervisor for DOC ⬤ |  | X |
| 97 ⬤. | (J. Does L XIII) | DOC Grievances Administrator time of grievance | X |  |

Defendants Employed By Contractors as Medical Services Providers

CMS = Correctional Medical Services, FCMS = First Correctional Medical Services; TBD = To Be Determined.

| Complaint Paragraph Defendant # | Name | Title | CMS | FCMS | TBD | DOC | TBD | DCC |
|---|---|---|---|---|---|---|---|---|
| 12. | (JOHN) MALANEY | Administrator | X | | | | X | |
| 12. | (J. Doe) | Administrator | | X | | | | X |
| 17. | (Jane) Akie | Doctor | | X | | | | X |
| 18. | Deborah Rodweller | Medical Staff, Medical Grievances Informal Reso. | X | | | | | X |
| 19. | Gail Eller | " , Medical Grievance Committee | X | | | | | X |
| 20. | Oshenka Gordon | " , Medical Grievance Committee | | X | | | | X |
| 21. | Brenda Heddinger | " | | X | | | | X |
| 16. | Nancy (Doe) | " | | X | | | | X |
| 23. | R.W. (Doe IV) | " | | X | | | | X |
| 13.15. | (J. Doe I and II) | Administrators | X | X | | | X | |
| 22. | (J. Doe III) | Nurse | | X | | | | X |
| 25. | (J. Doe VI.) | Administrator for Medical Grievances | | X | | X | | |
| 26. | (J. Doe VII) | Doctor | | X | | | | X |
| 27. | Ihoma (Doe) CHUCKS | Physician Assistant | X | | | | | X |
| 28. | (J. Doe VIII) | Inmate Scheduling | | X | | | | X |
| 29. | Larry A. Linton | Administrator | X | | | | | X |
| 30. | (J. Doe IX) | Supervisor of Linton | X | | | | X | |
| 31. | Kimberly Wigner | Nurse | X | | | | | X |
| 32. | (J. Doe X) | Inmate Scheduling | | X | | | | X |
| 33. | (J. Doe XI) | Supervisor of (J. Doe X) | | X | | | | X |
| 34. | (J. Doe XII) | Pharmacist | | X | | | | X |
| 35. | (J. Doe XIII) | Supervisor of Pharmacist (J. Doe XII) | | X | | | | X |
| 36. | (J. Doe XIV) | Administrator | | X | | | | X |
| 37. | (J. Does XV) | Medical Grievance Committee Members | | X | | | | X |

18

| Defendant # | Name | Title | CMS | FCM | Employed / Working At |  |  |  |
|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  | TBD | DOC | TBD | DCC |
| 38 | (J. Doe XVI) | Medical Grievance Cmte Members  after 11/8/05 |  | ✗ |  |  |  | ✗ |
| 39 | (J. Doe XVII) | Pharmacist  about 1/24/06 |  | ✗ |  |  |  | ✗ |
| 40 | (J. Doe XVIII) | Medical Grievance Cmte Member  about 11/22/05 |  | ✗ |  |  |  | ✗ |
| 41 | (J. Doe XIX) | " |  | ✗ |  |  |  | ✗ |
| 43 | (J. Doe XXI) | Pharmacist on Duty 4/11/06 to 5/11/06 |  | ✗ |  |  |  | ✗ |
| 46 | (J. Doe XXII) | Mental Health Staff since Dec 1, 1999 | ✗ | ✗ |  |  |  | ✗ |
| 49 | (J. Doe XXIII) | Informal Resolutions -Medical 10/19/05 |  | ✗ |  |  |  | ✗ |
| 53 | (J. Doe XXV) | Medical Staff |  | ✗ |  |  |  | ✗ |
| 47A | Anthony R. Cannuli  Psychiatrist, Dr | ✗ |  |  |  |  |  | ✗ |
| 61 | (J. Doe XXXI) | Dietician |  | ✗ | ✗ |  |  |  |
| 62 | (J. Doe(s) XXXII) | Supervisor(s) of Medical Services for DOC |  |  | ✗ | ● | ✗ |  |
| 63 | (J. Doe XXXIII) | President /owner or alike of | ✗ |  |  | ● | ✗ |  |
| 64 | (J. Doe(s) XXXIV) | Supervisor(s) of Medical Services for DOC | ✗ |  |  |  | ✗ |  |
| 65 | (J. Doe XXXV) | President/ owner or alike of | ✗ |  |  |  | ✗ |  |
| 47B | (J. Does XXXVI) | Psychiatrists since Dec 1999 | ✗ | ✗ |  |  | ● | ✗ |
| 68 | (Jane Doe XXXVII) | Delaware Supervisor of DOC Dental |  | ✗ |  |  |  | ✗ |
| 71 | (J. Does XLIV) (Jamel Injury) Convalescent care Attendant | ✗ |  |  |  |  |  | ✗ |
| 74 | (J. Doe XLV) | Optometrist | ✗ | ✗ |  |  |  | ✗ |
| 77 | (J. Doe(s) XLVI) Psychiatrists | ✗ | ✗ |  |  |  | ✗ |
| 78 | (J. Does XLVII) Psychologist Assistants / Clinician | ✗ | ✗ |  |  |  | ✗ |
| 79 | (J. Doe XLVIII) Supervisor of Maloney | ✗ |  |  |  |  |  | ✗ |
| 81 | (J. Doe XLIX) Medical Staff Member, Scheduling Transportation | ✗ |  |  |  |  |  | ✗ |
| 80 | (J. Does LI) Medical Staff | ✗ |  |  |  |  |  | ✗ |
| 82 | (Jane Doe LII) Dentist | ✗ |  |  |  |  |  | ✗ |
| 85 | (J. Doe LV) Sick Cell Nurse on Duty |  |  | ✗ |  |  |  | ✗ |

19

| Defendant# | Name | Title | Employer | | | Working At | | |
|---|---|---|---|---|---|---|---|---|
| | | | CMS | FCM | TBD | DOC | TBD | DCC |
| 85 | J. Doe LV | | | | | | | |
| 86 | (J. Doe(o' LVI) | Dentist since J. Doe LII | X | X | | | | X |
| 95 | (J. Doe LXI) | Optometrist Since Dec 1999 | X | X | | | | X |
| 96 | (J. Does LXII) | Mental Health Staff on duty Apr '06 | X | | | | | X |

<u>Defendants Addresses</u>                    ok

State of Delaware                    Delaware Mental Health Assoc,
Dept of Corrections (            James Lafferty, Exec, Dir.
245 McKee Rd                    100 West 10th Str, Suite 600
Dover, DE 19904                  Wilmington, DE 19801


State of Delaware                    State of Delaware
Delaware Correctional Center    (Former) Attorney General Jane Brady
(118) Paddock Rd                  Superior Civil Court New Castle City
Smyrna, DE 19977                 500 N. King Str, Ste 500
                                 New Castle, DE

State of Delaware
Dept of Justice                    Dr. Sitta Coombeh-Ali, MD
Attorney General                  802 Ridge Court
820 N. French Str.               Middletown, DE 19709
Wilmington, DE 19801-3509

                                 First Correctional Medical
State of Delaware                    Services
Delaware Center For Justice      Daniel L. McKenty
100 West 10th Str, Ste 905      C/o McCullough + McKenty, P.A.
Wilmington, DE 19801             1225 North King Str, Ste 1100
                                 POB 397
Community Legal Aid Society, Inc., or    Wilmington, DE 19899-0397
Disabilities Law Program         Contracted with State :
100 West 10th Str., Ste 130     July 1, 2002 to June 30, 2005
Wilmington, DE 19801

for Correctional Medical Service:

Kevin J. Connors

c/o Marshall, Dennehey, Warner, Coleman, + Goggin

1220 N. Market Str., Ste 500

PoB 8888

Wilmington, DE  19899

Contracted by State:

    July 1, 2005 to present

| | C.M.S |
| 12647 Olive Blvd |
| St. Louis, MO 63141 |
| |
| N.A.M.I |
| 884 Walker Sq. |
| Walker Rd |
| Dover, DE 19903 |

Federal American Disabilities Act and Rehabilitation Act Employees Counsel:

_ Solicitor General, Office of

_ Dept of Justice

_ Tenth Street and Constitution Ave, NW

_ Washington, DC 20530

Delaware Department of Corrections Council and Board members, for whatever was:

_ Dept of Corrections Delaware

_ 245 McKee Rd

_ Dover, DE 19904

_

Delaware Dept of Services for Children, Youth, and their Families
    Council and for Board members, whatever was on duty since Dec 1, 1999,
Delaware Devision of Family Services, Kent County
    and State Central Office Director, whoever was on duty
    since Dec 1, 1999.

220

FOR ALL CLAIMS:

1. Defendants directed, had knowledge of or acquiesced in the deprivations of my federal rights, and caused the deprivations under color of law.

2. Supervisors implemented deficient policy or custom or procedure and continue to be deliberately indifferent to the risks *excessive of damage* to me and as a member of class (es), or the supervisors' action(s) or inaction(s) were/are the moving force behind the harm suffered *or risks thereof excessive to* me.

3. All actions or inactions occurred to me at the Delaware Correctional Center.

4. All violations in claims by Defendants show a pattern and practice of systemic exploitation, abuse, or gross or repeated neglect of a ward of state – me, *to dangerous or overly restrictive conditions;*

5. Claims could not be brought any sooner nor better due to custodians/Defendants continues obstructions to information, education, resources, tools and entitlements for my disabilities, and proper and professional correctional conditions.

6. Systemic deficiencies in staffing and procedures effectively denied me professional health, safety and security care, professional penological conditions, making unnecessary suffering and fear and risk of further damages inevitable for injunctive powers; *overcrowding deprived me also of safety, health, security;*

7. Each violation by a Defendant, individually or in totality with one or more other violation constitute a federal rights violation.

8. The reasons why this statute of limitations cannot apply in this case include: A. I was, and still am, being prevented from asserting these and other claims as legally necessary as can be seen by prior rulings on this case, due to my custodians/Defendants working in harmony to deprive me, and as a member of a classes of inmates and disabled persons,  of the legal and ethical access to described in this Complaint for the legal access to the courts, in the interest of equal and fundamentally fair justice for all. B.  Defendants as my custodians caused/cause

extraordinary circumstance by: 1) obstructions, 2) denials, 3) disabilities, 4)

inabilities/incapacity/incapability to me which are beyond my control making it impossible for

me to file claims and defenses in other cases, also legally, in a timely, equal, effective, meaningful,

capable and adequate manner causing actual legal injuries.

9. R.I.C.O. violations or alikes exist, upon info and belief by these Defendants, certain ones, which are still part of the obstruction, effectively denying me access my legal access to information for legal access to courts, since Dec 1999.

10. Brely failed to enforce professional standards required by state licensing, certification and probably registration requirements on Defendants legally and ethically caring for wards of State as me since Dec 1, 1999. Fails to do professional quality control for these state employees and contractors employees in this complaint and to be discovered, And fails to adequately staff, requip as determined by professional health authorities, and professional penological authorities, and adequate space and facilities as for law libraries or information receiving by inmates as me unobstructed.

11. Defendents of this State, officers and employees, fail to uphold their codes of conduct and ethics in several ways since Dec 1, 1999, too many to mention here, due to page limit imposed by Court. Omissions involve callous disregard for ethics or law, reckless indifference to rights. Concealment or fraudulent misrepresentations prevented me gaining of facts and abilities sooner to file this Complaint in a more effective way for no claim to be dismissed, and was intended to keep me also off track into inquiry. Injuries or conditions legally sufficient were inherently unknowable because of a technical specialty as penology, medical doctors, or sufficiency for any laymen knowledge. Grievance, legal, and ethical rights were actively concealed. Defendants worked in harmony to self dealing contrary to laws or ethics.

THE FOLLOWING VIOLATIONS INVOLVE EACH CLAIM AGAINST DEFENDANTS
INVLOVING ABUSE OF AUTHORITY, OMISSION OF DUTY AND RESPONSIBILITY,
OBSTRUCTION OF JUSTICE, OFFICIAL OPPRESSION, AND ABUSE OF PROCESS, AT
LEAST

1.      Brady, Taylor, Howard, Talley, Welch, Snyder, Carroll continued to allow the illegal cost
cutting measures they employed to omit or deny or delay professional prison conditions,
including all health care areas, working under conspiracy and corruption as organized crime with
contractors, or among themselves, operating with damaging conflict of interest to their duty, my
proper care, state representatives chose to take into custody and to care for.

2.      All supervisors fail to control, train, and/or supervise Defendants/subordinates and their
class members by professional standards and ethics since Dec 1, 1999 for me as a ward of this
state.

3.      Delaware State Department Secretary, Commissioner, Board(s) and/or Council(s) are
responsible for my good mental and physical health, safety, and security including county and
state Division of Family Services, Department of Services for Children, Youth and Their
Families including (J.Does LXI) and (J.Does LXIII), and/or Dept. of Corrections with its
Delaware Correctional Center are 'persons' within meaning of 42 U.S.C. @ 1983, et. Al., even
though they are also sued in their official capacities for failures to uphold these laws made for
checks and balances system for me and each of my family members, being a member of the
protected class – the family, rights for the disabled, and wards of state as me, since Dec 1, 1999.
Governor Minner's Memorandum of Understanding causes all state departments and their
employees to help each other to fulfill their legal and ethical duties and purposes, which has not
been done for me and my family members as started to show in this Complaint.

4.      Brady and Taylor at least hired the medical contractors, and who knows what else since
they breached their public trust, which would conspire with them to allow lower bids or no
proper competitive bid contracting, to allow these criminal and civil damaging conditions to
wards of state like me, since Dec 1, 1999.

**CLAIM 2:** Serious Medical and/or Health needs not provided, prevented, diagnosed and/or treated at least professionally

1. Dunn, Merson, Rogers, (J.Doe XIII), Medical Grievance Committee to be name, Pierce, Welch, Eller, delay or deny medical and health information from 8/20/2005 till after 4/19/2006. (Grievance # 1668).

2. Nancy (Doe) denied medical treatment for serious spinal cord injury, on and about 9/13/2004. Wolken. Munson, Ali participates in denial. Merson delays emergency grievance which was neither required nor correct medical nor health conduct.

3. McCreanor denies medical grievance as if medically qualified on and about 2/4/2006. (22364)

4. Merson delays emergency medical grievance, which should not have been required to be filed to only maliciously cause further delay for 17 days, on and about 5/16/2006, as if medically qualified. Rodweller, Eller, Gordon, Heddinger participates in denial of grievance wrongfully. Welch and Wright continue to-date to fail to reply to this emergency grievance.

5. (J.Does XLIV) failed to provide convalescent care during immobilizing spinal cord injury and recovery. No food ordered by medical staff during that time. No food brought by guards (J.Does XIV) on duty. No wheelchair during 14 day recovery. No diagnosis and treatment. No patient information and participation rights provided. On and about 5/16/2006.

6. (Jane Doe III), (J.Doe IV), Carroll, Pierce, Malaney, Merson, Gordon, Plante, Rodweller, (J.Doe V), (J.Doe VI). Robins, Howard, on and about 12/29/2005 to 4/19/2006, delay or deny diagnosis and treatment for severe throat pain and suffering.

7. (J.Doe VII), Merson, Burris, on and about 8/31/2000 to present, denied professional referral to medical specialist for thyroid disease-endocrinologist, chest pains-cardiologist, mental health-psychiatrist, *nephrologist - kidney disease (other grievance 2007)* denying me disabilities entitlements and normal, daily, major life activities due to delayed or forgotten self-care, work, and others not to be disclosed on this Amendment due to health care privacy rights and the internet posting of this Motion. *And maturopathy is not made available, inplace of more damaging man-made products,*

8. (J.Doe LV) on duty before Apr 27, 2003, who saw me for severely debilitating sleep-causing medication, Chucks, Ali, never replied to needed non-sleep-inducing allergies medication.

9. Merson, Dunn, Rodweller, Gordon, Pierce, Malaney, Welch, Howard, Chucks, on and about 11/10/2005 to present, fail to provide professional prevention, diagnosis and treatment for thyroid disease causing permanent injuries to me because of lack of proper nutrition, intermittent medications, and others to be communicated.

10. April 11, 2006 and September 2006, during medical interview, Dr (Doe) and now Chucks refer me to endocrinologist. But I have not been transported yet to specialist. Malaney, (J.Doe XLVIII), (J.Doe L), (J.Doe XLIX) fail to cause transportation since then.

11. McCreanor denies this grievance as if medically qualified, illegally acts as my court appointed counsel, practices law without a license, and denies my patients rights again to total information participation in my medical and health care, on and about _____

(20823)

12. On and about 4/27/2005, the following defendants: A. cause or enforce illegal policy and procedure for taking of co-pays by taking of my few dollars I may have as and

28

indigent ward of state, and charge my inmate account anyway, even when I have no money in it allowing it to go into the red without limit, which only further deprives me of other necessities of life the Dept of Corrections supervisors fail to supply in the first place, causing inhumane conditions , domino effect, causing me to be an indentured servant; B. deny allergies to be a 'reoccurring condition' when they obviously are in my case; C. Merson wrongfully delays this grievance too. Wolken fails to do informal resolution. Kratsa delays informal resolution until 5/25/2005. I was unknowingly and unintelligently coerced into signing this grievance, without knowing my patients rights without getting relief, and without entitlements for my disabilities.

13. On and about 11/10/2005, was coerced and tricked into signing for prescription glasses. If I wanted them, I had to sign that I would pay for any repair or maintenance for them. McCreanor illegally denies this grievance, fails to inform me of my rights, without being given proper notice and hearing for new custom created to sign for glasses. McCreanor delays delivery of reply or back-dates. (20776)

14. On and about 12/18/2005, McCreanor denies reoccurring condition problem, back-dates or delays delivery of reply. (22386)

15A. On and about 1/2/2006, McCreanor and Merson deny: A. illegal taking for medical co-pay, B. necessity of life to medical services, notice and hearing and time to information access to legal rights, C. fail to provide patients rights, D. deny ability to file meritorious grievances in timely manner, E. Dept and Center rules involved illegally implemented, F. grievances inherently, maliciously, systemically denied or obstructed. (22773).

15B. Highly contagious MRSA diseased inmates housed among high risk group in T2 since about March 2007, contrary to professional practices, by medical staff Crystal + Van Dusen, et.al.

29

16. On and about 4/29/2004, (J.Does LI) denies diagnosis and treatment of severe foot pain and suffering. Was forced to file a grievance. (3178)

17. On and about 7/28/2005 to 12/28/2005 Merson delays grievance, Dunn delays informal resolution and provides No relief to proper vaccinations procedures and medical record keeping. (J.Does VI) fail to respond to correct these medical violations and grievance procedures not followed. (16283)

18. Brady, Taylor, Howard, Talley, Snyder, Carroll continue to violate HIPPA law by omitting privacy rights to my medical information by requiring medical grievances to go through security staff, which continues also to deny or delay professional medical services.

19. Harmful medical and health conditions to me caused by Brady, Taylor, Howard, Talley, Snyder, Carroll, Pierce, Burris, CMS and FCM employees and owners responsible for my proper care, continue to pose an unreasonable risk of future harm, as well as those debilitating health conditions that continue to cause harm to me, since Dec 1, 1999 to present. Thus, custodians, caretakers, guardians can not care for me, fail to advocate for my rights properly, therefore, proper relief would be to release me immediately from custody to stop these damaging conditions to me.

20. Medical staff and physician, mental health, and dental, and optometry staff + doctors act as if under directions by the employer regarding medical decisions to not be professional and ethical to save money since Dec 1, 1999,

21. Brady, Taylor, Howard, Talley, Snyder, Carroll fail to report damages caused to me as a ward of state and similarly situated causing misleading government reports and statistics to continue cover-up and damages to me since Dec 1, 1999.

22. Sick calls are wrongfully used for emergency illness or injury by above emergencies and defendants and dates.

30

**CLAIM 3:**  Serious dental needs not provided, prevented, diagnosed and/or treated at least professionally

1. Merson and Burris interfere with proper dental care on and about 6/8/2001 by denying access and services as if medically qualified.

2. (Jane Doe LII) and every dentist since Dec 1999 (J.Doe(s) LIII) omits or denies prevention services, patients rights to be informed to be part of treatment, instead being closed-mouthed to cover-up, denture cleaning, proper teeth cleaning, deny teeth cleaning since I cannot pay co-pay as indigent and indentured servant.

3. McCreanor, on and about 6/5//2005 and 12/27/2005, continues to deny flossing method as other prisons have, and as if he is qualified to answer legal problems for ward of state that custodians fail to fix, and as if he is qualified to make dental decisions. The current professional standard is a water-pic method.

4. Burris, Merson, McCreanor also abuse their authority and grievance system on and about 6/8/2001, 6/5/2005, 7/15/2005 delaying or denying dental services for prevention of serious risks of damages to me.

5. Merson and Dunn delay medical grievance on and about 11/10/2005.

6. Welch, Eller, Weigner, Gordon deny dental services on and about 3/2/0/2006, fail to refund co-pays and work with their supervisors to correct wrong policy/custom, causing denial of necessities of life in status as ward of state, temporary state representatives chose to make me, fail to uphold my patients rights and custodians duties to cause No damage to me.

7. (Jane Doe XXXVII) denies me x-rays of my teeth due to my indigence, and denies dental and denture cleaning for same reason.

8. Howard Upholds my grievance but fails to enforce it on and about 4/19/2006.

9. Carroll, on Mar 23, 2006 appeal, fails to respond to relief to severity of dental situation to-date.

10. McCreanor denies grievance on and about 12/27/2005 for dental cleaning method.

11. Brady, Taylor, Howard, Talley, Snyder, Carroll, CMS owner, FCM owner and their responsible supervisors, fail to provide, 24 hour emergency dental care, here at Delaware Correctional Center since Dec 1, 1999.

32

Claim 4: (Realleged only) - Continues Interference with Treatments, Delays caused Substantial Harm, or at risk of, Great pain borders on barberous, Repeated Negligence To Obvious Problems, Inadequate Systems As A Whole, Significant Affects To My Daily Activities, Threat of Future Health Damage, Denied or Omitted Patient Rights, To Required Medications, Security Staff Members denied or Delayed Required Medication in Grievance Forms:

By Merson, Eller, Keefoe, McCreanor, (J. Doe LIII), (J. Does XVI), Welch, (J. Doe XV), Howard, Dunn, (J. Does XVII), (J. Does XXXII), (J. Does XXXIV), (J. Does XXXV), (J. Does XVIII), (J. Doe XVII), (J. Doe XIX), Rodweller, Gordon, Heddinger, from 2005 when I finally became capable enough to start the paper trail, since my custodians failed to orient me to my right + procedures in the beginning of Dec 1999, so they keep doing their damages and cover-up to me, and provided me no advocate to uphold these rights my custodians were responsible for.

CLAIM 6: DENIAL OR OMISSION TO PROFESSIONAL OPTOMETRY SERVICES

1.      Merson and McCreanor fail to process medical grievance dated and pyut in grievance box on 11/10/05 for proper optometry services. No reply to date.

2.      Another medical grievance dated and put in medical grievance box on Nov, 2006. No reply to date. Merson and McCreanor responsible for not responding to procedure.

3.      Optometrist, the same one hired since Dec 1999, fails to provide professional optometry services to me including glaucoma test, astigmatism information and prevention, diagnosis and treatment, and anything else I should know about my eyes, *and patients rights.*

4.

Claim 8 - Denials, Omissions, and/or Obstructions To Professional Mental Health Services Since Dec 1999.

These Defendants below caused significant disruption in my everyday life which prevents me from functioning normally since Dec-1999. Fail to have an American Disabilities Act and Rehabilitation Act approved facilities, equipment, conditions, services, and programs. Use improper restraints from prison rules illegally maintained for my disabilities to cause ⬛ damage to me. Fail to prevent, diagnose, and treat me for my disabilities causing other custodians not to do their job for disabled like me, having worsened my conditions. Use excessive mental force further damaging me with punishments and/or threats of more, freely dished out maliciously, abusively, grossly neglectfully, to exploit me due to my disabilities, and caused me damages I was incapable of documenting or communicating to custodians due to my disabilities before the below dates, and hearing problem due to excessive noise, threats and violence constantly overheard, or confronted with by violent people, when I am NOT violent at all.

1. Brady, Taylor, Howard, Talley, Welch, Snyder, Carroll, since Dec 1999, fail to ensure these services are professionally provided, fail to control, train and/or supervise these contractors by law and ethics, fail to have independent peer review, fail to investigate actual condition by communicating with the front-line inmates affected by these services, fail to proper quality control, which has allowed these contractors to have caused me severely debilitating disabilities over these years, to-date, not having been capable to sooner communicate these problems to a court, having had no sufficient voice nor advocate as custodians, caretakers, and guardians are responsible ⬛ to be for me.

2. Mental Health Staff member to be named stamped sick call slip received on Feb 27, 2006, but continues to omit his/her/their duties to me still, sweeping my symptoms, fail to screen, to diagnose and treat me professionally.

3. (J. Does X XII) including Cammile to omit professional ⬛ mental health care

35

for me since Dec 1999, failing to diagnose my symptoms.

4. Two more sick-call slips cause no answer Apr 10, 2006 and Apr 26, 2006 from mental health staff on duty on and about these times.

5. Cannuli, and staff members on duty continue to ignore my symptoms from grievance dated May 10, 2006. Disabilities continue to cause me mental, emotional and physical damages, legal damages, self-care, health care, and all other daily, major life activities.

6. Merson + McCreanor fail to answer medical grievance mailed Nov 4, 2006.

7. Mental Health staff has severe turn-over problem due to destructive conditions to patients and their inability to do the right thing for patients, and due to being continuously understaffed since Dec 1999, upon info and belief. Cannuli had about 250 patients in May 2006, when maximum professional standard is 90 per psychiatrist.

8. Understaffing problems, and unprofessional conditions caused by Defendants in item 1. above, CMS and FCM supervisors and owner(s). (J. Does XXX II ), (J Does XXX III ), (J. Does, XXXIV), (J. Does, XXXV) since Dec 1999, denying me proper care.

9. Cannuli, and mental health staff I have seen since Dec 1999, make me leave in 15 minutes after each appointment interview, allowing symptoms to continue, failing to communicate with me in a professional to screen and assess me for proper prevention and treatment plan.

10. Disabilities Law Program { J. Doe XXIX} under Community Legal Aid Society, Inc., since their established and Dec 1999, fail to do their duty for the government assistance they receive, discriminating against me as a member of inmate class that my civil rights are upheld, and fail to advocate for me as a disabled person made so by these custodian Defendants.

36

11. No patient information rights have been provided for me as should professionally be done, and no unobstructed access to mental health information has been provided by these Defendants of this claim since Dec 1999.

12. (J. Doe XLVII), (J. Does XLVI) entered also into this conspiracy, corruption an organized crime in state government to deny me these services since Dec 1999.

13. All mental health staff who had contact with me since Dec 1, 1999 failed to identify me as a special needs inmate, and failed to provide that info to classification for proper housing.

CLAIM 11: DENIAL OR OMISSION OF DISABLITITY RIGHTS

1.      CMS and FCM supervisors, owners and DOC supervisors responsible for since Dec 1,

1999 work in harmony to deprive me, as others here, all of these disability rights for many

reasons. This denial directly affects almost all the other claims in this Complaint, which

effectively still denies me access to many other federal rights so far disclosed as best as I can in

this Complaint, and these custodians fail to hire sufficient staff to handle all these issues for me

as my necessities of life.

2.      These custodians Brady, Taylor, Howard, Talley, Snyder, and Carroll caused this

Complaint by failing to do their duties, causing this waste of government funds and this Courts

time since Dec 1, 1999.

CLAIM 12: OBSTRUCTION OR DENIALS TO PROPER ACCESS TO COURTS

1.      Johnson, since Dec 1, 1999 to Dec 31, 2006, continuously denied or obstructed my proper access to information, resources, and tools needed for bringing my cases in a timely, effective, equal, meaningful, capable and adequate manner meritoriously for the courts because of policies and customs created by him and others, by not properly having them officially approved and adopted by administrative procedures and laws, which has caused me and my family many damages, contrary to what should have been done as follows:

2.      He failed to provide my disabilities rights the entire time;

3.      He denied me ability to file a direct appeal due to these obstructions or denials, a motion to dismiss and post-conviction relief motion for my criminal case in a proper manner, causing me file things late, incomplete, researched properly, written better and shorter efficiently, caused me to file incomplete motions, continues to delay contemplated cases which need timely feeling causing more damages to me and my family;

4.      He keeps empty, adjoining room to L building law library unusable for about 2 years so that inmates like me could not use to get better access to courts;

5.      He denied my confidentiality rights to my legal work by requiring him to see and read parts of it;

6.      He denied me ability to read certain cases, sheppardize them and other legal matters;

7.      He provided no book list of other legal books available from other sources and to the ones he has in the law libraries, since he would not allow me also access to these basic legal materials others have access to like non-indigent, non-imprisoned, and attorneys have;

8.      He allowed my indigence to interfere for my timely, equal, effective, meaningful, capable, and adequate access to the courts;

9.     He allows the law libraries not to grow with the prison population effectively,

continuously decreasing the access time to information, resources and tools directly effecting my

legal and ethical access to the courts in several ways;

10.     He denies or omits me also information, resources and tools as a standard lawyers office

have, and I would have access to on the outside of this prison, and as other prisons have, in status

as ward of state, as necessities of life, for proper access to the courts;

11.     His maliciousness and arbitrary and capricious conduct to obstruct or deny access to the

courts is obvious to a reasonable person;

12.     He discriminates against my access to these things, prejudicing all my cases, while giving

other certain inmates more access time to information, resources and tools, during those times;

13.     He works in harmony with Kobus and Burris to deny me proper access about 3/23/2002

and 7 Aug 2002, prior to and after these dates failing to orient and advocate for my rights, while

severely disabled and incapable to have a voice and communicate these violations, and to

navigate the redress of grievances as my legal custodians, in my status as ward of state;

14.     He causes some my law library appointment request slips to disappear to deny me access;

15.     He fails to give me more access time per prison rule when a court deadline exists;

16.     He fails to do his professional duties as a librarian by state standard;

17.     He fails to provide me these rights during my detainee status Dec 1, 1999 to March 2001;

18.     He denies my legal access to the courts by failing to photocopy requested legal

information to read back in my cell for unobstructed access to the courts as a necessity of life;

19.     He denies me directly needed information from the State Codes Commentary pages 200

to 399 purposefully removed or allowed by him;

20.     He allows no browsing the stacks for my legal needs as necessity to life; no browsing

denies time to compare legal theories, formulate ideas and other research as others can for a case

plan;

21.    He causes some inmates to tear out some gapes from books because he fails to photocopy for the needs of inmates as other prisons do, causing further delays to information by requiring library clerks to sign everything in or out even while in the law library;

22.    He allowed on 2, 15 minute appointments per week to talk to inmate paralegal and read legal books during my detainee status; severely continuing to cause me and my family irreparable damages;

23.    He closes the pretrial law library for 9 months for all inmates without proper authority; his supervisors are in on this conspiracy and corruption; Kobus, Burris, Snyder, and Brady, Taylor, Howard, Talley for failures to have proper policy and procedures to not allow this kind of abuse of authority, official oppression, abuse of process, stealthy encroachments, unnecessarily broad conduct and more;

24.    He fails to cause adequate shelving, study space, chairs, tables for me also at the pretrial and L building, compound law library; it has been 17 seats for 1600 inmates till 2007; He delayed opening 8 more seats for those 2 years or more;

25.    He presumes to judge for me the time I need access to do my legal work, my abilities, and number of cases I am forced to bring;

26.    He denies me ability to vigilantly oversee actions or prevent failures of my cases, to get court dockets from the internet on his desk, and court web site information deemed 'important' by the federal district court for my cases, and causes me to spend more money and causes delays in my legal action more then non-imprisoned or attorneys have to put up with;

27.    He arbitrarily and capriciously denies me also entering or leaving L building during scheduled appointments; even when other inmates are moving about the compound to go to and from their programs and in and out of this building; no library works like that;

28.    He first denies me out of copying attachments to my legal motions as pro se citizen as he has done to others; he is not my court appointed counsel to deny me; he practices law without a

license; only because by accident I had seen a legal case in a book showing him that he cannot do this, did he see his error, which he caused the current pretrial state employee law library clerk to do, and who knows who else, since about I first saw this happening in 2005 or so; Kobus fails to control, train and supervise properly;

29.    He denies access to information needed for the courts with a court deadline saying I need to put in for a court extension, which just wastes more court resources, instead of him just doing his job to let me get to the law library for the needed info, resources, and tools;

30.    He abuses his authority to beguile and frustrate my legal process when prison policy states " whenever a court deadline exist" an inmate is given preference to scheduling for law library appointments and does apply this policy equally to me also, policy does not allow for discretion, prejudice or discrimination for him to employ on whom ever he wants;

31.    Photocopying services for all kinds of legal work are now a days an indispensable service and a necessity of life as non-imprisoned, non-indigent, as my opponents in cases have, his custom and his supervisors condoning such conduct of just allowing me also only motion copying service directly effects my legal access to the courts for drafts, plans, organizational matters for my legal work as others do; it must be free to the indigent as me.

42

Claim 17 - Illegal Censorship of Legal Mail

1. (J. Doe(s) XXIV) deny my legal mail nine pamphlets on and about _____.

2. (J. Does XIV), Hovel returned my legal books to publisher without my knowledge on and about 2004.

3. Probable cause atleast now exists about my other mail having been censored and not delivered to me. Those Defendants lost their duty to public trust.

4. 19322 wrongfully denied by Menon / McCreanor after Oct 7, 2005 interfering with my mail rights.

5. Carroll and Pierce fail to respond for need of me of state mail by me, 5 P43, since that system already exists, since I am a ward of the state, and anything involving me is official business.

Menon denies grievance appeal obstructing redress of grievance right on about the same time.

6. Grievance dated Oct 7, 2005 about Menon interfering with grievance process and my mail, has no reply answer to-date.

7. Grievance dated June 26, 05, received answer as # 18612 on Oct 27, 2005, four months or 120 days later when Burris allegedly denied grievance on Oct 13, 2005, and Vargas on July 2005 interfering with redress of grievance and to right to mail.

8. Appeal to Carroll on Oct 27, 2005 caused no reply.

9. No reply to-date from DOC Grievance Administrator on duty (J. Doe ____) during grievance appeal of 18612 & 19322.

10. Multiple requests to return legal materials to inmate (me) needed for pending cases, by Defendants above at those times, states a claim.

43

CLAIM 19: INHUMANE OR UNPROFESSIONAL PRISON CONDITIONS AS

NECESSITIES OF LIFE IN PLAINTIFFS STATUS AS WARD OF STATE

1.      Brady, Taylor, Howard, Snyder, Carroll, Little, Kobus, Burris, Pierce, Harris since Dec

1999 fail to provide unobstructed access to **information, resources and tools**, for timely, equal,

effective, meaningful, and adequate **access to the courts** for me, just like non-indigent, non-

imprisoned, non-disabled and attorneys or opposition has, at the law libraries in DCC and from

the **internet,** updated precedence is needed on this in an every more modern, civilized and

decent society, communication rights fail to be least restrictive, to prepare and present my cases

in a legal manner; since no other ways and means is available to me here under these

custodians/defendants, working in conspiracy and corruption to deprive of these necessities,

causing my motions to be filed late, unequal, incomplete, ineffective, unmeaningful, and/or

inadequate in too many ways to mention here due to page limit ordered by this Court.

2.      Brady, Taylor, Howard, Talley, Snyder, Carroll, since Dec 1999, fail to provide me items

from the commissary or other source, as a legally indigent for **necessities of life** and since no

income is provided to me by them, my custodians;

Same Defendants and times, cause following conditions to my detriment, degrading, prejudicing

and/or discriminating conditions for my legal work, health, safety, and security;

3.      fail to provide me also humane housing **temperatures** in the summers reaching extreme

heat conditions, and as a chronic care patient while in overcrowded, illegal code capacity in

buildings B, C, D, E, T2; and in the winter, during excessive cold, only a 'fall' coat without a

hood is provided, and no rain gear for the year for wards nor indigent, nor sufficient ice and a

cold water fountain is provided on each tier without having to ask a guard for access;

4.      fail to allow care **packages**, penologically approved vendors to mail items to us;

5.      deny me family 'preservation, protection, and reentry rights' by exploitative telephone

costs, time limits and calling time limits;

44

6.      deny me also access to **public libraries** shut-in services including (J.Doe XXXVII) being part of conspiracy and corruption;

7.      fail to provide a systemic approach for determining the library services needs for inmates with no qualified library services administrator; and fail to provide full-time access and evenings for all inmates, 5 days a week;

8.      with Merson and McCreanor, Leban fail to follow or enforce **grievance** policy and procedures, administrative law and procedure for my grievances also;

9.      fail to provide therapeutic **visits** with my family members, instead were destructive;

10.     fail to provide a source to read the basic management tool of a professional, all inclusive, independent **impact statement** before any change is made for any group of inmates to prevent any risk of damage, health, or safety or caretakers duty for improvements;

11.     cause me to become an **indentured servant** by their expectations to pay for certain things they should be providing for me as a ward of state they chose to take into custody;

12.     fail to provide a ways and means to make or purchase and send **gifts to family** members as part of family preservation and protection, to show love an concern;

13.     fail to allow me to provide daily family **picnics** and food to family picnics as I should as father for right habits, and preservation and protection; Thompson, Melbourne deny earned honor visit in summer 2006;

14.     fail to provide me free legal **postage and supplies** as indigent as needed; and free family postage and supplies;

15.     fail to provide me also non-damaging **living space**, now only 30 sq ft and confined to that area 78 % of the time; including T buildings only coded for 42 beds, and classified limited to 39; same while in detainee status; excessive noise, ventilation in single cells housing 2 people also causing me more communicable disease while in buildings B,C,D,E;

16.    allow only hallway use for **recreation time**, and only 3 hrs and 45 minutes per day; do not provide a recreation room for each tier of 50 people, nor allow recreation room use at all, all adding to the excessive and damaging noise levels to me also from overcrowding damages; and T buildings not provided with a table and chair at each bed limiting picnic table use due to obstructive policy/custom that they can not be used during about 45 minutes every 2 hrs until code green which is not necessary in that setting and causes delays to do my legal work having to pack it up each time when table space is need;

17.    fail to have certified or alike, and permanently posted in those areas, housing areas, programs, activities, conditions, services by the **disability** laws; including disability advocates (J.Does XLIII) who receive government funding, or fail to follow their professional ethics to discriminate against me because I am an inmate; were/are involved in this corruption;

18.    fail to provide me also federal **Water** Safety Act and **ground** and **air** quality rights since this prisons was upon info and belief built on a dump site;

19.    and Stevenson fail to provide proper **classification** to prevent damage to me for compatible cellies, don't allow inmate transfer requests until inmate on inmate violence is imminent failing to prevent risk, proper mental health evaluation be required, house me in excessive supervision and conditions for abuse and exploitation damages to me;

20.    took my money for legal **photocopies** when I was also indigent while they failed to provide me the necessities of life, making me choose between health products, food, postage and supplies, and other commissary items, and legal information-resources-tools needed for legal access to the courts, all not provided by my custodians; 21527; grievance dated Dec 16, 2005 denied by Little, Johnson, Burris, (J.Doe XXIII), Howard; made indentured servant;

21.    fail to provide prevent risk of harm to me also by not providing intake **orientation** as detainee and inmate when first arriving, long term class is provided for first timers in prison to

46

cover all areas, not just an update version for former detainees or inmates, for policies,

procedures and all inmates rights to prevent risk of damages such as I have received;

22.     through Hazzard and Henry continue to deny or harass me also about my possession of

**legal materials** I need for my cases; and as a disabled person;

23.     fail to allow me **personal property** also which other inmates are allowed;

24.     totally deny any **business or profession** be allowed to be done by me also;

25.     fail to provide sufficient and decency rights to partitions in **showers and bathrooms** for

privacy after doubling occupancy in such buildings as B,C,D,E,V,T's; male inmates observed by
female guards;

26.     fail to allow sufficient **reading materials** in my possession arbitrarily/capriciously;

27.     fail to provide equal privileges in **protective custody** as in compound, excessive cuffing;

28.     fail to provide me personal property protection be requiring me also to buy to buy a metal

box, too small to hold my property, and possible to break into by inmates, when state should

have large lockers permanently installed to not exploit every inmate to buy a box for their profit;

29.     fail to develop and implement policy and procedure to ensure the right of convicted

inmates to refuse to participate in activities and **programs**, without penalty, except for

'programs' mandated as part of sentence;

30.     with Knight and (J.Does XXXI) fail to provide a therapeutic diet for me also to stop the

damaging **food**; stop regimented meals to be 'open' to eliminate lines and required seating by

housing unit;

31.     fail to provide policy and procedure prohibiting inmates from supervising, controlling,

exerting or assuming ANY **authority** over other inmates in any programs such as family

problems, thresholds, and mental health workshops;

32.     fail to provide fulltime employment for any inmate who wants a **job**; with a wage

sufficient to purchase from the commissary and accumulate funds to assist me upon my release;

33.    fail to use, upon info and belief, all **commissary profits** are used for their non-profit intended for inmates only, but are abused by purchasing which the government should supply;

34.    fail to provide **vocational/educational** programs to meet the needs of the inmates where everyone that wants one gets one; no apparent systemic approach to determine personnel, space and things needed for these purposes to ensure all inmates access to staff and services;

35.    fail to provide written policy and procedure so that inmates have access to their **files and records**, setting forth procedures and conditions for that review in accordance with statutes;

36.    Fail to have policy and procedure, also available to any inmate on a daily basis, religious freedom to no keeping of any **info of inmates'** religious activities, as by Pennell, Heath, Holsterman, and ET. al. similarly situated;

37.    fail to allow **items mailed** into me which are not security, safety or health violation causes; total ban with any policy is probably arbitrary and capricious;

38.    fail to provide an administrative oversight by an independent, competent, **Ombudsman** or alike official in professional, penological standards and law for receiving and inspecting inmate complaints, since all prior personnel were/are dependent, not competent, causing or allowing these unprofessional damaging conditions;

39.    fail to provide with Pennell, Heath, Holsterman (J.Doe LXI), (J.Doe LXII) to my rights, proper prison conditions to my wife to my marriage rights to prevent divorce and my children's relationships to be improved;

40.    fail to provide state mail use for wards of state as me, its all official business;

41.    failed to provide professional **policy and procedure** which does not deny these needs;

Now are different Defendants and times involved:

42.    Following are defendants involved in grievance procedure violation(s) from Dec 1999 to present: Merson, Kobus, Taylor, Brady, Howard, Talley, Snyder, Burris, Carroll, (J.Doe LVIII), (J.Doe LIX), Harris law library access, Little, McCreanor, Robins,

43.    New updated precedence is needed to allow equal access to the courts and First Eighth

and Fourteenth Amendment rights to be able to possess word processor **laptop** and accessories

as pen and ink were required in the old days, as new computer laws show the standard ness in

this ever more modern, civilized and decent society; as custodians must provide without cost to

wards if those same tools are available for a price to other inmates for legal work;

44.

Plaintiff is Entitled To A Temporary Restraining Order and/or
Preliminary Injunction

In determining whether a party is entitled to a Temporary Restraining Order
and/or Preliminary Injunction, courts consider four elements below.
Each of these elements favors the granting of this Order.

A. Plaintiff is threatened with irreparable harm:

The Plaintiff Mr. Hartmann alledges that He is denied his Constitutional Rights
and Federal Rights and State Statutes. The continuing deprivation
of Constitutional Rights constitutes irreparable harm; Elrod v. Burns, 427 U.S.
347, 373 (1976).

B. The balance of hardship favors the Plaintiff:

The Defendants will have expenditure of funds which will have to
be proven by them to comply with TRD/ and/or P.I. laws. It is
in the interest of laws, rules, and regulations for which were created for
purposes favoring Mr. Hartmann, who suffers continued illegal prison conditions.

C. Mr. Hartmann's likelihood of success on the Merits:

The laws are clear on the issues, deliberate indifference nature among
Defendants is clear by their actions and history; its systemic and systematic. /

D. The relief sought will serve the public interest:

Because it will uphold the laws of the land, as per Complaint and Amendment
correct the damages as much as possible,
prevent future damages, and stop the undermining, treasonous like actions of these Defendants and
others doing similar actions in this State to other citizens similarly situated, regain
respect for our Justice System and prevent the degradation of this State and Nation by the
evil forces here at work. ADA, RA, PAMII, PAIR

Mr. Hartmann should NOT have to post security because He has been made indigent by State employees abusing their authority and obstruction to justice, in the interest of justice for all, due process and equal protection of the laws. The Court may waive said posting of security. _Chartes - Hernandez v. Smith,_ 541 F.Supp. 351, 385 n.30 (C.D. Cal. 1982),

Because of imminent dangers of life - mine also,
Needed for medical specialists referrals, mental health specialist referral, cease and desist obstructions to access to information, resources, and tools for proper access to the courts, and any prison conditions which qualify for same, and immediate proper professional oversight of all medical type areas to stop abuses of pain, suffering, greater damages to an inmate, enforcement of Disability Laws which are plain, and proper patients rights be permanent, publicly posted + strickly enforced.

51

This Plaintiff, and as one of classes, have had no plain, adequate, legal, or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to damaged irreparably by the conduct of these Defendants unless this Court grants the relief below which this Plaintiff seeks by law, and as one of the classes He is in.

## Relief Requested and Needed

Injunction is needed due to ongoing illegal practices by Defendants, money damages will not fix my injuries, and as one of classes, without this Courts help, Plaintiff, and class members, will likely continue to suffer illegal harm. I will likely succeed at a trial because claims are by law, except maybe one new precedence needed. I, too, will continue to suffer more if injunction is denied, then the Defendants will suffer if it is granted due to precedence, systemic and continuous deliberate indifference Defendants should know as any reasonable layperson can see. The injunction will thus serve the public interest to uphold the laws of the land and stop the damages, and have Defendants do their duties without wrong state of mind or conflict of interest.

Preliminary and permanent injunctions are needed to Order Defendants involved in each violation to have State, timely provide proper, policy and procedure to:

1. Enforce the federal Water Safety Act for all wards of State.

2. Enforcement and public postings of proper Patients' Bill of Rights.

3. Follow all preventive, diagnostic, and treatment options for proper medical care as per related association standards.

4. Quality assurance staff will cause no more grievances needing to be filed by wards of state by properly caring for any symptom in a professional manner.

52



5. Appoint independently certified Court <u>Monitor</u> to have no conflict of interest or wrong state of mind in any intention as state-wide systemic problem exists, until all infractions are corrected, and is reinstated if a new state contractor is contracted to provide any service directly or indirectly, to any ward of state, to insure all generally accepted professional standards continue, and are improved upon in an ever more modern, civilized, and decent society, and new proper, research exposes.

6. Provide direct communication line in person to Monitor for all wards of state after ~~state~~ <sup>departmt</sup>, exhaustion for grievances to insure communication is occurring, as it has not been by systemic, deliberate difference to an effective grievance system.   Past history of Defendants shows continues inability to self-monitor.

7. Competent, effective, independent Institutional Grievance Chairperson be appointed, and properly staffed to resolve grievances legally, & timely authority to enforce and uphold the laws of the land, not to extend damage to any ward, nor cause clogging up of courts with unnecessary Civil Complaints if Defendants, et al, did their jobs, and were held accountable in lower echelons.

8. Court certify the <u>grievance</u> procedures if State chooses to continue to use a grievance system.

9. Implement proper policy and written procedure for <u>timely</u>, enforceable imminent danger or emergency <u>grievances</u> for proper relief; medical and regular grievances.   How does a Ward get imminent relief when grievance system and communication to wardens, medical director are ignored?   Proposal - ward allowed immediate use of telephone, or if unable someone in his place, to call an ~~overseeing~~ Inspector General or Monitor who can and will act by law to stop damages.

10. Patients Bill of Rights, all inclusive, be permanently posted in all medical waiting areas. And noted for Point-of-Contact for proper relief.

11. Monitoring to insure timely transportation to outside medical services refered to.

12. Proper relief to stop running out of medication to save money, failure to order or distribute in a timely manner, or failure to renew medication in time.

13. Every new detainee and convicted person, or otherwise in state custody be informed properly of all their rights and privileges by law custodians should uphold for them and how to get timely relief from failure to do duty; DOC approved intake checklist for facilitators with sufficient detail with handouts of contacts information and important details required to be done, for each ward of state to understand. To be monitored properly and regularly update the intake class orientation.

14. Both, State and Federal administrative Procedure Act, be enforced by some state office for all state departments and lower government echelons, especially Dept of Corrections. See notices and hearings under these Acts be properly, timely posted for all Wards of state to properly participate before any change, implementation, or alike.

15. All Wards be called annually for proper dental-checkups as for physicals is being done.

16. 'Water-Pic' method be properly provided to each ward.

17. State Governor's Memorandum of Understanding be enforced by Monitor and state employees for each state agency to support its purposes particularly the Dept of Correction, Dept of Services for Children, Youth, And Their Families; ie to preserve protect families when family member is in custody, Dept of Justice, Dept of Public Libraries, Councils,

54

42 USC § 12101

Depts responsible for Administrative Procedure Acts, American Disabilities Act, Rehabilitation Act, and others mentioned here in, and yet to be discovered, State should know of, from illegal cover-ups of information.

18. Proper enforcement of professional mental health staff duties by Monitor, et.al.

19. Proper enforcement of professional dental staff duties by Monitor, et.al.

20. Proper enforcement of professional optometry duties by Monitor, et.al. All of these as should have been done if professionals did not have a conflict of interest, wrong state of mind intentions, or other selfish perversion to duty and professionalism.

21. Federal agencies enforcement of government funds received that they are used as intended, and not discrimitorily used against Plaintiff/ mentally disabled inmate, upon info and belief by Community Legal Aid Society, Inc employee(s) or volunteer(s), to uphold disableds' rights, privileges, and/or immunities.

22. All obstructions be removed for timely, equal, effective, meaningful, capable, and adequate access to information and libraries for each ward of State.

23. ~~Sued Defendants~~ Intake orientations, perhaps weekly, for new ~~in~~ in custody and those who want to retake the orientation for personal reason, to include rights of federal acts like the American Disabilities Act and Rehabilitation Act custodians have a duty to uphold for all wards of State.

24. Provide the minimum required living space of 64 sq ft per ward, and more for mentally disabled per professional standard. Remove obstructions from being locked up 78 % of the time in one's cell, with a celly or NOT, causing the common areas living space to

• •• 56

not be available. Open common areas up after count clears in appropriate minimum and medium security areas. Any ward that cannot behave can be properly written-up and moved to hire security. The current mass punishment and regimentation must stop because of its damages well known of by experts in the field of penology, as Defendants should know.

25. Provide, policy and procedure for five days good time for all those wards 'accepting' to live in less space then humanly proper for good-time, per month.

26. Provide proper policy and procedure, All bathrooms and showers be doubled since occupancy doubled wrongfully, or occupancy be reduced to half which is the original building capacity in certain buildings.

27. All bathrooms and showers have permanent, and immediate repairs, partitions between each fixture to block sight in a civilized society, with doors on toilet stalls and showers, like all other proper public bathrooms and showers like at government facilities.

28. Dept of Corrections, or alike, of Delaware be fined for any violation daily prolonged, and each ward treated uncivilized be properly compensated for any illegal condition we have been forced to live in due to custodian/Defendants deliberate indifference to professional conditions and standards.

29. Monitor or someone become an advocate for proper conditions for wards of State since none exists in this mini state, as larger states have. All other wards unable or disabled to uphold their rights, a.s.t.

30. Removal of all obstructions to timely, equal, effective, meaningful, capable, and adequate access to medical and health information for each ward.

OK

31.   Refund all monies taken, from each indigent ward of State, for photocopies fee of legal materials like at the law libraries and any other place like the business office, plus current interest, compensation, and restoration,

32.   Provide written policy and procedures, in a professional timely manner as for all other relief, for Dept of Corrections policy allowing personel, private property or government provided property allowing laptops and their accessories, with a 1' security cable and padlock permanently attached, for each ward of State.

33.   Provide written policy and procedures, legally by Administrative Procedure Acts as for all other new or changed policy, for providing free legal mail postage and supplies for all indigent wards.   Refund, restore, compensate all monies taken for this for each ward.

34.   On intake orientation for all new in custody, provide policy and procedure by Dept of Corrections, written purpose of Delaware Center For Justice and any other support services for Delaware Wards and their families, job descriptions of any of those employees or volunteers any ward may receive ANY assistance from, and any assistance a family member may receive Any assistance from, including any state and federal employees.

35.   Provide, proper written policy and procedures for all wards of State use of State Mail system, including any class entitlement or other service as should be provided like for indigents and mentally disabled.

36.   Do what needs to be done to stop all illegal mail censorship, or non delivery to recipients, or failures to provide appeal notice of censorship or alike to wards / recipients / addressee of mail and alike.

37.   DOC grievance system be immediately corrected, overseen, and provided proper policy + procedure of enforcement of upheld grievances, or be totally scraped, and be certified by a court.

38. Independent and neutral inmate *grievance chairperson* be made an independent job opening under State Personnel, or similar status to stop the obstruction of justice, for timely enforcement of laws, and stop the abuse, neglect, exploitation, and/or invidious discrimination of wards of State.

39. All natural and vegetarian menus be provided properly for those wards signing up for them, with plenty of food to not go hungry any more.

40. Unannounced monitoring regularly of actual *food portions* served on each tray for each ward, to stop abuses and leaving hungry from chowhalls. Served for proper nutritional amounts, being due to chow halls supervisors continues inability to do their professional duty.

41. Enforce DOC policy to use 'least restrictive means' to correct any problem among wards and or staff, not just protective custody as the only other means to correct volatile situation, Options like moving a ward to another cell or trade with a compatible ward, to another tier, or building. To stop the punishment of use illegal conditions in Protective Custody here at Delaware Correctional Center, upon info and belief. And to not punish the victim, but the perpetrator(s) be moved.

42. Classification staff be enforced to follow laws for mentally disabled, proper mental health evaluations, properly updated annual mental health evaluations for every ward of state, for proper treatment and rehabilitation, before assigning a bed in proper, non-damaging organized and harmonious' environment, and to reduce recidivism properly by actually treating wards, and not just superficial token treatment.

43. Transfer Request form be available for each ward to change for any good reason such as incompatibility with celly, as other professionally run prisons do, to move or be moved to another bed,

58

cell, tier, building, for an organized and harmonious environment for proper treatment conditions.

44. Proper accommodations be provided by each custodian knowing and applying housing rule that all legal materials of active and contemplated case(s) are allowed to be in wards private possession, or have daily, easy access without requiring a correctional officers assistance because of their swaying momentary attitudes, like for unlocking something, unless that is a wards choice to put up with, as a proper custodian would. Also see proper size storage locker be provided to every ward permanently installed at each bed. Proper minimum size surely atleast 5' tall, 2' wide, 18" deep, filled with shelves one foot apart.

45. That professional standards, more privileges be applied to lower security level housing, to not be all like maximum as here at Delaware Correctional Center, except for some token more commissary. Trouble makers are written-up and moved; but not for current mass punish ment to continue, and harmful regimentation for proper socialization.

46. Timely information from the internet be provided free in printed form from commissary profits or other source for education, First Amendment rights to speech, press, expression, communication, information; to stop cruel and unusual punishment to be kept ignorant, and for e-mail, and personal web-sites. By any proper means possible.

47. Provide self-service copier in law libraries as in Gander Hill Prison and others, to stop censoring, speech, communication, denial of press and information, at proper competitive rate as 5¢ charged on the outside, not some monopolistic, exploitative fee, commissary profits should subsidize like paying for all the equipment, for which funds are intended.

48. Proper risk management studies and impact study before implementation of any taking, loss of wards interest in life, liberty, property, or humanity, in an ever more modern, civilized, and decent society.

49. Require a correctional association membership for risk management and proper professional standards, to stop ostrich effect, reduce law suits and grievances, and to properly inform the State Legislators constantly from an independent source about new research and professional penological management, which obviously has not been done here in Delaware Dept of Correction before, to stop the abuses, neglect, exploitation, and/or insidious discrimination against the unable or disabled wards.

50. All obstructions be removed which hinder family relationship improvements, as should be.

51. Sick call slips be timely handled in 24 hours for appointments in 24 hours prioritized by severity, but no later then 48 or 72 hours if an unusual peek or overload comes about.

52. Remove all obstructions to legally and ethical 'Good' health care by State Statute. Good defined as per Webster's office Dictionary as: favorable, fertile, bountiful, attractive, sound, whole, agreeable, pleasant, wholesome, considerable, full, conforming to a standard, commendable, virtuous, kind, competent.

53. Systemic deficiencies historically in staffing and following professional standards was/is denying Me also, proper, Good health care making more unnecessary suffering inevitable for injunctive powers.

54. Irreparable damages and ongoing untreated damages require preliminary injunction.

55. All the failures to uphold the law of the land need

60

48. Proper risk management studies and impact study before implementation of any Asking, loss of wards interest in life, liberty, property, or humanity, in an ever more modern, civilized, and decent society.

49. Require a correctional association membership for risk management and proper professional standards, to stop ostrich effect, reduce law suits and grievances, and to properly inform the State Legislators constantly from an independent source about new research and professional penological management, which obviously has not been done here in Delaware Dept of Correction before, to stop the abuses, neglect, exploitation, and/or insidious discrimination against the unable or disabled wards.

50. All obstructions be removed which hinder family relationship improvements, as should be.

51. Sick call slips be timely handled in 24 hours for appointments in 24 hours prioritized by severity, but no later then 48 or 72 hours if an unusual peek or overload comes about.

52. Remove all obstructions to legally and ethical 'Good' health care by State Statute. Good defined as per Webster's office Dictionary as: favorable, fertile, bountiful, attractive, sound, whole, agreeable, pleasant, wholesome, considerable, full, conforming to a standard, commendable, virtuous, kind, competent.

I 53. Systemic deficiencies historically in staffing and following professional standards was/is denying Me also, proper, Good health care making more unnecessary suffering inevitable for injunctive powers.

I 54. Irreparable damages and ongoing untreated damages require preliminary injunction.

I 55. All the failures to uphold the law of the land need

61

~~State~~ State ensures future prevention.

62. State Attorney General's office received this initial Civil Complaint several months ago, and upon information and belief, NOTHING has been done to correct ANY of these violations, for continuous deliberate indifference, moving force towards rights, and their duties, having and continuing to violate public trust. Proper relief as appropriate.

63. State needs to provide Me, and class members, professional preventive and curative medical management plan to try all possibilities to cure, instead of only prescribing Me also only cover-up prescription of symptoms only when I become aware of them, which is sometimes too late or fatal, or handicapping.

64. State needs to insure that ~~that~~ I should have received or atleast offered flu, pneumonia, and Hepatitis vaccinations upon custody when they are the professional standard, and whatever else should have been and been denied due to lack of, Patients Rights yet upheld.

65. State ~~failed~~ need to ensure only qualified licensed medical staff performed their authorized duties. Reference Ali, Thoma Chucks, etc ~~___~~ to be determined, upon info and belief.

66. State and Defendants ~~failed~~ need to ensure Me timely, good screening, assessments, evaluations, treatments, and structured, therapeutic conditions and activities for all, as I, entering or developing medical needs while in custody.

67. Psychiatrists need to be in sufficient number, collaborate with staff in professional standards of mental health services management as well as clinical treatment, to communicate problems and resource needs to Warden and, upon info and belief, Warden failed to act for medically appropriate autonomy for clinical decisions at this facility, or atleast

was responsible to ensure it occurred. ▮ Mental health staff needs to be of sufficient number depending on changing needs of the wards of state. Staff must never be allowed to work in too great a case load for proper services and results for each ward of state.

68. Mental Health staff must reinstate a sex offender treatment program, because of increasing cases, and lack of licensed staff now pretending.

69. State needs to ensure all state employees who work with wards of state can recognize symptoms of mental illness, especially in pretrial for timely, proper care.

70. Defendants, et. al., need to be able to recognize and know how to handle abuse, neglect, exploitation, or discrimination by other inmates on inmates who are unable to communicate the problems, new conditions surrounding, for themselves. And also to stop taking advantage of disabled, mentally also, by other inmates, which further damaged Me in this unprofessional, tortures and terroristic environment run by custodians with wrong attitudes and beliefs, causing more damage on me, as a ward.

71. State failed to ensure mentally disabled are not punished and harassed as I was by illegal search and seizure caused by jealous inmates who want to only steal or destroy others for selfish gain.

72. Private Property list in Inmate Housing Manual be increased to professional standards, not just ill-will as is conceived by the wrong states of mind.

73. State ensure treatment of mentally ill ward Plaintiff serious damaged now with a professional array and types of therapeutic conditions and conduct, and for all wards similarly situated.

74. State ensure punishment and/or harassment, abuse, neglect, exploitation or discrimination stop by education of staff and inmates during intake orientation, of others, especially mentally disabled, bullying, conflict resolution; for people like me who were very close, due to lack of education + professionalism, to being placed into isolation wrongfully from tortures and terroristic conditions allowed by staff.

75. State ensure any punishment attempted to be imposed upon a mentally disabled person, prior to placement or punishment, a qualified mental health professional determine to the extent to which the charge may have been related to mental illness, and if it is a mitigating factor when treating properly by DOC Code of Conduct with least obstructive means for the inmates involved to modify behavior if possible due to mental disability.

76. State needs to ensure that a proper intake orientation includes education of ones in custody early on to prevent damage upon others, to properly protect.

77. State needs to ensure wards now in custody who have not received this new orientation, be also given the prevention education and be informed of all their rights, privileges, and immunities, grievance procedure, and alike. Inmates who have been warehoused here for many years are still very angry and on edge, thus actually not sufficiently educated and treated, some are still rapists doing their predatory activities to the unaware so allowed by the custodians, Thus, this also causes spread of disease of those who don't tell their possessions), who are criminally spreading disease.

78. State needs to ensure every new convicted person receives a thorough, proper mental health evaluation to actually care and

64 

treat the person as should be governments duty to not cause recidivism.

79. State needs to ensure to conduct professional quality assurance programs for risk management, impact studies prior to implementation, and enforcing professional standards internally, to stop systemic deliberate indifference, ostrich effect, which has plagued this State historically. Quality assurance would prevent reoccurrance.

80. ~~State~~ Proper policies and procedures, written, and readable by inmates to follow them, and to stop the arbitrary and capricious actions by a staff member out of control, abusing, neglecting, exploiting, and/or invidiously discriminating against an inmate, for better accountability lacking here with deliberate indifference.

81. Legal libraries must be open 12 hours a day per precedence of 9th Circuit, if no other unobstructed access to info is provided, for each Ward.

82. Affirm constitutional or federal deprivations in training, control, and/or moving force.

83. Proper convalescent care be provided by policies and procedures for any such illness or injury professionally needing such, such as My spinal cord injuries. Proper MRSA relief by qualified medical staff.

84. All relief that should be provided needs written policy and procedure, for All to read anytime, unobstructed, timely implemented.

85. And whatever relief should be provided.

I 86. Preliminary + Permanent injunction(s), Declaration, or whatever is proper for timely removal of all obstructions to information. Custodian Carroll to provide a point-of-contact to obtain any printed information legally possible like from the internet in a timely manner (5 working days turn-around time). Maybe public library researches via state mail could do it, as their law says.

<u>Prayer For Relief</u>

No just and sufficient relief can be provided in this case.

For Proper compensation for deliberate indifference to these rights, privileges, or immunities against each Defendant involved, jointly and severally.

For Punitive damages be ordered by this Court ordering Defendants to pay.

A jury trial on all issues triable by jury.

For Plaintiffs costs, fees, expenses, ~~taxes~~ taxes on awards in this suit.

Any other relief this representative Court of these United States of America deems appropriate to restore proper conditions for me and those similarly situated, to correct any of the custodians duties to prevent any further damage to any ward of this State.

<u>Verification</u>

I have read the foregoing complaint and hereby verify that the matters alleged herein are true, except as to matters alleged on information and belief or alike, and as to these, I believe them to be true. I certify under penalty of perjury ~~that~~ that the foregoing is true and correct.

Completed at Smyrna, Delaware on Oct 3, 2007.

Detlef F. Hartmann

DETLEF F. HARTMANN

this is the best I can do    SBI NO. 229843
under these circumstances.    Plaintiff
                             Delaware Correctional Center
                             1181 Paddock Rd , T2
                             Smyrna, DE  19977

66

Delaware Correctional Center

Mission Statement

As dedicated employees of the Delaware Correctional Center, the largest corrections facility in the state, it is our responsibility to provide a humanistic, working and living environment to all who come under our care. Our mission is accomplished by maintaining the highest standard of training and support for our employees and offenders at this institution. We fulfill our obligation because we are committed to: Protecting — The public by providing a safe and secure environment for the staff and inmates. Providing — Inmate rehabilitation by offering a wide range of programs to assist them in reuniting with their families and re-entering society. Promoting — Inmate development of self-discipline interpersonal and work related skills in a structured and humane environment. "

Appendix A

## Mission Statement

The Mission of the Department of Correction
is to protect the public by supervising adult offenders and by
directing them to treatment, education, and work programs.

In accordance with this mission, the Department will develop and maintain a competent and professional staff through active recruitment and proper training of qualified individuals.

We recognize a duty to provide for the treatment, rehabilitation and restoration of offenders as productive, law-abiding citizens within our communities. Offenders shall receive fair and humane treatment and be housed in secure and sanitary environments.

As a State agency, the Department is responsible for its operations and is accountable to the public. We will work cooperatively and maintain open communications with those authorities in the judicial, legislative and executive branches of government.

Appendix B

FROM: DETLEF HARTMANN

SBI# 229843    UNIT T2-10

DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

LEGAL MAIL

Legally Protected Mail

U.S.M.S.
X-RAY

Office of the Clerk
United States District Court
844 N. KING STR, LockBox 18
WILMINGTON, DE
19801 - 3570

UNITED STATES POSTAGE

$ 05.06₀
US POSTAGE
MAILED FROM ZIP CODE 19977
030480275    OCT 05 2007
02 1A