IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DETLEF F. HARTMANN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 06-340-SLR |
| | ) |
| WARDEN THOMAS CARROLL, | ) |
| DAVID PIERCE, and IHOMA CHUKS, | ) |
| | ) |
| Defendants. | ) |

Detlef F. Hartmann, James T. Vaughn Correctional Center, Smyrna, Delaware.  Pro Se Plaintiff.

Catherine C. Damavandi, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Defendants Thomas Carroll and David Pierce.

James Edward Drnec, Esquire, Balick & Balick, LLC, Wilmington, Delaware.  Counsel for Defendant Ihoma Chuks.

**MEMORANDUM OPINION**

Dated: March 12, 2013
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

Plaintiff Detlef R. Hartmann ("plaintiff"), an inmate at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983. He proceeds pro se and was granted leave to proceed in forma pauperis. The case proceeds on the corrected second amended complaint. (D.I. 46, 48) Presently before the court are motions for summary judgment filed by defendants Thomas Carroll ("Carroll"), David Pierce ("Pierce") (together "State defendants"), and Ihoma Chuks ("Chuks"). (D.I. 112, 118) The court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons set forth below, the court will grant defendants' motions for summary judgment.

## II. BACKGROUND

Plaintiff filed this action against numerous defendants with a variety of claims. Most defendants and claims have been dismissed.[1] (D.I. 12, 48, 108, 110, 125, 130) On June 28, 2010, the court granted summary judgment in favor of Carroll, Pierce, and Chuks, and judgment was entered in their favor on July 1, 2010. (D.I. 130, 131) Plaintiff appealed, and the United States Court of Appeals for the Third Circuit vacated the judgment and remanded the matter for this court to address whether plaintiff was competent within the meaning of Fed. R. Civ. P. 17(c), as well as to consider plaintiff's request for counsel. (D.I. 132, 136) This court followed the directive of the Third Circuit and, on August 9, 2012, found plaintiff competent within the meaning of Rule 17(c)(2)

---

[1]On March 30, 2012, the Third Circuit affirmed the June 28, 2010 dismissal of unserved Department of Correction ("DOC") defendants Paul Howard ("Howard") and Edward Johnson ("Johnson"). *Powell v. Symons*, 680 F.3d 301, 310 n.8 (3d Cir. 2012).

and denied plaintiff's request for counsel.[2] (D.I. 145, 146) In addition, the court gave plaintiff an opportunity to file a supplemental response to defendants' motions for summary judgment and gave defendants the opportunity to file supplemental replies. (*Id.*)

The remaining allegations are that, on or about December 29, 2005 to April 19, 2006, State defendants delayed or denied plaintiff diagnosis and treatment for severe throat pain and suffering. (D.I. 46, claim 2 ¶ 6) On or about November 10, 2005 to the date the corrected second amended complaint was filed, Pierce and Chuks failed to provide professional prevention, diagnosis, and treatment for thyroid disease causing plaintiff permanent injuries due to lack of proper nutrition and the intermittent administration of medications. (*Id.* at ¶ 9) During medical interviews on April 11, 2006 and in September 2006, Chuks referred plaintiff to an endocrinologist, but a dismissed defendant failed to transport plaintiff to the specialist. (*Id.* at ¶ 10)

Plaintiff's medical records indicate that he received medical treatment during the relevant time period. (D.I. 120, A27-61) He was seen regularly for chronic care issues, EKG, blood pressure treatments, fasting labs, and investigation of his medical grievances during the time period he claims to have suffered from sore throat and thyroid problems. (*Id.* at A35-39)

Plaintiff's medical records indicate that he was prescribed, and received, either Levoxyl or Synthroid prior to November 10, 2005 and until March 6, 2008. (D.I. 113, ex. A; D.I. 157, ex. A) Levoxyl and Synthroid are indicated for the treatment of thyroid

---

[2]Plaintiff recently filed a motion for a mental health evaluation, evidentiary hearing, and for counsel. (D.I. 163) The motion will be denied as moot.

conditions.  *See* www.levoxyl.com; www.synthroid.com.  Plaintiff was given, and signed for, thirty-day supplies of the medication.  (*Id.*)  The orders were renewed by varying providers including Chuks.  (*Id.*)  On December 7, 2006, Dr. VanDusen changed plaintiff's thyroid medication from Levoxyl to Synthroid.  (D.I. 157, ex. A at 9)  Chuks changed plaintiff's thyroid medication on June 1, 2007, based upon lab work performed on May 8, 2007 that showed abnormal levels of TSH.  (*Id.* at ex. A at 11; ex. B at 1-4)  Chuks discussed the lab work with Dr. VanDusen who agreed that the prescribed amount of Synthroid should be reduced.  (*Id.* at ex. B at 1)  Chuks ordered follow-up blood work, completed on July 26, 2007.  (*Id.* at ex. B at 5-6)  Plaintiff's medication was adjusted by Dr. McFall based upon the lab results.  (*Id.* at 7)  A third thyroid panel was taken on September 5, 2007.  (*Id.* at 7-8)

Plaintiff filed a grievance on November 10, 2005 complaining that he had not received proper treatment for his thyroid condition and asked for a referral to a doctor of osteopathic medicine.  (D.I. 120, A19)  His complaints were reviewed and it was determined that plaintiff was receiving appropriate medications and that his lab test results were within normal limits.  (*Id.* at A23, 25)  Plaintiff filed a grievance on December 28, 2005 complaining of possible strep throat issues, but later reported that his throat had improved.  (*Id.* at A12)  He was seen by medical on January 10, 2006 and records indicate that he had no throat symptoms at that time.  (*Id.* at A15)

Carroll and Pierce are not medically trained.  (D.I. 120, exs. 1, 2).  Neither have the authority to override medical diagnoses or opinions of Correctional Medical Services ("CMS"), the medical provider at the VCC during the relevant time period.  (*Id.*)  Carroll had no knowledge of plaintiff's medical condition during the relevant time period.  (D.I.

3

120, ex. 1)  Nor did he or Pierce have involvement in the diagnosis or medical treatment of plaintiff.  (*Id.* at exs. 1, 2)  Letters written to Carroll and Pierce regarding medical treatment are forwarded to the appropriate medical contact person.  (*Id.*)

## III.  STANDARD OF REVIEW

The court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of proving that no genuine issue of material fact exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986).  When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).  If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)).  The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Moreover, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue."  *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*,

4

477 U.S. 317, 325 (1986)).  If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law.  *See Celotex Corp.*, 477 U.S. at 322.

## IV. ANALYSIS

Chuks moves for summary judgment on the grounds that she had no personal involvement in the medical transportation issue and she was not deliberately indifferent to plaintiff's medical needs.  (D.I. 112)  Her reply further argues for summary judgment on the basis that there is no support in the record for any of plaintiff's claims, noting that medical records refute plaintiff's claims.[3]

State defendants move for summary judgment on the grounds that the claims raised against them are based upon a respondeat superior theory, they were not deliberately indifferent to plaintiff's medical needs, and they have qualified immunity.[4] (D.I. 119)  In their reply, they further argue for summary judgment on the basis that plaintiff failed to come forward with any admissible evidence to support the claims against them.

Plaintiff's initial response did not address the merits of the motion.  Plaintiff's supplemental response can be summarized as follows:  (1) the medical records show that he was prescribed and received wrong dosages of medication for his thyroid

---

[3]Chuks also notes that in his response, plaintiff has inappropriately raised new claims in an attempt to avoid summary judgment.  (D.I. 156, ¶¶ 2, 4)

[4]Chuks joins in, and adopts all facts, exhibits and arguments of Pierce and Carroll.  (D.I. 122)

condition; (2) Chuks acted with deliberate indifference when she changed his dose of

thyroid medication without sufficient facts to make a professional judgment, without

special training, and without performing a physical examination or new lab work, all of

which caused him injury; and (3) Chuks was aware of his medical condition through his

sick-call slips, grievances, and personal conversations.  In addition, plaintiff contends

that he "is not capable and competent to do this legal case."[5]  (See D.I. 155)  Plaintiff'

supplemental response did not address the claims against State defendants.

### A.  Personal Involvement/Respondeat Superior

Chuks argues that the allegations of paragraph 10 of the corrected second

amended complaint fail to state a claim.  She notes that, rather than establish a basis

for a finding of deliberate indifference, plaintiff alleges that Chuks made an appropriate

referral, but that someone else failed to transport him to the specialist.  Chuks argues

that, because plaintiff has adduced no additional evidence to support this claim, it

should be dismissed.  State defendants argue that they are entitled to judgment as a

matter of law because allegations against them lie under the theory of respondeat

superior.

"A defendant in a civil rights action 'must have personal involvement in the

alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional

violation which he or she neither participated in nor approved.'"  *Baraka v. McGreevey*,

---

[5]This court has ruled that plaintiff is competent within the meaning of Fed. R. Civ.
P. 17(c).  (See D.I. 146)  In addition, plaintiff was sent to the Delaware Psychiatric
Center ("DPC") for an evaluation.  Dr. Selig stated in 2011 that there was no psychiatric
issue for plaintiff to be housed at the DPC and that plaintiff does not have a treatable
psychiatric issue.  (D.I. 160)

481 F.3d 187, 210 (3d Cir. 2007) (internal citations omitted).  "Personal involvement can

be shown through allegations of personal direction or of actual knowledge and

acquiescence."  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

It is well established that supervisory liability cannot be imposed under § 1983 on

a respondeat superior theory.[6]  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Monell v.*

*Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362

(1976); *Durmer v. O'Carroll*, 991 F.2d 64, 69 n.14 (3d Cir. 1993).  Purpose rather than

knowledge is required to impose liability on an official charged with violations arising

from his or her superintendent responsibilities.[7]  *Iqbal*, 566 U.S. at 677.  "Absent

vicarious liability, each Government official, his or her title notwithstanding, is only liable

for his or her own misconduct."  *Id.*  A plaintiff must show that an official's conduct

caused the deprivation of a federally protected right.  *See Kentucky v. Graham,* 473

U.S. 159, 166 (1985).

Additionally, the filing of a grievance is not sufficient to show the actual

knowledge necessary for personal involvement, *Rode*, 845 F.2d at 1208, and

---

[6]In *Iqbal*, the plaintiff alleged supervisory officials violated his rights because one official was the "principal architect" of the policy, and another was "instrumental" in adoption and execution of the policy.  *See id.* at 669.  The Supreme Court found the allegations facially insufficient.  *See Iqbal*, 556 U.S. at 676 (quoting *Robertson v. Sichel,* 127 U.S. 507, 515-516 (1888), for the proposition that "[a] public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties").

[7]In light of *Iqbal*, it is uncertain whether proof of personal knowledge, with nothing more, provides a sufficient basis to impose liability upon a supervisory official.  *See Bayer v. Monroe Cnty. Children and Youth Services*, 577 F.3d 186, 190 n.5 (3d Cir. 2009).

participation in the after-the-fact review of a grievance is not enough to establish personal involvement, *see, e.g., Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (unpublished) (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation). *See also Cole v. Sobina*, 2007 WL 4460617 (W.D. Pa. Dec. 19, 2007); *Ramos v. Pennsylvania Dep't of Corr.*, 2006 WL 2129148 (M.D. Pa. July 27, 2006). *Cf. Wilson v. Horn*, 971 F.Supp. 943, 947 (E.D. Pa. 1997), *aff'd*, 142 F.3d 430 (3d Cir. 1998) (prison officials' failure to respond to inmate's grievance does not state a constitutional claim).

As to the medical transfer issue, there is no evidence of record of Chuks' personal involvement.  With regard to Pierce and Carroll, again, there is no evidence of personal involvement in plaintiff's medical care and treatment.  Plaintiff's submissions of grievances do not give rise to the personal involvement of Pierce or Carroll and said acts are insufficient to impute personal involvement to the defendants.  It appears that Pierce and Carroll were named as defendants based upon their supervisory positions and, as discussed above, § 1983 liability cannot lie under a theory of respondeat superior.  Notably, the record does not reflect that defendants were aware of a risk of a serious injury that could have occurred to plaintiff and purposefully failed to take appropriate steps.

After reviewing the record, the court finds there is insufficient evidence to enable a jury to reasonably find for plaintiff on the issue of whether the State defendants had any personal involvement in the alleged constitutional violations discussed above.  Therefore, the court will grant State defendants' motions for summary judgment.  The

8

court will also grant Chuks' motion for summary judgment based on her lack of personal involvement with regard to the transport issue.

### B. Medical Needs

Plaintiff alleges that he was not provided adequate care for his throat and thyroid conditions.  Defendants move for summary judgment on the grounds that they were not deliberately indifferent to plaintiff's medical needs.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976).  In order to set forth a cognizable claim, plaintiff must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need.  *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care."  *Estelle v. Gamble*, 429 U.S. at 104-05.

"[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable.  *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000).  An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf.  *Estelle v. Gamble*, 429 U.S. at 107.  Additionally, "mere disagreement as to the proper medical

9

treatment" is insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted). Finally, prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (discussing *Durmer*, 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236.

The record reflects that plaintiff received medical care for his throat complaints and his thyroid condition. In addition, the evidence of record does not support a finding that Chuks was deliberately indifferent with respect to the treatment of plaintiff's thyroid condition. As to the State defendants, it is undisputed that they do not provide medical treatment to inmates. Absent evidence to the contrary, they were justified in believing that plaintiff was receiving adequate medical care. Finally, plaintiff failed to provide evidence to support his position that defendants were deliberately indifference to his medical needs.

After reviewing the record, the court finds there is insufficient evidence to enable a jury to reasonably find for plaintiff on the issue of whether defendants were

deliberately indifference to his serious medical needs.  Therefore, the court will grant the defendants' motions for summary judgment.[8]

## V. CONCLUSION

For the reasons discussed above, the court will grant defendants' motions for summary judgment and will deny as moot plaintiff's motion for a mental health evaluation, evidentiary hearing, and for counsel.

An appropriate order will be entered.

---

[8]The court will not address the remaining issues raised in support of entry of summary judgment.